IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS (DALLAS)

| | | |
|---|---|---|
| IN RE: | . | Case No. 21-31954 |
| | . | |
| | . | |
| 2999TC ACQUISITIONS, LLC, | . | Earle Cabell Federal Building |
| | . | 1100 Commerce Street |
| | . | Dallas, Texas 75242 |
| | . | |
| Debtor. | . | Tuesday, March 22, 2022 |
| . . . . . . . . . . . . . . . . | . | 1:31 P.M. |

TRANSCRIPT OF TELEPHONIC HEARING ON DEBTOR'S EMERGENCY MOTION TO EXTEND TIME FOR PAYMENT OF AMOUNTS DUE AND OWING TO HNGH TURTLE CREEK LLC

**BEFORE HONORABLE HARLIN DEWAYNE HALE**
**UNITED STATES BANKRUPTCY COURT CHIEF JUDGE**

TELEPHONIC APPEARANCES:

| | |
|---|---|
| For the Debtor: | Joyce Lindauer Attorney, PLLC<br>BY: JOYCE LINDAUER, ESQ.<br>1412 Main Street, Suite 500<br>Dallas, Texas 75202 |
| For HNGH Turtle Creek, LLC: | Kane Russell Coleman Logan, PC<br>BY: JOHN KANE, ESQ.<br>901 Main Street, Suite 5200<br>Dallas, Texas 75202 |

Proceedings recorded by electronic sound recording, transcript produced by a transcription service.

**LIBERTY TRANSCRIPTS**
**7306 Danwood Drive**
**Austin, Texas 78759**
**E-mail: DBPATEL1180@GMAIL.COM**
**(847) 848-4907**

(Proceedings commenced at 1:31 p.m.)

THE COURT: Good afternoon. This is Bankruptcy Court in 2999TC Acquisitions.

MS. LINDAUER: Your Honor, Joyce Lindauer for 2999TC Acquisitions, LLC, the debtor.

THE COURT: Welcome.

MS. LINDAUER: Thank you, Your Honor.

MR. KANE: Your Honor, John Kane on behalf of HNGH.

THE COURT: Welcome.

MR. KANE: Thank you.

MS. LINDAUER: Your Honor, you set this hearing on an expedited basis on our request that was filed last week. In the meantime, there was an agreed order submitted and the Court did sign it. It appears at Docket 94, and that was signed on March 17th. That extended out the March 15th deadline that the debtor was facing to pay off the HNGH amount that had been stipulated as the amount needed to make that payment.

So the order now on March 17th extends that deadline until March 25th, the deadline to make a further payment which would then extend out the deadline even further to the last of May of this year.

And even though you granted that agreed relief, I just kind of wanted to bring to your attention some other things that are happening so that if we do have to file some quick motions, the Court might have those on your radar.

One thing that we are working on diligently is an agreement with a company called Tall Ships. They're represented by Jackson Walker. And they're looking at doing the entire transaction which would include an acquisition of the property as well as some related contracts, a payoff of HNGH, and then some funds that would go into the estate to pay the creditors under a pending plan that we filed in this case.

So that's in process. The drafts of the documents are being exchanged. The other issue on that one really I think is some timing. And then that is a tri-party agreement. It involves not only the debtor but HNGH, Mr. Kane's client. So it would require their consent and approval to some various terms that are being circulated. So I understand Mr. Kane's client is going to give them comments or give him some comments later today.

But if we get that agreement more or less buttoned up, there might be a motion filed asking the Court to approve that agreement in pretty short order. So I did want to kind of preview that.

The second thing the debtor has contacted Jones LaSalle as a broker, and they're looking at hiring them as a listing agent for the property as really as a backup to the Tall Ship transaction. In the event for some reason that transaction doesn't come to fruition, the debtor wants to have an opportunity to try to market and sell the property.

We think the property's worth more than what's owed to HNGH. And now that we may have some extension time here until the end of May, I think the debtor may decide to go ahead and try to see if it can just sell off the property, we're going to have to pay all the creditors and leave the estate with some money. And so that's a second option that they're looking at.

And just so the Court knows, there's been probably a half a dozen different individuals or entities that have expressed an interest in this particular deal, I think, partly because of the size of the deal and partly because of other things that are going on in the world like the war in Ukraine right now and some other things. People have been a little hesitant to step forward, even though there's been a lot of interest in the property itself in striking and putting together a deal.

I will tell you Mr. Barton's probably met with at least six or seven different groups over the last couple of months to try to get something working on here because, as I mentioned, we believe there is some equity in this particular deal.

So some of those are still ongoing. They have selected Tall Ships right now as their, I guess, lead transaction. But I think that, like any good real estate developer, Mr. Barton's keeping all his options open so that if

something doesn't work out, he has another option to turn to.

But we kind of wanted to stay on the Court's radar screen, which is why we didn't cancel the hearing this afternoon even though an order had been entered on an extension request that was agreed to by Mr. Kane and his client. So I kind of wanted to give the Court an update on kind of what's going on at this point.

