Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEY FOR DEBTOR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| | § | |
| 2999TC ACQUISITIONS, LLC, | § | CASE NO. 21-31954-hdh11 |
| | § | |
| DEBTOR. | § | CHAPTER 11 |

### DEBTOR'S OPPOSITION TO MOTION
### TO ENFORCE AGREED ORDERS

TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:

COMES NOW 2999TC Acquisitions, LLC, Debtor in the above styled and numbered case ("Debtor"), and files this *Debtor's Opposition[1] to Motion to Enforce Agreed Orders* filed by HNGH Turtle Creek, LLC ("HNGH") ([Doc. No. 134] the "Motion"), and in support would show the Court the following:[2]

### INTRODUCTION

1.  The Debtor and HNGH, the parties to this dispute ("Parties"), came to a settlement which included a closing on a the hotly contested matters involving the ownership of 2999 Turtle

---

[1] This Opposition is respectfully submitted expressly subject to, and without waiver of, any and all positions, objections, challenges, rights, and remedies in any and all tribunals.

[2] The Court is requested to take judicial notice of the course of proceedings in this matter, including all of the Court Orders under Fed. Rule Evid.. 201. The Court is requested to admit and consider as evidence all of the attached and proven-up documentary and declaration proof submitted with this Opposition.

Creek, Dallas, Texas (the "Property") which was to occur on May 30, 2022 (and by agreement as to certain terms extended to May 31, 2022 due to the holiday on May 30, 2022). Despite months of back-and-forth between the Parties prior to the deadline, HNGH failed to timely deliver the "necessary and important documents" needed to transfer clear title to the Property. Because these conditions precedent were not met, Debtor could not proceed with the transfer of funds to HNGH. Despite HNGH's breach, it has now, in its Motion, baselessly and unmeritoriously accused Debtor of failing to perform. The irony of that accusation is that, though prepared to do so, Debtor *could not* complete its only obligation (to pay money) *because* HNGH first failed to meet its obligations to trigger the funding obligation. HNGH's failures are more particularly described herein.

## **RELEVANT BACKGROUND**

2. The primary dispute between the Debtor and the HNGH Parties involves ownership of the Property, which Debtor acquired on September 19, 2019 with the intent of developing a luxury hotel and branded residential project.

3. As part of the closing on the acquisition of the Property, Debtor obtained a loan and executed Deed of Trust, Security Agreement and Fixture Filing (the "Deed of Trust") as well as an Assignment of Leases and Rents ("Assignment of Leases") for the benefit of 2999 Turtle Creek, LLC (the "Original Lender" and not to be confused with the Debtor), as well as a Secured Promissory Note (the "Note") in favor of the Original Lender, and other related documents (collectively, the "Loan"). The Loan was personally guaranteed by Mr. Timothy Barton, President of the Debtor.

4. Upon information and belief, on or about January 24, 2020, HNGH reportedly acquired a "junior participation interest" in a minority percentage of the Loan through a participation agreement between the Original Lender and HNGH. It is Debtor's firm belief – born

out by HNGH's actions – that HNGH got involved in this project for the express purpose of predatorily seizing ownership of the Property from Debtor by any means necessary.

5.  Debtor filed its voluntary petition commencing this Chapter 11 bankruptcy case on October 29, 2021.

6.  Unbeknownst to the Debtor, on or about December 7, 2021, HNGH reportedly acquired all remaining interest in the Loan from the Original Lender.

7.  The next day, December 8, 2021, HNGH recorded an Assignment of the Deed of Trust and Assignment of Leases and Rents in the property records of Dallas County, Texas. HNGH did so by taking out a separate loan from Happy State Bank ("HSB"). HNGH collaterally assigned the Deed of Trust and loan documents to HSB and endorsed and delivered the Original Note as collateral. HNGH's deal with HSB was finalized on December 3, 2021 – 5 days **before** HNGH actually acquired the remaining interests in the Loan.

8.  It is understandable that HNGH would want to obtain the Property. The Property is worth approximately $80,000,000. The debt to HNGH is approximately $40,000,000. This isn't a number pulled out of the air by the Debtor. The Debtor has appraisals by third parties and commitments from lenders that establish the values of the Property.

