Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEY FOR REORGANIZED DEBTOR

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **2999TC ACQUISITIONS, LLC,** | § | **CASE NO. 21-31954-hdh11** |
| | § | |
| **REORGANIZED DEBTOR.** | § | **CHAPTER 11** |

**REORGANIZED DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE REORGANIZED DEBTOR TO MODIFY DEBTOR'S THIRD PLAN OF REORGANIZATION AND PLAN CONFIRMATION ORDER**

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, ROOM 1254, DALLAS, TEXAS 75242 ON OR BEFORE JULY 12, 2022, WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:

2999TC Acquisitions, LLC (the "***Reorganized Debtor***") files the *Reorganized Debtor's Motion for Entry of an Order Authorizing the Reorganized Debtor to Modify Debtor's Third Plan*

*of Reorganization and Plan Confirmation Order* ("***Motion to Modify***"), and in support thereof would respectfully show the Court as follows:

**JURISDICTION**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**AUTHORITY AND BASIS FOR RELIEF**

3. Bankruptcy Code "Section 1127(b) 'allows post-confirmation modification of a Chapter 11 plan after notice and a hearing, so long as the proposed modification is presented to the Court 'before substantial consummation of such plan''" and the modification does not materially or adversely affect the treatment of holders of claims. *See*, *e.g. In re U.S. Brass Corp.*, 301 F.3d 296, 307 (5th Cir. 2002). *See also* Fed. R. Bankr. P. 3019*; In re SSA Retail Mgt. LLC*, 20-32025, 2021 WL 813832, at *17 (Bankr. N.D. Tex. Mar. 2, 2021) (order).

4. A plan has not been substantially consummated unless the following has occurred:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
>
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
>
> (C) commencement of distribution under the plan.

11 U.S.C. §1102(2). *See, also In re United States Brass Corp.*, 255 B.R. 189, 193 (Bankr. E.D. Tex. 2000).

5. Section 1127(b) requires a modified plan to meet the requirements of Bankruptcy Code Sections 1122 and 1123. Section 1122 sets out the requirements for classification of claims and interests, which has already been approved in the Confirmation Order and will not be changed by the modification proposed hereunder. Section 1123 defines the necessary contents of a plan of

reorganization. The modification proposed herein will supplement and clarify the contents of the confirmed Debtor's Third Amended Plan of Reorganization [Dkt. No. 108] (the "***Plan***") and order confirming the Plan ("***Confirmation Order***") but will not change their substance.

6. Section 1127(c) requires the proponent of a plan modification to comply with Section 1125 of the Code. Section 1125 establishes the necessary post-petition disclosures to be made in conjunction with a plan of reorganization. In this case, the Court entered an Order Approving Debtor's Second Amended Disclosure Statement on April 27, 2022 (Doc. 112).

7. The confirmed Plan also contains certain provisions relevant to modification of the Plan. Article XI, headed "Modification of the Plan", states:

> The Debtor may propose amendments to or modifications of this Plan at any time prior to Confirmation, upon notice to all parties-in-interest. After Confirmation, the Reorganized Debtor may, with approval of the Court and so long as it does not materially or adversely affect the interest of creditors, modify to remedy any defect or omission or reconcile any inconsistencies in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of this Plan.

Article XII of the Plan, headed "Retention of Jurisdiction" states:

> Notwithstanding confirmation of the Plan or the Effective Date having occurred, the Court will retain jurisdiction for the following purposes …
>
> 12.05 Plan Modification. To modify the Plan pursuant to Section 1127 of the Code and applicable Bankruptcy Rules.

## <u>BACKGROUND</u>

### *The Property Loan*

8. In September 2019, Debtor 2999TC Acquisitions, LLC purchased real property (the "***Property***") located at 2999 Turtle Creek Blvd. (a prime location in Dallas) for $46 million. Shortly thereafter, Debtor started predevelopment work towards building a luxury branded residential and hotel project (the "***Project***'). The Project was initially financed by a $32.5 million acquisition loan

(“***Loan***”) secured by a first lien deed of trust on the Property from an affiliate of Madison Residential Capital (“***Original Lender***”) and $20 million in equity from affiliates of the Debtor.

9. In December of 2020, HNGH Turtle Creek, LLC (“***HNGH***”)[1] purchased the entire Loan from Original Lender. Because of the negative impact of adverse market conditions, including market conditions related to the COVID pandemic, Debtor was unable to meet its debt service. HNGH, accordingly, sent Debtor a notice of its intent to foreclose on the Property at a January 2021 foreclosure sale.

10. Debtor engaged in negotiations with HNGH for an out-of-court workout/restructuring of the Loan. The out-of-court restructuring efforts failed. Consequently, on October 29, 2021, the Debtor sought protection under Chapter 11 of the Bankruptcy Code.

***The Agreed Orders***

11. After the bankruptcy filing, to settle various disputes, the Debtor 2999TC Acquisitions, LLC and HNGH entered into two agreed orders: the *Agreed Order Regarding Motion to Lift Stay [Doc. 10] Motion to Dismiss [Doc. 9], Motion for Sanctions [Doc. 15] and Motion to Enforce Stay [Doc. 14]*, dated December 10, 2021 [Dkt, No. 64] (the “***December Agreed Order***”) and *Agreed Order Modifying Order on Motion to Dismiss and For Relief From Stay*, dated March 17, 2022 [Dkt. No. 94] (the “***March Agreed Order***,” together with the December Agreed Order, the “***Agreed Orders***”).

12. The Debtor made all the required payments under the December Agreed Order. Further, pursuant to the December Agreed Order, the Debtor was to pay HNGH a payoff amount

[1] HNGH was formed and is managed by HN Capital Partners, LLC (“***HN Capital***”). HN Capital is managed and/or controlled by Vipin Nambiar and James Glasgow. These companies are in the business of investing in the acquisition and development of hospitality sector properties.

once the note evidencing the debt was reinstated. HNGH was also required to hold a rescission deed during the pendency of the Agreed Orders:

> the ***Debtor shall make payment to HNGH*** in the amount set forth on Exhibit A to this Order, which exhibit is filed under seal, in full and final satisfaction of the Note (the "Payoff Amount"), ***which note shall be reinstated immediately prior to the Debtor's payment to HNGH of the Payoff Amount*** and ***counsel for HNGH shall hold the rescission deed during the pendency of the term of this Agreed Order***

*See* December Agreed Order, p. 2.

13. Accordingly, ***the December Agreed Order required of HNGH, among other deliverables, four things*****:** (1) that payment be made to HNGH (not a third party), (2) that the note evidencing the debt be reinstated, and (3) that counsel to HNGH have a rescission deed and (4) hold that rescission deed during the entire term of the December Agreed Order.

***The Agreed Orders Are Incorporated into the Confirmed Plan by Reference***

14. On May 18, 2022, the Court entered the Confirmation Order confirming the Debtor's Plan. Section 2.01(8) of the Plan incorporates the Agreed Orders into the Plan.

15. Under the Plan and the Agreed Orders, certain transactions were to be effectuated, including HNGH's reconveyance of the Property to the Debtor and the refinancing and payoff of the Debtor's obligations to HNGH. HNGH was to deliver a "rescission deed" to the Debtor and the Debtor was required to "convey its interest in the Property to a new single purpose entity that [would] obtain a loan and concurrently payoff HNGH and, as soon as reasonably practicable thereafter, fund the Plan payments described herein." Plan, p. 8. The same transaction was embodied in the Confirmation Order as the primary foundation for the feasibility of the Plan. Section (k) of the Confirmation Order states as follows:

> k. Section 1129(a)(11). The Plan is feasible. Confirmation of the Plan is not likely to be followed by the liquidation of, or need for further financial reorganization of, the Debtor. The Plan does contemplate that the Debtor's property and rights in property will be conveyed following confirmation to a new entity that will obtain the required financing to payoff HNGH. Either such new financing or the Debtor's existing ownership will payoff

any remaining creditors in the case as called for by the Plan, including Allowed Unsecured Claims, Allowed Administrative Claims and fees of the United States Trustee.

***Implementation of the Plan Has Been Frustrated and Curtailed***

16. During the process leading up to closing on funding contemplated under the Plan, counsel for the Reorganized Debtor and counsel for HNGH communicated regarding certain closing deliverables and requirements. The title company required certain clouds on the fee simple title to be removed.

17. The Reorganized Debtor required clarification regarding whether Happy State Bank or HNGH was the holder of the note evidencing the debt owed to HNGH. The Plan and Agreed Orders directed payment to be made to HNGH, not a third party.

18. The Reorganized Debtor also requested, pursuant to the Agreed Orders, a valid rescission of deed that would erase any transaction transferring the Property to HNGH. Rescission is required by the Agreed Orders and will safeguard against any adverse tax consequences, such as short-term capital gains taxation rates.

19. The Reorganized Debtor's efforts to comply with and implement the Plan, the Confirmation Order and the Agreed Orders has been frustrated. HNGH hasn't supplied a rescission deed in adequate form to satisfy the requirements of the Reorganized Debtor's prospective lender and the title company. HNGH also hasn't provided other customary and usual documentation required to finance and close the transaction.

20. The necessary documents were described at length during testimony provided by Mr. Randy Marx, a witness for the Debtor at the hearing on HNGH's Motion to Enforce Agreed Orders (Doc. No. 134) held June 10 and 13, 2022. Transcripts of those hearings have been ordered on an expedited basis, but the most important documents described by Mr. Marx were as follows

(the "***Required Closing Documents***") in a form substantially similar to the documents attached hereto as Exhibits "1" through "13:"

- Recission Deed
- Bills Paid and Parties in Possession Affidavit
- Release of Deed of Trust
- Release of prior Collateral Assignment of Happy State Bank
- Release of Assignment of Leases and Rents
- Release of the UCCs
- Original Note (Marked paid in full)
- Officer Certificate of HNGH
- Officer Certificate of Happy State Bank
- Joint Closing instructions
- Note Reinstatement Document
- Corrective Deed for Deed in Lieu Document
- Dismissal of Tim Barton in State Court Lawsuit and Release of Guaranty

***Modification is Necessary to Ensure Implementation of the Plan***

21. The Agreed Orders do not specifically enumerate the Required Closing Documents. The failure to include a list of the Required Closing Documents in the Agreed Orders was an inadvertent omission by counsel for both the Reorganized Debtor and HGNH, caused by a last-minute rush to come to an agreement by two non-real estate lawyers. Though, it now seems that HGNH may be using the omission to derail and/or back-pedal out of the transaction it agreed to by refusing to provide a proper rescission deed and other Required Closing Documents.

22. Absent a clear directive and guidelines in the Plan and Plan Confirmation Order regarding HNGH's delivery of the Required Closing Documents, the Reorganized Debtor believes

its efforts to implement the Plan will continue to be curtailed by HNGH. Therefore, modification of the Plan and Confirmation Order to include the Required Closing Documents is necessary.

**SUBSTANTIAL CONSUMMATION OF THE PLAN HAS NOT OCCURRED AND THE REQUESTED PLAN MODIFICATION MEETS THE REQUIREMENTS OF THE CODE**

23. Substantial consummation of the Plan has not occurred. Subsections (A) and (C) of § 1101(2) are not satisfied. The Reorganized Debtor hasn't transferred all or substantially all the property proposed by the Plan to be transferred, and to-date, the Reorganized Debtor has not made any distributions under the Plan. The transfer of the Property from HNGH to the Reorganized Debtor has not been accomplished due to HNGH's failure to provide the proper documentation as set out above. The Reorganized Debtor, as a result, has been unable to commence payments under the Plan. Therefore, because the Plan hasn't been substantially consummated, the Plan may be modified, subject to the other requirements of § 1127.

24. The plan modification proposed herein does not require additional or revised disclosures to be made because the modification will not change the transaction with HGNH already confirmed by the Court. The modification only clarifies the documents and means necessary to accomplish that transaction.

**RELIEF REQUESTED: PROPOSED PLAN MODIFICATION[2]**

25. Consistent with the above, the Reorganized Debtor seeks to modify the Plan and Confirmation Order as follows: Section 2.01 of the Plan shall be supplemented by the following new subsection 9, to be inserted following Section 2.01(8):

> "9. In order to accomplish the conveyance of the Debtor's interest in the Property to a new single purpose entity that will obtain a loan and concurrently pay

[2] In conjunction with this Motion the Reorganized Debtor has filed a motion to, among other things, enforce and clarify, modify or amend the Agreed Orders and Confirmation Order based on the aforementioned inadvertence, but recognizes that the Court may prefer to address this issue through a plan modification; hence, the Debtor seeks such relief herein.

off HNGH (as described in above subsection 2.01(8)), HGNH shall provide to the Debtor or to a title company mutually agreeable to the Debtor and HNGH the following documents:

- Recission Deed
- Bills Paid and Parties in Possession Affidavit
- Release of Deed of Trust
- Release of prior Collateral Assignment of Happy State Bank
- Release of Assignment of Leases and Rents
- Release of the UCCs
- Original Note (Marked paid in full)
- Officer Certificate of HNGH
- Officer Certificate of Happy State Bank
- Joint Closing instructions
- Note Reinstatement Document
- Corrective Deed for Deed in Lieu Document
- Dismissal of Tim Barton in State Court Lawsuit and Release of Guaranty

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Debtor respectfully requests, for the reasons stated herein, that the Court enter an Order granting the Motion to Modify and authorizing the Reorganized Debtor's modification of the Plan and Confirmation Order in the manner stated above, finding that the modification complies with the relevant provisions of 11 U.S.C. § 1127, and granting such other relief as to which the Debtor may be justly entitled.

Dated: June 20, 2022.

Respectfully submitted,

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
joyce@joycelindauer.com
ATTORNEY FOR REORGANIZED DEBTOR

## CERTIFICATE OF CONFERENCE

On June 20, 2022, undersigned counsel contacted Mr. John Kane, Esq., counsel for HNGH regarding the requested relief. Mr. John Kane has informed the undersigned that his client opposes the requested relief.

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 20, 2022, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon the parties receiving electronic notice in this case listed below.

Katherine T. Hopkins
katherine.thomas@kellyhart.com

John J. Kane
jkane@krcl.com, ecf@krcl.com;jkane@ecf.courtdrive.com

Sherrel K. Knighton
Sherrel.Knighton@lgbs.com, Dora.Casiano-Perez@lgbs.com;Sean.French@lgbs.com;Dallas.Bankruptcy@lgbs.com

Joyce W. Lindauer
joyce@joycelindauer.com,
dian@joycelindauer.com;deann@joycelindauer.com;12113@notices.nextchapterbk.com

Steven C. Metzger
smetzger@pmklaw.com

Russell Hale Neilson
hneilson@parkinslee.com, hneilson@ecf.courtdrive.com

United States Trustee
ustpregion06.da.ecf@usdoj.gov

Kyle Woodard
kwoodard@krcl.com, KWoodard@ecf.courtdrive.com

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer

List of Curative Documents for Closing

1. Recission Deed
2. Bills Paid and Parties in Possession Affidavit
3. Release of Deed of Trust
4. Release of prior Collateral Assignment of Happy State Bank
5. Release of Assignment of Leases and Rents
6. Release of the UCCs
7. Original Note (Marked paid in full)
8. Officer Certificate of HNGH
9. Officer Certificate of Happy State Bank
10. Joint Closing instructions
11. Note Reinstatement Document
12. Corrective Deed for Deed in Lieu Document
13. Dismissal of Tim Barton in State Court Lawsuit and Release of Guaranty

**Together with "Cure Instruments", in satisfaction of the above**

**(as attached)**

**1.1** Rescission of Deed**, curative item, being the most recent draft of such requested by Debtor, which I understand that HNGH has substantially agreed to, in lieu of its previously suggested 05/27/2022 special warranty deed. Title Company advised that the only instrument she had received prior to the scheduled closing was the now evidently superseded special warranty deed. Particularly, the Rescission of Deed, neither in the form requested by Debtor, or the revised as suggested by HNGH, was delivered to the Title Company in advance of the scheduled closing.**



**EXHIBIT "1"**

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE OUT ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVERS LICENSE NUMBER

**AGREED RESCISSION**
**OF**
**SPECIAL WARRANTY DEED**
***(Instrument number 2021 003 271 72***
***recorded in the real property records of Dallas County, Texas on November 1, 2021)***

THE STATE OF TEXAS

KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF DALLAS

WHEREAS Turtle Creek Dickason, Ltd conveyed certain property located at 2999 Turtle Creek Blvd, Dallas, Dallas County, Texas as further described on Exhibit A and incorporated herein including all improvements ("**Property**") to 2999TC Acquisitions, LLC, f/k/a MO 2999TC, LLC, a Delaware limited liability company, as evidenced by the Special Warranty Deed executed on September 20, 2019 and recorded on September 23, 2019 as instrument number 201900253449 in the real property records of Dallas county, Texas on which was subject to a Deed of Trust, Security Agreement, and Fixture Filing to 2999 Turtle Creek, LLC recorded on September 23, 2019 as instrument number 201900253450 in the real property records of Dallas County, Texas.

