John J. Kane (SBN 24066794)
S. Kyle Woodard (SBN 24102661)
**KANE RUSSELL COLEMAN LOGAN PC**
901 Main Street, Suite 5200
Dallas, Texas 75202
Tel.: (214) 777-4200
Fax: (214) 777-4299
Email: jkane@krcl.com
Email: kwoodard@krcl.com

***Counsel for HNGH Turtle Creek, LLC***

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **2999TC ACQUISITIONS, LLC,** | § | **Case No. 21-31954-swe11** |
| | § | |
| **Debtor.** | § | **Chapter 11** |

# HNGH TURTLE CREEK, LLC'S OBJECTION TO REORGANIZED DEBTOR'S MOTION TO MODIFY THIRD AMENDED PLAN OF REORGANIZATION AND PLAN CONFIRMATION ORDER

**[Relates to Docket No. 174]**

HNGH Turtle Creek, LLC ("**HNGH**") files this *Objection* (the "**Objection**") to the *Reorganized Debtor's Motion for Entry of an Order Authorizing the Reorganized Debtor to Modify Debtor's Third Plan of Reorganization and Plan Confirmation Order* [Dkt. No. 174] (the "**Motion to Modify**" or "**Motion**") and, in support hereof, respectfully states as follows:

## SUMMARY OF OBJECTION

1. 2999TC Acquisitions, LLC (the "**Debtor**") seeks to materially modify the terms of its *Third Amended Plan of Reorganization* [Dkt. #108] (the "**Plan**") and the Court's *Order Confirming Debtor's Third Amended of Reorganization* [Dkt. No. 123] (the "**Confirmation Order**") to the detriment of its largest creditor, HNGH. The Motion is but another ploy in the Debtor's steadfast efforts to renege

on its agreements with HNGH and avoid the consequences of this Court's express orders. For the reasons detailed herein, the Court should deny the Debtor's Motion.

## BACKGROUND

2. The Debtor filed this case on October 29, 2021 (the "**Petition Date**"). Since the Petition Date, the Debtor and HNGH entered into a number of stipulations and agreed orders, including (i) the *Agreed Order Regarding Motion to Lift Stay [Doc. 10] Motion to Dismiss [Doc. 9], Motion for Sanctions [Doc. 15] and Motion to Enforce Stay [Doc. 14]* dated December 10, 2021 [Dkt, No. 64] (the "**December Agreed Order**") and (ii) the *Agreed Order Modifying Order on Motion to Dismiss and For Relief From Stay* dated March 17, 2022 [Dkt. No. 94] (the "**March Agreed Order**") (collectively, the "**Agreed Orders**").

3. Both of the Agreed Orders are incorporated into and made part of the Plan. *See* PLAN § 2.01. Where the Plan conflicts with the Agreed Orders, the Agreed Orders control. *Id.* Accordingly, the Agreed Orders supersede the Plan, and the Debtor must comply with the Agreed Orders under the Plan. *See Id.*

4. The Court entered the Confirmation Order confirming the Plan on May 18, 2022. By its own terms, the Plan became effective on May 21, 2022. *See* Plan, p. 4 ("'**Effective Date**' means the third day after the Confirmation Date.").

## OBJECTIONS TO MOTION

### A. POST-CONFIRMATION MODIFICATION IS ADVERSE TO HNGH

5. The Debtor's Motion is, in effect, a motion for post-confirmation modifications to the Plan and the Confirmation Order. Post-confirmation plan modifications are governed by section 1127(b) of the Bankruptcy Code, which provides as follows:

> The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122

> and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title.

