# Debtor’s Closing Argument

*In Re 2999TC Acquisitions, LLC*

Case Number: 21-31954-swe

# HNGH Turtle Creek, LLC,
# a Delaware LLC

# vs.

# 2999TC Acquisitions, LLC,
# a Delaware LLC

"the principle of equitable estoppel, which precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes as well"

*Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004).

# What is before the Court?

- The "Agreed Orders" to which the Motion to Enforce refers are the Agreed Order Regarding Motion to Lift Stay [Doc. 10] Motion to Dismiss [Doc. 9], Motion for Sanctions [Doc. 15] and Motion to Enforce Stay [Doc. 14] entered by the Court on December 10, 2021 (Doc. No 64, the "First Agreed Order") and the Agreed Order Modifying Order on Motion to Dismiss and for Relief From Stay entered March 17, 2022 (Doc. 94, the "Second Agreed Order").
- The actions HNGH requests the Court to take in the Motion to Enforce the Agreed Orders are:

18. Accordingly, HNGH requests that this Court enter an order substantially in the form of the attached **Exhibit A**. HNGH respectfully requests that this Court confirm that HNGH is now the rightful legal owner of the Property, with all right, title, and interest therein free and clear of all liens, claims, encumbrances, and clouds on title asserted or that could be asserted by the Debtor, Tim Barton, and any other entities set forth in the Stipulation and Agreed Orders. HNGH further requests that this Court require the Debtor to take all steps necessary to release its Lis Pendens, and to actually cause the release of its Lis Pendens, not later than seven days after entry of an order approving this Motion. Moreover, HNGH requests that this Court hold the Debtor, Tim Barton, and any other necessary party in contempt of court should they interfere with HNGH's enjoyment of the Property, or seek to assert litigation against HNGH that they have previously waived, released, adjudicated to judgment, or had dismissed with prejudice to refiling.

Docket No. 134, pg. 7

# What is before the Court?

- The relief requested by HNGH cannot be granted as a procedural matter.
- It is axiomatic in the law that a party to a contract, such as the Agreed Orders, cannot seek to enforce the contract if that party has breached the contract.
- The Agreed Orders was the first contract which stated in part:

ORDERED, ADJUDGED AND DECREED that the automatic stay shall remain in full force and effect as to HNGH through 5:00 p.m. central time, March 15, 2022, (the "**Payoff Deadline**") by which the Debtor shall make payment to HNGH in the amount set forth on Exhibit A to this Order, which exhibit is filed under seal, in full and final satisfaction of the Note (the "**Payoff Amount**"), which note shall be reinstated immediately prior to the Debtor's payment to HNGH of the Payoff Amount and counsel for HNGH shall hold the rescission deed during the pendency of the term of this Agreed Order and shall have no liability to the Debtor or any other party by way of holding such deed or releasing the deed in accordance with the terms of this Agreed Order. It is further

Debtor's Exhibit D12, pg. 2

# What is before the Court?

- HNGH failed to execute and hold a "recission deed" which was ordered to be a live document held in trust by HNGH counsel.
- HNGH could not reinstate the promissory note immediately before payoff.
- HNGH failed to deliver documents necessary to insure title of the Property to Debtor.
- HNGH's material breaches of their obligations under the Agreed Orders rendered Debtor unable to perform.
- HNGH is equitably estopped from enforcing the Agreed Orders.
- HNGH is bound by the Confirmation Order even though it did not vote on the plan.
- Debtor stands ready to pay its obligations to HNGH and has evidence of such. As a result, Debtor requests the Court's assistance.

# What is before the Court?

Q Mr. Nambiar, what's the emergency for having these hearings?
A That's a question for my counsel.
Q So you don't have any understanding of that?
A I have a layman's understanding. But that's a question for my counsel.

Testimony of Vipin Nambiar, June 27th

# 2999TC Acquisitions, LLC





# Overview of Events Leading to Bankruptcy Filing

- ***December 7, 2020*** - HNGH Turtle Creek, LLC ("HNGH") buys 100% lender position. At this time, only 8 months remained on the loan until it came due.
- ***March 1 2021*** - HNGH and 2999TC Acquisitions, LLC ("2999TC") execute a forbearance and settlement agreement to resolve litigation against HNGH and modified the loan to increase the principal to $40,073,171 from $32,500,000 and extend the maturity date through October 29, 2021.
- HNGH holds a deed-in-lieu in escrow in accordance with the forbearance agreement.
- 2999TC makes all forbearance payments up to the extended maturity deadline.

# Overview of Events Leading to Bankruptcy Filing

- ***October 27 & 28, 2021*** – The parties actively work on and verbally agree to an extension of the forbearance agreement with HNGH to prepare the documents.
- ***October 29, 2021*** – Unbeknownst to 2999TC, HNGH ignores their promises for an extension, and asks for deed held in escrow to be removed from escrow and sent for recording on the basis that it claim 2999TC had "defaulted."
  - The deed is sent to Dallas County after hours for recording.
- ***October 29, 2021 at 5:48 p.m.*** – 2999TC defensively files a Chapter 11 Bankruptcy petition.

# Overview of Events After the Bankruptcy Filing

- ***November 1, 2021*** – Deed is recorded in Dallas County records by HNGH with full knowledge and notice of 2999TC's bankruptcy filing.
  - 2999TC asserts bankruptcy makes this filing void and a violation of the automatic stay.
  - HNGH disagrees yet naked title is now of record to HNGH with filing occurring after bankruptcy filing. The HNGH's loan and security instruments merge with the deed.
- ***November 4, 2021*** - HNGH files a motion (Doc. 10) asking for the deed to be good and treated effective as of 10/29/2021 to avoid stay issues, voiding issues, etc.
- ***November 5, 2021*** – 2999TC files Motions to Enforce Stay and Sanctions (Docs. 14 and 15).
- ***November 11, 2021*** - 2999TC files an adversary proceeding (Case No. 21-03085) raising all these related recording issues and seeking to avoid the deed.

# Overview of Events After the Bankruptcy Filing

- Parties conduct limited discovery on the matters related to the Motion to Lift Stay (Doc. 10), Motion to Dismiss (Doc. 9), Motion for Sanctions (Doc. 15), and Motion to Enforce Stay (Doc. 14).
- Hearing is set on all these related motions for December 9, 2021.

# Hearing on Docket Nos. 9, 10, 14, and 15

ORDERED, ADJUDGED AND DECREED that the automatic stay shall remain in full force and effect as to HNGH through 5:00 p.m. central time, March 15, 2022, (the **"Payoff Deadline"**) by which the Debtor shall make payment to HNGH in the amount set forth on Exhibit A to this Order, which exhibit is filed under seal, in full and final satisfaction of the Note (the **"Payoff Amount"**), which note shall be reinstated immediately prior to the Debtor's payment to HNGH of the Payoff Amount and counsel for HNGH shall hold the rescission deed during the pendency of the term of this Agreed Order and shall have no liability to the Debtor or any other party by way of holding such deed or releasing the deed in accordanc
further

Debtor's Exhibit D12, pg. 2

ORDERED, ADJUDGED AND DECREED that if the Debtor pays HNGH the Payoff Amount within the Payoff Period (the **"Payoff Event"**), then simultaneously with the Payoff Event, the Deed-in-Lieu filing, which was submitted for filing pre-petition but recorded on November 1, 2021, shall be deemed rescinded and avoided, and the Debtor shall retain all title to the Property. To effectuate this provision of this Order, the Parties shall submit and this Court shall enter an Agreed Order in Adversary Proceeding 21-03085 (the **"Adversary Proceeding"**) avoiding the Deed-in-Lieu filing and recording, granting no damages to any party, and dismissing the adversary proceeding with prejudice to refiling. Also simultaneously with the occurrence of the Payoff Event, HNGH shall have

- ***December 10, 2021*** – Just prior to the December 9th hearing, the parties settle and the First Agreed Order is entered the following day. (Doc. No. 64). This Order holds the deed as void and allows Debtor to retain title to the property.
- However, there are conditions precedent set up by the parties. Parties use concept of recission deed.

# Effects of December 10th Order

- Title to property is held in abeyance by HNGH through the holding of an executed recission deed. HNGH was to prepare and hold this document in trust.
- HNGH has bare legal title but no trappings of ownership – this was expressly agreed to and understood.
- Since October 29, 2021 to date, Debtor has stayed in possession of the property, operated the property, paid bills and taxes, and maintained all outward signs of ownership.

# Payoff Extension

- The March payoff date is extended by agreement. (Doc. 94). Now Debtor dismisses all its claims to void the October 29, 2021 deed in lieu. This makes the process of the December 10, 2021 order regarding recission and voiding even more significant.
- It was crucial for HNGH to be holding the executed recission deed at all times, so that everything seemed normal to the world even though title was not as recorded.
- Debtor paid consideration for all extensions in good faith:

> ORDERED, ADJUDGED AND DECREED the Allowed Claim shall be accelerated and due in accordance with this Modifying Order, such that the Debtor shall pay to HNGH $1,000,000 by not later than 5:00 p.m. central time on March 15, 2022, which shall be applied to reduce the accelerated Allowed Claim to $1,000,000. Not later than 5:00 p.m central time on March 25, 2022, the Debtor shall cause $2,500,000 to be paid to HNGH, of which $1,000,000 shall satisfy the remainder of the outstanding Allowed Claim, and $1,500,000 shall be applied by HNGH to the Payoff Amount (the $1,000,000 and $2,500,000 payments are herein defined as the "**March Payments**"). It is further