So, like I said, I think there will be some additional motions to follow, I'm pretty sure, in order to keep this matter moving. And everyone's mindful of the deadlines that we're now facing at this point. So, anyway, I wanted to pass that along and kind of let anybody else that might have something to weigh in also to weigh in on this particular matter at this point.

THE COURT: Okay. Thank you.

Mr. Kane?

MS. LINDAUER: You're welcome.

MR. KANE: Thank you, Your Honor.

John Kane on behalf of HNGH.

I do want to note we oppose the extension request on the motion for expedited hearing because the agreed order is self-executing. It has provisions or had provisions before it was modified where if the debtor did not make its payment obligations by March 15th at 5 p.m., then unless waived in writing by my client, certain things would take place.

That treatment was agreed to by Mr. Barton and the debtor. The last minute while everyone is on vacations as the debtor was well aware, emergency motion -- it was really just an expedited motion to extend the payment deadline was an overt attempt to re-trade the agreement to which the debtor had already entered.

The whole purpose of the agreed order was the establishment of a self-executing document so that there would be no efforts by Mr. Barton to come re-trade -- or the debtor to come re-trade the agreement at the eleventh hour. This was supposed to be the panacea that resolved all the disputes between the parties and set in stone a payment deadline.

We did end up, while I was on vacation and my client was out of the country and the general counsel and my client was on vacation with his client, come to an eleventh hour agreement pursuant to which the debtor has an obligation to pay by March 25th $2.5 million to my client part of funds we can distribute to our equity interestholders. It satisfies the allowed claim. A portion reduces the payoff amount.

But that again is a self-executing order. There has been documents submitted that would set forth a three-party transaction, but nothing in those documents at this point proposes to pay my client the $2.5 million that it is owed by the debtor by March 25th at 5 p.m.

So while we will continue to work in good faith to

try and see if this is something that is commercially viable, my client's expectation at this point, unless there is a default that is waived in writing at a later date, is that the debtor will pay it $2.5 million in good funds no later than 5 p.m. on March 25th.

And unless there is some kind of alternative proposal to which the Court is alerted, I want to say right now that we will adamantly oppose any further emergency motion seeking an extension of the payoff deadline or any modification of the agreed order. It's already been modified.

So unless there's an agreement that's in place ahead of time, we would request on the front end that this Court disregard any further requests for some emergency hearing or similar treatment by the debtor. The whole issue that led up to in large part the initial agreed order was a pattern of behavior that HNGH alleged of the debtor of not living up to the bargains that it agreed to in writing with HNGH on multiple occasions, ignoring prior federal court orders on previous occasions and litigation.

And so here we are go-around number two with a modified agreed order having a hearing today that was set as a result of this emergency motion to disregard the debtor's prior agreement to the terms of an agreed order negotiated after extensive litigation on the eve of trial on the courthouse steps. We want to let this Court know that unless we have

contacted the court clerk ahead of time, we are adamantly opposed to any additional hearings on this modified order.

The binary outcome still exists. The debtor pays the money or we obtain the property. And that's it. And so as we approach this March 25th period, like I said, Your Honor, we'll continue to see if this third-party transaction is viable. We have an interest in selling the property or assisting with the debtor's disposition of this property to ensure we're paid in full.

But if it doesn't happen and there is no, you know, safety net for the debtor here and when it's really proposed as another alternative to the modified agreed order that's currently in place, this three-party transaction, doesn't involve the debtor paying off HNGH, which is what's enumerated in the proposed order. It's a separate transaction, in essence, outside of bankruptcy where a third party would be buying the property from HNGH. If we can't get to an agreement on the terms of that document, we expect the debtor to abide by its bargain under the modified agreed order.

So we will keep this Court apprised of our progress, Your Honor. But we did want to make sure that we had an opportunity for the Court to understand our current position.

THE COURT: Thank you very much.

Not saying anything about granting hearings or anything along those lines, but everyone should know that I am

out of town on the 25th. So I'll just give you a heads up on that.

And I have signed an order on the motion that was set. We can't put it on the docket for a status conference. I appreciate both sides' comments.

And, Mr. Kane, we didn't want to retrieve you last week from your vacation from Hawaii. As I understand from your partner, that's where you were.

MR. KANE: I certainly do appreciate that, Your Honor. That would have been tricky given the time difference. I was not looking forward to a 9:00 setting with a five-hour gap.

THE COURT: I think so your family might have gotten kind of mad at Ms. Lindauer and me, also, I think.

All right. Good to see everyone. Thank you very much.

MS. LINDAUER: Thank you, Your Honor.

THE COURT: We'll be in recess. I appreciate your time.

THE COURT: Thank you.

(Proceedings concluded at 1:43 p.m.)

* * * * *

**C E R T I F I C A T I O N**

We, DIPTI PATEL, court approved transcribers, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of our ability.

/s/ Dipti Patel

DIPTI PATEL, CET-997

LIBERTY TRANSCRIPTS DATE: June 6, 2022