9.  Immediately after the filing of the bankruptcy case, the Debtor filed an adversary proceeding against HNGH Turtle Creek, LLC ("HNGH"), Vipin Nambiar, and HN Green Hollow Capital Partners, LLC (collectively, the "HNGH Parties") (Adversary Proceeding No. 21-03085 herein).

10. Despite these disputes, throughout the pendency of this case and notwithstanding HNGH's complaints regarding delays, the Debtor has well compensated HNGH for any such delays.  To date, Debtor has paid to HNGH over $8.5 million pursuant to its various agreements

with HNGH (excluding payments made in 2019 and 2020, yet the original loan amount which was $32,500,000 has increased to over $40,000,000), such payments described as follows[i]:

| Payment Date | Amount | Description (Forbearance Agreement & BK Agreed Order) |
|---|---|---|
| 1/5/21 | $100,000.00 | Consideration Payment / Interest |
| 2/2/21 | $100,000.00 | Consideration Payment / Interest |
| 3/1/21 | $100,000.00 | Consideration Payment / Interest |
| 3/18/21 | $35,000.00 | Legal Fees |
| 4/12/21 | $50,000.00 | Consideration Payment / Interest |
| 4/14/21 | $50,000.00 | Consideration Payment / Interest |
| 5/10/21 | $50,000.00 | Consideration Payment / Interest |
| 5/10/21 | $50,000.00 | Consideration Payment / Interest |
| 5/31/21 | $337,827.55 | Dallas County Tax Office (Property Taxes) |
| 6/1/21 | $50,000.00 | Consideration Payment / Interest |
| 6/4/21 | $50,000.00 | Consideration Payment / Interest |
| 7/1/21 | $100,000.00 | Consideration Payment / Interest |
| 7/30/21 | $744,422.00 | Remaining Interest Reserve |
| 7/30/21 | $784,074.00 | Extension Deposit (applied to interest) |
| 2/28/22 | $409,284.32 | Dallas County Tax Office (Property Taxes) |
| 12/14/21 | $500,000.00 | Consideration Payment |
| 12/31/21 | $500,000.00 | Consideration Payment |
| 1/14/22 | $500,000.00 | Consideration Payment |
| 2/1/22 | $500,000.00 | Consideration Payment |
| 3/1/22 | $500,000.00 | Consideration Payment |
| 3/15/22 | $1,000,000.00 | Agreed Order (towards Allowed Claim of $2M) |
| 3/25/22 | $2,500,000.00 | Agreed Order ($1M remainder of allowed claim: $2.5M towards payoff) |
| **TOTAL** | **$9,010,607.87** | |

11. Multiple disputes and claims have been asserted by and between the HNGH Parties and the Debtor, leading to protracted litigation in this court. These disputes primarily revolved

around a deed in lieu to the Property, which was delivered to HNGH pre-petition, but not recorded prior to this Chapter 11 case (the "Deed in Lieu"). The Deed in Lieu was intended to be held in escrow, but HNGH instead improperly and untimely filed it in the Dallas County land records office.

12. Debtor intended to resolve these disputes pursuant to an *Agreed Order* [Doc. 64] *Regarding Motion to Lift Stay* [Doc. 10], *Motion to Dismiss* [Doc. 9], *Motion for Sanctions* [Doc. 15] *and Motion to Enforce Stay* [Doc. 14] entered on December 10, 2021 (the "December Agreed Order"), which was approved and signed by the Court on December 10, 2021 and constituted a contractual settlement agreement. A further Agreed Order was entered on March 17, 2022, that extended certain deadlines in the December Agreed Order and were later amended to add additional terms benefitting HNGH (collectively, the "Agreed Orders"). Debtor has been required to pay ***millions*** of dollars to HNGH for each of these Agreed Orders and their modifications.

13. The Agreed Orders clearly contemplated a recission of the Deed in Lieu's purported conveyance of the Property. Unfortunately, HNGH did not comply with the Agreed Orders and did not take the steps necessary to rescind the Deed in Lieu transaction as described herein.