WHEREAS 2999TC Acquisitions, LLC, a Delaware limited liability company (the "**Grantor**") and HNGH Turtle Creek, LLC, a Delaware limited liability company (the "**Grantee**") as the successor in interest to and/or as the assignee of 2999 Turtle Creek, LLC (the "Original Lender") entered into a written agreement ("Agreement") under which Grantor agreed to convey the Property to Grantee upon the occurrence of certain agreed conditions.

WHEREAS Grantor executed the undated special warranty deed (the "**Deed**") on March 1, 2021, and delivered to Grantee to be held in escrow and to be effective and recorded only upon the occurrence of such agreed conditions as set forth in the Agreement;

WHEREAS Grantee dated the Deed as of October 29, 2021 (which dating was not consented to by Grantor) and recorded the Deed as **instrument number 2021 003 271 72** in the real property records of Dallas County, Texas on November 1, 2021 (which recordation, too, was not consented to by Grantor, and made the subject of an adversary proceeding in the Bankruptcy Court, defined below);

WHEREAS Grantor filed for bankruptcy protection in the United States Bankruptcy Court for the Northern District of Texas ("Bankruptcy Court") on October 29, 2021 (Case no. 21-31954-hdh11) wherein Grantor disputed the right of Grantee to record the Deed and alleged that such recording was improper;

WHEREAS Grantor has retained sole and exclusive possession of the Property at all times and Grantee never occupied nor took possession of the Property; and

WHEREAS Grantee and Grantor have agreed as ordered by the Bankruptcy Court by Order signed December 10, 2021 (Dkt 64), as amended on March 17 2022, for the Grantee to rescind and avoid the Deed, which shall be retroactive and effective as of October 29, 2021, and acknowledging and agreeing that no grant, sale, bargain, transfer, or conveyance of the Property occurred to the same extent as if the Deed had never been executed or recorded.

NOW THEREFORE Grantor and Grantee hereby incorporate by reference the recitals above, and **HEREBY RESCIND AND AVOID** in full, ***ab initio***, the execution, delivery, granting, and recording of the Deed and any and all grants, bargains, sales, transfers, and conveyances related to the Property otherwise effected in the hereby rescinded Deed, including any and all restrictions made therein, are HEREBY **EXPRESSLY RESCINDED** in full, ***ab initio***.

Further, as a result of such rescission, ***ab initio***, the parties hereto hereby expressly covenant, confirm, and agree that the lien(s) in favor of Grantee encumbering the Property prior to the recordation of the Deed rescinded hereby, namely:

(a) that certain Secured Promissory Note dated September 20, 2019 (the "Note"), in the original principal amount of $32,500,000, payable by the Grantor, as maker, to the order of Original Lender, as assigned to HNGH, the current payee and holder of the Note, and

(b) the lien on and security interest against the Property created by that certain Deed of Trust, Security Agreement and Fixture Filing dated September 20, 2019 and recorded on September 23, 2019 as instrument number 201900253450 in the real property records of Dallas County, Texas;

**SHALL BE AND ARE HEREBY REINSTATED** and did not merge into the greater fee estate of the Grantee upon the recordation of the Deed rescinded hereby.

Grantee represents, warrants, and affirms (i) that it never occupied nor took possession of the Property; (ii) that it has not caused or permitted the Property to be encumbered in any way except which have otherwise been fully released as recorded in the property records of Dallas County, Texas; (iii) that it has no claims related to the Property; (iv) and that it has acquired no rights, title, or interests of any kind in the Property.

The effect of this rescission shall be as if any conveyance, transfer, sale, bargain, or grant of the Property by way of the Deed never happened and Grantor and Grantee and as such, the Deed is void and of no force and effect, from the beginning.

*[Signature Pages to Follow]*

IN WITNESS WHEREOF, Grantor has executed this AGREED RESCISSION OF SPECIAL WARRANTY DEED on the____ day of_________________ 2022.

**2999TC ACQUISITIONS, LLC,**
a Delaware limited liability company
formerly known as MO 2999TC, LLC

By: ______________________________
Name: Timothy Barton
Title: President

STATE OF TEXAS

COUNTY OF ________________

BEFORE ME, the undersigned Notary Public, on this day personally appeared Timothy Barton, known to me to be the person and officer whose name is subscribed to the foregoing instrument on behalf of 2999TC Acquisitions, LLC, and acknowledged to me that he executed the same for the purposes and consideration therein expressed, as the act and deed of said limited liability company and in the capacity therein stated, and furthermore represents he has such authority.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the _____ day of______________ 2022.

___________________________
Notary Public in and for the State of ________________
My Commission Expires: _________________

IN WITNESS WHEREOF, Grantee has executed this AGREED RESCISSION OF SPECIAL WARRANTY DEED on the____ day of _________________ 2022.

**HNGH TURTLE CREEK, LLC**
a Delaware limited liability company

By: ______________________________
Name: ______________________________
Title: ______________________________

STATE OF TEXAS

COUNTY OF ________________

BEFORE ME, the undersigned Notary Public, on this day personally appeared ____________________known to me to be the person and officer whose name is subscribed to the foregoing instrument on behalf of HNGH Turtle Creek, LLC, and acknowledged to me that he executed the same for the purposes and consideration therein expressed, as the act and deed of said limited liability company and in the capacity therein stated and furthermore represents he and it has such authority, as the successor in interest of the Original Lender (as defined hereinabove), and the sole owner and holder of the Note and associated liens.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the _____ day of______________ 2022.

___________________________
Notary Public in and for the State of ________________
My Commission Expires: _________________

# EXHIBIT A
# PROPERTY DESCRIPTION

**BEING a tract of land situated in the James A. Sylvester Survey Abstract No. 1383, and the John Grisby Survey, Abstract No. 495, City of Dallas Block No. A/1031, Texas and being all of Lot 4, Block A/1031, of TURTLE CREEK OFFICE ADDITION, an Addition to the City of Dallas, Texas, according to the plat thereof recorded in Volume 2003162, Page 48, Deed Records, Dallas County, Texas.**

1.2, Bills Paid and Parties in Possession Affidavit, **<u>curative item</u>, being one of the Title Company's prepared standard form affidavits, required in connection with this transaction to satisfy Schedule C, requirements 2a, 2c. Title Company advises that it did not receive any form of bills paid or other affidavit from HNGH prior to the scheduled closing date.**



**EXHIBIT "2"**

SENDERA TITLE

**AFFIDAVIT AS TO DEBTS AND LIENS AND PARTIES IN POSSESSION**
**(SALE)**

THE STATE OF §
§ GF # **2201814-VVJA**
COUNTY OF DALLAS §

BEFORE ME, the undersigned authority, on this day, personally appeared the undersigned (hereinafter called Affiant) (whether one or more) and each on his oath, deposes and says, as follows:

1. Affiant is the owner of the following described property, to-wit:

   **Being a tract of land situated in the James A. Sylvester Abstract No. 1383, and the John Grisby Survey, Abstract No. 495, City of Dallas Block No. A/1031, Texas and being all of Lot 4, Block A/1031, of TURTLE CREEK OFFICE ADDITION, an addition to the City of Dallas, Texas, according to the plat thereof recorded in Volume 2003162, Page 48, Plat Records, Dallas County, Texas.**

2. Affiant is desirous of selling the above described property and has requested **Silver Star Title LLC dba Sendera Title,** agent **Title Resources Guaranty Company,** to issue a title policy guarantying the title of the property.

3. In connection with the issuance of such policy, Affiant makes the following statement of facts:

   a. That Affiant owes no past due Federal or State taxes and that there are no delinquent Federal assessments presently existing against Affiant, and that no Federal or State Liens have been filed against Affiant.

   b. That there are no delinquent State, County, City, School District, Water District or other governmental agency taxes due or owning against said property and that no tax suit has been filed by any State, County, Municipal Water District or other governmental agency for taxes levied against said property.

   c. All labor and material used in the construction of improvements or repairs, if any, on the above described property have been paid for and there are now no unpaid labor or material claims against the improvements or repairs, if any, or the property upon which same are situated, and Affiant hereby declares that all sums of money due for the erection of improvements or repairs, if any, have been fully paid and satisfied and there are no Mechanic's or Materialmen's liens against the hereinabove property.

   d. That no paving assessments or lien has been filed against the hereinabove described property, and Affiant owes no paving charges.

   e. That there are no judgment liens filed against Affiant.

   f. That there are no suits pending against Affiant in Federal or State Court.

   g. That Affiant knows of no adverse claim to the hereinabove described property and there are no encroachments or boundary conflicts.

   h. That there are no outstanding home improvements loans, recorded or unrecorded, except as follows:

   ______________________________

   i. That Affiant has not heretofore sold, contracted to sell or conveyed any part of said property other

than in connection with this sale.

j. No unpaid debts for electric or plumbing fixtures, water heaters, floor furnaces, air conditioners, radio or television antennae, carpeting, rugs, lawn sprinkling systems, venetian blinds, window shades, draperies, electric appliances, fences street paving, or any personal property or fixtures that are located on the subject property described above, and that no such items have been purchased on time payment contracts, and there are no security interests on such property secured by financing statements, security agreement or otherwise except the following:

| **Secured Party** | **Approximate Amount** |
|---|---|
| ______________________ | $______________ |
| ______________________ | $______________ |

k. No loans of any kind on such property except the following:

| **Creditor** | **Approximate Amount** |
|---|---|
| ________ | $________ |
| ________ | $________ |

4. "There is no one in possession of the referenced property, other than as follows (if None, please indicate):

______________________________________________________________________

5. Affiant recognizes that but for the making of the hereinabove statements of fact relative to the hereinabove described property, **Silver Star Title LLC dba Sendera Title** would not issue a title policy on said property and that such statements have been made as a material inducement for the issuance of such policy.

**WITNESS my hand on ______________________, 20___.**

**STATE OF TEXAS** §
§
**COUNTY OF DALLAS** §

**ACKNOWLEDGED, SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned Notary Public, by , on ____________________________, 20___.**

______________________________
NOTARY PUBLIC STATE OF TEXAS

2.1 and 2.4, Release of the Deed of Trust, **<u>curative item</u>, being the Title Company's prepared standard form, conformed to this transaction, form of release of lien(s), required in connection with this transaction to satisfy Schedule C, requirement 5. Title Company advises that it did not receive any form of release of lien, signed by HNGH prior to the scheduled closing date.**

**EXHIBITS "3" AND "5"**

Sendera Title GF# 2201814-VVJL

**AFTER RECORDING RETURN TO:**
**2999 Turtle Creek LLC**
**520 Madison Avenue, Suite 3501**
**New York, New York 10022**

# RELEASE OF LIEN

**Effective Date:** ______________________________

**Holder of Note and Lien:** **HNGH Turtle Creek, LLC**

**Holder's Mailing Address:** **600 5th Avenue, 2nd Floor, New York, NY 10020**

**Note**

**Date:** **September 20, 2019**

**Original Principal Amount:** **$32,500,000.00**

**Borrower:** **MO 2999TC, LLC**

**Lender:** **HNGH Turtle Creek, LLC**

**Note and Lien are described in the following Document(s):**

**Deed of Trust dated September 20, 2019, filed September 23, 2019, recorded under Instrument No. 201900253450 of the Official Public Records of Dallas County, Texas, executed by MO 2999TC, LLC to Michael B. Massey, Trustee(s), securing the payment of one note of even date therewith in the principal sum of $32,500,000.00, payable to 2999 Turtle Creek, LLC, a Delaware limited liability company; and subject to all of the terms, conditions, and provisions contained in said Deed of Trust.**

**Assignment of Leases and Rents by instrument dated September 20, 2019, filed September 23, 2019, recorded under Instrument No. 201900253451, of the Official Public Records of Dallas County, Texas.**

**Notice of Collateral Assignment of Deed of Trust and Loan Documents to Axos Bank by instrument dated December 31, 2019, filed January 3, 2020, recorded under Instrument No. 202000001928, of the Official Public Records of Dallas County, Texas.**

**Assignment of Deed of Trust and Assignment of Leases and Rents to HNGH Turtle Creek, LLC by instrument dated December 7, 2020, filed December 8, 2020, recorded under Instrument No. 202000341904, of the Official Public Records of Dallas County, Texas.**

**Collateral Transfer of Note and Lien to Happy State Bank, by instrument dated December 4, 2020, filed December 8, 2020, recorded under Instrument No. 202000341906, of the Official Public Records of Dallas County, Texas.**

**Appointment of Substitute Trustee by instrument dated June 30, 2020, filed July 6, 2020, recorded under Instrument No. 202000168289, of the Official Public Records of Dallas County, Texas.**

**Appointment of Substitute Trustee by instrument dated August 2, 2020, filed August 10, 2020, recorded under Instrument No. 202000206704, of the Official Public Records of Dallas County, Texas.**

**Notice of Foreclosure Sale by instrument dated August 6, 2020, filed August 10, 2020, recorded under Instrument No. 202000206703, of the Official Public Records of Dallas County, Texas.**

6. **UCC Financing Statement executed by MO 2999TC, LLC, as Debtor to 2999 Turtle Creek, LLC, as Secured Party, filed September 23, 2019, recorded in Instrument No. 201900253452, of the Official Public Records of Dallas County, Texas. Amendments filed December 8, 2020 in Instrument Nos. 202000341907 and 202000341908, Official Public Records, Dallas County, Texas.**

**Property (including any improvements) to be released from Lien ("Property"):**

**Being a tract of land situated in the James A. Sylvester Abstract No. 1383, and the John Grisby Survey, Abstract No. 495, City of Dallas Block No. A/1031, Texas and being all of Lot 4, Block A/1031, of TURTLE CREEK OFFICE ADDITION, an addition to the City of Dallas, Texas, according to the plat thereof recorded in Volume 2003162, Page 48, Plat Records, Dallas County, Texas.**

**Holder of Note and Lien is the owner and Holder of the Note and Lien described above. Holder of Note and Lien acknowledges payment in full of the Note and releases the Property from the stated lien held by Holder of Note and Lien, without regard to how it was created or evidenced. Holder of Note and Lien expressly waives and releases all present and**

**future rights to establish or enforce the stated Lien as security for payment of any future or other indebtedness.**

**When the context requires, singular nouns and pronouns include the plural.**

**Executed as of the date set forth below, but effective for all purposes as of the Effective Date.**

**HOLDER: HNGH Turtle Creek, LLC**

**By:** ____________________________________
**Name:**
**Title:**

**STATE OF** _______________ §
§
**COUNTY OF** ________________ §

**This instrument was acknowledged before me on** ______________, **2022, by** ______________________________ **as** ____________________________ **of HNGH Turtle Creek, LLC.**

__________________________________________
**Notary Public, State of Texas**

2.3, Release of the prior collateral assignment of the Note, Deed of Trust, and Assignment of Leases and Rents (3 documents) fbo of Happy State Bank, to be signed by **Happy State Bank, curative item, being evidently a form of such belatedly prepared by HNGH and or HSB counsel, with a number of redlines thereto, which when finalized, executed and delivered by HSB to the Title Company would be sufficient to satisfy Schedule C, requirement 5,b. Title Company advises that it did not receive a signed original of this or any other release signed by HSB. (Note, in light of the adversary circumstances, the undersigned requests and requires that the Title Company have receipt of a release signed by Hsb, in escrow, in advance of the closing, so that we are assured that such will be recorded contemporaneous with the closing date).**



**EXHIBIT "4"**

*After Recording, Return to:*

**Kane Russell Coleman Logan PC**
**901 Main Street, Suite 5200**
**Dallas, Texas 75202**
**Attn: John J. Kane**

## RELEASE OF COLLATERAL TRANSFER OF NOTE AND LIEN

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | KNOW ALL PERSONS BY THESE PRESENTS: |
| COUNTY OF DALLAS | § | |

WHEREAS, reference is made to that certain Collateral Transfer of Note and Lien (the "Collateral Transfer"), dated December 4, 2020, recorded December 8, 2020, under Instrument No. 202000341906 in the Real Property Records of Dallas County, Texas, granted by HNGH TURTLE CREEK, LLC, a Delaware limited liability company ("Grantor"), in favor of HAPPY STATE BANK, a Texas banking association ("Secured Party") as security for a loan made to Grantor .