11 U.S.C. § 1127(b).[1]

6. A plan of reorganization cannot be modified after confirmation if the modification materially or adversely impacts the rights of creditors under the Plan. MOTION ¶ 3; *In re U.S. Brass Corp.*, 301 F.3d 296, 307-08 (5th Cir. 2002) ("To substitute arbitration for litigation at this point would alter the bargain the Insurers secured in exchange for their approval of the plan—in violation of § 1127(b)."). In *U.S. Brass*, the Debtor sought to ensure insurers would be subjected to litigating their claims, as shown in the modified plan, instead of arbitrating their claims, as originally confirmed. *Id.* The Fifth Circuit noted the adverse effect of the proposed change on the insurers, and refused to allow the proposed modification. *Id.*

7. To be clear, courts may deny proposed plan modifications even where the modifications may benefit some creditors at the expense of others. For example, Judge Paul refused to allow a post-confirmation modification where the debtor and other plan participants jointly sought to amend how plan proceeds we shared. *In re Viking Offshore USA, Inc.*, 2010 WL 1544402, at *3 (Bankr. S.D. Tex. April 19, 2010). One of the class claimants objected to the proposed modification, though its counsel attended the hearing on the matter to indicate that the modified plan treatment would actually resolve the objection. *Id.* As the client had not yet signed off on the proposed treatment, the court analyzed the plan modifications and found that even despite the potential agreement, there was no evidence that some claimants might not receive worse treatment as a result of the modification. *Id.* As a result, the plan modification was denied.

[1] Section 1101(2) in turn provides that "substantial consummation" of a plan means "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan." 11 U.S.C. § 1101(2).

8. This well-established principle is indeed incorporated directly into section 11.01 of the Plan, which states in relevant part that:

> After Confirmation, the Reorganized Debtor may, with approval of the Court and ***so long as it does not materially or adversely affect the interest of creditors***, modify to remedy any defect or omission or reconcile any inconsistencies in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of this Plan.

PLAN § 11.01 (emphasis added).[2]

9. Here, the relief sought in the Debtor's Motion has the effect of directly unwinding the express agreement between HNGH and the Debtor as to the treatment of its Class 2 Secured Claims under the Plan. As set forth in Article V.B of the Plan, HNGH's claims "***shall be treated in accordance with the terms of the Agreed Orders, and any modification to the treatment of HNGH's Allowed Class 2 Claim shall require the express written consent of HNGH***." PLAN, p. 11, Art. V.B (emphasis added).

10. In a similar individual Chapter 11 proceeding, a debtor sought to modify an approved settlement agreement pursuant to section 1127(e) of the Bankruptcy Code. *In re Sandford*, 498 B.R. 307, 311-12 (Bankr. D.N.M. 2013). In *Sandford*, the debtor engaged in a dispute with its secured lenders over certain property. *Id.* As part of their settlement, the debtor agreed to convert her case if she could not sell the property by a date certain. *Id.* at 312. Despite unfettered opportunity to sell the property and realize the purported equity in the property, the debtor failed to accomplish the proposed sale by the deadline. *Id.* The debtor sought relief under section 1127 of the Bankruptcy Code and sought to modify the settlement agreement to extend the sale deadline to close on a letter of intent that indicated a purchase price that might possible generate some equity. *Id.* The court in *Sandford* expressly noted that extending the sale deadline would "not be fair" over the objection of the secured

---

[2] Additionally, the Plan does not contemplate *any* modifications after the Effective Date, as shown in section 3.03, which provides only for modifications to be made "after Confirmation and before the Effective Date…." PLAN § 3.03.

lenders, and would "reduce the Secured Lenders' benefit of their bargain." *Id.* For that and other reasons, the court denied the proposed modification.

11. As this Court is aware, HNGH does not consent to the Debtor's proposed modification, and has never provided any writing to the Debtor consenting to the proposed modification. Moreover, because the Agreed Orders control if there is any conflict between the Plan and the Agreed Orders, even if the Plan was modified, the modification would be moot because the Agreed Orders control. *See* PLAN, § 2.01.

12. The Plan and Agreed Orders are self-executing and unambiguous—if the Debtor failed to pay HNGH as required in the Agreed Orders, the stay lifted and HNGH was automatically entitled to exercise all of its rights and remedies under the Agreed Orders. *See* PLAN § 2.01 (incorporating terms of December Agreed Order); PLAN, Ex. A (March Agreed Order), ARTICLE V.B.2 (treatment of HNGH's claim), and § 6.01 (noting that if HNGH is not paid in full in accordance with the terms of the Agreed Orders, HNGH may exercise all rights under the Agreed Order). That is precisely what happened in this case, but rather than accept the consequences of its own agreements, the Debtor seeks to modify the Plan and Agreed Orders to deprive HNGH of its bargain in violation of section 1127(b) of the Bankruptcy Code. By its modification, the Debtor would force HNGH to essentially amend the Agreed Orders to grant the Debtor what amounts to basically another 45-60 day extension during which the Debtor may once again attempt to raise money, satisfy diligence obligations, negotiate documents, and attempt to close a payoff transaction.