Debtor's Exhibit D13, pg. 2

# Payments by Debtor

| Payment Date | Amount | Description |
|---|---|---|
| 1/5/2021 | $100,000.00 | Consideration/Interest |
| 2/2/2021 | $100,000.00 | Consideration/Interest |
| 3/1/2021 | $100,000.00 | Consideration/Interest |
| 3/18/2021 | $35,000.00 | Legal Fees |
| 4/12/2021 | $50,000.00 | Consideration/Interest |
| 4/14/2021 | $50,000.00 | Consideration/Interest |
| 5/10/2021 | $100,000.00 | Consideration/Interest |
| 5/31/2021 | $337,827.55 | Property Taxes |
| 6/1/2021 | $50,000.00 | Consideration/Interest |
| 6/4/2021 | $50,000.00 | Consideration/Interest |
| 7/1/2021 | $100,000.00 | Consideration/Interest |
| 7/30/2021 | $1,528,496.00 | Extension Deposit and Interest Reserve |
| 12/14/2021 | $100,000.00 | Consideration |
| 12/31/2021 | $100,000.00 | Consideration |

| Payment Date | Amount | Description |
|---|---|---|
| 1/14/2022 | $100,000.00 | Consideration |
| 2/1/2022 | $100,000.00 | Consideration |
| 2/28/2022 | $409,284.32 | Property Taxes |
| 3/1/2022 | $100,000.00 | Consideration |
| 3/15/2022 | $1,000,000.00 | Agreed Order |
| 3/25/2022 | $2,500,000.00 | Agreed Order |

| | |
|---|---|
| Consideration/Interest Payments: | $1,941,422.00 |
| Pursuant to Agreed Order: | $3,500,000.00 |
| Property Taxes: | $747,111.87 |
| Extension Deposit: | $787,074.00 |
| Legal Fees: | $35,000.00 |
| **TOTAL PAID** | **$7,010,607.87** |

# How Should Closing have Proceeded?

A My understanding and from reading the order that was entered by the Court is that there were two fundamental aspects of it that were covered by the order, and that being that there would be rescission deed that was to be held in escrow. And I gathered that was supposed to have been prepared and executed a long while before the closing, as was extended by that subsequent order. And then my understanding was that in reading the order that the promissory note was to be reinstated immediately prior to the closing and the payoff. Immediately prior to the payoff.

Testimony of Marshal Dooley, June 29th

# How Should Closing have Proceeded?

But in my practice, particularly with an adversarial type closing like this, the better practice is to see that that note is actually delivered to the title company and preferably instructed by closing instruction letters that will authorize the title company to mark as paid in full and to return it, deliver it to the borrower or at least a commitment to do so.

Testimony of Randy Marx, June 13th

# Things Are Not As They Should Be

- 2999TC finds out that no executed recission deed is in fact being held.
- HNGH has never prepared, signed and delivered to its Counsel Mr. Kane a presently effective, unconditional Rescission Deed as the Orders require.

Q And through this process, did we discover that in fact the deed was not being held?
A The first time I saw the draft was on May 12th was the first time I saw that.

Testimony of Khudabuksh Walji, June 24th

# Things Are Not As They Should Be

- 2999TC finds out from HNGH's counsel that the recission deed was purportedly drafted in January 2022. However, there is no evidence that it was ever drafted prior to May 2022.

Q Okay. And was it actually executed by anyone in or about January of 2022?
A No. No. It was our view that we were going to, when

Testimony of Nate Christensen, June 24th

# Overview of Current Matters

- HNGH Turtle Creek, LLC is a hyper-opportunistic lender interested in owning the property instead of its loan being paid off and/or extracting millions of dollars in windfall/extra payments from the Reorganized Debtor and imposing encumbrances and unilateral HNGH control over 2999TC's property to extract even more millions of dollars in windfalls.
- HNGH Breached the Agreed Order prior to Debtor's Obligation to Perform.
  - HNGH failed to prepare the required Rescission of Deed per the Agreed Orders.
  - HNGH failed to hold the required Recission of Deed per the Agreed Orders.
  - HNGH unable to reinstate the promissory note held by Happy State Bank which had merged into the deed filed by HNGH.
- HNGH Failed to Deliver the Required Closing Documents.
  - Title company required documents under Schedule C of the Title Commitment.
  - Other necessary documents as highlighted by Agreed Orders.

# Overview of Current Matters

- To be noted, the note was on an twelve (12) month land loan which is highly unusual.

A Somewhere along the line during COVID we got a letter. And I opened it up and I remember the letters HN something, basically a notification that they had bought the minority share hold of my land loan, which is highly, highly confusing. When you have a 12-month land loan, there's almost no reason that someone would buy a minority position in a land loan of 12 months.

You buy a participation in a longer loan, something that has more reason to be there, but a 12 month loan, it didn't make sense to me. I didn't really pay attention to it. There was nothing I could do to object to, so I just took note of it. But as God is my witness, I looked at my paper and I said, I wonder if this was Vipin.

Testimony of Tim Barton, June 30th

# Who is HNGH Turtle Creek, LLC?

- HNGH Turtle Creek, LLC ("HNGH") is a Delaware LLC, not a Texas LLC.
- Purchaser of the acquisition loan on 2999 Turtle Creek Blvd from the Original Lender.
- A hotel project owner and/or manager.
- Loan-to-own Lender.
  - Paid $6,263,496 since January 1, 2021.
  - At payoff, lenders will have been paid a total of $48 million on an $32.5 million investment in less than 2 years (numbers are approximate).
    - Approx. 42.4% total return / Approx. 29.95% annual rate of return. This is a much higher rate of return considering the collateral loan accelerates the note.
  - Does not want a payoff – wants to keep the $7,010,607.87 plus receive a windfall by taking the property valued well in excess of the debt.
  - Wants to own and develop the Property.
- Defaulted on the Agreed Orders prior to Debtor's obligation to perform.

# Who is HNGH?

Q Thanks. And since May 31, 2022, is HNGH still looking to be paid off?

A No. Since there's been a default on May 31st, HNGH is looking to exercise the remedies under the prior agreed order.

Q And what is your understanding of those remedies?

A The remedies would be we would get title to our collateral and we would go monetize that collateral to get paid off.

Testimony of Vipin Nambiar, June 28th

# Who is HNGH?

I think to me that was a purely procedural matter.

I mean we all understood what the issues at hand here was, which was, you know, we wanted to get paid off and Mr. Barton wanted to, you know, essentially get relief from -- from our efforts to collect on that loan and get possession of the title back.

Several strategies were discussed including, you know, maybe structuring this as a, you know, just a purchase and sale contract back to the debtor. And I believe that this was the procedure that was agreed to between you and my counsel.

Testimony of Vipin Nambiar, June 27th

# Who is HNGH?

## Who they are:

- A Delaware limited liability company

WHEREAS 2999TC Acquisitions, LLC, a Delaware limited liability company (the "**Grantor**") and HNGH Turtle Creek, LLC, a Delaware limited liability company (the "**Grantee**") as the successor in interest to and/or as the assignee of 2999 Turtle Creek, LLC (the "Original Lender") entered into a written agreement ("Agreement") under which Grantor agreed to convey the Property to Grantee upon the occurrence of certain agreed conditions.

Lender's Exhibit 67a, page 1

HNGH TURTLE CREEK, LLC,
a Delaware limited liability company

By: HN Green Hollow Capital Partners LLC,
its authorized signatory

By: ________________
Name: James Glasgow
Title: Manager

Lender's Exhibit 4, page 73

## Who they are not:

- A Texas limited liability company

**SPECIAL WARRANTY DEED**

THE STATE OF TEXAS §
§ KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF DALLAS §

THAT effective as of October 29, 2021, 2999TC Acquisitions, LLC f/k/a MO 2999TC, LLC, a Delaware limited liability company ("Grantor"), whose mailing address is 13901 Midway Rd., Suite 102-243, Dallas, TX 75244 for and in consideration of the sum of TEN AND NO/ 100 DOLLARS ($10.00) and other good and valuable consideration paid in cash to Grantor by the Grantee herein named, has GRANTED, BARGAINED, SOLD and CONVEYED, and by these presents does GRANT, BARGAIN, SELL and CONVEY unto HNGH Turtle Creek, LLC, a Texas limited liability company ("Grantee"), whose mailing address is 1807 Ross Avenue, Suite 440, Dallas, Texas 75201, that certain real property situated in the County of Dallas, Texas, more particularly described on Exhibit A attached hereto and made a part hereof for all purposes, together with all improvements located thereon (the "Property").

Exhibit D14, page 7

**HNGH Turtle Creek, LLC,**
a Texas limited liability company

By: ________________
Name: Vipin Nambiar
Title. ________________

Exhibit D14, page 14

- This error appears in key documents creating a cloud on title to the Property:
  1. Deed in Lieu
  2. Special Warranty Deed (HNGH's Recission Deed)

# Who is the Debtor?

## 2999TC Acquisitions, LLC

- A Texas limited liability company
- Borrowed $32,500,000 to acquire 2999 Turtle Creek Blvd, Dallas, Texas ("Property")
- Developer of a mixed-use hotel and residences
- Paid $4,000,000 to HNGH since filing Bankruptcy
- Paid $ $6,263,496 to HNGH since January 1, 2021
- Prepared to close and ready to fund on May 31, 2022
- Still ready to close to date and payoff HNGH
- Good Faith Actor

## Timothy Barton

- President - 2999TC Acquisitions, LLC
- Accomplished businessman and real estate developer
- Over 35 years of experience
- Proven history in commercial real estate development
- Guarantor of the Loan

# HNGH's Recorded Deed

- HNGH Recorded a Deed held in escrow on November 1, 2021 in Violation of the Automatic Stay
- The Recorded Deed created a Cloud on Title
  - Recorded in the name of HNGH incorrectly as Texas entity instead of a Delaware entity
  - To date, no correction instrument drafted or recorded

# How did HNGH commit the first default?

- HNGH breached the Agreed Orders (Dkt 64; Exhibit D12) before Debtor was obligated to perform
  - December 10th Order is a contract between Debtor and HNGH which laid out specific steps to a Payoff Event:

> ORDERED, ADJUDGED AND DECREED that the automatic stay shall remain in full force and effect as to HNGH through 5:00 p.m. central time, March 15, 2022, (the "**Payoff Deadline**") by which the Debtor shall make payment to HNGH in the amount set forth on Exhibit A to this Order, which exhibit is filed under seal, in full and final satisfaction of the Note (the "**Payoff Amount**"), which note shall be reinstated immediately prior to the Debtor's payment to HNGH of the Payoff Amount and counsel for HNGH shall hold the rescission deed during the pendency of the term of this Agreed Order and shall have no liability to the Debtor or any other party by way of holding such deed or releasing the deed in accordance with the terms of this Agreed Order. It is further

Exhibit D12, page 2

- First, HNGH's counsel failed to hold the executed "rescission [of] deed" during pendency of the term of the Agreed Orders.
- HNGH was not the holder of the promissory note and was unable to reinstate the note prior to Debtor's payment. Could only happen after payoff because of Happy State Bank because HNGH owed HSB approx. $26 million which was unbeknownst to Debtor and remains unpaid!
- HNGH failed to deliver required closing documents timely to the Debtor and the title company.