14. The Agreed Orders provided, among other things, that:

    a.    **HNGH would, by May 30, 2022, present for recording a "Recission Deed," held in escrow by HNGH's counsel, which would (1) cause the improperly-filed Deed in Lieu to be "deemed rescinded and avoided", and (2) confirm that Debtor "shall retain all title to the Property"[3];**

---

[3] The December Agreed order provided: "ORDERED, ADJUDGED AND DECREED that the automatic stay shall remain in full force and effect as to HNGH through 5:00 p.m. central time, March 15, 2022, (the "Payoff Deadline") by which the Debtor shall make payment to HNGH in the amount set forth on Exhibit A to this Order, which exhibit is filed under seal, in full and final satisfaction of the Note (the "Payoff Amount"), **which note shall be reinstated immediately prior to the Debtor's payment to HNGH of the Payoff Amount** and **counsel for HNGH shall hold the rescission deed** during the pendency of the term of this Agreed Order and shall have no liability to the Debtor or any other party by way of holding such deed or releasing the deed in accordance with the terms of this Agreed Order."

Debtor's Opposition to Motion to Enforce Agreed Orders
Page 5

   **b.** **HNGH would by recording of the Rescission Deed, cause the recission of the Deed in Lieu transaction; and**

   **c.** **HGNH would reinstate the Note and security documents, which would be contemporaneously released with the Payoff Event and recording of the Recission Deed.**

   **d.** **Debtor would, by May 31, 2022, pay a final payoff to HNGH (the "Payoff Event" or "Final Payoff," the amount of which is under seal).**

Pursuant to, and in good faith reliance on, the March Agreed Order, Debtor dismissed its Adversary Proceeding against the HNGH Parties.

  15. It was, conceptually, a simple transaction: HGNH would rescind the Deed in Lieu transaction, reinstate the Note and related documents, then then get paid the Payoff Amount, and cancel the Note and related loan documents. Of course, as in all commercial real estate transactions, these components of the transaction are accomplished by a simultaneous closing at a title company. In addition, the Debtor's confirmed plan of reorganization specifically contemplated that the recission would be accomplished by the transfer of the Property to a new entity and a loan from a third-party lender (the "Lender"). Lenders who loan dozens of millions of dollars aren't stupid, they require clear title to their collateral. Unfortunately, HGNH did not provide the appropriate documentation to provide clear and clean title to carry out the provisions of the Agreed Orders.

  16. Pursuant to the original Agreed Orders, HNGH was required to place the Rescission Deed into escrow back on December 10, 2021. However, prior to the May 30, 2022, deadline, HGNH never provided an actual Rescission Deed, as required by to the Agreed Orders. Instead (and in pale comparison of what had been required), on Friday May 27, 2022 (the Friday preceding the Memorial Day holiday weekend), HNGH provided Debtor with a "Special Warranty Deed," which it claimed was sufficient to constitute a rescission of the Deed in Lieu. This Special Warranty Deed is – by law – a conveyance and transfer of the property and ***not*** a rescission, which

conflicts with any purported rescission language, and which would create potential title ambiguities and tax issues. A special warranty deed DOES NOT accomplish a recission. A special warranty deed evidences that the Property was conveyed to HNGH and then, after several months, reconveyed to the Debtor – without proving the details of chain of title and any changes or encumbrances thereto. That isn't a recission and has serious negative effects to the clarity of title of the Property.

17.     HNGH also failed to deliver other customary documents and assurances necessary to accomplish a recission to ensure delivery of unencumbered title on May 30, 2022.

18.     Alarmed by HNGH's failure to timely deliver documents beyond the non-conforming Special Warranty Deed, on May 30, 2022, counsel for Debtor issued to counsel for HNGH a detailed letter, attached hereto as **Exhibit A** and incorporated herein as if fully set forth, identifying numerous items HNGH still needed to provide.[4]

19.     Debtor had secured funding and was preparing to make the Final Payoff on May 31, 2022, as required by the Agreed Orders. However, after – and *because* – HNGH failed on May 30, 2022 to comply with the terms of the Agreed Orders the lenders, of course, would not loan without compliance by HNGH with the Agreed Orders. Debtor has secured committed funding and will pay off HNGH as soon as the title to the Property is clean and HNGH has provided proper recission documents. Exhibit A describes what should be done to clear and clean the title to the Property.