WHEREAS Grantor has paid in full all principal, interest, and any other amounts owed under the Loan Documents

WHEREAS, the undersigned is the "Secured Party" under the Collateral Transfer and is the owner of the security interests in the Collateral (as defined in the Collateral Transfer) affecting that certain real property located in Dallas County, Texas (the "Property") as more particularly described on Exhibit A attached hereto.

WHEREAS under the terms of the Collateral Transfer, the original Collateral Note was endorsed and delivered to Secured Party by Grantor and Secured Party is the current holder of the Collateral Note.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned (i) consents to and ratifies the actions of Grantor as related to the Collateral Note and Collateral Note Security including certain agreements entered into by Grantor with Collateral Note Maker; (ii) has endorsed the Collateral Note to Grantor which has been returned to Grantor concurrently with the delivery of this release and (iii) has RELEASED and DISCHARGED, and by these presents does hereby fully and forever RELEASE and DISCHARGE, the Property and the Collateral from the Collateral Transfer and any liens, encumbrances or security interests held or claimed by Secured Party under the Collateral Transfer.

[Signature page follows]

EXECUTED as of the date of the acknowledgment set forth below.

**SECURED PARTY:**

**HAPPY STATE BANK**, a Texas banking association

By:______________________________
Name: Julie Blakely
Title: Branch President

STATE OF TEXAS §
§
COUNTY OF ___________ §

This instrument was acknowledged before me on the _____ day of _______________, 2022, by Julie Blakely, the Branch President of **HAPPY STATE BANK**, a Texas banking association, on behalf of said banking association.

______________________________
Notary Public, State of Texas

**EXHIBIT A**

**LEGAL DESCRIPTION OF THE PROPERTY**

BEING a tract of land situated in the James A. Sylvester Survey Abstract No. 1383, and the John Grisby Survey, Abstract No 495, City of Dallas Block No. A/1031, Texas and being all of Lot 4, Block A/1031, of TURTLE CREEK OFFICE ADDITION, an Addition to the City of Dallas, Texas, according to the plat thereof recorded in Volume 2003162, Page 48, Deed Records, Dallas County, Texas.

2.4, and 2.1, Release of Assignment of Leases and Rents dated as of September 20, 2019, by MO 2999TC, LUC for the benefit of 2999 Turtle Creek LLC, recorded in the Office of the County Clerk for the County of Dallas, State of Texas, on September 23, 2019 as Instrument No. 201900253451 as assigned to **HNGH Turtle Creek, LLC** by 2999 Turtle Creek LLC under the Assignment of Deed of Trust and Assignment of Leases and Rents recorded on December 8, 2020 under instrument number 202000341904. **See attached 2.1, curative item, being the Title Company's prepared standard form, conformed to this transaction, form of release of lien(s), including the assignment of rents, required in connection with this transaction to satisfy Schedule C, requirement 5. Title Company advises that it did not receive any form of release of lien, signed by HNGH prior to the scheduled closing date.**



**EXHIBIT "5"**

3.1, Release of the UCC, by HNGH (county and state), **as to the state UCC, filed in Delaware: See attached 3.1, being a generic UCC 3 termination instrument, to be completed by each of the Lender parties who have filed a UCC. (Note, in light of the adversary circumstances, the undersigned requests and requires that the Title Company have receipt of such UCC3's from each Lender parties, together with a signed instruction letter from counsel, authorizing and directing the immediate filing thereof with the Delaware SOS offices, in escrow, in advance of the closing, so that we are assured that such will be recorded contemporaneous with the closing date). The Title Company advises that it did not receive such UCC3s or closing instructions of any kind from the Lender parties prior to the scheduled closing date.**



**EXHIBIT "6"**

[redacted]

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.

☐ DELETE name: Give record name to be deleted in item 6a or 6b.

☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

6a. ORGANIZATION'S NAME

OR

| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

7. CHANGED (NEW) OR ADDED INFORMATION:

7a. ORGANIZATION'S NAME

OR

| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

9a. ORGANIZATION'S NAME

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

10. OPTIONAL FILER REFERENCE DATA

## Instructions for UCC Financing Statement Amendment (Form UCC3)

Please type or laser-print this form. Be sure it is completely legible. Read all Instructions, especially Instruction 1a; correct file number of initial financing statement is crucial. Follow Instructions completely.

Fill in form very carefully; mistakes may have important legal consequences. If you have questions, consult your attorney. Filing office cannot give legal advice.

Do not insert anything in the open space in the upper portion of this form; it is reserved for filing office use.

An Amendment may relate to only one financing statement. Do not enter more than one file number in item 1a.

When properly completed, send Filing Office Copy, with required fee, to filing office. If you want an acknowledgment, complete item B and, if filing in a filing office that returns an acknowledgment copy furnished by filer, you may also send Acknowledgment Copy, otherwise detach. Always detach Debtor and Secured Party Copies.

If you need to use attachments, you are encouraged to use either Amendment Addendum (Form UCC3Ad) or Amendment Additional Party (Form UCC3AP).

Always complete items 1a and 9.

A. To assist filing offices that might wish to communicate with filer, filer may provide information in item A. This item is optional.

B. Complete item B if you want an acknowledgment sent to you. If filing in a filing office that returns an acknowledgment copy furnished by filer, present simultaneously with this form a carbon or other copy of this form for use as an acknowledgment copy.

1a. **File number:** Enter file number of initial financing statement to which this Amendment relates. Enter only one file number. In some states, the file number is not unique; in those states, also enter in item 1a, after the file number, the date that the initial financing statement was filed.

1b. Only if this Amendment is to be filed or recorded in the real estate records, check box 1b and also, in item 13 of Amendment Addendum, enter Debtor's name, in proper format exactly identical to the format of item 1 of financing statement, and name of record owner if Debtor does not have a record interest.

*Note:* Show purpose of this Amendment by checking box 2, 3, 4, 5 (in item 5 you must check two boxes) or 8; also complete items 6, 7 and/or 8 as appropriate. Filer may use this Amendment form to simultaneously accomplish both data changes (items 4, 5, and/or 8) and a Continuation (item 3), although in some states filer may have to pay a separate fee for each purpose.

2. To terminate the effectiveness of the identified financing statement with respect to security interest(s) of authorizing Secured Party, check box 2. See Instruction 9 below.

3. To continue the effectiveness of the identified financing statement with respect to security interest(s) of authorizing Secured Party, check box 3. See Instruction 9 below.

4. To assign (i) all of assignor's interest under the identified financing statement, or (ii) a partial interest in the security interest covered by the identified financing statement, or (iii) assignor's full interest in some (but not all) of the collateral covered by the identified financing statement: Check box in item 4 and enter name of assignee in item 7a if assignee is an organization, or in item 7b, formatted as indicated, if assignee is an individual. Complete 7a or 7b, but not both. Also enter assignee's address in item 7c. Also enter name of assignor in item 9. If partial Assignment affects only some (but not all) of the collateral covered by the identified financing statement, filer may check appropriate box in item 8 and indicate affected collateral in item 8.

5,6,7. To change the name of a party: Check box in item 5 to indicate whether this Amendment amends information relating to a Debtor or a Secured Party; also check box in item 5 to indicate that this is a name change; also enter name of affected party (current record name) in item 6a or 6b as appropriate; and enter new name (7a or 7b). If the new name refers to a Debtor complete (7c); also complete 7e-7g if 7a was completed.

5,6,7. To change the address of a party: Check box in item 5 to indicate whether this Amendment amends information relating to a Debtor or a Secured Party; also check box in item 5 to indicate that this is an address change; also enter name of affected party (current record name) in item 6a or 6b as appropriate; and enter new address (7c) in item 7.

5,6,7. To change the name and address of a party: Check box in item 5 to indicate whether this Amendment amends information relating to a Debtor or a Secured Party; also check box in item 5 to indicate that this is a name/address change; also enter name of affected party (current record name) in items 6a or 6b as appropriate; and enter the new name (7a or 7b). If the new name refers to a Debtor complete item 7c; also complete 7e-7g if 7a was completed.

5,6. To delete a party: Check box in item 5 to indicate whether deleting a Debtor or a Secured Party; also check box in item 5 to indicate that this is a deletion of a party; and also enter name (6a or 6b) of deleted party in item 6.

5,7. To add a party: Check box in item 5 to indicate whether adding a Debtor or Secured Party; also check box in item 5 to indicate that this is an addition of a party and enter the new name (7a or 7b). If the new name refers to a Debtor complete item 7c; also complete 7e-7g if 7a was completed. To include further additional Debtors or Secured Parties, attach Amendment Additional Party (Form UCC3AP), using correct name format.

*Note:* The preferred method for filing against a new Debtor (an individual or organization not previously of record as a Debtor under this file number) is to file a new Financing Statement (UCC1) and not an Amendment (UCC3).

7d. Reserved for Financing Statement Amendments to be filed in North Dakota or South Dakota only. If this Financing Statement Amendment is to be filed in North Dakota or South Dakota, the Debtor's taxpayer identification number (tax ID#) — social security number or employer identification number must be placed in this box.

8. Collateral change. To change the collateral covered by the identified financing statement, describe the change in item 8. This may be accomplished either by describing the collateral to be added or deleted, or by setting forth in full the collateral description as it is to be effective after the filing of this Amendment, indicating clearly the method chosen (check the appropriate box). If the space in item 8 is insufficient, use item 13 of Amendment Addendum (Form UCC3Ad). A partial release of collateral is a deletion. If, due to a full release of all collateral, filer no longer claims a security interest under the identified financing statement, check box 2 (Termination) and not box 8 (Collateral Change). If a partial assignment consists of the assignment of some (but not all) of the collateral covered by the identified financing statement, filer may indicate the assigned collateral in item 8, check the appropriate box in item 8, and also comply with instruction 4 above.

9. Always enter name of party of record authorizing this Amendment; in most cases, this will be a Secured Party of record. If more than one authorizing Secured Party, give additional name(s), properly formatted, in item 13 of Amendment Addendum (Form UCC3Ad). If the indicated financing statement refers to the parties as lessee and lessor, or consignee and consignor, or seller and buyer, instead of Debtor and Secured Party, references in this Amendment shall be deemed likewise so to refer to the parties. If this is an assignment, enter assignor's name. If this is an Amendment authorized by a Debtor that adds collateral or adds a Debtor, or if this is a Termination authorized by a Debtor, check the box in item 9 and enter the name, properly formatted, of the Debtor authorizing this Amendment, and, if this Amendment or Termination is to be filed or recorded in the real estate records, also enter, in item 13 of Amendment Addendum, name of Secured Party of record.

10. This item is optional and is for filer's use only. For filer's convenience of reference, filer may enter in item 10 any identifying information (e.g., Secured Party's loan number, law firm file number, Debtor's name or other identification, state in which form is being filed, etc.) that filer may find useful.

[redacted]

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

2999 Turtle Creek LLC
c/o Madison Realty Capital LLC
520 Madison Avenue, suite 3501
New York, New York 1022
Attn: Shoshana Carmel

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor Information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

4. COLLATERAL: This financing statement covers the following collateral:

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

EXHIBIT A
TO
UNIFORM COMMERCIAL CODE FINANCING STATEMENT (FORM UCC-1)

**DEBTOR:** **MO 2999TC, LLC**

**SECURED PARTY:** **2999 TURTLE CREEK LLC**

**ITEM 4 *(CONTINUED)*:** This FINANCING STATEMENT covers the following types or items of property (which, together with the Real Property, as defined below, constitutes and is referred to herein as the "**Property**") in which Debtor has any interest, whether currently owned or hereafter acquired, relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the real property (the "**Real Property**") more particularly described on Schedule "1" attached hereto (whether or not subsequently removed from the Real Property), including, without limitation, the follows:

a) all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights, and development rights, as well as any and all inclusionary air rights, certificates, floor area compensation rights, and/or density bonuses which may have been or may otherwise be created by, through or in connection with the Premises and/or any portion of the Property in accordance with any inclusionary housing or other program regulated by the applicable local, city and/or state or any other applicable municipal or governmental authority, all rights to oil, gas, minerals, coal and other substances of any kind or character, to the extent Borrower has such rights, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Premises and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road, highway, alley or avenue, opened, vacated or proposed, in front of or adjoining the Premises, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtsey and rights of curtsey, property, possession, claim and demand whatsoever, both at law and in equity, of Borrower of, in and to the Premises and the Improvements and every part and parcel thereof, with the appurtenances thereto;

b) subject to the second (2nd) paragraph of Section 9 hereof, all machinery, furniture, furnishings, equipment, computer software and hardware, fixtures (including, without limitation, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature, whether tangible or intangible, whatsoever owned by Borrower, or in which Borrower has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Premises and the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Borrower, or in which Borrower has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation, enjoyment and occupancy of the Premises and the Improvements (hereinafter collectively referred to as the "**Equipment**"), including any leases of any of the foregoing, any deposits existing at any time in connection with any of the foregoing, and the proceeds of any sale or transfer of the

foregoing, and the right, title and interest of Borrower in and to any of the Equipment that may be subject to any "security interests", as defined in the Uniform Commercial Code, as adopted and enacted by the State or States where any of the Property is located (the "**UCC**");

c) all awards or payments, including interest thereon, that may heretofore and hereafter be made with respect to the Premises and the Improvements, whether from the exercise of the right of eminent domain or condemnation (including, without limitation, any transfer made in lieu of or in anticipation of the exercise of said rights), or for a change of grade, or for any other injury to or decrease in the value of the Premises and the Improvements;

d) all leases and other agreements or arrangements heretofore or hereafter entered into affecting the use, enjoyment or occupancy of, or the conduct of any activity upon or in, the Premises and the Improvements, including any extensions, renewals, modifications or amendments thereof (hereinafter collectively referred to as the "**Leases**") and all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, royalties (including, without limitation, and all rents, revenues, bonus money, royalties, rights, and benefits accruing to Borrower under all present and future oil, gas and mineral leases on any parts of the land (to the extent Borrower has such rights) and the Improvements), income, fees, receivables, receipts, revenues, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other payment and consideration of whatever form or nature received by or paid to or for the account of or benefit of Borrower or its agents or employees from any and all sources arising from or attributable to the Premises and the Improvements (hereinafter collectively referred to as the "**Rents**") together with all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt;

e) all proceeds of and any unearned premiums on any insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property;

f) the right, in the name and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Beneficiary in the Property; all accounts, escrows, documents, instruments, investment property, chattel paper, claims, deposits and general intangibles, as the foregoing terms are defined in the UCC, and all franchises, trade names, trademarks, symbols, service marks, books, records, plans, specifications, designs, drawings, permits, consents, licenses, management agreements, contract rights (including, without limitation, any contract with any architect or engineer or with any other provider of goods or services for or in connection with any construction, repair, or other work upon the Property), approvals, actions, refunds of real estate taxes and assessments (and any other governmental impositions related to the Property), and causes of action that now or hereafter relate to, are derived from or are used in connection with the Property, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon (hereinafter collectively referred to as the "**Intangibles**");

g) all contracts, permits, development rights, plans, specifications, blueprints, and tax abatements; and

h) all proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution, or replacement of any of the foregoing.

Any capitalized term not defined herein shall have the meaning prescribed in the deed of trust executed simultaneously herewith (hereinafter referred to as the "**Deed of Trust**") between Debtor and Secured Party, and dated as of September 19, 2019, and intended to be recorded herewith in the Dallas County Recorder's Office.