13. The Debtor already had that opportunity. The Debtor has shown this Court that it appears capable of preparing drafts of documents that its finance counterparties might find necessary for a closing. The Debtor had the opportunity to do just that beginning on December 10, 2021. It is unfortunate for the Debtor that it took two failed maturity dates (October 1, 2020; October 29, 2021) and two failed Payoff Deadlines (March 15, 2022; May 31, 2022) to finally take some initiative for a

closing. By now, however, the Payoff Deadline has long since passed. By its Motion, the Debtor seeks to chain HNGH to it for yet another attempted closing, yet another delay, yet another extension, all adverse to HNGH's rights under the Plan and the express terms of the Agreed Orders, and in violation of section 1127(b) of the Bankruptcy Code.

## B. SUBSTANTIAL CONSUMMATION

14. The Debtor's Motion must also be denied because the Plan is substantially consummated. *In re U.S. Brass Corp.*, 301 F.3d 296, 307 (5th Cir. 2002) ("[Section 1127(b)] operates to prohibit modification once 'substantial consummation' has occurred.") (citation omitted). The Debtor incorrectly asserts in its Motion that "[s]ubsections (A) and (C) of § 1101(2) are not satisfied." *See* MOTION ¶ 23. To the contrary, however, substantial consummation has occurred in that the Property (as defined in the Agreed Orders) has been transferred to HNGH as contemplated by the Plan and Agreed Orders in satisfaction of HNGH's allowed secured claims, and there is no other property to distribute under the Plan.

15. As set forth in Article IV.B of the Plan, HNGH's claims "shall be treated in accordance with the terms of the Agreed Orders, and any modification to the treatment of HNGH's Allowed Class 2 Claim shall require the express written consent of HNGH." PLAN, p. 11, Art. IV.B. The Agreed Orders are self-executing and unambiguous—upon the Debtor's failure to pay HNGH as required thereunder, the Debtor lost all claim to the Property and HNGH is entitled to do with the Property as it pleases. HNGH is therefore the owner of the Property. The remainder of the Debtor's Plan was subject to the Debtor's ability to raise sufficient funds—secured by the Property—to issue distributions to creditors. As that is no longer possible because the Debtor has no claim to the Property, the Plan is as fully consummated as it possibly can be. The Debtor is now administratively insolvent, as evidenced by its most recent Monthly Operating Report, which shows the Debtor possesses $54 in cash, and owes $558,912 of post-petition debt [Dkt. No. 179].

16. The relief sought by the Debtor is a post-confirmation Plan modification that is, without question, impermissible under section 1127(b) of the Bankruptcy Code and the Fifth Circuit's binding precedent, because it would materially and adversely alter HNGH's rights under the Plan. 11 U.S.C. § 1127(b); *In re U.S. Brass Corp.*, 301 F.3d at 307-08. Accordingly, the Debtor's Motion should be denied.

## PRAYER

**WHEREFORE**, for the reasons stated herein, HNGH respectfully requests that this Court deny the Debtor's Motion.

DATED: July 11, 2022

Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

By: */s/ John J. Kane*
**John J. Kane**
State Bar No. 24066794
**S. Kyle Woodard**
State Bar No. 24102661
Bank of America Plaza
901 Main Street, Suite 5200
Dallas, Texas 75202
Tel.: (214) 777-4200
Fax: (214) 777-4299
Email: jkane@krcl.com
Email: kwoodard@krcl.com

***Counsel for HNGH Turtle Creek, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2022, a true and correct copy of the foregoing document was filed with the Court and served via the Court's electronic case filing system (ECF) upon all parties receiving such electronic service in this proceeding.

*/s/ John J. Kane*
John J. Kane