# No Rescission of the Deed Held

- No executed instrument rescinding the October 29, 2021 deed was held by HNGH's counsel beginning on December 10, 2021.

**From:** Joyce Lindauer <joyce@joycelindauer.com>
**Sent:** Monday, May 16, 2022 1:46 PM
**To:** John J. Kane <jkane@krcl.com>
**Subject:** RE: Status Update and Conf Order

I suggested you just sign the dismissal order (no judge signature yet) and place in hand with the recission deed you are holding. That way Mr. K can show it is signed by you even if not by the Judge.

Lender's Exhibit 47

**From:** Joyce Lindauer
**Sent:** Monday, May 30, 2022 10:19 AM
**To:** John J. Kane <jkane@krcl.com>
**Cc:** Khudabuksh K. Walji Esq. <k.walji@waljilaw.com>
**Subject:** RE: Re:

I should have a detailed email to you shortly. They are trying to get all the documents lined up and still have several funders working on the closing. There are several documents that need attention before closing to clean up the title. The main one being the recission deed. The prior deed has to be rescinded for several reasons. Significantly, it will create a huge tax problem if it is treated as just a conveyance it has to roll back to the original ownership to keep from having a gain on the transaction. So our people are putting together what needs to be reviewed and signed to rescind the transaction. Thanks

Debtor's Exhibit D20

# No Rescission of the Deed

- HNGH failed to comply with Agreed Orders and couldn't cure the first breach on May 27, 2021 because it never had the recission deed.
- The next breach occurred when it sent a "special warranty deed" rather than the recission deed.
  - Was a reconveyance from HNGH leaving HNGH in the chain of title.
    - Not a rescission.
    - Creates tax and other potential issues.
  - Failed to put the parties back in their original position.
  - Created a property use restriction to the benefit of HNGH – unilaterally and for the first time in all the exchanges.
  - Being "subject to" the Agreed Order created an encumbrance – unable to determine title based solely on the instrument.
  - Failed to cure the Cloud on Title based on defective deed-in-lieu.

# No Rescission of the Deed

Despite requests on May 12th and May 23rd, still did not have draft of recission deed.

**From:** Julie Lyssy <jlyssy@senderatitle.com>
**Sent:** Monday, May 23, 2022 3:39 PM
**To:** John J. Kane
**Cc:** 'K Walji'; 'Joyce Lindauer'
**Subject:** 2201814-VVJA Rescission Deed - HNGH Turtle Creek

John,

Can you please send us a copy of the Rescission Deed where HNGH will deed back to 2999 TC Acquisition. Thank you.

Julie Lyssy,
Escrow Officer
**SENDERA TITLE**
[illegible] 160
[illegible] 75234

Lender's Exhibit 32

**From:** Joyce Lindauer <joyce@joycelindauer.com>
**Sent:** Thursday, May 12, 2022 1:07 PM
**To:** John J. Kane

Can you send me the recission deed you have drafted in 2999TC – thank you

Lender's Exhibit 30

# No Rescission of the Deed

Q And who typically would prepare those documents?
A Well, in -- typically, and in this instance, the corrective instrument which I call a recision of deed, just so that we're clear, would be generated by the grantor that in by the HNG seller side, I'll call it. That would be what's customary. And moreover, in this situation, when I have read the agreed orders, the contract, it appeared to be that that was an obligation of HNGH counsel. Those orders speak to that document was to have been held by HNG counsel. I think it said in escrow. I just know that it was to be held by them. So that's where that instrument should have been prepared and held.

Testimony of Randy Marx, June 13th

# No Rescission of the Deed

Q Okay. What about the other two documents you mentioned, the reinstatement document? Who would be required to prepare that?
A That would be the second step. And in this instance, it would be prepared by HNGH as the kind of wearing their lender hat. Again, that could be done in a standalone instrument or it could arguably be done as part of the recision of deed, but it's critical that it be done, in my opinion, properly.
Q All right. And what about the third document you mentioned, which is the release itself?
A The release of lien, in my practice, it more customarily comes from the title company. But I think that's the preferred practice. There have been times when the HNGH wearing its

Testimony of Randy Marx, June 13th

# No Rescission of the Deed Agreed to

- Revised draft of Rescission of Deed delivered on May 31, 2022 failed to meet the requirements to rescind the October 29th deed.
  - Failed to cure the Cloud on Title.
    - Separate correction instrument necessary to be recorded before rescission (correcting HNGH being formed in Texas instead of Delaware).
  - Was not approved by Debtor or Title Company as revised.
  - Could not be provided to Debtor's funding sources timely for review and approval.
  - Contained a note reinstatement provision which would not be effective.
    - Reinstatement is an agreement that should be attached to the Note (like an Allonge).
    - Happy State Bank was the holder of the Note, not HNGH.
  - Never executed by HNGH.

# No Rescission of the Deed Agreed to

Q The week before the closing, would that be enough time in the normal business world to have prepared these particular documents that you've mentioned, the deeds, the liens, the releases, those documents?
A Yes.
The only thing that -- all this was within the ability in the normal course of counsel to HNGH. The one that may have taken longer may relate to this Happy State Bank instrument of record, but even that, a week should be -- should have been time sufficient to get all these documents prepared, to a satisfactory form, most of them a recordable form, all of them executed and delivered to the title company with appropriate closing instructions.

Testimony of Randy Marx, June 13th

# No Rescission of the Deed Agreed to

**From:** John J. Kane
**Sent:** Monday, May 30, 2022 5:49 PM
**To:** Joyce Lindauer
**Subject:** HNGH - Revised Agreed Rescission Deed [IWOV-iManage.FID2137592]
**Attachments:** HNGH - Revised Agreed Rescission Deed - JJK Revised.DOCX

Joyce, this is what I will advise my client to agree to.

JOHN J. KANE
Director
Kane Russell Coleman Logan PC
901 Main Street | Suite 5200 | Dallas, Texas 75202
Tel 214.777.4261 Cell 972.672.6915
krcl.com | krclblogs.com

This email and any attachments are confidential. If you received this email in error, please inform the sender and delete it. Thank you.

**From:** Joyce Lindauer <joyce@joycelindauer.com>
**Sent:** Monday, May 30, 2022 3:28 PM
**To:** John J. Kane <jkane@krcl.com>
**Subject:**

On the Recission we want to go with the Agreed Recission.

Still no agreement as of May 30th at 5:49 p.m.. John Kane ignores all suggested revisions by the Debtor.

Lender's Exhibit 67

# No Rescission of the Deed Agreed to

**From:** John J. Kane
**Sent:** Monday, May 30, 2022 6:35 PM
**To:** Joyce Lindauer
**Cc:** k.walji@waljilaw.com; Nate Christensen
**Subject:** HNGH Payoff and Release Draft [IWOV-iManage.FID2137592]
**Attachments:** HNGH - Payoff and Release Letter - HNGH.DOCX

Joyce,

Let me know if this works. This would be recorded after the rescission deed and release of the collateral assignment involving HSB.

JOHN J. KANE
Director
KRCL 30 years
Kane Russell Coleman Logan PC
901 Main Street | Suite 5200 | Dallas, Texas 75202
Tel 214.777.4261 Cell 972.672.6915
krcl.com | krclblogs.com

This email and any attachments are confidential. If you received this email in error, please inform the sender and delete it. Thank you.

Documents still trickling in as of May 30th at 6:35 p.m.. No approval granted yet.

Lender's Exhibit 69

# No Rescission of the Deed Agreed to

Q After you signed this document, Mr. Nambiar, did you have any concerns about signing a different form of document if that was what was being requested by 299TC [sic] Acquisitions in order to close this transaction on May 31st?
A No.
If it was approved by my counsel, I had no problem signing it. And I was told that there was a revised version coming

Testimony of Vipin Nambiar, June 27th

# Revised Redline of the Recission Deed

"Agreed Orders"

"..shall.." inserted here is objectionable as suggests some additional required action in the future...

~~WHEREAS Grantor filed for bankruptcy protection in the United States Bankruptcy Court for the Northern District of Texas ("Bankruptcy Court") on October 29, 2021 (Case no. 21-31954-hdh11) wherein Grantor disputed the right of Grantee to record the Deed and alleged that such recording was improper;~~

WHEREAS Grantor has retained sole and exclusive possession of the Property at all times and Grantee never occupied nor took possession of the Property; and

WHEREAS Grantee and Grantor have agreed as ordered by the Bankruptcy Court by Order signed December 10, 2021 (Dkt 64), as amended on March 17, 2022 ~~for~~ (Dkt 940) (the "Agreed Orders"), that Grantee ~~to~~shall rescind and avoid the Deed, which shall be retroactive and effective as of October 29, 2021 upon effectuation of all conditions precedent set forth in the Agreed Order, and acknowledging and agreeing that no grant, sale, bargain, transfer, or conveyance of the Property occurred to the same extent as if the Deed had never been executed or recorded.

NOW THEREFORE Grantor and Grantee hereby incorporate by reference the recitals above, and **HEREBY RESCIND AND AVOID** in full, *ab initio*, the execution, delivery, granting, and recording of the Deed and any and all grants, bargains, sales, transfers, and conveyances related to the Property otherwise effected in the hereby rescinded Deed, including any and all restrictions made therein, are HEREBY **EXPRESSLY RESCINDED** in full, *ab initio*.

"..upon effectuation of all conditions precedent.........". this language is objectionable as vague and suggests that there may exist other conditions precedent (set forth in a separate written instrument(s) e.g. the Agreed Orders) that are to be satisfied prior to giving effect to this instrument of rescission......... And thus, this may be construed as creating an encumbrance and cloud on title upon the property. In effect, this instrument, with the objectionable changed requested by HNGH counsel, would be made "subject to" the referenced.

rpm comment: add the following.......