---

[4] HNGH complains that the letter was not timely. The Debtor complains that these were customary and necessary documents needed to effectuate a recission. For example, who has the note, HNGH or HSP? No lender in its right mind would make a huge loan without a clean title, cancellation of any note and releases of liens, among other documents. The Debtor says that HNGH was to provide these documents. HNGH says that the Debtor didn't ask. None of that matters because the fact is that HNGH has yet to produce recission documents.

20. Despite having failed to comply with the Agreed Orders and present a clean title or recission deed by May 30, 2022, on June 3, 2022, HNGH filed this Motion, incredulously claiming that *Debtor* has defaulted on the Agreed Orders due to failure to pay.  HNGH concedes in its Motion that the Motion itself is unnecessary. (Mot. at ¶ 6.)  Nonetheless, HNGH has proceeded to request from this Court what amounts to a comfort order in the form of a preemptive declaratory judgment.[5]

---

[5] To be granted the relief requested, Debtor must have been in default of the Agreed Orders. However, there has been no finding that Debtor was in default nor does HNGH's motion request such a finding. In fact, Debtor strenuously disputes it was in default and has further asserted that HNGH was the one who actually breached the Agreed Orders as further stated herein.

Not only is the Motion not proper and was Debtor not in default, but HNGH makes false and/or baseless conclusory statements of fact that lack any substantiation in support of the Motion, including:

a. HNGH claims that it will "reinstate its Note" in order to accept the payoff of the Note. Evidentially HNGH did not have such power because HSB was the holder and owner of the Note under the Collateral Transfer. Even more problematic is the likelihood that HNGH's recording of the deed was in breach of the Collateral Transfer, done without consent of HSB, and caused the deed of trust and loan to merge with the deed potentially wiping out HSB's collateral under the Collateral Transfer.

b. HNGH asserts numerous "Debtor failed to note" allegations that are false and/or lack any specificity or support or attempt to place HNGH's burden onto the Debtor. For instance, HNGH acts as if it did not have contact information of the title company yet acknowledges prior communications with Sendera Title. Furthermore, HNGH attempts to shift blame to Debtor for not commenting on its form of a special warranty deed to use to rescind the deed after it purportedly sent a draft on May 12 that was required to be sent in December and that HNGH that should have been a simple, standard rescission agreement without any attempt to add HNGH's own Deed Restriction.

c. HNGH asserts that the form of the rescission of deed proposed by Debtor contained "factual representations contradictory to express findings of fact in the Adversary Judgment" which Debtor denies and which HNGH fails to even identify. Moreover, HNGH claims it was "prepared to deliver, or caused Happy State Bank to be prepared to deliver by closing substantially all documents reasonably requested at that time" which does not equate to any actual confirmation or proof that the issues described above regarding HSB including who was the holder, owner, and endorsee of the Note were actually resolved.

d. HNGH claims that Debtor filed frivolous and misleading pleading which HNGH implies is supported by Debtor's withdrawal of its motion. Debtor withdrew is motion for other reasons and Debtor denies that any motion or pleading was frivolous, misleading, or contained any deceit or mischaracterizations. However, Debtor has been forced to reassert many of the claims and assertions that were previously asserted and later withdrawn in response to this Motion.

# ARGUMENT

I. **HNGH HAS FAILED TO PERFORM ITS OBLIGATIONS UNDER THE AGREED ORDERS AND IS NOT ENTITLED TO AN ORDER IN ITS FAVOR.**

21. This Motion is nothing more than an end run by HGNH around its own breach. HNGH complains of the alleged failures of the Debtor but fails to inform this Court of the numerous ways in which it did not satisfy the conditions precedent to Debtor's payment of the Loan, thereby breaching the Agreed Orders and frustrating Debtor's ability to perform its own obligations. HNGH's obligations are conditions precedent to the obligation of the Debtor to fund the recission.