**SCHEDULE 1 TO EXHIBIT A TO
UNIFORM COMMERCIAL CODE FINANCING
STATEMENT (FORM UCC-1)**

**DEBTOR:** **MO 2999TC, LLC**

**SECURED PARTY:** **2999 TURTLE CREEK LLC**

Legal Description of Property

**BEING a tract of land situated in the James A. Sylvester Survey Abstract No. 1383, and the John Grisby Survey, Abstract No. 495, City of Dallas Block No. A/1031, Texas and being all of Lot 4, Block A/1031, of TURTLE CREEK OFFICE ADDITION, an Addition to the City of Dallas, Texas, according to the plat thereof recorded in Volume 2003162, Page 48, Deed Records, Dallas County, Texas.**

[redacted]

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)
RRITENOUR@BMKTITLE.COM

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

BENCHMARK TITLE, LLC
2007 RANDALL STREET
DALLAS, TX 75201
US

Delaware Department of State
U.C.C. Filing Section
Filed: 11:22 AM 09/23/2019
U.C.C. Initial Filing No: 2019 6596105

Service Request No: 20197163920

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | | |
|---|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME: MO 2999TC, LLC | | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 13901 MIDWAY ROAD, SUITE 102-243 | DALLAS | TX | 75244 | | US |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME: 2999 TURTLE CREEK LLC | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 520 MADISON AVENUE, SUITE 3501 | NEW YORK | NY | 10022 | US |

4. COLLATERAL: This financing statement covers the following collateral:
Collateral Description - please see attached

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

International Association of Commercial Administrators

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

EXHIBIT A
TO
UNIFORM COMMERCIAL CODE FINANCING STATEMENT (FORM UCC-1)

**DEBTOR:** **MO 2999TC, LLC**

**SECURED PARTY:** **2999 TURTLE CREEK LLC**

**ITEM 4 *(CONTINUED)***: This FINANCING STATEMENT covers the following types or items of property (which, together with the Real Property, as defined below, constitutes and is referred to herein as the "**Property**") in which Debtor has any interest, whether currently owned or hereafter acquired, relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the real property (the "**Real Property**") more particularly described on Schedule "1" attached hereto (whether or not subsequently removed from the Real Property), including, without limitation, the follows:

a) all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights, and development rights, as well as any and all inclusionary air rights, certificates, floor area compensation rights, and/or density bonuses which may have been or may otherwise be created by, through or in connection with the Premises and/or any portion of the Property in accordance with any inclusionary housing or other program regulated by the applicable local, city and/or state or any other applicable municipal or governmental authority, all rights to oil, gas, minerals, coal and other substances of any kind or character, to the extent Borrower has such rights, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Premises and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road, highway, alley or avenue, opened, vacated or proposed, in front of or adjoining the Premises, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtsey and rights of curtsey, property, possession, claim and demand whatsoever, both at law and in equity, of Borrower of, in and to the Premises and the Improvements and every part and parcel thereof, with the appurtenances thereto;

b) subject to the second (2nd) paragraph of Section 9 hereof, all machinery, furniture, furnishings, equipment, computer software and hardware, fixtures (including, without limitation, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature, whether tangible or intangible, whatsoever owned by Borrower, or in which Borrower has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Premises and the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Borrower, or in which Borrower has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation, enjoyment and occupancy of the Premises and the Improvements (hereinafter collectively referred to as the "**Equipment**"), including any leases of any of the foregoing, any deposits existing at any time in connection with any of the foregoing, and the proceeds of any sale or transfer of the

foregoing, and the right, title and interest of Borrower in and to any of the Equipment that may be subject to any "security interests", as defined in the Uniform Commercial Code, as adopted and enacted by the State or States where any of the Property is located (the "**UCC**");

c) all awards or payments, including interest thereon, that may heretofore and hereafter be made with respect to the Premises and the Improvements, whether from the exercise of the right of eminent domain or condemnation (including, without limitation, any transfer made in lieu of or in anticipation of the exercise of said rights), or for a change of grade, or for any other injury to or decrease in the value of the Premises and the Improvements;

d) all leases and other agreements or arrangements heretofore or hereafter entered into affecting the use, enjoyment or occupancy of, or the conduct of any activity upon or in, the Premises and the Improvements, including any extensions, renewals, modifications or amendments thereof (hereinafter collectively referred to as the "**Leases**") and all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, royalties (including, without limitation, and all rents, revenues, bonus money, royalties, rights, and benefits accruing to Borrower under all present and future oil, gas and mineral leases on any parts of the land (to the extent Borrower has such rights) and the Improvements), income, fees, receivables, receipts, revenues, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other payment and consideration of whatever form or nature received by or paid to or for the account of or benefit of Borrower or its agents or employees from any and all sources arising from or attributable to the Premises and the Improvements (hereinafter collectively referred to as the "**Rents**") together with all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt;

e) all proceeds of and any unearned premiums on any insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property;

f) the right, in the name and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Beneficiary in the Property; all accounts, escrows, documents, instruments, investment property, chattel paper, claims, deposits and general intangibles, as the foregoing terms are defined in the UCC, and all franchises, trade names, trademarks, symbols, service marks, books, records, plans, specifications, designs, drawings, permits, consents, licenses, management agreements, contract rights (including, without limitation, any contract with any architect or engineer or with any other provider of goods or services for or in connection with any construction, repair, or other work upon the Property), approvals, actions, refunds of real estate taxes and assessments (and any other governmental impositions related to the Property), and causes of action that now or hereafter relate to, are derived from or are used in connection with the Property, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon (hereinafter collectively referred to as the "**Intangibles**");

g) all contracts, permits, development rights, plans, specifications, blueprints, and tax abatements; and

h) all proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution, or replacement of any of the foregoing.

Any capitalized term not defined herein shall have the meaning prescribed in the deed of trust executed simultaneously herewith (hereinafter referred to as the "**Deed of Trust**") between Debtor and Secured Party, and dated as of September 20, 2019, and intended to be recorded herewith in the Dallas County Recorder's Office.

**SCHEDULE 1 TO EXHIBIT A TO
UNIFORM COMMERCIAL CODE FINANCING
STATEMENT (FORM UCC-1)**

**DEBTOR:** **MO 2999TC, LLC**

**SECURED PARTY:** **2999 TURTLE CREEK LLC**

Legal Description of Property

**BEING a tract of land situated in the James A. Sylvester Survey Abstract No. 1383, and the John Grisby Survey, Abstract No. 495, City of Dallas Block No. A/1031, Texas and being all of Lot 4, Block A/1031, of TURTLE CREEK OFFICE ADDITION, an Addition to the City of Dallas, Texas, according to the plat thereof recorded in Volume 2003162, Page 48, Deed Records, Dallas County, Texas.**

4.0,the original Note, marked paid in full; delivered to title company, **See attached 4.1 for copy of the note to be so endorsed).**



**EXHIBIT "7"**

# SECURED PROMISSORY NOTE

$32,500,000.00

Dated: As of September 16, 2019
New York, New York

**SECURED PROMISSORY NOTE** (hereinafter, this "**Note**") made as of the 16th day of September, 2019, by **MO 2999TC, LLC**, a Delaware limited liability company having an address at 1755 Wittington Pl, Suite 340, Dallas, Texas 75234 (the "**Maker**"), for the benefit of **2999 Turtle Creek LLC**, a Delaware limited liability company, its successors and/or assigns, as their interests may appear (hereinafter, the "**Payee**"), having offices at 520 Madison Avenue, Suite 3501, New York, NY 10022.

**FOR VALUE RECEIVED**, Maker promises to pay to the order of Payee, at 520 Madison Avenue, Suite 3501, New York, NY 10022, or at such other place as Payee may designate to Maker in writing from time to time, the principal sum of THIRTY-TWO MILLION FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($32,500,000.00), together with interest thereon at the Interest Rate (as defined below) (or the Default Rate, as defined below, if applicable), calculated in accordance with the terms and conditions set forth in this Note, from and including the date of this Note to the date this Note is paid in full, as follows:

A. On the date hereof (the "**Closing Date**"), interest on the principal sum of this Note from (and including) the Closing Date to September 16, 2019 at the Interest Rate.

B. Thereafter, interest only at the Interest Rate on the outstanding Principal Balance (as defined below) shall be due monthly and shall be paid monthly in arrears, commencing on October 1, 2019, and monthly thereafter on the first (1st) day of each month (the "**Payment Date**") until the Maturity Date (as defined below) (each such monthly payment, a "**Monthly Payment**").

C. Thereafter, on the Maturity Date, the entire outstanding principal balance of this Note, together with all accrued and unpaid interest through the Maturity Date at the Interest Rate, and all other sums payable to the holder of this Note (whether pursuant to this Note or the Deed of Trust or Other Security Documents (as such terms are hereinafter defined)) shall become due and payable.

1. For the purposes of this Note, these terms shall be defined as follows:

   a. The term "**Alternative Rate**" shall mean, in the event LIBOR is no longer available or charging of interest that is calculated based upon LIBOR would violate applicable law or regulation, then in Payee's sole discretion, the Alternative Rate shall be used instead of the Libor Based Rate, which shall mean either the Prime Based Rate (as hereinafter defined) or ARRC Based Rate, as hereinafter defined, in Payee's sole discretion as to whether Prime Based Rate or ARRC Based Rate shall be used.

   b. The term "**ARRC Based Rate**" shall mean the sum of (i) Ten and 00/100 Percent

(10.00%) per annum plus (ii) the ARRC Rate (as hereinafter defined).

c. The term "**ARRC Rate**" shall mean such replacement of LIBOR as may be approved by the Alternative Reference Rates Committee (ARRC) (or comparable organization) and approved and/or published by the Federal Reserve; provided, however, in no event shall the ARRC Rate be less than [______] and [__]/100 Percent ([____]%)[1].

d. The term "**Business Day**" shall mean a weekday, Monday through Friday, except a legal holiday or a day on which banking institutions in New York, New York are authorized by law to be closed.

e. The term "**Debt**" shall mean all principal, interest and other sums of any nature whatsoever, which may or shall become due to Payee in accordance with the provisions of this Note, the Deed of Trust or Other Security Documents.

f. The term "**Deed of Trust**" shall mean that certain Deed of Trust, Security Agreement and Fixture Filing dated as of the date hereof, in the principal amount of $32,500,000.00, encumbering premises located at 2999 Turtle Creek, Dallas, Texas 75219 (the "**Property**").

g. The term "**Interest Period**" shall mean, initially, the period commencing on (and including) the Closing Date and ending on (and including) the last day of the calendar month in which the Closing Date occurs. Thereafter, each Interest Period shall commence on (and include) the first day of each calendar month immediately following the last day of the previous Interest Period and end on (and include) the last day of such calendar month.

h. The term "**Interest Rate**" as used in this Note shall mean interest at the annual rate equal to the greater of (i) Ten and 00/100 Percent (10.00%) per annum plus LIBOR (collectively, the "**LIBOR Based Rate**") (or the Alternative Rate, as applicable), and (ii) Twelve and 40/100 Percent (12.40%) per annum (the "**Fixed Base Rate**"), adjusted for each Interest Period based upon the greater of the LIBOR Based Rate (or the Alternative Rate, as applicable) and the Fixed Base Rate at 11:00 a.m. (E.S.T.) two (2) Business Days prior to the Reset Date (as defined below) applicable to such Interest Period (or the date hereof with respect to the first Interest Period hereunder), which Interest Rate shall be applicable from the date of this Note to the Maturity Date, except as otherwise expressly provided herein.

i. The term "**LIBOR**" shall mean the London Interbank Offered Rate (as defined below) for U.S. dollar deposits being delivered in the London interbank eurodollar market of one (1) month maturity (One Month LIBOR) as reported in the Money Rates Section of the Wall Street Journal (or such other commercially available source providing quotations of such London Interbank Offered Rate as may be designated by Payee from time to time) as of 11:00 a.m., E.S.T., on a Business Day

---

1 Equals 30-day Libor as of the closing date.

(or if not so reported, then as determined by Payee from another recognized source of interbank quotation), rounded up to the nearest one-eighth of one percent (1/8%). A certificate made by an officer of Payee stating the LIBOR in effect on any given day, for the purposes hereof, shall be conclusive evidence of the LIBOR in effect on such day. The LIBOR is a base reference rate of interest adopted by Payee as a general benchmark from which Payee determines the floating interest rates chargeable on various loans to borrowers with varying degrees of creditworthiness, and Maker acknowledges and agrees that Payee has made no representations whatsoever that the LIBOR is the interest rate actually offered by Payee to borrowers of any particular creditworthiness. For the avoidance of doubt, LIBOR shall never be less than [Two and Four-Tenths Percent (2.40%)].

j. The term "**Loan Documents**" shall mean this Note, the Deed of Trust and all and any of the documents now or hereafter executed by Maker and/or others and by or in favor of Payee, which evidences, secures or guarantees all or any portion of the payments due under this Note or otherwise is executed and/or delivered in connection with this Note, the Deed of Trust, guarantees and agreements.

k. The term "**London Interbank Offered Rate**" shall mean the London interbank offered rate administered by ICE Benchmark Administration Limited (or any other Person which takes over the administration of such rate).

l. The term "**Maturity Date**" shall mean the earlier of (i) September 16, 2020, as the same may be extended pursuan to the terms hereof, or (ii) such sooner date, by acceleration or otherwise, as may be applicable pursuant to the terms hereof, at which time the entire Debt shall become due and payable. For the avoidance of doubt, upon Maker exercising its option to extend the Maturity Date to the First Extended Term Maturity Date or the Second Extended Term Maturity Date, as applicable, pursuant to Section 7 below, all references to Maturity Date in the Loan Documents shall be deemed to mean the First Extended Term Maturity Date or the Second Extended Term Maturity Date, as applicable.

m. The term "**Other Security Documents**" shall mean any of the documents other than this Note or the Deed of Trust, now or hereafter executed by the Maker or others, and by or in favor of Payee, which wholly or partially secure or guarantee payment of this Note, or which otherwise pertain to the loan evidenced by this Note (the "**Loan**").

n. The term "**Person**" shall mean an individual, a corporation, a partnership, a limited liability company, an association, a trust or any other entity or organization, including a government or political subdivision or an agency or instrumentality thereof.

o. The term "**Prime Based Rate**" shall mean the sum of (i) ____ and __/100 Percent

(_______%)[2] per annum plus (ii) the Prime Rate (as hereinafter defined).

p. The term "**Prime Rate**" shall mean the annual rate of interest which is the highest prime lending rate of interest most recently in effect (as published in the Money Rates Section in The Wall Street Journal or if The Wall Street Journal fails to publish such rate, such other publication as Payee shall designate in its sole discretion). A certificate made by an officer of Payee stating the Prime Rate in effect on any given day, for the purposes hereof, shall be conclusive evidence of the Prime Rate in effect on such day. The Prime Rate is a base reference rate of interest adopted by Payee as a general benchmark from which Payee determines the floating interest rates chargeable on various loans to borrowers with varying degrees of creditworthiness and Maker acknowledges and agrees that Payee has made no representations whatsoever that the Prime Rate is the interest rate actually offered by Payee to borrowers of any particular creditworthiness. In the event that the concept of the Prime Rate shall no longer exist, then the Prime Rate shall be deemed to be the Prime Rate as last reported in The Wall Street Journal.

q. The term "**Principal Balance**" shall mean the outstanding principal balance of this Note from time to time.

r. The term "**Reset Date**" shall mean the first day of each Interest Period.

2. Any capitalized terms used herein but not defined shall have the meanings ascribed to them in the Loan Documents or Other Security Documents.

3. Interest shall be computed on the basis of a year of 360 days and actual days elapsed.

4. The failure to make any payment required under this Note or the occurrence of any Event of Default (as such term is defined in the Loan Documents) shall constitute an Event of Default under this Note.

5. Upon the occurrence of an Event of Default: (a) interest shall accrue hereunder at the Default Rate commencing upon the occurrence of the Event of Default through the earlier of the dater (i) such Event of Default is cured as provided for herein, in the Loan Documents, or as otherwise permitted by Lender in Lender's sole discretion, and so long as no other Events of Default shall then exist, (ii) the payment of all amounts due to Lender under the Loan, (or (iii) the entry of a Judgment of Foreclosure and Sale, (b) Payee may, at its option, without any written notice given to the Maker (such notice being expressly waived), DECLARE AND DEMAND this Note and the Debt immediately due and payable and (c) Payee may pursue all rights and remedies available hereunder or under Deed of Trust and the Other Security Documents. Payee's rights, remedies and powers, as provided in this Note or the other Loan Documents are cumulative and concurrent, and may be pursued singly, successively or together against Maker, any Guarantor of the indebtedness evidenced hereby or against any collateral granted or pledged by Maker under

2 Prime based spread equals the greater of (a) LIBOR Based Rate less the Prime Rate of the date of Closing, and (b) Fixed Based Rate less the Prime Rate of the date of Closing

any of the Loan Documents or any other collateral security given at any time to secure the payment hereof, all at the sole discretion of Payee. Additionally, Payee may resort to every other right or remedy available at law or in equity without first exhausting the rights and remedies contained herein, all in Payee's sole discretion. Failure of Payee, for any period of time or on more than one occasion, to DECLARE AND DEMAND this Note and the Debt immediately due and payable shall not constitute a waiver of the right to exercise the same at any time from and after any Event of Default.

6. A payment shall not be deemed to have been made on any day unless such payment has been received by Payee, at the required place of payment, in U.S. dollars by no later than 1:00 p.m. (New York time) on such day. Whenever any payment to Payee hereunder would otherwise be due (except by reason of acceleration) on a day that is not a Business Day, such payment shall instead be due on the next succeeding Business Day. If any installment of principal, interest or other sums due hereunder or under the Deed of Trust or any Other Security Document are not paid on the date on which same are due, such payment shall be deemed late and the Maker shall pay to the Payee a late charge of ten percent (10.00%) of such unpaid installment as a late payment charge, such late charge to be immediately due and payable without demand by the Payee. Notwithstanding anything to the contrary, Monthly Payments shall be paid first from the Interest Reserve (as hereinafter defined) and all payments due under this Note, the Deed of Trust and the Loan Documents shall be made by means of wire transfer to the order of Payee, as directed by Payee, and Payee shall have the absolute right to reject any payment not made by wire transfer. In addition, Maker shall pay to Payee the sum of $1,000.00 for any payment which is returned for any reason by Maker's bank unpaid.