(that, by way of the deed being rescinded hereby),.......

Grantee represents, warrants, and affirms (i) that it never occupied nor took possession of the Property; (ii) that it has not caused or permitted the Property to be encumbered in any way except which have otherwise been fully released as recorded in the property records of Dallas County, Texas; (iii) that it has no claims related to the Property except as set forth herein through reinstatement of its Note and First Lien Deed of Trust; (iv) and that upon rescission it ~~has~~shall have acquired no rights, title, or interests of any kind in the Property~~.~~ other than the reinstatement of its Note and First Lien Deed of Trust in accordance with the Agreed Orders.

The effect of this rescission shall be as if any conveyance, transfer, sale, bargain, or grant of the Property by way of the Deed never happened and Grantor and Grantee and as such, the Deed is void and of no force and effect, from the beginning.

*[Signature Pages to Follow]*

This section was drafted to confirm that (lender) never took possession, encumbered the property and has no claims arising from the deed being rescinded.

These insertions requested by HNGN counsel seek to carveout from those confirmations, its reinstated Note and liens which arise from this instrument of rescission.

As such, the insertions are not necessary, and objectionable, as cause confusion as to the instrument being referred to, and constitute a further cloud on the title to the property in the hands of the debtor, and its successors in interest.

"... upon rescission".... This language, as inserted by HNGH, is objectionable, as suggests that this instrument alone is not sufficient to rescind, and that there may be some other instrument(s) to effectuate the actual rescission.

'dThe prior acceptable provision included only an express definitive statement: that (lender) has acquired no rights, title or interests of any kind in the Property (by way of the deed being rescinded).

'dAs revised by HNGH, this language suggest that "upon rescission" (which is suggestive that this instrument alone is not sufficient to rescind, and that there may be some other instrument(s) to effectuate the actual rescission), then (lender) shall have acquired no rights......

'dThe effect of the above is that the definitive statement requested, has been converted by HNGH counsel to an "if, then" conditional statement, that constitutes a cloud on the title to the property in the hands of the debtor, and its successors in interest.

Bottom line: There is no agent on the form of the Recission Deed. HNGH could have signed 2999TC's version to get to closing, but failed to do so.

# Reinstatement of the Note

**The Note merged into the Deed recorded on November 1, 2021.**

**Note Reinstatement requires the Deed be Rescinded else the Debt is owed without owning the Property**

1. First, HNGH had to be the holder and payee/indorsee under the Note — DID NOT OCCUR
   - HNGH would not confirm who was the holder of the Note – their POC was wrong. (See Lender's Ex. 17, pg. 6)
   - Had to ensure the Note had not been transferred to a third-party holder/payee.
   - The Note was indorsed to and held by Happy State Bank as security for HNGH's loan from Happy State Bank to purchase the Note from the original lender.
   - Happy State Bank refused to deliver the Note to HNGH until actually paid with money received in their bank account (testimony of Julie Blakely).
   - HNGH was unable to pay the $26,297,296.96 debt owed to Happy State Bank first – not simultaneously to clear the Happy State Bank encumberance.
2. Then Reinstatement of the Note needed to occur "immediately prior to Debtor's payoff" under the Agreed Order – <u>not simultaneously</u>. — DID NOT OCCUR
   - Required an executed reinstatement agreement of both Debtor and HNGH
   - Debtor cannot agree to reinstate the note and incur the debt if it does not own the property at the same time (rescission of deed)
3. Finally, Note marked paid in full delivered by HNGH upon Debtor's Payoff — DID NOT OCCUR

# Reinstatement of the Note

One of the big obstacles that I don't think I was made aware of initially was that the promissory note in question that needed to be reinstated was being held by Happy State Bank. And clearly that needed to be reinstated per the order prior to the payoff event. And here there is not that

Testimony of Marshal Dooley, June 29th

# Reinstatement of the Note

Q Mr. Nambiar, did HNGH have $26,297,296.96 to pay off Happy State Bank on May 31st, 2022?

A No. It didn't need to pay Happy State Bank on that date, unless there was an overall transaction occurring.

Testimony of Vipin Nambiar, June 27th

# Reinstatement of the Note

- Happy State Bank was not paid, so there was no way to close.
- To this day, closing can not occur until Happy State Bank is paid.
- Vipin Nambiar said HNGH had no funds to close and get the note back. No way to close until Nambiar pays HSB.
- The Reorganized Debtor, and even the Court, have absolutely no contractual, no Agreed Order, and no other legally cognizable relationship by which to obligate Happy State Bank to do anything.
- Even if the Debtor and Court personally deliver a cashier's check for $26 million, Happy State Bank is not legally obligated to the Debtor or the Court to do anything.

# Reinstatement of the Note

And I understood from the testimony from Mr. Nambiar that they did not have the funds to do that other than the proceeds -- they were relying on the proceeds to be paid by the debtor and its lender. And it's just sort of a -- it's not a catch 22 or a chicken and egg.

The issue was, per the order, that the note needed to be reinstated before the payoff event and the lender who was going to be making the financing available to provide the payoff amount clearly would want that note reinstated and be willing to -- and have the rescission deed and all the other documents that I described in the title company so that the new lender would be assured that it would have a first lien.

Testimony of Marshal Dooley, June 29th

# Who is Happy State Bank (HSB)?

- Lender to HNGH – loaned approx. $26 million
- Collateral Transfer of the Note and Lien as security.

2020 - 202000341906 12/08/2020 11:12AM Page 1 of 6

When Recorded, Return To:
Happy State Bank
Attn: Austin Nash
16633 North Dallas Parkway, Suite 350
Addison, Texas 75001

Loan No. 4000017910

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

**COLLATERAL TRANSFER OF NOTE AND LIEN**

This Collateral Transfer of Note and Lien (this "Agreement") is dated as of December 4, 2020 (the "Effective Date"), by and between HNGH TURTLE CREEK, LLC, a Delaware limited liability company ("Grantor"), located at 2999 Turtle Creek Blvd., Dallas, Texas 75219, and HAPPY STATE BANK, a Texas banking association ("Secured Party"), located at One Hanover Park, 16633 North Dallas Parkway, Suite 350, Addison, Texas 75001.

**RECITALS**

A. WHEREAS, Grantor has executed a Letter Loan Agreement, Promissory Note and other related documents dated as of the Effective Date, and as may be modified, renewed and extended (collectively, the "Loan Documents") to secure a loan ("Loan");

B. WHEREAS, Secured Party requires that, as a condition of the Loan, Grantor execute this Agreement, pledging certain Note(s) and Lien(s) as collateral for the Loan, as further described below.

**AGREEMENT**

All of Grantor's interest in the Collateral Note and the Collateral Note Security (as defined below, including accessions) will be deemed collateral for the Loan ("Collateral"), as is further described in Sections 1 and 2 below:

1. Collateral Note. A Secured Promissory Note in the stated principal amount of $32,500,000.00, executed by MO 2999TC, LLC, a Delaware limited liability company ("Collateral Note Maker"), dated September 20, 2019. The current principal balance on the Collateral Note is $32,500,000.00.

2. Collateral Note Security. Deed of Trust, Security Agreement and Fixture Filing dated September 20, 2019 from Borrower in favor of the trustee identified therein and now in favor of Grantor and recorded as Document No. 201900253450 in the Official Public Records of Dallas County, Texas (the "Deed of Trust") which Deed of Trust created liens on, among other property, the real property situated in Dallas County, Texas and described as follows:

   BEING a tract of land situated in the James A. Sylvester Survey Abstract No. 1383, and the John Grisby Survey, Abstract No. 495, City of Dallas Block No. A/1031, Texas and being all of Lot 4, Block A/1031, of TURTLE CREEK OFFICE ADDITION, an Addition to the City of Dallas, Texas, according to the plat thereof recorded in Volume 2003162, Page 48, Deed Records, Dallas County, Texas.

   and commonly known as 2999 Turtle Creek Blvd., Dallas, Texas 75219; and Assignment of Leases and Rents dated September 20, 2019 executed by Collateral Note Maker now in favor of Grantor and recorded as Document No. 201900253451 in the Official Public Records of Dallas County, Texas.

3. Description of the Loan. Grantor has executed and delivered to Secured Party a Promissory Note, dated December 4, 2020 in the maximum stated principal amount stated therein, and as may be modified, renewed and extended.

4. Security Interest. Grantor grants to Secured Party a security interest in the Collateral and all its proceeds to secure the Loan and all renewals and extensions of the Loan. This security interest also secures all other present and future debts and liabilities of Grantor to Secured Party, including future advances.

5. Representations Warranties and Agreement of Grantor.

   **A. Grantor represents and warrants the following:**

COLLATERAL TRANSFER OF NOTE AND LIEN PAGE 1 OF 5

Lender's Exhibit 54a, page 1

# How was HSB represented?

1. HNGH proof of claim fails to disclose interests of HSB
2. John Kane disavows any involvement of HSB with HNGH loan.
3. Julie Blakely disavows any interest in the note.
4. Khudabuksh Walji asks about HSB involvement? Assured again: **NONE**
5. HSB appears on May 31, 2022.
6. HNGH said payoff from 2999TC to be paid to HSB
7. HSB did not Transfer the Note to HNGH or the title company.
8. HSB did not release or provide a proper release of collateral to the Title Company
9. 2999TC was not made aware of HSB in either Agreed Order nor did HSB execute a consent
10. HSB testifies:

Q You're not going to release documents without the money actually going into your bank account, correct?

A I believe that is correct.

Testimony of Julie Blakely, June 23rd

# How was HSB represented?

Q All right. Is there some reason that Mr. Kane in the first part of May of this year would not have know that Happy State Bank was still involved in this transaction?

A No.

Testimony of Vipin Nambiar, June 29th

# How was HSB represented?

**From:** k.walji@waljilaw.com
**Sent:** Tuesday, May 31, 2022 3:17 PM
**To:** 'Joyce Lindauer'
**Cc:** 'filing waljilaw'; 'K. Walji'; John J. Kane
**Subject:** RE: Letter List (1035-14C-3) [IWOV-iManage.FID2137592]

Joyce,

For the record, the Funding Party is not a Barton affiliate.