22. Among other failures, HNGH failed to specifically perform its condition precedent obligations under the Agreed Orders by May 30, 2022, in the following ways:

   a. **HNGH failed to present a proper recission deed, and instead presented a Special Warranty Deed and does not accomplish a recission.**

   b. **HNGH failed to deliver customary closing documents and assurances to effectuate the recission, as thoroughly set forth in Exhibit A; and**

   c. **HNGH failed to disclose the encumbrance on the Property in favor of HSB, and instead made inaccurate statements claiming no such encumbrance existed. The position of HSB is indeed material for closing a recission.**

Any one of these failings standing alone is sufficient to deny HNGH's Motion to Enforce the Agreed Orders.

   A. *HNGH failed to present a proper recission deed, and instead presented a replacement Special Warranty Deed that includes encumbrances not included in the original Deed*

23. The Special Warranty Deed prepared by HNGH is not consistent with the Agreed Orders[6]. Texas real property law provides that the goal of a rescission is to avoid the contract and,

---

[6] As detailed in Exhibit A

in this case, the Deed, from its inception, **placing the parties in the position they occupied <u>before</u> the instrument was executed**. *Ginn v. NCI Bldg. Sys. Inc.*, 472 S.W.3d 802, 837 (2015); *see also Hunt County Oil Co. v. Scott*, 67 S.W. 451, 452 (Tex. Civ. App.—1902, writ ref'd). A special warranty deed "conveys the land itself," but "does not, of itself, carry notice of defects in title." *Chesapeake Exploration, L.L.C. v. Dallas Area Parkinsonism Soc'y High Plains Div. Inc.* No. 07-10-0397-CV, 2011 WL 3717082, at 6 (Tex. App. – Amarillo, Aug. 24, 2011). Thus, the Special Warranty Deed provided by HNGH evidenced a reconveyance, not a recission, and did not satisfy the Agreed Orders' requirement to *rescind* the Deed in Lieu. Indeed, the inclusion of a deed restriction would not be possible under an actual recission.

24. More particularly, HNGH's delivery of the Special Warranty Deed instead of a Rescission Deed is a clear first material breach of the Agreed Orders, and the parties' contractual settlement agreements. HNGH cannot reasonably seek an enforcement of the Agreed Orders until it complies with the Agreed Orders.

      **B.** ***HNGH failed to deliver customary additional closing documents and assurances necessary to fully affect a proper closing pursuant to the Agreed Orders.***

25. Fortunately, there is a solution. Exhibit A describes the additional items required by HNGH to be delivered to the title company as escrow agent, as customarily requested and required in commercial real estate transactions (the "Deliverables"), and which will effectively satisfy the need to establish clear title, and thus close on the Property.

26. In response to Exhibit A, HNGH, by and through counsel, has requested that such Deliverables be limited to those it self-servingly believes are necessary to close this transaction. HNGH is massively incorrect. The parties agreed to work together to facilitate a payoff to HNGH through the vehicle of a new loan from a third party to Debtor or its assignee. HGNH knew that a lender would require the documents necessary to effectuate a recission: detailed loan documents

and corporate/authority documents and necessary affidavit(s) would be needed to complete the recission and satisfy routine title requirements, as well as the reasonable requirements of any new lender, purchaser, and its investor.

27. HNGH's failure to deliver any one or more of the Deliverables to the title company as escrow agent, as customarily requested and required in commercial loan and real estate transactions such as this, constitutes a breach and/or anticipatory breach of the Agreed Orders, which caused the desired closing to be delayed.

### C. *HNGH failed to disclose the encumbrance on the Property placed by HSB's lien on the same.*

28. HNGH's Proof of Claim in this case, filed March 8, 2022, states at Item 9 as follows: "HNGH is the owner and holder of the Note, the Deed of Trust and all related Liens and security interests." No disclosure is made of HSB's claimed lien on the loan documents and the resulting cloud on the title of the Property.

29. Debtor first became aware that HSB was involved in this deal in May 2022. At that time, the Debtor asked counsel for HNGH about HSB's position in connection with the Debtor and was advised in writing that HSB had nothing to do with this transaction. Thus, it was a surprise to Debtor on May 31, 2022, to receive first a Payoff Statement from HSB, and then a directive that funds be directed to HSB from the closing. HNGH had not provided a similar instruction to the Debtor. Rather on May 31, 2022, contrary to HSB's Payoff Statement, HNGH provided via its wiring instructions that all funds to be sent to it. HNGH never told Debtor that a portion of the funds should be sent to HSB.