7. Subject to Payee's due diligence review and completion of a credit check, satisfactory to Payee in its sole discretion, and provided that: (i) this Note, the Deed of Trust and the Other Security Documents are in full force and effect and there exists no Event of Default at the time of the giving of Maker's notice to extend, (ii) Maker has made all Monthly Payments in accordance with the terms and conditions hereof, (iii) there have been no prior defaults under the Loan Documents, and (iv) Maker establishes with and funds to Payee an interest reserve (or, if one is established simultaneously herewith, then replenishes such interest reserve) for the payment of all interest to become due at the applicable Interest Rate during the applicable Extended Term, as calculated by Payee, including, without limitation, execution of all documentation reasonably required by Payee to establish such interest reserve, if applicable, then Maker shall have the option, upon providing written notice to Payee (in the manner provided in the Deed of Trust) to extend the term of this Note for two (2) consecutive periods of six (6) months each (each an "**Extended Term**", with the applicable extended maturity dates being known as the "**First Extended Term Maturity Date**" and the "**Second Extended Term Maturity Date**", if and as applicable). Maker's notice of its intention to extend the term of this Note shall not be effective unless, with respect to each Extended Term, such notice is delivered along with payment in an amount equal to One Percent (1.00%) of the sum of $32,500,000.00, regardless of the amount advanced to Maker (the "**Extension Fee**"). Maker's notice must be received by Payee no earlier than one hundred twenty (120) days prior to the initial Maturity Date (or the First Extended Term Maturity Date, if and as applicable) and no later than thirty (30) days prior to the Maturity Date (or the First Extended Term Maturity Date, if and as applicable), ***time being of the essence with respect thereto***. Any extension of the term as set forth herein shall be on the same terms and conditions

of this Note, the Deed of Trust and the Other Security Documents, except as otherwise provided in this Note, the Deed of Trust and the Other Security Documents.

8. If Maker does not properly exercise the extension option extending the term of this Note until the First Extended Term Maturity Date (and the Second Extended Term Maturity Date, if and as applicable), in accordance herewith, and Maker does not otherwise pay the Debt to Payee on or before the Maturity Date (or the First Extended Term Maturity Date, if and as applicable), then Payee may elect, at its sole discretion, to extend the term of this Note until the First Extended Term Maturity Date (or the Second Extended Term Maturity Date, if and as applicable) (each, a "**Payee's Option to Extend**") by delivering written notice thereof to Maker (in the manner provided in the Deed of Trust). If Payee elects to exercise a Payee's Option to Extend in accordance herewith, an extension fee in the amount of One and 50/100 Percent (1.50%) of the sum of $32,500,000.00, regardless of the amount actually advanced to Maker (the "**Deferred Extension Fee**") shall be earned as of the date Payee exercises each such option, but payment of a Deferred Extension Fee shall be deferred until the earlier of the (i) the First Extended Term Maturity Date (or the Second Extended Term Maturity Date, if and as applicable); (ii) the date upon which this Note is prepaid in full; or (iii) the occurrence of an Event of Default under the Loan Documents.

9. As additional consideration to Payee for the making of the Loan, Maker shall remit to Payee, due, owing and earned on the earlier of (a) the Maturity Date (subject to extension as contained herein), (b) the date of the acceleration of the Principal Balance in accordance with the Loan Documents, or (c) the date upon which this Note is prepaid in full (or in part, with such proportionate share of the Exit Fee being paid in connection therewith), **TIME BEING OF THE ESSENCE**, in addition to the entire Principal Balance then remaining unpaid, all accrued and unpaid interest, any Prepayment Premium due and owing and all others sums due and owing under the Loan Documents, the sum equal to **$325,000.00** (the "**Exit Fee**"). The Exit Fee is to be paid in accordance with the terms hereof in addition to, and separate from, any other fee, cost or sum due hereunder or under the Deed of Trust or Loan Documents, including the Prepayment Premium. Payment of the Exit Fee is an absolute obligation of the Maker, and the Exit Fee shall be paid regardless of whether the Maturity Date is as stated herein, or earlier due to acceleration of the Principal Balance by Payee in accordance with the terms hereof and regardless of the amount actually advanced under the Loan Documents; provided, however, if the Exit Fee constitutes interest under applicable law, the amount of the Exit Fee will be automatically reduced to an amount that, when added to all other amounts due hereunder and under the other Loan Documents that constitute interest under applicable law, will not exceed the maximum amount of interest that may be contracted for, charged or received with respect to the Loan under applicable law for the actual period of time such loan is outstanding. Notwithstanding the foregoing, the Exit Fee shall be waived in the event Payee makes a construction or other loan to Maker secured by the Property to replace the Loan, which construction or other loan Payee may provide in its sole and absolute discretion on terms and conditions satisfactory to Payee.

Amounts paid pursuant to the Exit Fee and the Prepayment Premium shall and are intended to be exclusive of each other, and payment of the Exit Fee and the Prepayment Premium shall not act as an offset or reduction of the other.

10. (a) Provided that Maker shall pay to Payee (in addition to the Exit Fee and such other

amounts coming due under the Loan through the date of such prepayment) a prepayment premium in an amount equal to twelve (12) Monthly Payments with respect to the initial term (excluding short term interest paid for the partial month of August, 2019) which would have been due and payable to Payee absent prepayment of the obligations hereunder (with the Interest Rate used to calculate the Prepayment Premium (as defined below) being that on the date of the Prepayment Notice (as defined below), if the Interest Rate is variable hereunder), less any Monthly Payments of interest actually paid in full by Maker and received by Payee, such that Payee shall have received not less than twelve (12) full Monthly Payments hereunder (based upon the principal sum of $32,500,000, regardless of the amount actually advanced to Maker) (the "**Initial Term Prepayment Premium**"), then Maker shall have the right to prepay the Principal Balance in whole only, along with interest, additional interest, and any other sums due under this Note, the Deed of Trust or the Other Security Documents upon prior irrevocable written notice sent by Maker (an "**Initial Term Prepayment Notice**"), setting forth the intended prepayment date ("**Initial Term Prepayment Date**"), which Initial Term Prepayment Notice must be received by Payee not more than sixty (60) days prior to the Initial Term Prepayment Date and not less than thirty (30) days prior to the Initial Term Prepayment Date and on the Initial Term Prepayment Date, Maker shall make prepayment as herein above provided, failure of which to timely prepay shall result in a $1,000 prepayment cancellation fee to compensate Payee for expenses associated with Maker's failure to comply with its request and is not a penalty. Notwithstanding anything to the contrary contained herein, unless prepayment is tendered on the first day of a calendar month and unless Maker has tendered the Monthly Payment for the month in which the prepayment of the Debt occurs, Maker shall along with the prepayment of the Debt pay the entire Monthly Payment due for the month in which the Initial Term Prepayment Date occurs (which amount shall constitute additional consideration for the prepayment).

(b) Notwithstanding anything to the contrary contained herein, if Maker elects to exercise its option to extend the term of this Note in accordance herewith (or if Payee exercises Payee's Option to Extend), simultaneously with any prepayment of the Debt during the Extended Term, in addition to the Initial Term Prepayment Premium, Maker shall also pay to Payee an additional prepayment premium in an amount equal to six (6) Monthly Payments (based upon the principal sum of $32,500,000, regardless of the amount actually advanced to Maker) which would have been due and payable to Payee during and on account of the Extended Term, absent prepayment of the obligations hereunder (with the Interest Rate used to calculate the Extended Term Prepayment Premium being that on the date of the Extended Term Prepayment Notice, if the Interest Rate is variable hereunder), less any Monthly Payments of interest actually paid in full by Maker and received by Payee during and on account of the Extended Term, such that Payee shall have received not less than six (6) full Monthly Payments hereunder (based upon the principal sum of $32,500,000, regardless of the amount actually advanced to Maker) during and on account of the Extended Term (the "**Extended Term Prepayment Premium**" and together with the Initial Term Prepayment Premium, hereinafter referred to, collectively, as the "**Prepayment Premium**"), then Maker shall have the right to prepay the Principal Balance in whole only, along with interest, additional interest, and any other sums due under this Note, the Deed of Trust or the Other Security Documents upon prior irrevocable written notice sent by Maker (an "**Extended Term Prepayment Notice**" and together with the Initial Term Prepayment Notice, hereinafter referred to, collectively, as the "**Prepayment Notice**"), setting forth the intended prepayment date ("**Extended Term Prepayment Date**" and together with the Initial

Term Prepayment Date, hereinafter referred to, collectively, as the "**Prepayment Date**"), which Extended Term Prepayment Notice must be received by Payee not more than sixty (60) days prior to the Extended Term Prepayment Date and not less than thirty (30) days prior to the Extended Term Prepayment Date and on the Extended Term Prepayment Date, Maker shall make prepayment as herein above provided, failure of which to timely prepay shall result in a $1,000 prepayment cancellation fee to compensate Payee for expenses associated with Maker's failure to comply with its request and is not a penalty

**(C) SUCH PREPAYMENT PREMIUM SHALL BE PAID WHETHER THE PREPAYMENT IS VOLUNTARY OR INVOLUNTARY, INCLUDING ANY PREPAYMENT AFFECTED BY THE ACCELERATION PROVISIONS CONTAINED IN THE NOTE OR THE OTHER LOAN DOCUMENTS. UPON ACCELERATION, THE PREPAYMENT PREMIUM SHALL BE CALCULATED BASED UPON THE AMOUNT OF THE PREPAYMENT DUE ON THE DATE OF SUCH ACCELERATION; PROVIDED, HOWEVER, IF SUCH PREPAYMENT PREMIUM CONSTITUTES INTEREST UNDER APPLICABLE LAW, THE AMOUNT OF SUCH PREPAYMENT PREMIUM WILL BE REDUCED TO AN AMOUNT WHICH, WHEN ADDED TO ALL OTHER AMOUNTS WHICH CONSTITUTE INTEREST UNDER APPLICABLE LAW, WILL NOT EXCEED THE MAXIMUM AMOUNT OF INTEREST WHICH MAY BE CONTRACTED FOR, CHARGED OR RECEIVED WITH RESPECT TO THE LOAN EVIDENCED HEREBY UNDER APPLICABLE LAW FOR THE ACTUAL PERIOD OF TIME THE LOAN IS OUTSTANDING.**

11. Intentionally omitted.

12. Separate and in addition to all other payment obligations of Maker contained herein, Maker shall be required to pay a yearly servicing fee equal to ten (10) basis points per annum on the maximum Principal Balance of this Note (whether advanced or yet to be advanced) payable in monthly installments (the "**Servicing Fee**"). The Servicing Fee shall increase to twenty-five (25) basis points after the occurrence of an Event of Default. The Maker acknowledges and agrees that a Servicing Fee shall be due on the date hereof (which shall prepay the first yearly Servicing Fee), and the obligation to pay the Servicing Fee shall be secured by the Deed of Trust.

13. Maker acknowledges that this Note and Maker's obligations under this Note are and shall at all times continue to be absolute and unconditional in all respects. This Note, the Deed of Trust and the Other Security Documents set forth the entire agreement and understanding of Payee and Maker.

14. Maker agrees to pay all costs and expenses of collection incurred by Payee, in addition to principal and interest (including, without limitation, reasonable attorneys' fees and disbursements), and including all costs and expenses incurred in connection with the pursuit by Payee of any of its rights or remedies hereunder or under the Deed of Trust and/or the Other Security Documents or the protection of or realization of collateral or in connection with any of Payee's collection efforts, whether or not any action or proceeding on this Note, on the Deed of Trust and/or the Other Security Documents or any foreclosure proceeding is filed, all such costs and expenses being payable on demand, together with interest at the Default Rate thereon and being secured by the

Deed of Trust and the Other Security Documents.

15. The indebtedness herein evidenced by this Note is secured by the Deed of Trust and the Other Security Documents.

16. THIS NOTE HAS BEEN EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF NEW YORK AND, EXCEPT AS OTHERWISE PROVIDED IN HEREIN, THIS NOTE, THE DEED OF TRUST AND EACH OF THE OTHER SECURITY DOCUMENTS SHALL IN ALL RESPECTS BE GOVERNED, CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW (OTHER THAN SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW).

NOTWITHSTANDING THE FOREGOING CHOICE OF LAW:

(i) THE PROCEDURES GOVERNING THE ENFORCEMENT BY PAYEE OF ITS FORECLOSURE AND OTHER REMEDIES AGAINST MAKER UNDER THE DEED OF TRUST AND UNDER THE OTHER SECURITY DOCUMENTS WITH RESPECT TO THE PREMISES (AS SUCH TERM IS DEFINED IN THE DEED OF TRUST) OR OTHER ASSETS SITUATED IN THE STATE OF TEXAS, INCLUDING BY WAY OF ILLUSTRATION, BUT NOT IN LIMITATION, ACTIONS FOR FORECLOSURE, FOR INJUNCTIVE RELIEF OR FOR THE APPOINTMENT OF A RECEIVER SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS;

(ii) PAYEE SHALL COMPLY WITH APPLICABLE LAW IN THE STATE OF TEXAS TO THE EXTENT REQUIRED BY THE LAW OF SUCH JURISDICTION IN CONNECTION WITH THE FORECLOSURE OF THE SECURITY INTERESTS AND LIENS CREATED UNDER THE DEED OF TRUST AND THE OTHER SECURITY DOCUMENTS WITH RESPECT TO THE PREMISES OR OTHER ASSETS SITUATED IN THE STATE OF TEXAS;

(iii) PROVISIONS OF FEDERAL LAW AND THE LAW OF THE STATE OF TEXAS SHALL APPLY IN DEFINING THE TERMS HAZARDOUS SUBSTANCES AND ENVIRONMENTAL LAWS (AS SUCH TERMS ARE DEFINED IN THE OTHER SECURITY DOCUMENTS) APPLICABLE TO THE PREMISES; AND

(iv) THE PERFECTION AND PRIORITY OF THIS NOTE SHALL BE GOVERNEED BY THE LAWS OF THE STATE OF TEXAS.

NOTHING CONTAINED HEREIN OR ANY OTHER PROVISIONS OF THE DEED OF TRUST OR OTHER SECURITY DOCUMENTS SHALL BE CONSTRUED TO PROVIDE THAT THE SUBSTANTIVE LAWS OF THE STATE OF TEXAS SHALL APPLY TO ANY PARTIES, RIGHTS AND OBLIGATIONS UNDER THIS NOTE, THE DEED OF TRUST OR THE OTHER SECURITY DOCUMENTS, WHICH, EXCEPT AS EXPRESSLY PROVIDED IN CLAUSES (i), (ii) AND (iii) ABOVE, ARE AND SHALL CONTINUE TO BE GOVERNED BY THE SUBSTANTIVE LAW OF THE STATE OF TEXAS, EXCEPT AS SET

FORTH IN CLAUSES (i), (ii) AND (iii) ABOVE. IN ADDITION, THE FACT THAT PORTIONS OF THIS NOTE, THE DEED OF TRUST AND THE OTHER SECURITY DOCUMENTS MAY INCLUDE PROVISIONS DRAFTED TO CONFORM TO THE LAW OF THE STATE OF TEXAS IT IS NOT INTENDED, NOR SHALL IT BE DEEMED, IN ANY WAY, TO DEROGATE THE PARTIES' CHOICE OF LAW AS SET FORTH OR REFERRED TO IN THIS NOTE, THE DEED OF TRUST OR IN THE OTHER SECURITY DOCUMENTS. THE PARTIES FURTHER AGREE THAT THE PAYEE MAY ENFORCE ITS RIGHTS UNDER THIS NOTE, THE DEED OF TRUST AND THE OTHER SECURITY DOCUMENTS INCLUDING, BUT NOT LIMITED TO, ITS RIGHTS TO SUE THE MAKER OR TO COLLECT ANY OUTSTANDING INDEBTEDNESS IN ACCORDANCE WITH APPLICABLE LAW.