In the meantime, I am reaching out to Mr. Garrison, the principal of the Funding Party, for his availability.

Also, as mentioned below, the title company is Sendera Title, and the Escrow Officer is Julie Lyssy who also requested the information described in Item 3.

Lastly, the Happy State Bank speaks to a Pay-off Amount - is there a current loan by HNGH with Happy State Bank which involves 2999 TC as my understanding based on our earlier conversations was that it was not the case – or did I misunderstand again?

Thanks,

**Khudabuksh K. Walji, Esq.**

Lender's Exhibit 84

# HNGH Tries to Set Up Payment Default by 2999TC

11. Wiring instructions not received until 3:52 pm on May 31st

**From:** John J. Kane
**Sent:** Tuesday, May 31, 2022 3:52 PM
**To:** Joyce Lindauer
**Subject:** HNGH - Wiring Instructions for Title Co [IWOV-iManage.FID2137592]
**Attachments:** HNGH Turtle Creek, LLC - Wiring Instruction.pdf

See attached for funding.

JOHN J. KANE
Director
KRCL 30 years
Kane Russell Coleman Logan PC
901 Main Street | Suite 5200 | Dallas, Texas 75202
Tel 214.777.4261 Cell 972.672.6915
krcl.com | krclblogs.com

This email and any attachments are confidential. If you received this email in error, please inform the sender and delete it. Thank you.

Lender's Exhibit 86

12. HSB testifies funds sent that late would likely not have been received in time:

Q If a wire had been sent out at, let's say, 4:00 or 5:00 on the 31st and all you had at that point -- you would not have received that wire, right? You wouldn't receive it until the next day.
A If they're sending it past that cutoff, we may not be able to receive it until the next day.

Testimony of Julie Blakely, June 23rd

# HNGH Tries to Set Up Payment Default by 2999TC

13. Nambiar says "pens down" at 4 pm on May 31st.

14. Kane gives instructions for "pens down," but does not tell the Debtor or its counsel and instead sends wiring instructions.

Q All right. When did you make the decision on May 31st that the debtor was not going to close on May 31st?
A Oh. That would've been around 4:15, 4:25.
Q Okay. Did you at some point come to realize that, or did you tell the people in your firm to go pens down on drafting documents?
A Yes. I believe that I did.
Q Okay. What time was that when you said go pens down?
A Call it 4:30, something like that. 4:40.

Testimony of John Kane, July 6th

Testimony of Vipin Nambiar, June 29th

A Yes. I was -- I was asked to stand by to sign a number of documents. And it wasn't I think until we -- I was told that you had instructed Mr. Kane to go pencils down that I left the office.

# HNGH Tries to Set Up Payment Default by 2999TC

Q Was it still possible for this transaction to have been closed on May 31st from your understanding, Mr. Nambiar?
A Yes.
My understanding is that everything that the title company actually required to close this transaction and provide a title policy, you know, I had provided instructions to our team to work through those diligently and to get to that point. And I believe we did until we heard that there was no closing occurring.

Testimony of Vipin Nambiar, June 27th

# HNGH Tries to Set Up Payment Default by 2999TC

Q What is the debtor's position with regard to the performance of HNGH under the agreed orders?

A It defaulted the December 2021 for not having the recision deed held by the HNGH counsel. It did not have the promissory note in the original form in its possession to reinstate. It did not disclose that Happy State Bank would have to be paid as a condition of this order. There is no mention of Happy State Bank having to be paid according to that order.

And those were three things that were required of HNGH before the debtor would be responsible for paying, along with the documents, the authority documents reflected and other

Testimony of Khudabuksh Walji, June 24th

# 2999TC Tried to Accommodate HNGH's Default

5. We will extend the closing date on a daily basis from May 31, 2022, until all the Item 4 deliverables are sent by John to the title company, which is anticipated to be accomplished by June 2nd, 2022.

Thanks,

**Khudabuksh K. Walji, Esq.**
***Outside General Counsel***
**JMJ Real Estate Development Group**
2999 Turtle Creek Boulevard
Dallas, Texas, USA 75219

Despite HNGH's failure to comply with the Agreed Orders and required documents from title company, Debtor offers a day-by-day extension to allow time to correct documents and close transaction.

# There was No Valid Confusion Over Sendera Title

- Was serving as the title company and escrow agent for the closing of the payoff of the HNGH loan.
- HNGH wants the Court to believe there were several title companies involved which made it impossible to act.
- HNGH was aware and communicating with Sendera Title as early as **May 10th**.
- On May 27, 2022 HNGH sent an original executed deed to Sendera Title.
- Sendera would issue a title policy at closing.
- A title commitment was provided to counsel for HNGH no later than May 24, 2022.
  - Identified HNGH as a Texas entity on the November 1, 2021 recorded deed
  - Listed required documents and releases to close on Schedule C – Lender's Exhibit 33a, pgs. 7-8.

**From:** John J. Kane
**Sent:** Tuesday, May 10, 2022 10:33 AM
**To:** Julie Lyssy; 'k.walji@waljilaw.com'
**Cc:** 'Joyce Lindauer'; Jeanie Acord; Lockette Manley; 'Bella Khusal'
**Subject:** RE: 2201814-VVJA Closing of 2999 Turtle Creek (1035-14R) [IWOV-iManage.FID2137592]
**Attachments:** [FILE COPY] HNGH - 2999 TC - Final Agreed Order Resolving Contested Matters - Amended Exhibit A - File Under Seal.pdf

Julie,

Attached is the Payoff Amount, the confidential Exhibit A filed under seal, which I'd circulated and had approved by 2999TC's counsel on March 11, 2022, and which I'd previously provided to 2999TC's counsel again on April 29, 2022.

HNGH has a copy of the rescission deed ready to file in accordance with the applicable orders. HNGH's expectation is that it will file and record the rescission deed at closing when funds are wired into escrow for HNGH's payoff and the filing of the rescission deed is the only condition precedent to closing remaining.

Please let me know if there is any additional documentation you require from me, on HNGH's behalf.

Thank you

JOHN J. KANE
Director
KRCL 30 years
Kane Russell Coleman Logan PC
901 Main Street | Suite 5200 | Dallas, Texas 75202
Tel 214.777.4261 Cell 972.672.6915
krcl.com | krclblogs.com

This email and any attachments are confidential. If you received this email in error, please inform the sender and delete it. Thank you.

Lender's Exhibit 26

# There was No Valid Confusion Over Sendera Title

| | |
|---|---|
| **From:** | John J. Kane |
| **Sent:** | Tuesday, May 31, 2022 11:03 AM |
| **To:** | Joyce Lindauer; k.walji@waljilaw.com; Julie Lyssy |
| **Cc:** | Nate Christensen |
| **Subject:** | 2999TC Acquisitions Closing - HSB Payoff Statement [IWOV-iManage.FID2137592] |
| **Attachments:** | Happy State Bank Payoff - For Collateral Assignment of Note and Lien resolution.pdf |

All,

Attached is the payoff statement for the Happy State Bank collateral assignment resolution. The amount due to HNGH at closing is therefore the HNGH Payoff Amount previously provided, minus this amount.

Thank you,

John Kane

Further communication with Julie Lyssy of Sendera Title on May 31st

Lender's Exhibit 72

# There was No Valid Confusion Over Sendera Title

| | |
|---|---|
| **From:** | John J. Kane |
| **Sent:** | Friday, May 27, 2022 4:41 PM |
| **To:** | Khudabuksh K. Walji Esq.; 'Joyce Lindauer' |
| **Subject:** | HNGH - Rescission Deed with Exhibits [IWOV-iManage.FID2137592] |
| **Attachments:** | Exhibit C to Rescission Deed - Agreed Order.PDF; Exhibit B to Rescission Deed - Special Warranty Deed.PDF; HNGH - Rescission Deed - Executed VN.PDF |

The wet deed was couriered over to Sendera to be held in escrow, but attached is the PDF for your records.

JOHN J. KANE
Director
KRCL 30 years
Kane Russell Coleman Logan PC
901 Main Street | Suite 5200 | Dallas, Texas 75202
Tel 214.777.4261 Cell 972.672.6915
krcl.com | krclblogs.com

This email and any attachments are confidential. If you received this email in error, please inform the sender and delete it. Thank you.

# HNGH's Title Commitment Requirements

**SCHEDULE C**

Your Policy will not cover loss, costs, attorneys' fees, and expenses resulting from the following requirements that will appear as Exceptions in Schedule B of the Policy, unless you dispose of these matters to our satisfaction, before the date the Policy is issued:

| Requirement | Completed? |
| --- | --- |
| 5. Deed of Trust dated September 20, 2019, filed September 23, 2019, recorded under Instrument No. 201900253450, of the Official Public Records of Dallas County, Texas, executed by MO 2999TC, LLC to Michael B. Massey, Trustee(s), securing the payment of one note of even date therewith in the principal sum of $32,500,000.00, payable to 2999 Turtle Creek, LLC, a Delaware limited liability company; and subject to all of the terms, conditions, and provisions contained in said Deed of Trust. | NO |
| Assignment of Leases and Rents by instrument dated September 20, 2019, filed September 23, 2019, recorded under Instrument No. 201900253451, of the Official Public Records of Dallas County, Texas. | NO |
| Notice of Collateral Assignment of Deed of Trust and Loan Documents to Axos Bank by instrument dated December 31, 2019, filed January 3, 2020, recorded under Instrument No. 202000001928, of the Official Public Records of Dallas County, Texas. | MAY 31, 2022 |
| Assignment of Deed of Trust and Assignment of Leases and Rents to HNGH Turtle Creek, LLC by instrument dated December 7, 2020, filed December 8, 2020, recorded under Instrument No. 202000341904, of the Official Public Records of Dallas County, Texas. | NO |
| Collateral Transfer of Note and Lien to Happy State Bank, by instrument dated December 4, 2020, filed December 8, 2020, recorded under Instrument No. 202000341906, of the Official Public Records of Dallas County, Texas. | NO |
| Appointment of Substitute Trustee by instrument dated June 30, 2020, filed July 6, 2020, recorded under Instrument No. 202000168289, of the Official Public Records of Dallas County, Texas. | NO |
| Appointment of Substitute Trustee by instrument dated August 2, 2020, filed August 10, 2020, recorded under Instrument No. 202000206704, of the Official Public Records of Dallas County, Texas. | NO |
| Notice of Foreclosure Sale by instrument dated August 6, 2020, filed August 10, 2020, recorded under Instrument No. 202000206703, of the Official Public Records of Dallas County, Texas. | NO |