30. The Debtor was then faced with conflicting instructions for payment of millions of dollars from a third-party lender. It is in no way surprising - and in no way Debtor's fault - that, faced with such a dilemma, the closing could not timely continue.

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Debtor respectfully requests, for the reasons stated herein, that the Court enter an Order as follows:

a. denying HNGH's Motion to Enforce Agreed Orders and adopt the request of the Debtor;

b. granting Court costs and attorneys' fees to the Debtor; and

c. granting such other and further relief in law or in equity to which Debtor/Debtor may show itself entitled.

Dated: June 8, 2022

Respectfully submitted,

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
joyce@joycelindauer.com
ATTORNEY FOR DEBTOR

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 8, 2022, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon the parties receiving electronic notice in this case listed below.

Katherine T. Hopkins
katherine.thomas@kellyhart.com

John J. Kane
jkane@krcl.com, ecf@krcl.com;jkane@ecf.courtdrive.com

Sherrel K. Knighton
Sherrel.Knighton@lgbs.com, Dora.Casiano-Perez@lgbs.com;Sean.French@lgbs.com;Dallas.Bankruptcy@lgbs.com

Joyce W. Lindauer
joyce@joycelindauer.com,
dian@joycelindauer.com;deann@joycelindauer.com;12113@notices.nextchapterbk.com

Steven C. Metzger
smetzger@pmklaw.com

Russell Hale Neilson
hneilson@parkinslee.com, hneilson@ecf.courtdrive.com

United States Trustee
ustpregion06.da.ecf@usdoj.gov

Kyle Woodard
kwoodard@krcl.com, KWoodard@ecf.courtdrive.com

                                                   */s/ Joyce W. Lindauer*
                                                   Joyce W. Lindauer

---

[i] The largest payments were made after this case was filed.

**JOYCE W. LINDAUER ATTORNEY, PLLC**
Attorney & Mediator
1412 Main Street, Suite 500
Dallas, Texas 75202
Email: joyce@joycelindauer.com

| | |
|---|---|
| Telephone No. | Facsimile No. |
| (972) 503-4033 | (972) 503-4034 |

May 30, 2022

Via Email
To John Kane

**Re:     File 2201814-VVJA 2999 Turtle Creek Blvd, Dallas, TX Closing Documents**

John, please confirm the following matters to ensure that title to the Property is clear, and particularly, not encumbered by any of the filings by the lender parties, and as such must be delivered or caused to be delivered by your client, HNGH (and in some instances, possibly third parties):

**1.0     THE RECISSION OF DEED (fka SWD)**

1.1     Rescission of Deed

1.2     In connection with the above, a standard form Bills Paid and Parties in Possession Affidavit of HNGH.

**2.0     THE DEED OF TRUST**

2.1     Release of the Deed of Trust, by HNGH;

    a.  Deed of Trust, Security Agreement and Fixture Filing dated as of September 20, 2019, by MO 2999TC, LLC in favor of Michael B. Massey, as Trustee for the benefit of 2999 Turtle Creek LLC, recorded in the Office of the County Clerk for the County of Dallas, State of Texas, on September 23, 2019 as Instrument No. 201900253450 as assigned to HNGH Turtle Creek, LLC by 2999 Turtle Creek LLC under the Assignment of Deed of Trust and Assignment of Leases and Rents recorded on December 8, 2020 under instrument number 202000341904.

2.2     Related to the immediately above, a Release of the prior collateral assignment of the Note and Deed of Trust and all Loan Documents fbo of Axos, to be signed by Axos, and other confirmation that Axos has no legal or equitable interest in the Note and Deed of Trust or other Loan Documents that were collaterally assigned (including Assignment of Leases and Rents);

**EXHIBIT "A"**

2.3   Release of the prior collateral assignment of the Note, Deed of Trust, and Assignment of Leases and Rents (3 documents) fbo of Happy State Bank, to be signed by Happy State Bank, and other confirmation that Happy State Bank has no legal or equitable interest in the Note and Deed of Trust;

2.4   Release of Assignment of Leases and Rents dated as of September 20, 2019, by MO 2999TC, LUC for the benefit of 2999 Turtle Creek LLC, recorded in the Office of the County Clerk for the County of Dallas, State of Texas, on September 23, 2019 as Instrument No. 201900253451 as assigned to HNGH Turtle Creek, LLC by 2999 Turtle Creek LLC under the Assignment of Deed of Trust and Assignment of Leases and Rents recorded on December 8, 2020 under instrument number 202000341904.