17. Maker does hereby agree that upon the occurrence of an Event of Default, which includes, without limitation, the failure of Maker to pay the Debt in full on the Maturity Date, Payee shall be entitled to receive and Maker shall pay interest on the entire Debt at the rate of twenty-four percent (24%) per annum or at the maximum rate of interest which Maker may by law pay, whichever is lower (the "**Default Rate**"), to be computed from the occurrence of the Event of Default until the actual receipt and collection of the Debt, including all periods prior to or subsequent to the entry of a Judgment of Foreclosure and Sale. This charge shall be added to the Debt, and shall be deemed secured by the Deed of Trust. This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Payee by reason of the occurrence of any Event of Default.

18. This Note is subject to the express condition that at no time shall Maker be obligated or required to pay interest on the Principal Balance at a rate which could subject Payee to either civil or criminal liability as a result of being in excess of the maximum rate which Maker is permitted by law to contract or agree to pay. For the purposes of calculating the actual amount of interest paid and or payable, in respect of laws pertaining to usury or such other laws, all sums paid or agreed to be paid to Payee for the use, forbearance or detention of the indebtedness evidenced hereby shall, to the extent permitted by applicable law, be amortized, allocated and spread from the date of disbursement of the proceeds thereof until payment in full of the Loan obligations, so that the actual rate of interest on account thereof is uniform throughout the term hereof. If, by the terms of this Note, Maker is at any time required or obligated to pay interest on the Principal Balance at a rate in excess of such maximum rate, the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate, and interest payable hereunder shall be computed at such maximum rate and the portion of all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the Principal Balance.

19. In the event LIBOR is no longer available or charging of interest that is calculated based upon LIBOR would violated applicable law or regulation, then in Payee's sole discretion, the Alternative Rate shall replace the LIBOR Based Rate, which Alternative Rate shall mean either the Prime Based Rate or the ARRC Based Rate (in Payee's sole discretion as to whether the Prime Based Rate or the ARRC Based Rate shall be used.

20. No delay on the part of Payee in exercising any right or remedy under this Note, the Deed

of Trust or the Other Security Documents or failure to exercise the same shall operate as a waiver in whole or in part of any such right or remedy. No notice to or demand on Maker shall be deemed to be a waiver of the obligation of Maker or of the right of Payee to take further action without further notice or demand as provided in this Note, the Deed of Trust and the Other Security Documents.

21. Each of Payee's rights and remedies under this Note shall be in addition to all of its other rights and remedies under the Deed of Trust, Other Security Documents and applicable law.

22. **TIME IS OF THE ESSENCE** with regard to Maker's performance of all the terms, covenants and conditions of this Note.

23. Any provision of this Note, the Deed of Trust or the Other Security Documents that is prohibited or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof or affecting the validity or enforceability of such provision.

24. All of the provisions of this Note shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

25. Maker hereby warrants, represents and covenants that no funds disbursed hereunder shall be used for personal family or household purposes.

26. Maker (and the undersigned representative of Maker, if any) represents that Maker has full power, authority and legal right to execute and deliver this Note and that the Debt hereunder constitutes a valid and binding obligation of Maker.

27. All notices to be given under this Note shall be given in the same manner as provided in the Deed of Trust.

28. This Note, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Maker or Payee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

29. Without limiting any other provisions of the Deed of Trust or the Loan Documents, Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby waives valuation, appraisement, presentment for payment, demand, notice of nonpayment, notice of dishonor, protest of any dishonor, notice of protest and protest of this Note, lack of diligence, delays in collection or enforcement of this Note, notice of the intention to accelerate, the benefit of all applicable law affording any right or redemption or cure and all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of this Note, except as expressly provided herein or in the Deed of Trust or any of the Other Security Documents, and in connection with any suit, action or proceeding brought by Payee on this Note, any and every right it may have to (a) a trial by jury, (b) interpose any counterclaim therein (other than a counterclaim which can only be asserted in a suit, action or proceeding brought by Payee on this Note and cannot be maintained in a separate

action), and (c) have the same consolidated with any other or separate suit, action or proceeding, and agrees that their respective liability shall be unconditional and without regard to the liability of any other party and shall not be in any manner affected by any indulgence, extension of time, renewal, waiver or modification granted or consented to by Payee. Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby consents to every extension of time, renewal, waiver or modification that may be granted by Payee with respect to the payment or other provisions of this Note, and to the release of any makers, endorsers, guarantors or sureties, and their heirs, legal representatives, successors and assigns, and of any collateral given to secure the payment hereof, or any part hereof, with or without substitution, and agrees that additional makers, endorsers, guarantors or sureties and their heirs, legal representatives, successors and assigns, may become parties hereto without notice to Maker or to any endorser, guarantor or surety and without affecting the liability of any of them.

30. FOR ANY CLAIM, ACTION, OR DISPUTE ARISING UNDER, OR TO INTERPRET OR APPLY, THIS NOTE OR ANY OTHER SECURITY DOCUMENT, OR TO RESOLVE ANY DISPUTE ARISING UNDER THE FOREGOING OR THE RELATIONSHIP BETWEEN THE PARTIES, MAKER IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK CITY, NEW YORK, AND APPELLATE COURTS FROM ANY OF SUCH COURTS. MAKER IRREVOCABLY WAIVES ANY OBJECTION THAT IT MAY HAVE AT ANY TIME TO VENUE OF ANY SUCH SUIT, ACTION, OR PROCEEDING BROUGHT IN ANY SUCH COURT, INCLUDING ANY CLAIM THAT ANY SUCH SUIT, ACTION, OR PROCEEDING SO BROUGHT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. NOTHING IN THE DEED OF TRUST OR OTHER SECURITY DOCUMENTS SHALL BE DEEMED TO PRECLUDE PAYEE FROM BRINGING ANY SUIT, ACTION, OR PROCEEDING RELATING TO ANY OTHER SECURITY DOCUMENT OR THE DEBT IN ANY OTHER JURISDICTION WHERE PAYEE COULD OTHERWISE PROPERLY BRING SUCH SUIT, ACTION, OR PROCEEDING. MAKER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO MAKER AT THE ADDRESS SET FORTH ON PAGE 1 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

31. To the extent applicable, in an action commenced in the Commercial Division, New York State Supreme Court, the parties hereby agree, subject to the requirements for a case to be heard in the Commercial Division, to apply the Court's accelerated adjudication procedures set forth in Rule 9 of the Rules of Practice for the Commercial Division, in connection with any dispute, claim or controversy arising out of or relating to this Note or any of the Loan Documents, or the breach, termination, enforcement or validity thereof.

32. The parties intend that each of the Makers (if more than one) shall be fully liable, jointly and severally, for all of the Debt. Nonetheless, in case a court finds that any Maker is not such a

primary obligor with respect to all or any part of such obligations, the Makers expressly waive the benefit of any and all defenses and discharges available to a guarantor, surety, endorser or accommodation party dependent on an obligor's character as such. Without limiting the generality of the foregoing, the liability of the Makers hereunder shall not be affected or impaired in any way by any of the following acts or things (which the Payee is hereby expressly authorized to do, omit or suffer from time to time without notice to or consent of anyone): (a) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all indebtedness arising under this Note, the Deed of Trust or the Other Security Documents; (b) any extension or renewal of any such indebtedness (whether or not for longer than the original period) or any modification of the interest rate, maturity or other terms of any such indebtedness; (c) any waiver or indulgence granted to either Maker, and any delay or lack of diligence in the enforcement of the indebtedness arising under this Note, the Deed of Trust or the Other Security Documents; (d) any full or partial release of, compromise or settlement with, or agreement not to sue, either Maker or any guarantor or other person liable on any such indebtedness; (e) any release, surrender, cancellation or other discharge of any indebtedness arising under this Note, the Deed of Trust or the Other Security Documents, or the acceptance of any instrument in renewal or substitution for any instrument evidencing any such indebtedness; (f) any failure to obtain collateral security (including rights of setoff) for any indebtedness arising under this Note, the Deed of Trust or the Other Security Documents, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to preserve, protect, insure, care for, exercise or enforce any collateral security for any such indebtedness; (g) any modification, alteration, substitution, exchange, surrender, cancellation, termination, release or other change, impairment, limitation, loss or discharge of any collateral security for any such indebtedness; (h) any assignment, sale, pledge or other transfer of any of the indebtedness arising under this Note, the Deed of Trust or the Other Security Documents; or (i) any manner, order or method of application of any payments or credits on any indebtedness arising under this Note, the Deed of Trust or the Other Security Documents. Each Maker also hereby waives any right of contribution, subrogation, indemnification or other right arising as a result of any payment made toward the Debt of the other Maker.

33. Each of the Makers (if more than one) hereby waives, for the benefit of the Payee: (a) any right the Payee, as a condition of payment or performance by either Maker, to (i) proceed against the other Maker or any other person or entity, (ii) proceed against or exhaust any collateral for the Debt held from the other Maker or any other person or entity, (iii) proceed against or have resort to any balance of any deposit account, securities account, or credit on the books of the Payee in favor of the other Maker or any other person or entity, or (iv) pursue any other remedy in the power of the Payee whatsoever; (b) any defense arising by reason of the incapacity, lack of authority or any disability or other defense of the other Maker, including any defense based on or arising out of the lack of validity or the unenforceability of the Debt or any agreement or instrument relating thereto or by reason of the cessation of the liability of the other Maker from any cause other than payment in full of the Debt; (c) any defense based upon any statute or rule of law which provides that the obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal; (d) any defense based upon the Payee's errors or omissions in the administration of the Debt; (e) (i) any principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms hereof and any legal or equitable discharge of its obligations hereunder, (ii) the benefit of any statute of limitations affecting its liability hereunder or the enforcement hereof, (iii) any rights to set-offs, recoupments and counterclaims, and (iv)

promptness, diligence and any requirement that the Payee protect, secure, perfect or insure any security interest or lien or any property subject thereto; (f) notices, demands, presentments, protests, notices of protest, notices of dishonor and notices of any action or inaction, including acceptance hereof, notices of default thereunder or under this Note, the Deed of Trust or the Other Security Documents, any agreement or instrument related thereto, notices of any renewal, extension or modification of the Debt or any agreement related thereto, notices of any extension of credit to the other Maker and notices of any matters referred to in any guaranty securing this Note and any right to consent to any thereof; and (g) any defenses or benefits that may be derived from or afforded by law which limit the liability of or exonerate sureties, or which may conflict with the terms hereof.

34. Maker hereby represents that each of the respective properties which make up the Property, based on appraisals thereof, are sufficient to secure the Debt. By virtue of the respective contributions of each of the properties (if more than one) which constitute the Property (as defined in the Deed of Trust) to the lien of the Deed of Trust as security for this Note, Maker hereby represents that is solvent as of the date hereof. Notwithstanding anything to the contrary in this Note, Payee's recourse with respect to Maker's obligations under this Note shall be limited to Maker's interest in the Property (as defined in the Deed of Trust), as cross-collateralized pursuant to the Loan Documents, and the remedies set forth therein. Maker further consents that in a foreclosure proceeding, Payee will be entitled to a consolidated judgment of foreclosure for the entire Debt, as cross-collateralized against the Property. Nothing in this paragraph shall be construed so as to limit the obligations of (a) the Guarantor (as defined in the Deed of Trust) under any guarantees and/or indemnities executed in connection with this Note, including without limitation, (i) the Environmental Indemnity dated as of the date of this Note made by Maker and Guarantor, collectively as the Indemnitors, in favor of Payee (the "**Environmental Indemnity Agreement**"), (ii) that certain Guaranty, and (iii) that certain Guaranty of Completion, each executed by Guarantor in favor of Payee as of the date hereof, or (b) Maker under any guarantees and/or indemnities executed in connection with this Note, including without limitation, the Environmental Indemnity Agreement.

35. On the date hereof, Maker has funded to Payee an interest reserve (the "**Interest Reserve**") for the payment of all interest that that shall become due and owing at the Interest Rate for the first four (4) months of the term of the Loan. Upon each of the third (3rd) and seventh (7th) month anniversary of the closing of the Loan, Maker shall be required to replenish the Interest Reserve so that the amounts held in the Interest Reserve shall be equal to all interest that shall become due and owing for the succeeding four (4) months of the term of the Loan. Failure to fund such Interest Reserve as and when required pursuant to this Section shall constitute an immediate Event of Default under the Loan Documents.

**[Remainder of Page Intentionally Left Blank]**

**IN WITNESS WHEREOF**, Maker has duly executed this Note the day and year first above written.

**MO 2999TC, LLC,**
a Delaware limited liability company

By: ______________________
Name: Tim Barton
Title: Authorized Signatory

STATE OF TEXAS

COUNTY OF DALLAS

On this day personally appeared before me TIM BARTON, to me known to be the individual described in and who executed the within and foregoing instrument, and acknowledged that he/she/they signed the same as his/her/their free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and seal of office this 16th day of SEPTEMBER, 2019.

______________________
Notary Public residing at Dallas, TX
Printed Name: Bella D. Khusal
My Commission Expires:
09/24/2022

Bella D Khusal
My Commission Expires
09/24/2022
ID No. 131734480
NOTARY PUBLIC STATE OF TEXAS

ADDENDUM TO NOTE
(Texas)

The term "**maximum rate**" shall mean the highest lawful rate of interest applicable to this Note (the "**Maximum Rate**"). In determining the Maximum Rate, due regard shall be given to all payments, fees, charges, deposits, balances and agreements which may constitute interest or be deducted from principal when calculating interest. If Chapter 303 of the Finance Code, Vernon's Texas Civil Statutes, is deemed (by any court of competent jurisdiction) to be applicable to this Note, and applicable state or federal law does not permit a higher interest rate, the "weekly ceiling" (as defined in Chapter 303 of the Finance Code, Vernon's Texas Civil Statutes) shall be the interest rate ceiling applicable to this Note and shall be the basis for determining the Maximum Rate. If applicable state or federal law allows a higher interest rate or federal law preempts the state law limiting the rate of interest, then the foregoing interest rate ceiling shall not be applicable to this Note. If the Maximum Rate is increased by statute or other governmental action subsequent to the date of this Note, then the new Maximum Rate shall be applicable to this Note from the effective date thereof, unless otherwise prohibited by applicable law.

Interest on the unpaid principal balance of this Note shall be computed on the basis set forth in Article 1 of this Note (the "**Stated Rate**"), but in no event shall the Stated Rate be greater than the Maximum Rate described immediately above.

It is expressly stipulated and agreed to be the intent of the undersigned and holder hereof (together with its successors and assigns, the "**Noteholder**") at all times to comply with applicable law governing the Maximum Rate or amount of interest payable on or in connection with this Note and the Loan (or applicable United States federal law to the extent that it permits the Noteholder to contract for, charge, take, reserve or receive a greater amount of interest than under any such applicable State law). If the applicable law is ever judicially interpreted so as to render usurious any amount called for under this Note or under the Deed of Trust or any other Loan Document, or contracted for, charged, taken, reserved or received with respect to the Loan, or if acceleration of the maturity of this Note or if any prepayment by the undersigned results in the undersigned having paid any interest in excess of that permitted by law, then it is the undersigned's and the Note holder's express intent that all excess amounts theretofore collected by the Noteholder be credited on the principal balance of this Note without any prepayment premium (or, if this Note has been or would thereby be paid in full, refunded to the undersigned), and the provisions of this Note, the Deed of Trust and the other Loan Documents immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder. The right to accelerate maturity of this Note does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and the Noteholder does not intend to collect any unearned interest in the event of acceleration. All sums paid or owed to be paid to the Noteholder for the use, forbearance or detention of the indebtedness evidence hereby shall, to the extent permitted by applicable law be amortized, prorated, allocated and spread throughout the full term of such indebtedness until payment in full so that the rate or amount of interest on account of such indebtedness does not exceed the Maximum Rate. Notwithstanding any provisions contained in this Note, the Deed of Trust or in any of the other Loan Documents that permit the compounding

of interest (including, without limitation, any provision by which any accrued interest is added to the principal amount of this Note), if and to the extent the laws of the State of Texas are deemed to apply to the aforesaid provisions (by any court of competent jurisdiction), the total amount of interest that the undersigned is obligated to pay and the Noteholder is entitled to receive with respect to this Note shall not exceed the amount calculated on a simple (i.e., non-compounded) interest basis at the Maximum Rate on principal amounts actually advanced to or for the account of the undersigned, including all current and prior advances and any advances made pursuant to the Security Instrument or other Loan Documents (such as for the payment of taxes, insurance premiums, repairs and other expenses or costs).