Lender's Exhibit 33a, pgs. 7-8

# Title Commitment Requirements

**SCHEDULE C**

Your Policy will not cover loss, costs, attorneys' fees, and expenses resulting from the following requirements that will appear as Exceptions in Schedule B of the Policy, unless you dispose of these matters to our satisfaction, before the date the Policy is issued:

**Completed?**

**6.** **UCC Financing Statement executed by MO 2999TC, LLC, as Debtor to 2999 Turtle Creek, LLC, as Secured Party, filed September 23, 2019, recorded in Instrument No. 201900253452, of the Official Public Records of Dallas County, Texas. Amendments filed December 8, 2020 in Instrument Nos. 202000341907 and 202000341908, Official Public Records, Dallas County, Texas.** — NO

**11.** **The Company requires the following evidence of authority for the HNGH Turtle Creek, LLC, limited liability company which is a party to the subject transaction:**

- **a.** **Current Certificate of Existence from the Secretary of State,** — NO
- **b.** **Current Certificate of Good Standing from the State Comptroller,** — NO
- **c.** **Resolution of the Members authorizing the present transaction and those parties executing instruments on behalf of the limited liability company,** — NO
- **d.** **Copy of the Articles of Organization and any amendments thereto, and** — NO
- **e.** **Copy of the Regulations adopted by the members of the limited liability company and any amendments thereto.** — NO

# Title Commitment Requirements

Q All right. Had you, and I know you sat through and I don't want to spend a ton of time on this. But the list of documents that showed up on the Schedule C from Sendera Title, were you ever provided a list of those documents?

A I was not provided a list of those documents. No.

Q And is that something that you were leaving to your counsel to handle?

A Yeah. I was mostly leaving that to our counsel to handle. I mean, you know, we've been involved with several real estate transactions, and closing. They seemed competent to figure out exactly what was actually needed to get something done. And I believe that they had, you know, ultimately gotten to that end of fact.

Testimony of Vipin Nambiar, June 27th

# HNGH Created a Fatal Cloud on Title

- Special Warranty Deed recorded on November 1, 2021 to HNGH erroneously as a Texas limited liability company and not as a Delaware limited liability company creating a cloud on title.
- Title Company could have resolved the Cloud if HNGH had complied with item 11 on Schedule C of the Title Commitment.
  - No indication that an incumbency certificate in compliance
  - No incumbency certificate drafted or prepared by HNGH
  - HNGH had the Item 11 documents, but failed to deliver them as testified by Nate Christensen.
- An instrument correcting the cloud needed to be prepared and recorded before rescission which was not done.

**SPECIAL WARRANTY DEED**

THE STATE OF TEXAS §
§ KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF DALLAS §

THAT effective as of October 29, 2021, 2999TC Acquisitions, LLC f/k/a MO 2999TC, LLC, a Delaware limited liability company ("Grantor"), whose mailing address is 13901 Midway Rd., Suite 102-243, Dallas, TX 75244 for and in consideration of the sum of TEN AND NO/ 100 DOLLARS ($10.00) and other good and valuable consideration paid in cash to Grantor by the Grantee herein named, has GRANTED, BARGAINED, SOLD and CONVEYED, and by these presents does GRANT, BARGAIN, SELL and CONVEY unto HNGH Turtle Creek, LLC, a Texas limited liability company ("Grantee"), whose mailing address is 1807 Ross Avenue, Suite 440, Dallas, Texas 75201 that certain real property situated in the County of Dallas, Texas, more particular... and made a part hereof for all purposes, together with all improve...

Debtor's Exhibit D14, page 7

HNGH TURTLE CREEK, LLC,
a Delaware limited liability company

By: HN Green Hollow Capital Partners LLC,
its authorized signatory

By:
Name: James Glasgow
Title: Manager

Lender's Exhibit 4, page 73

3. Record title to the land on the Effective Date appears to be vested in:

**2999TC ACQUISITIONS, LLC F/K/A MO 2999TC, LLC, a Delaware limited liability company, as their interest may appear**
**HNGH TURTLE CREEK, LLC, a Texas limited liability company, as their interest may appear**

**By virtue of Special Warranty Deed filed 09/23/2019, recorded in cc# 201900253499, Real Property Records, Dallas County, Texas.**
**Special Warranty Deed filed 11/01/2021, recorded in cc# 202100327172, Real Property Records, Dallas County, Texas**

Lender's Exhibit 33a, page 1

**11. The Company requires the following evidence of authority for the HNGH Turtle Creek, LLC, limited liability company which is a party to the subject transaction:**

**a. Current Certificate of Existence from the Secretary of State,**
**b. Current Certificate of Good Standing from the State Comptroller,**
**c. Resolution of the Members authorizing the present transaction and those parties executing instruments on behalf of the limited liability company,**
**d. Copy of the Articles of Organization and any amendments thereto, and**
**e. Copy of the Regulations adopted by the members of the limited liability company and any amendments thereto.**

Lender's Exhibit 33a, page 8

# HNGH Created a Fatal Cloud on Title

Q Okay. All right. Mr. Christensen, has anything been done on your side on behalf of HNGH Turtle Creek, a Delaware limited liability company, to correct this particular document?

A I think that's why we're -- I think that's part of why we're here. I think that I wasn't aware of this mistake until we got into this hearing, and so I was confused as to why the rescission deed had Texas, LLC on it. And then I came to find out that that's -- counsel that prepared the rescission deed used this as the -- as the example to tie it to. And so the error that was made by Wick Phillips at this time carried forward into the rescission deed. And I learned that through

Testimony of Nate Christensen, June 24th

# HNGH Created a Fatal Cloud on Title

Q So you're saying, in your office, you had a proper document that said Delaware, it just didn't get signed?

A Yeah, so I thought I made that correction. I don't know if, you know, I had forgotten that and then opened it up while it was part of an email attachment that I was sending back over and made the correction and then it didn't save, or what. But my client had advised me of the mistake and then did not catch it when they executed and had the document notarized the second

Testimony of John Kane, July 8th

# HNGH Created a Fatal Cloud on Title

Q Okay. And did you keep the first executed document or did y'all destroy that?
A I think it was destroyed.
Q Do you think, or you know?
A Well, I don't know. I mean, we didn't use it, so I don't know if I've got a PDF somewhere but, you know.
Q So you think that there is a special warranty deed document in your office somewhere that does show HNGH, a Delaware limited liability company, right?
A Yeah. So I want -- I mean, I don't know how I can testify to this more clearly. I thought I made that revision on a draft.
Q Right.
A There was never a signed draft that said Delaware LLC.
Q Okay. And as you sit here today, there's never been a special warranty deed document that you prepared that says Delaware LLC that's been signed by your client. Is that right?
A Yeah. So --

Testimony of John Kane, July 8th

# HNGH Created a Fatal Cloud on Title

This was sort of an issue that I faced because you know, that November 1st deed had a chilling effect, or constituted sort of a cloud I'll call it, which was addressed in Schedule C, obviously.

Q And I was going to ask you, the way the title to this property looks as of the effective date, you're showing essentially two owners to the property. Is that what I'm seeing?

A Yeah. And that's unusual. That's a little bit funky, I'll call it. And it's just because they made more sense to -- I mean, it could have been handled either way. It could have reflected it one or the other. But they were more comfortable

Testimony of Randy Marx, June 13th

# HNGH Created a Fatal Cloud on Title

reflected it one or the other. But they were more comfortable reflecting it in this fashion. And I was fine with that because the reference to HNGH here in I guess A-3 resolved itself, or would have or should have resolved itself by a recision deed, a recision of deed which was referenced in the requirements.

Q Okay. So to be clear, on your item three, had a recision deed or recision of deed been filed, that would have resolved the second indication of ownership in the name of HNGH. Is that my understanding?

A Yes.

Testimony of Randy Marx, June 13th

# Payoff to HSB Prior to Closing

**From:** Julie Lyssy <jlyssy@senderatitle.com>
**Sent:** Tuesday, May 24, 2022 10:51 AM
**To:** John J. Kane
**Cc:** 'RANDY P. MARX'; Khudabuksh K. Walji Esq.; 'Joyce Lindauer'; Jeanie Acord
**Subject:** 2201814-VVJA Assignments
**Attachments:** Cmt 1-14 ExA (T-7) - 2201814-VVJA.PDF

Good morning John,

I am hoping you can help me with some items on Schedule C of the title commitment regarding Assignments from Axos Bank and Happy State Bank. We will need a Collateral Assignment signed by Axos Bank to 2999 Turtle Creek LLC. Also since Happy State Bank will not receive any payoff funds or be signing a Release of Lien with HNGH we will need Happy State Bank to Collaterally Assign back to HNGH. Do you by chance have the Assignments?

I have attached the commitment with the hyperlinks to the Schedule C documents. Thank you.

Julie Lyssy,
Escrow Officer
**SENDERA TITLE**

Sendera Title understood this to not be a simultaneous closing with the HSB payoff

Lender's Exhibit 33a

# Payoff to HSB Prior to Closing

| | |
|---|---|
| **From:** | John J. Kane |
| **Sent:** | Thursday, May 26, 2022 6:54 PM |
| **To:** | Julie Blakeley; Vipin Nambiar |
| **Cc:** | Nate Christensen; John M. Inabnett; Sara Reams |
| **Subject:** | RE: [External Email] 2999 Turtle Creek [IWOV-iManage.FID2137592] |
| **Attachments:** | Collateral Transfer of Note and Lien.pdf |

Julie,

I represent HNGH Turtle Creek, LLC. It appears 2999TC Acquisitions, LLC – the debtor in bankruptcy – is steadily moving towards a closing that would fund on May 31, 2022 by 5:00 pm. This is a funky closing, to say the least. If you recall, HNGH filed a Special Warranty Deed taking title to the Property right when the Debtor filed for bankruptcy. The deed-in-lieu would have satisfied the note, but because of the bankruptcy filing and case settlements through agreed orders, the Debtor can still reinstate the note and, in essence, buy back the property through a payoff. The Debtor is marching in the direction. At closing, the following has to occur:

- Funding of the payoff amount into escrow
- Filing of a Rescission Deed revesting the Turtle Creek property with 2999TC, the Debtor
- Reinstatement of HNGH's Note, Security Agreement, and Deed of Trust
- Release of payoff to HNGH

Lender's Exhibit 54

# Payoff to HSB Prior to Closing

- Vipin Nambiar intended to sabotage the closing and prepared his counsel to act.