2.5   Release of prepaid interest agreement to Madison (and release by HNGH if it was assigned).

**3.0   UCC FILING(S)**

3.1   Release of the UCC, by HNGH (county and state)

3.2   Related to the immediately above, a Release of the prior assignment of the UCC fbo of Axos, to be signed by Axos, and other confirmation that Axos has no legal or equitable interest in the UCC filing;

3.3   Termination of Loan participation agreement, executed by each of the parties thereto, and or other confirmation that the Loan participation agreement has been terminated, and is no longer of any force or effect

3.4   Release of whatever agreement Axos signed to permit the participation agreement (See excerpt from an email during negotiations between Madison and HNGH at the end)

3.5   Release of the prior collateral assignment of the UCC fbo of Happy State Bank, to be signed by Happy State Bank, and other confirmation that Happy State Bank has no legal or equitable interest in the UCC filing;

**4.0   NOTE**

4.1   The original Note, marked paid in full; delivered to title company to make sure original is provided. .

**5.0   AUTHORITY OF LENDER ENTITIES**

5.1   In connection with the above, Secretary or other Officer Certificate of HNGH, including copies of the governing documents of HNGH, and including consent resolutions of the director and or managers, and the consent of the shareholders and or members, to the execution and delivery of each of the above referenced closing documents,

5.2 Ratification of all prior acts and Consent of HN Green Hollow Capital Partners executed by Jim Glasgow who is the manager – he is the one that executed the participation agreement, so anything related to that agreement needs to especially come from him in addition to HN Capital Partners, LLC.

5.3 In connection with the above, Secretary or other Officer Certificate of Axos, including copies of the governing documents of Axos, and including consent resolutions of the director and or managers, and the consent of the shareholders and or members, to the execution and delivery of the Axos documents;

5.4 In connection with the above, Secretary or other Officer Certificate of Happy State Bank, including copies of the governing documents of Happy State Bank, and including consent resolutions of the director and or managers, and the consent of the shareholders and or members, to the execution and delivery of each of the above referenced closing documents executed by HSB; together with confirmation, together with confirmation that Happy State Bank (a) is and remains the holder of the collateral assignment from HNGH and that Happy State Bank has not further sold or encumbered the collateral itself, which they apparently had the right to do under the Collateral Assignment), and (b) authorized and consented to and or ratified HNGH's execution and delivery of the Order, as well as the Rescission of Deed.

5.5 Everything executed by HNGH should be executed by HN Green Hollow as the sole member or otherwise consented to by sole member and not just executed by Vipin

5.6 Need assurance Madison assigned the guaranties to HNGH as they asserted.

5.7 Also, HNGH was intervenor in the guaranty case so Madison is still a party - both will have to dismiss w prejudice.

5.8 Check if Madison assigned all the loan docs to HNGH not just the recorded documents.

5.9 Look at the collateral assignment to HSB to be sure HNGH even had the authority to do what they did including agreeing to the BK order.

**6.0    LITIGATION AND MATTERS**

6.1 Dismissal of the Guaranty litigation, with prejudice provided to the Guarantor

**7.0    GENERALLY**

7.1 Sequencing Agreement, and or Joint Closing Instructions, respecting the effect and timing each of the above instruments, to be signed by HNGH, Debtor (Seller), and purchaser, either directly or by and through counsel.

7.2 If any potential lenders/investors on our side are exposed or names are released, John Kane to sign agreement that neither he nor HNGH have communicated with them.

John, please specifically confirm which of the above items have already been delivered to the Title Company (and provide me with copies of such please for review), and when the balance of the items will be delivered, in advance of the closing.

Thank you.

Joyce Lindauer

Cc: Client