THE UNDERSIGNED AND ALL OTHER MAKERS, SIGNERS, SURETIES, GUARANTORS AND ENDORSERS OF THIS NOTE WAIVE DEMAND, PRESENTMENT, NOTICE OF DISHONOR, NOTICE OF INTENT TO DEMAND OR ACCELERATE PAYMENT HEREOF, DILIGENCE IN THE COLLECTING, GRACE, NOTICE AND PROTEST AND AGREE TO ONE OR MORE EXTENSIONS FOR ANY PERIOD OR PERIODS OF TIME AND PARTIAL PAYMENTS, BEFORE OR AFTER MATURITY, WITHOUT PREJUDICE TO THE HOLDER HEREOF. IF COLLECTION PROCEDURES ARE EVER COMMENCED, BY ANY MEANS, INCLUDING LEGAL PROCEEDINGS OR THROUGH A PROBATE OR BANKRUPTCY COURT, OR IF THIS NOTE IS PLACED IN THE HANDS OF ANY ATTORNEY FOR COLLECTION AFTER DEFAULT OR MATURITY, THE UNDERSIGNED AGREES TO PAY ALL COSTS OF COLLECTION OR ATTEMPTED COLLECTION, INCLUDING REASONABLE ATTORNEY'S FEES ACTUALLY INCURRED.

**[NO FURTHER TEXT ON THIS PAGE]**

**MO 2999TC, LLC,**
a Delaware limited liability company

By: ______________________
Name: Timothy Lynch Barton
Title: Authorized Signatory

STATE OF TEXAS )
: ss.:
COUNTY OF DALLAS )

On the 16 day of September, in the year 2019, before me, the undersigned, a Notary public in and for said State, personally appeared TIMOTHY LYNCH BARTON, Authorized Signatory of MO 2999TC, LLC, a Delaware limited liability company, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument, and that such individual did make such appearance before the undersigned in the City of DALLAS, State of Texas.

______________________
Notary Public

NOTARY PUBLIC STATE OF TEXAS
Bella D Khusal
My Commission Expires
09/24/2022
ID No. 131734480

5.1 and 5.2, Secretary or other Officer Certificate of HNGH**, curative item, being a form of such boilerplate authority documents to be conformed to this transaction, required in connection with this transaction to satisfy Schedule C, requirement 11. Title Company advises that it did not receive any form of authority documents, signed by HNGH prior to the scheduled closing date.**

**EXHIBIT "8"**

**CERTIFICATE OF OFFICER OF GRANTEE,**
**ITS MANAGER, AND ITS BENEFICIAL OWNER**

THIS **CERTIFICATE OF OFFICER OF GRANTEE, ITS MANAGER, AND ITS BENEFICIAL OWNER** is hereby made by the undersigned, being the duly elected, qualified and acting Manager:

1) **HNGH Turtle Creek, LLC**, a Delaware limited liability company (the "**Grantee**"),
2) ____________________, a Delaware limited liability company (in its capacity as the sole manager of Grantee, herein "**Manager**"), and
3) **HN GREEN HOLLOW PARTNERS, LLC, a Delaware limited liability company** (in its capacity as the sole member within Grantee, herein "**Beneficial Owner**"),

in connection with the execution and delivery of that certain Rescission of Deed, in the form attached hereto as Schedule 1, respecting the Property therein described (herein together with any and all other instruments of conveyance, hypothecation, or other instruments or instructions, collectively referred to herein as the "Rescission", the "Rescission Transaction", and or the "Transaction Documents"), hereby certifies to the Title Company and the Grantor, as set forth therein, effective as of the _____ day of _____, 2022 (the "Effective Date"), as follows:

NOW, THEREFORE, the Grantor hereby represents and warrants as follows:

1. All capitalized terms used herein which have been specially defined in the Rescission shall have the same meaning in this Certificate as in the Rescission unless otherwise defined in this Certificate.

2. Certified copies of the Grantee's organizational documents are attached hereto as "**Schedule 2**." The individuals listed below are authorized to sign on behalf of the Grantee in the capacity listed:

| **Authorized signatory of Grantee** | **Capacity** |
|---|---|
| ____________________ | ____________________ |
| ____________________ | ____________________ |
| ____________________ | ____________________ |

3. Certified copies of the Beneficial Owner's organizational documents are attached hereto as "**Schedule 3**." The individuals listed below are authorized to sign on behalf of the Beneficial Owner in the capacity listed:

| **Authorized signatory of Beneficial Owner** | **Capacity** |
|---|---|
| ____________________ | ____________________ |
| ____________________ | ____________________ |
| ____________________ | ____________________ |

4. Certified copies of the Manager's organizational documents are attached hereto as "**Schedule 4**." The individuals listed below are authorized to sign on behalf of the Manager in the capacity listed:

| **Authorized signatory of Manager** | **Capacity** |
| --- | --- |
| ______________________ | ______________________ |
| ______________________ | ______________________ |
| ______________________ | ______________________ |

***[SIGNATURE APPEARS ON FOLLOWING PAGE]***

IN WITNESS WHEREOF, this Certificate of Grantor is executed as of the date first written above, to certify the foregoing matters as to Grantor.

**GRANTEE:**
**HNGH Turtle Creek, LLC**, a Delaware limited liability company

By: ______________________________
Printed name: ___________________________
Title: ________________________________

**BENEFICIAL OWNER:**

**HN GREEN HOLLOW PARTNERS, LLC, a Delaware limited liability company**
By: ______________________________
Printed name: ___________________________
Title: ________________________________

**MANAGER:**
_______________________, a Delaware limited liability company

By: ______________________________
Printed name: ___________________________
Title: ________________________________

STATE OF TEXAS §
§
COUNTY OF DALLAS §

On this___ day of **June, 2022,** personally appeared _______________, in the capacity of Manager of ____________________, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

(SEAL)
My commission expires:
____________________

________________________________________
Notary Public, State of Texas

________________________________________
Printed Name of Notary

STATE OF TEXAS §
§
COUNTY OF DALLAS §

On this___ day of **June, 2022,** personally appeared _______________, in the capacity of Manager of ____________________, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

(SEAL)

_________________________________
Notary Public, State of Texas

My commission expires:
____________________

_________________________________
Printed Name of Notary

STATE OF TEXAS §
§
COUNTY OF DALLAS §

On this___ day of **June, 2022,** personally appeared _______________, in the capacity of Manager of ____________________, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

(SEAL)

_________________________________
Notary Public, State of Texas

My commission expires:
____________________

_________________________________
Printed Name of Notary

Attachments:

Schedule 1, form of Rescission of Deed

Schedule 2, consisting of:

**RESPECTING THE GRANTEE**

| | |
|---|---|
| Exhibit A | Certificate of Formation, and any amendments thereto, |
| Exhibit B | Limited Liability Company Agreement of the Grantee, and any amendments thereto, |
| Exhibit C | Consent Resolutions of the Manager(s) and or Member(s) of the Grantee, and any amendments thereto, authorizing the Rescission Transaction |
| Exhibit D | Delaware good standing certificate, and certificate of existence of the Grantee |

Schedule 3, consisting of:

**RESPECTING THE BENEFICIAL OWNER:**

| | |
|---|---|
| Exhibit E | Certificate of Formation, and any amendments thereto, |
| Exhibit F | Limited Liability Company Agreement of the Beneficial Owner, and any amendments thereto, |
| Exhibit G | Consent Resolutions of the Manager(s) and or Member(s) of the Beneficial Owner, and any amendments thereto, authorizing the Rescission Transaction |
| Exhibit H | Delaware good standing certificate, and certificate of existence of the Beneficial Owner |

Schedule 4, consisting of:

**RESPECTING THE MANAGER, OF THE GRANTEE**

| | |
|---|---|
| Exhibit I | Certificate of Formation, and any amendments thereto, |
| Exhibit J | Limited Liability Company Agreement of the Manager, and any amendments thereto, |
| Exhibit K | Consent Resolutions of the Manager(s) and or Member(s) of the Manager, and any amendments thereto, authorizing the Rescission Transaction |
| Exhibit L | Delaware good standing certificate, and certificate of existence of the Manager |

**5.4,** Secretary or other Officer Certificate of Happy State Bank, **curative item, being a form of such boilerplate authority document to be conformed to this transaction, required, in my opinion, in connection with this transaction, as HSB too is contemporaneously providing the Release, incident to the Rescission, ancillary to a recorded instrument now being released, as a part of the closing. Title Company advises that it did not receive any form of authority documents, signed by HSB prior to the scheduled closing date.**



**EXHIBIT "9"**

**CERTIFICATE OF OFFICER OF RELEASOR**

THIS **CERTIFICATE OF OFFICER OF** is hereby made by the undersigned, being the duly elected, qualified and acting Officer of:

1) **Happy State Bank**, a ________________________________ (the "**Releasor**"),

in connection with the execution and delivery of that certain Release of Collateral Transfer of Note and Lien, in the form attached hereto as Schedule 1, respecting the Property therein described (herein together with any and all other instruments of conveyance, hypothecation, or other instruments or instructions, collectively referred to herein as the "Release", "Release Transaction", together with that certain Rescission of Deed being executed and delivered in connection herewith by HNGH Turtle Creek, LLC, the "Rescission", the "Rescission Transaction", and or the collectively, the "Transaction Documents"), hereby certifies to the Title Company and the Grantor, as set forth therein, effective as of the _____ day of _____, 2022 (the "Effective Date"), as follows:

NOW, THEREFORE, the undersigned hereby represents and warrants as follows:

1. All capitalized terms used herein which have been specially defined in the Release shall have the same meaning in this Certificate as in the Release unless otherwise defined in this Certificate.

2. Certified copies of the Releasor's organizational documents are attached hereto as "**Schedule 2**." The individuals listed below are authorized to sign on behalf of the Releasor in the capacity listed:

| **Authorized signatory of Releasor** | **Capacity** |
| --- | --- |
| ____________________ | ____________________ |
| ____________________ | ____________________ |
| ____________________ | ____________________ |

***[SIGNATURE APPEARS ON FOLLOWING PAGE]***

IN WITNESS WHEREOF, this Certificate of Releasor is executed as of the date first written above, to certify the foregoing matters as to Releasor.

**RELEASOR:**
**Happy State Bank,** a ________________
________________

By: ____________________________
Printed name: __________________________
Title: _________________________________

STATE OF TEXAS §
§
COUNTY OF DALLAS §

On this___ day of **June, 2022,** personally appeared ______________, in the capacity of Manager of __________________, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

(SEAL)
My commission expires:
____________________

______________________________________
Notary Public, State of Texas
______________________________________
Printed Name of Notary

Attachments:

Schedule 1, form of Release

Schedule 2, consisting of:

**RESPECTING THE RELEASOR**

| | |
|---|---|
| Exhibit A | Certificate of Formation, and any amendments thereto, |
| Exhibit B | ______________________, |
| Exhibit C | Consent Resolutions(or other) , authorizing the Release |
| Exhibit D | Good standing certificate, and certificate of existence of the Releasor |

**7.1,** Joint Closing Instructions, to be provided. **RPM Comment. Following receipt and review of the foregoing, and agreement as to all of the underlying closing documents, to be delivered by the grantor, grantee, etc., the undersigned, too, would respectfully request and require joint or several express closing instructions be prepared, signed and delivered to the Title Company as escrow agent and closing agent, in advance of the closing date, so that all persons and parties are assured of the proper sequencing of events and recordation's. Title Company advised that it had not received any of such form HNGH prior to the scheduled closing date.**

**EXHIBIT "10"**

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE OUT ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVERS LICENSE NUMBER

**AGREED REINSTATEMENT OF NOTE AND LIENS**

THE STATE OF TEXAS

KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF DALLAS

WHEREAS, contemporaneously herewith HNGH Turtle Creek, LLC, a Delaware limited liability company (the "Lender") has executed and delivered that certain Rescission of Deed dated June ____, 2022 executed by Lender, and by 2999TC Acquisitions, LLC, f/k/a MO 2999TC, LLC, a Delaware limited liability company ("Borrower"), recorded on even date as instrument number ________________________ in the real property records of Dallas County, Texas, rescinding that certain Special Warranty Deed ("Rescinded Deed") dated as October 29, 2021 and recorded the Deed as **instrument number 2021 003 271 72** in the real property records of Dallas County, Texas; respecting certain property located at 2999 Turtle Creek Blvd, Dallas, Dallas County, Texas as further described on Exhibit A hereto and incorporated herein including all improvements ("Property").

The Lender and Happy State Bank (collectively, the "Lender Parties") are the legal and equitable owners and holders of certain:

> Secured Promissory Note in the stated principal amount of$32,500,000.00, executed by MO 2999TC, LLC, a Delaware limited liability company (at times, the "Collateral Note Maker"), dated September 20, 2019. The current principal balance on the Collateral Note is $32,500,000.00 (the "Note"),

which Note was, prior to the recordation of the Rescinded Deed, secured by:

a) Deed of Trust dated September 20, 2019, filed September 23, 2019, recorded under Instrument No. 201900253450, of the Official Public Records of Dallas County, Texas, executed by MO 2999TC, LLC to Michael B. Massey, Trustee(s), securing the payment of one note of even date therewith in the principal sum of $32,500,000.00, payable to 2999 Turtle Creek, LLC, a Delaware limited liability company; and subject to all of the terms, conditions, and provisions contained in said Deed of Trust (the "Deed of Trust"), as affected by:

b) Assignment of Leases and Rents by instrument dated September 20, 2019, filed September 23, 2019, recorded under Instrument No. 201900253451, of the Official Public Records of Dallas County, Texas.

c) Assignment of Deed of Trust and Assignment of Leases and Rents to HNGH Turtle Creek, LLC by instrument dated December 7, 2020, filed December 8, 2020, recorded under



EXHIBIT "11"

Instrument No. 202000341904, of the Official Public Records of Dallas County, Texas.

d) Collateral Transfer of Note and Lien **to Happy State Bank**, by instrument dated December 4, 2020, filed December 8, 2020, recorded under Instrument No. 202000341906, of the Official Public Records of Dallas County, Texas.

e) Appointment of Substitute Trustee by instrument dated June 30, 2020, filed July 6, 2020, recorded under Instrument No. 202000168289, of the Official Public Records of Dallas County, Texas.

f) Appointment of Substitute Trustee by instrument dated August 2, 2020, filed August 10, 2020, recorded under Instrument No. 202000206704, of the Official Public Records of Dallas County, Texas.

g) Notice of Foreclosure Sale by instrument dated August 6, 2020, filed August 10, 2020, recorded under Instrument No. 202000206703, of the Official Public Records of Dallas County, Texas.

h) UCC Financing Statement executed by MO 2999TC, LLC, as Debtor to 2999 Turtle Creek, LLC, as Secured Party, filed September 23, 2019, recorded in Instrument No. 201900253452, of the Official Public Records of Dallas County, Texas. Amendments filed December 8, 2020 in Instrument Nos. 202000341907 and 202000341908, Official Public Records, Dallas County, Texas,

respecting and encumbering the Property (said Deed of Trust, all other liens, security interests, lien priority agreements, guaranties, collateral assignments, covenants, agreements, rights, benefits, and privileges in anywise belonging or to accrue to the benefit of Lender and or Happy State Bank, in respect of the Note, and the other documents evidencing and/or securing the Note, together with all liens, security interests, assignments and other rights and interests evidenced by the Deed of Trust, are herein collectively called the "**Liens**").

NOW THEREFORE, in consideration of the above recitals, which are hereby incorporated by this reference, the undersigned Borrower and Lender Parties hereby expressly covenant, confirm, and agree that the Note and Lien(s) in favor of the Lender Parties encumbering the Property prior to the recordation of the Rescinded Deed, as above set forth, **SHALL BE AND ARE HEREBY REINSTATED** and that such did not merge into the greater fee estate of the Lender upon the recordation of the Rescinded.

*[Signature Pages to Follow]*

IN WITNESS WHEREOF, Borrower has executed this AGREED REINSTATEMENT OF NOTE AND LIENS on the____ day of _________________ 2022.

**2999TC ACQUISITIONS, LLC,**
a Delaware limited liability company
formerly known as MO 2999TC, LLC

By: ______________________________
Name: Timothy Barton
Title: President

STATE OF TEXAS

COUNTY OF ________________

BEFORE ME, the undersigned Notary Public, on this day personally appeared Timothy Barton, known to me to be the person and officer whose name is subscribed to the foregoing instrument on behalf of 2999TC Acquisitions, LLC, and acknowledged to me that he executed the same for the purposes and consideration therein expressed, as the act and deed of said limited liability company and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the _____ day of______________ 2022.

___________________________
Notary Public in and for the State of ________________
My Commission Expires: ________________

IN WITNESS WHEREOF, Lender has executed this AGREED REINSTATEMENT OF NOTE AND LIENS on the____ day of _________________ 2022.

**HNGH TURTLE CREEK, LLC**
a Delaware limited liability company

By: ______________________________
Name: ______________________________
Title: ______________________________

STATE OF TEXAS

COUNTY OF ________________

BEFORE ME, the undersigned Notary Public, on this day personally appeared ____________________known to me to be the person and officer whose name is subscribed to the foregoing instrument on behalf of HNGH Turtle Creek, LLC, and acknowledged to me that he executed the same for the purposes and consideration therein expressed, as the act and deed of said limited liability company and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the _____ day of______________ 2022.