**From:** Vipin Nambiar <vnambiar@hncapitalpartners.com>
**Sent:** Friday, May 27, 2022 9:35 PM
**To:** Julie Blakeley
**Cc:** John J. Kane; Nate Christensen
**Subject:** Re: [External Email] HNGH - Collateral Assignment of Note and Lien [IWOV-iManage.FID2137592]

Julie, we want to make sure that borrower doesn't claim that this assignment procedure requires more time. It is purely procedural, but I want to make sure we are ready Tuesday morning if an expedited hearing is requested. Can you please get your counsel sensitive to this, so they review and clear the document as soon as possible.

John has been asked to hold the line on the payoff date, and I don't want any procedural delays to cause a problem on our payoff or remedies, whatever the outcome maybe.

Vipin

Lender's Exhibit 55

# Payoff to HSB Prior to Closing

**From:** John J. Kane
**Sent:** Tuesday, May 24, 2022 11:28 AM
**To:** John M. Inabnett
**Subject:** HNGH - Need some help: Fwd: 2201814-VVJA Assignments
**Attachments:** Cmt 1-14 ExA (T-7) - 2201814-VVJA.PDF

John,

Can you take a look at this email below and the attachment and the referenced Exhibit C? Curious about these assignments. I don't really follow the assignments to Axos and Hapoy State Bank as they're really just a lender to HNGH, and HNGH is the lender to 2999TC.

Can you help me get a handle on this and what we need to get to title co to facilitate a closing next Tuesday?

John J. Kane
972-672-6915

Kane asks for assistance on this issue to John Inabnett, real estate lawyer with KRLC on **May 24th**

Lender's Exhibit 34

# Payoff to HSB Prior to Closing

**From:** Julie Lyssy <jlyssy@senderatitle.com>
**Sent:** Tuesday, May 31, 2022 11:22 AM
**To:** Joyce Lindauer <joyce@joycelindauer.com>
**Cc:** Jeanie Acord <jacord@senderatitle.com>
**Subject:** RE: 2999TC Acquisitions Closing - HSB Payoff Statement [IWOV-iManage.FID2137592]

Joyce,

I still need the Assignment from Axos Bank to 2999 Turtle Creek LLC.

Julie Lyssy,
Escrow Officer
**SENDERA TITLE**
**1800 Valley View Ln. # 160**
**Farmers Branch, Texas 75234**
jlyssy@senderatitle.com
Tel 972-428-2855
Fax 972-428-2901

Sendera Title still did not have required Assignment Documents as of May 31, 2022

Debtor's Exhibit D8

# John Kane's Version of Closing Events

-- Note: On 5/10 Kane stated to Lyssy he had a copy of the rescission deed ready to file (which would mean it is executed) (ex 27 bottom pg1) - yet doesn't circulate draft until 2 days later (Ex 30) - does not send draft to Lyssy for approval. Lyssy requests rescission deed May 23 (Ex 32) - Kane doesn't provide it until May 27.
-- The agreed order (Ex 8) states (i) counsel for HNGH shall hold the rescission deed during the pendency of the term of this Agreed Order and shall have no liability … by way of holding such deed or releasing the deed in accordance with the terms of this Agreed Order" followed by (i) "HNGH shall take all reasonable actions necessary to immediately instruct its counsel to deliver the rescission deed to the Debtor and to ensure title to the Property is returned to the Debtor." If only a draft required then neither statement above would be included in the order and it would also require that counsel deliver the draft to HNGH for execution but if it did, then HNGH could deliver it to Debtor instead of counsel.

**John J. Kane**

**From:** John J. Kane
**Sent:** Tuesday, May 31, 2022 12:12 PM
**To:** Joyce Lindauer
**Cc:** Nate Christensen
**Subject:** RE: Letter List [IWOV-iManage.FID2137592]

HNGH Counsel to hold executed rescission instrument beginning on Dec. 10, 2021 (Ex. 8) - Never executed; only draft of wrong form supposedly held in Jan. 2022 (no exhibits produced by HNGH)

1. Agreed Rescission Deed –
   a. draft circulated 5/12, no comments from Debtor; signed notarized original provided 5/27; revised Agreed Rescission Deed provided by Debtor 5/30 at 3:24 pm, revised draft circulated 5/30 to Debtor, no further comments or approval to execute received from Debtor so far

Requested

MISSING: Title Commitment Sched. C, 11.: Title Co. requires the following evidence of authority for the HNGH Turtle Creek, LLC, limited liability company: Current Certificate of Existence from the Secretary of

# John Kane's Version of Closing Events

Agreed Rescission Deed provided by Debtor 5/30 at 3:24 pm, revised draft circulated 5/30 to Debtor, no further comments or approval to execute received from Debtor so far

2. Payoff letter and release of Deed of Trust by HNGH –
   a. Draft circulated 5/30, no comments from Debtor so far
3. Axos termination shown on 2.2
   a. Recorded instrument provided 5/27 was already provided
   b. Not sure why it's still on the list, it's also readily available in the Clerk's records
4. Happy State Bank Collateral Assignment – Release
   a. Prepared and circulated to HSB 5/27
   b. HSB counsel sought Title co contact to deliver executed document with escrow and release instructions
   c. JJK connected HSB counsel with J. Lindauer immediately
5. Release of Assignment of rents in 2.4

Title Co. Requested assignment back to HNGH. Ex 33. Release does not transfer the Note.

Debtor revised HSB releases to incl. necessary consents & ratifications. (Ex 65b&65c) Blakely testimony that HSB "had no objection" is not the same. Blakely testified she executed the original version. (p. 96, lines 6-8; p 12, line 18 of transcript)

MISSING: Title Commitment Sched. C, 11.: Title Co. requires the following evidence of authority for the HNGH Turtle Creek, LLC, limited liability company: Current Certificate of Existence from the Secretary of State, ***(Note: can take several days)***; Current Certificate of Good Standing from the State Comptroller, ***(Note: can take several days)***; Resolution of the Members authorizing the present transaction and those parties executing instruments on behalf of the LLC; Copy of the Articles of Organization and any amendments thereto; and Copy of the Regulations adopted by the members of the LLC and any amendments thereto. *Note: All authority Docs Required - Not Incumbency Cert. which was not approved by title company in lieu of any of the above and often if the above reveal ownership by other entities the title company will require the same documents for such entities such as its manager HN Capital Partners, LLC which is the manager as testified by Mr. Nambiar.)*

MISSING: Title Commitment Schedule C - 5 (remaining releases needed) (i) Appointment of Substitute Trustee by instrument dated June 30, 2020, filed July 6, 2020, recorded Under Instrument No. 202000168289 , of the Official Public Records of

Lender's Exhibit 76

# John Kane's Version of Closing Events

testified she executed the original version. (p. 96, lines 6-8; p 12, line 18 of transcript)

Walji provided to Kane 5/31 at 1:44 (not after 3pm as asserted) - Ex 89, pg3 KW comment in red under "3. Axos termination"

Is necessary for closing - required under Sched C(6)- release at closing. Release placed into escrow.

c. JJK connected HSB counsel with J. Lindauer immediately

5. Release of Assignment of rents in 2.4
   a. Draft circulate 5/30
   b. Incorporated into the payoff letter and release of lien provide in the above no. 2
   c. No comments by Debtor so far

6. Release of UCC-1 in favor of HNGH *if* HNGH has a UCC-1 (I didn't file one for them)
   a. This is not necessary for close and can be filed after with a UCC-3
   b. HNGH will commit to filing a UCC-3 upon payoff to release on liens on personal property

7. Written confirmation in an email that the participation agreement is terminated
   a. Will provide if necessary, though we question whether this is necessary at closing given Court's orders

MISSING: Title Commitment Schedule C - 5 (remaining releases needed) (i) Appointment of Substitute Trustee by instrument dated June 30, 2020, filed July 6, 2020, recorded Under Instrument No. 202000168289 , of the Official Public Records of Dallas County, Texas; (ii) Appointment of Substitute Trustee by instrument dated August 2, 2020, filed August 10, 2020, recorded Under Instrument No. 202000206704 , of the Official Public Records of Dallas County, Texas; (iii) Notice of Foreclosure Sale by instrument dated August 6, 2020, filed August 10, 2020, recorded under Instrument No. 202000206703, of the Official Public Records of Dallas County, Texas. (Ex. 33a)

# John Kane's Version of Closing Events

8. We'll provide the original note marked paid in full upon funding, and will provide evidence of possession of the original note

9. Sequencing Agreement referenced in 7.1
   a. You can prepare a draft of this, but it should be
      i. Circulate final settlement statement for approval by HNGH, HSB, Debtor, Buyer
      ii. Obtain approval of final settlement statement and authorization to close
      iii. Fund into escrow
      iv. File Agreed Rescission Deed
      v. File HSB Rescission of Collateral Assignment
      vi. Wire funds
      vii. File payoff and release of lien from HNGH
      viii. Stamp Note paid in full and deliver stamped original

1

Title Company prepares draft settlement statements

Closing not simultaneous as asserted in Ex 54) (i) HNGH has to payoff Happy State Bank first to get the Note; (ii) terms of the Agreed Order - reinstate prior to payment (Ex 8)

Agreed Order - have to reinstate prior to Debtor's payment to HNGH not "upon funding" - but HNGH can't provide evidence they are holder until Happy State Bank is paid off. So wouldn't be able to provide evidence until after paid off. Walji stated needed a copy for lender in Ex 89 - never provided.