___________________________
Notary Public in and for the State of ________________
My Commission Expires: _________________

IN WITNESS WHEREOF, Happy State Bank has executed this AGREED REINSTATEMENT OF NOTE AND LIENS on the____ day of _________________ 2022.

**HAPPY STATE BANK**
a ________________ ______________________

By: ______________________________
Name: ______________________________
Title: ______________________________

STATE OF TEXAS

COUNTY OF ________________

BEFORE ME, the undersigned Notary Public, on this day personally appeared ____________________known to me to be the person and officer whose name is subscribed to the foregoing instrument on behalf of HAPPY STATE BANK, and acknowledged to me that he executed the same for the purposes and consideration therein expressed, as the act and deed of said limited liability company and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the _____ day of______________ 2022.

___________________________
Notary Public in and for the State of ________________
My Commission Expires: ________________

# EXHIBIT A
## PROPERTY DESCRIPTION

**BEING a tract of land situated in the James A. Sylvester Survey Abstract No. 1383, and the John Grisby Survey, Abstract No. 495, City of Dallas Block No. A/1031, Texas and being all of Lot 4, Block A/1031, of TURTLE CREEK OFFICE ADDITION, an Addition to the City of Dallas, Texas, according to the plat thereof recorded in Volume 2003162, Page 48, Deed Records, Dallas County, Texas.**

## CORRECTION SPECIAL WARRANTY DEED

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF DALLAS | § | |

## RECITALS

1. A special warranty deed conveying real property located at 2999 Turtle Creek, Dallas, Dallas County, Texas (as further described below) from 2999TC Acquisitions, LLC f/k/a MO 2999TC, LLC, a Delaware limited liability company ("Grantor") to HNGH Turtle Creek, LLC, a Texas limited liability company ("Grantee") was dated on October 29, 2021 and recorded on November 1, 2021 in the real property records of Dallas County, Texas as document number 202100327172 ("Original Deed").

2. The Original Deed erroneously identified HNGH Turtle Creek, LLC as a Texas limited liability company when in fact HNGH Turtle Cree, LLC is a Delaware limited liability company and no entity with the name HNGH Turtle Creek, LLC has been formed or currently exists in Texas.

3. Grantor and Grantee desire to make and execute this Correction Special Warranty Deed ("Correction Deed") on the same terms as the Original Deed effective as of the same date as the Original Deed with only the state of formation of Grantee being revised and corrected and as such, this Correction Deed supersedes and replaces the Original Deed (as attached hereto as Exhibit B) in its entirety.

**THAT** effective as of October 29 ,2021 2999TC Acquisitions, LLC f/k/a MO 2999TC, LLC, a Delaware limited liability company ("Grantor"), whose mailing address is 13901 Midway Rd., Suite 102-243, Dallas, TX 75244 for and in consideration of the sum of TEN AND NO/ 100 DOLLARS ($10.00) and other good and valuable consideration paid in cash to Grantor by the Grantee herein named, has GRANTED, BARGAINED, SOLD and CONVEYED, and by these presents does GRANT, BARGAIN, SELL and CONVEY unto HNGH Turtle Creek, LLC, a Delaware limited liability company ("Grantee"), whose mailing address is 1807 Ross Avenue, Suite 440, Dallas, Texas 75201 , that certain real property situated in the County of Dallas, Texas, more particularly described on Exhibit A attached hereto and made a part hereof for all purposes, together with all improvements located thereon (the "Property").

This conveyance is made and accepted subject to the restriction, running with the Property, and binding upon Grantee and its successors and assigns, that the Property may only be used for hotel and residential condominium purposes.

TO HAVE AND TO HOLD the Property, free, clear and discharged of and from all former grants, charges, taxes, judgments, mortgages and other liens of whatsoever nature, except for the restriction above and encumbrances and matters of title as recorded in the real property records of Dallas County, Texas which are incorporated herein by reference, together with all and singular the rights and appurtenances thereto and in any wise belonging unto the said Grantee, its legal representatives and successors, forever; and Grantor does hereby bind itself, its legal representatives and successors, to Warrant and Forever Defend all and singular the Property unto the said Grantee, its legal representatives and successors, against every person whomsoever lawfully claiming or to claim the same or any part thereof, by, through or under Grantor, but not otherwise.

For the same consideration, but without representation, recourse or warranty, Grantor hereby GRANTS, BARGAINS, SELLS and CONVEYS, to Grantee, (i) any and all rights, titles, powers, privileges, easements, licenses, rights-of-way and interests appurtenant to the Property, (ii) all rights, titles, powers, privileges, licenses, easements, rights-of-way and interests, if any, of Grantor, either at law or in equity, in possession or in expectancy, in and to any real estate lying in the streets, highways, roads, alleys, rights-of-way or sidewalks, open or proposed, in front of, above, over, under, through or adjoining the Property and in and to any strips or gores of real estate adjoining the Property, and (iii) all rights, titles, power, privileges, interest, licenses, easements and rights-of-way appurtenant or incident to any of the foregoing.

*[Signature Pages to Follow]*

IN WITNESS WHEREOF, Grantor has executed this Correction Special Warranty Deed on the____ day of ________________ 2022.

2999TC ACQUISITIONS, LLC,
a Delaware limited liability company
formerly known as MO 2999TC, LLC

By: ______________________________
Name: Timothy Barton
Title: President

STATE OF TEXAS

COUNTY OF ________________

BEFORE ME, the undersigned Notary Public, on this day personally appeared Timothy Barton, known to me to be the person and officer whose name is subscribed to the foregoing instrument on behalf of 2999TC Acquisitions, LLC, and acknowledged to me that he executed the same for the purposes and consideration therein expressed, as the act and deed of said limited liability company and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the _____ day of________________ 2022.

___________________________
Notary Public in and for the State of ________________
My Commission Expires: ________________

IN WITNESS WHEREOF, Grantor has executed this Correction Special Warranty Deed on the____ day of ________________ 2022.

HNGH TURTLE CREEK, LLC
a Delaware limited liability company

By: ______________________________
Name: ______________________________
Title: ______________________________

STATE OF TEXAS

COUNTY OF ________________

BEFORE ME, the undersigned Notary Public, on this day personally appeared ______________________________, known to me to be the __________________________________ whose name is subscribed to the foregoing instrument on behalf of HNGH Turtle Creek, LLC, and acknowledged to me that he executed the same for the purposes and consideration therein expressed, as the act and deed of said limited liability company and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the _____ day of________________ 2022.

___________________________
Notary Public in and for the State of ________________
My Commission Expires: ________________

WHEN RECORDED RETURN TO:

___________________
___________________
___________________

**EXHBIT A**

**PROPERTY**

BEING a tract of land situated in the James A. Sylvester Survey Abstract No. 1383, and the John Grisby Survey, Abstract No. 495, City of Dallas Block No. A/1031, Texas and being all of Lot 4, Block A/1031, of TURTLE CREEK OFFICE ADDITION, an Addition to the City of Dallas, Texas, according to the plat thereof recorded in Volume 2003162, Page 48, Deed Records, Dallas County, Texas.

**EXHIBIT B**

**ORIGINAL DEED**

[See Attached]

**CAUSE NO. DC-20-12133**

| | | |
|---|---|---|
| **2999 TURTLE CREEK, LLC,**<br>**Plaintiff,** | § | **IN THE DISTRICT COURT** |
| | § | |
| | § | |
| **HNGH TURTLE CREEK, LLC,**<br>**Intervenor-Plaintiff,** | §<br>§ | **192ND JUDICIAL DISTRICT** |
| | § | |
| **v.** | § | |
| | § | |
| **TIMOTHY LYNCH BARTON**<br>**Defendant.** | §<br>§ | **DALLAS COUNTY, TEXAS** |

**PLAINTIFF AND INTERVENOR-PLAINTIFF'S MOTION TO DISMISS CASE WITH PREJUDICE**

COMES NOW 2999 Turtle Creek, LLC ("Plaintiff") and HNGH Turtle Creek, LLC, Intervenor-Plaintiff ("Intervenor"), and files this their *Plaintiff and Intervenor-Plaintiff's Motion to Dismiss Case with Prejudice*, and in support thereof would respectfully show the Court as follows:

## I. FACTUAL & PROCEDURAL BACKGROUND

1. On December 21, 2020, Intervenor filed its *Petition in Intervention and Motion to Substitute Plaintiff*, however, no order appears to have been entered on the *Motion to Substitute Plaintiff*.

2. On December 22, 2021, this Court entered its *Order Granting Agreed Motion to Abate* the case until March 15, 2022, whereupon the instant lawsuit should be dismissed according to the terms of the Court's Order.

3. On March 17, 2022, in a related bankruptcy case filed in the United States Bankruptcy Court for the Northern District of Texas styled *In re: 2999TC Acquisitions, LLC* (Case No. 21-31954), that court entered its *Agreed Order Modifying Order on Motion to Dismiss and for Relief from Stay* containing, among other things, an extension of a deadline for a payoff of an amount due and owing to HNGH Turtle Creek, LLC ("HNGH"), and deadlines for certain



**EXHIBIT "13"**

acceleration payments to HNGH are established. A copy of that Agreed Order is attached hereto as **Exhibit "A."** No mention in that Agreed Order is made of a deadline as to the filing of any Motion to Dismiss the instant case as implicated by this Court's *Order Granting Agreed Motion to Abate*.

WHEREFORE, PREMISES CONSIDERED, Plaintiff and Intervenor respectfully requests that this Court enter an order dismissing this case with prejudice to refiling of same.

Dated: June _____, 2022

Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

By: ______________________________

**John J. Kane**
State Bar No. 24066794
**Jaime M. DeWees**
State Bar No. 24097593

Bank Of America Plaza
901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone: (214) 777-4200
Telecopier: (214) 777-4299
E-mail: jkane@krcl.com
E-mail: hneilson@krcl.com

**COUNSEL FOR INTERVENOR
HNGH TURTLE CREEK, LLC**

**HOGE & GAMEROS, L.L.P.**

By: ______________________________

Charles W. Gameros, Jr., P.C.
State Bar No. 00796596
Douglas Wade Carvell, P.C.
State Bar No. 0079631

6116 North Central Expressway, Suite 1400
Dallas, Texas 75206
Telephone: (214) 765-6002
Telecopier: (214) 559-4905
Email: bgameros@legaltexas.com
wcarvell@legaltexas.com

**ATTORNEYS FOR PLAINTIFF**
**2999 TURTLE CREEK LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June _____, 2022, a true and correct copy of the foregoing document was served on the following Parties in accordance with the Texas Rules of Civil Procedure.

Attorney for Defendant:
Steven C. Metzger
Metzger Law PLLC
3626 N. Hall Street, Suite 800
Dallas, Texas 75219
Tel: 214-740-5030
Fax: 214-224-7555
Email: smetzger@pmklaw.com

______________________________

**CAUSE NO. DC-20-12133**

| | | |
|---|---|---|
| **2999 TURTLE CREEK, LLC,** | § | **IN THE DISTRICT COURT** |
| **Plaintiff,** | § | |
| | § | |
| **HNGH TURTLE CREEK, LLC,** | § | |
| **Intervenor-Plaintiff,** | § | **192ND JUDICIAL DISTRICT'** |
| | § | |
| **v.** | § | |
| | § | |
| **TIMOTHY LYNCH BARTON** | § | |
| **Defendant.** | § | **DALLAS COUNTY, TEXAS** |

**ORDER GRANTING PLAINTIFF'S AND INTERVENOR-PLAINTIFF'S MOTION TO DISMISS CASE WITH PREJUDICE**

CAME ON FOR CONSIDERATION OF THE COURT, the *Plaintiff's and Intervenor-Plaintiff's Motion to Dismiss Case with Prejudice* filed by 2999 Turtle Creek, LLC ("Plaintiff") and HNGH Turtle Creek, LLC, Intervenor-Plaintiff ("Intervenor") requesting dismissal of the instant case with prejudice. After due consideration of the Motion and the pleadings on file with the Court, the Court finds good cause to GRANT the same. It is hereby:

ORDERED, ADJUDGED, AND DECREED that this case is dismissed with prejudice to refiling of same.

SIGNED on this the ___ day of June, 2022.

____________________________________
JUDGE PRESIDING

# TERMINATION OF PERSONAL GUARANTY AGREEMENT

This Termination of Personal Guaranty Agreement (the "Agreement"), dated _____________, 2022, is by, between, and among 2999TC Acquisitions, LLC, a Delaware limited liability company (f/k/a MO 2999TC, LLC, a Delaware limited liability company) (the "Borrower"), Timothy Lynch Barton, an individual residing in Dallas, Texas (the "Guarantor"), and 2999 Turtle Creek LLC, a Delaware limited liability company (the "Lender").

WHEREAS Borrower, and Lender are parties to the Secured Promissory Note (the "Note") dated September 20, 2019 for the principal amount of $32,500,000.00; and

WHEREAS the said Secured Promissory Note is secured by a Deed of Trust, Security Agreement, and Fixture Filing (the "Security Documents") dated September 20, 2019; and

WHEREAS the Guarantor agreed to guarantee payment by Borrower of Debt Obligations specified in the Guaranty (the "Guaranty") made in favor of Lender dated September 20, 2019; and

WHEREAS the Lender transferred, conveyed, assigned said Secured Promissory Note ("Note") to HNGH Turtle Creek, LLC ("Assignee") and indorsed the note to Assignee on an Allonge dated December 7, 2020, and Lender further conveyed, transferred, and assigned the Guaranty, Security Documents, and all other loan documents (collectively, "Loan Documents") to Assignee under the terms of the *Assignment and Assumption of Assigned Rights and Obligations* executed by Lender and Assignee on December 7, 2020 (collectively, "Assignment"); and

WHEREAS Assignee and Guarantor wish to terminate the Guaranty including any and all of Guarantor's obligations related to the Note and Loan Documents as assigned to Assignee as of the date hereof.

NOW, THEREFORE, in consideration of the mutual agreements, provisions, and covenants contained herein, the parties to this Agreement agree as follows:

Section l. Termination of Guaranty. Borrower and Lender hereby irrevocably, absolutely, and unconditionally agree that Guarantor shall have no further obligations, duties, or liabilities under the Guaranty, and Borrower and Lender hereby release, waive and forever discharge Guarantor from all obligations, duties or liabilities of any nature arising under or in connection with the Guaranty.

Section 2. Consideration. Each of the parties to this Agreement acknowledges that each has given and received as good, valuable, and present consideration to support each of the obligations of the parties under this Agreement.

Section 3. General Release and Waiver of Claims. In exchange for the aforementioned consideration provided in this Agreement, the Borrower and Lender and their parents, subsidiaries, affiliates, predecessors, officers, directors, employees, and equity holders, successors, and assigns in their corporate and individual capacities (collectively, the "Releasors"), irrevocably and unconditionally fully and forever waive, release, and discharge the Guarantor from any and all claims, demands, actions, causes of action, obligations, judgments, rights, fees, damages, debts, liabilities and expenses (inclusive of attorneys' fees) of any kind whatsoever (collectively, "Claims"), whether known or unknown, from the beginning of time to the date of this Agreement, including without limitation, any claims under any federal, state, local, or foreign law, that

Releasors may have, have ever had, or may in the future have arising out of, or in any way related to the Secured Promissory Note, the Security Documents, the Guaranty, and the Assignment.

Section 4. Representation. Assignee represents and warrants that Lender has transferred, assigned, and convey all interests related to the Guaranty, Note, and Loan Documents to Assignee under the Assignment upon which all rights and interests of Lender related thereto were terminated.

Section 5. Headings. The section headings in this Agreement are for convenience of reference only and shall not be deemed to alter or affect the meaning or interpretation of any provision hereof.

Section 6. Amendments, etc. No amendment, modification, or supplement to this Agreement, or waiver of any provision or right hereunder by any party hereto, shall be effective unless in writing and executed by the parties hereto. This Agreement shall be binding on the parties hereto and their respective successors and permitted assigns.

Section 7. Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without regard to any conflict of laws provision.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed on the date first written above.

2999TC Acquisitions, LLC
f/k/a MO 2999TC, LLC, ("Borrower")

By: ____________________
Name: Timothy Lynch Barton
Title: Authorized Signatory

Timothy Lynch Barton, ("Guarantor")

By. ____________________
Name: Timothy Lynch Barton

HNGH Turtle Creek, LLC ("Assignee")

By: ____________________
Name: ____________________
Title: ____________________