Next Step: Title Co, reviews & approves Sched. C related documents and prepares updated/final title commitment

MISSING: HNGH obtain Note from Happy State Bank then Reinstate the Note "immediately prior to Debtor's payment to HNGH" (Blakely testified required payment before would transfer the note (Transcript pgs 119-120, 123)

Next Step: Deliver all required documents including all executed documents and documents to be recorded to title co to hold in escrow before the funding into escrow including: executed rescission of deed; reinstatement of note (this step missing and which will require the actual note); HSB release; HNGH releases. Title co does all of these steps except ii. and iii. (although it holds those funds in its escrow acct) which is why docs have to be held in escrow first

MISSING: HNGH/Title Co. Record instrument correcting Nov 1, 2021 Deed (Tex. to Delaware) before rescission recorded

**EXHIBIT 76 - Page 1 of 2**

Note: "Ex." refers to Lender's Exhibit

# John Kane's Version of Closing Events

**From:** John J. Kane
**Sent:** Tuesday, May 31, 2022 2:39 PM
**To:** k.walji@waljilaw.com; 'Joyce Lindauer'
**Cc:** 'filing waljilaw'
**Subject:** RE: Letter List (1035-14C-3) [IWOV-iManage.FID2137592]
**Attachments:** (a) ASSIGNMENT OF DEED OF TRUST - RECORDED (1).pdf; Cmt 1-14 ExA (T-7) - 2201814-VVJA.PDF

Folks,

See attached. These are either the recorded docs or provide reference to the recorded docs so your title co can just yoink the file stamped copies. 2999 Turtle Creek→Collateral Assignment to Axos→Termination of Axos Assignment→Assignment to HNGH→

Then you have the HNGH→collateral assignment to HSB→HSB is providing the termination of collateral assignment

That brings this right back to HNGH, for reinstatement, rescission deed, payoff.

Clear line from point A to point B to point C.

JOHN J. KANE

Kane acknowledges order of events.

Lender's Exhibit 80

# John Kane's Version of Closing Events

9. Sequencing Agreement referenced in 7.1
   a. You can prepare a draft of this, but it should be
      i. Circulate final settlement statement for approval by HNGH, HSB, Debtor, Buyer
      ii. Obtain approval of final settlement statement and authorization to close
      iii. Fund into escrow
      iv. File Agreed Rescission Deed
      v. File HSB Rescission of Collateral Assignment
      vi. Wire funds
      vii. File payoff and release of lien from HNGH
      viii. Stamp Note paid in full and deliver stamped original

# Not a Standard Real Estate Closing

- Not a standard real estate and/or commercial loan closing that could be done simultaneously.
- HNGH is not only a current lender, but it recorded the deed taking title to the Property which had to be unwound and rescinded first.
- Creates the necessity for it to produce additional documents for closing which are not typical for an existing lender so that title can be insured by the title company through the rescission.
- The note and security instruments merged into the recorded deed likewise had to be reinstated **prior** to the Debtor's payoff.
- HNGH could not reinstate the note before payoff because it was not the holder of the note. It had to payoff its loan to Happy State Bank first in order to get the note.
- Only then could a standard closing occur between Debtor and its new lender and/or buyer.

19. Debtor had secured funding and was preparing to make the Final Payoff on May 31, 2022, as required by the Agreed Orders. However, after – and *because* – HNGH failed on May 30, 2022 to comply with the terms of the Agreed Orders the lenders, of course, would not loan without compliance by HNGH with the Agreed Orders. Debtor has secured committed funding and will pay off HNGH as soon as the title to the Property is clean and HNGH has provided proper recission documents. Exhibit A describes what should be done to clear and clean the title to the Property.

Docket No. 145, page 7

If HNGH had not defaulted, 2999TC was funded and ready to close on May 31st.
2999TC remains ready to close now.

# 2999TC is Still Ready to Close

Q And just so we're very clear with the Court, you were prepared to close on May 30th and May 31st if everything had been ready to close. Is that right?

A That's correct. If the orders were adhered to, the recision deed was in place, the promissory note was reinstated, and then to find out Happy State Bank was paid off, and the note was delivered, we were ready to push the button and fund and move on.

Q And just to be clear, Mr. Barton, you are still ready to push the button and fund and move on and keep this property. Is that right?

A We will be doing that. That is correct.

Testimony of Tim Barton, July 1st

# Why Should the Court Deny HNGH's Requested Relief?

- HNGH Turtle Creek, LLC ("HNGH") requests relief from the Court on an expedited basis that cannot be granted without the filing of an adversary proceeding. Specifically, HNGH requests
  - a) a determination by the Court of an interest in property,
  - b) a determination of the validity and extent of a lien against property,
  - c) a declaration that HNGH owns the subject property, and
  - d) injunctive relief against the Debtor and its counsel.
- The Motion would have the Court adjudge and declare that the Deed-in-Lieu was a valid conveyance and HNGH is the owner of the Property, which the Debtor opposes and cannot be done without an adversary proceeding pursuant to Fed. R. Civ. Pro. 7001(1) and (9).
- The Motion would further have the Court adjudge and declare that the Debtor has no right, title, or interest in the Property, nor any lien, claim, encumbrance, or cloud on title against the Property, which the Debtor opposes and cannot be done without an adversary proceeding pursuant to Fed. R. Civ. Pro. 7001(1), (2) and (9).
- The Motion would also have the Court mandate that the Debtor remove the *lis pendens* it filed against the subject property, which constitutes affirmative injunctive relief that cannot be granted outside of an adversary proceeding pursuant to Fed. R. Civ. Pro. 7001(7).

# Why Should the Court Deny HNGH's Requested Relief?

- The Motion would also have the Court prohibit the Debtor and its counsel from filing further possible pleadings in this Court, and prospectively award sanctions against them if they do so, which again constitutes affirmative injunctive relief that cannot be granted outside of an adversary proceeding pursuant to Fed. R. Civ. Pro. 7001(7).
- The Motion seeks all the above relief on an emergency basis, but no facts supporting the alleged emergency are presented. The subject property is fully insured and secured by the Debtor, and the Debtor has paid all current property taxes. HNGH has offered no evidence to justify depriving the Debtor of its procedural and substantive due process protections, including but not limited to those provided under Rule 7001 to a fully developed and measured trial before this Court on issues that could prove to be vital for the Debtor's continued existence.

# Balance the Equities

| MARKET VALUE CONCLUSION | | | |
|---|---|---|---|
| Appraisal Premise | Interest Appraised | Date of Value | Value Conclusion |
| As Is | Fee Simple Estate (Going Concern) | December 4, 2021 | $56,400,000 |
| Prospective As Complete | Fee Simple Estate (Going Concern) | December 1, 2023 | $144,300,000 |
| Prospective As Stabilized | Fee Simple Estate (Going Concern) | December 1, 2025 | $156,000,000 |

Compiled by CBRE

# Responses to Objections to Dockets Nos. 173 and 174

- The Modifications sought are not material and adverse to any party – they only serve to clarify the prior Plan and its terms regarding required closing documents.
- Even now, after weeks of hearings and at the 11th hour, has HNGH argued that the basic closing documents of the lender were to be prepared by the Debtor and its counsel.
- There is nothing customary, reasonable or necessary about such documents being prepared by a debtor (the borrower) rather than the lender.
- In fact, such position is expressly contrary to HNGH's argument that it was preparing such documents and its complaints that the Debtor failed to provide comments to such documents – which, other than the Recission Deed and payoff documents to Happy State Bank, were not objectionable to the Debtor.
- The requested relief being sought is to fill the gaps that each party has recognized exist in the closing to payoff HNGH.

# Responses to Objections to Dockets Nos. 173 and 174

- The Debtor only seeks to fix that which both parties have now acknowledged is broken.
- How is what the Debtor seeks adverse to HNGH?
- It is only adverse if HNGH wants a valuable property rather than money.
- 11 U.S.C. Section 1101 (2) defines substantial consummation and requires all three events to occur:
  - (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
  - (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; **and**
  - (C) commencement of distribution under the plan.

# Responses to Objections to Dockets Nos. 173 and 174

- It is interesting that HNGH argues that the conveyance of the property to HNGH constitutes substantial consummation – when HNGH claims such event occurred on October 29, 2021. There is no present conveyance of anything to HNGH, rather the only conveyance to occur under the Plan was the payment of money which everyone has acknowledged has not occurred.
- HNGH can not use its own default to claim somehow that the Plan is substantially consummated.
- The Disclosure Statement reads as follows:
  - Claimants should be aware that there are several substantial risks involved in consummation of the Plan. The Plan is dependent on the Debtor's ability to obtain funds for the Plan or a sale. Section 11.01 of the Disclosure Statement.
- All the Debtor is doing is seeking to address what needs to be done as a result of HNGH's default.
- A small delay in closing is not a material and adverse change.

# Requested Relief

- HNGH shall provide to the Debtor or to a title company mutually agreeable to the Debtor the following documents:
  - Recission Deed
  - Release of Deed of Trust
  - Release of prior Collateral Assignment of Happy State Bank
  - Release of Assignment of Leases and Rents
  - Release of the UCCs
  - Original Note (Marked paid in full)
  - Note Reinstatement Document
  - Corrective Deed for Deed in Lieu Document
  - Dismissal of Tim Barton in State Court Lawsuit and Release of Guaranty

# Requested Relief

- The process in a bankruptcy of post-recording a Deed in Lieu, understanding the importance of the correct Rescission Deed, and Reinstatement of Note which is encumbered by an unrelated party due to an outstanding obligation of HNGH cannot be done prior to Payoff. These are complex matters as stated by the real estate experts, and thus the Court should appoint a knowledgeable individual as a third-party mediator or expert (this can be done under Rule 706 of the Federal Rules of Evidence) to assist the parties, and potentially resolve disagreements.
- The required documents will be prepared in a commercially reasonable manner to comply with the terms of the Agreed Orders be prepared and mutually agreed between Debtor and HNGH.
- Once approved by the title company, 2999TC will fund and close the transaction.