John J. Kane (SBN 24066794)
S. Kyle Woodard (SBN 24102661)
**KANE RUSSELL COLEMAN LOGAN PC**
901 Main Street, Suite 5200
Dallas, Texas 75202
Tel.: (214) 777-4200
Fax: (214) 777-4299
Email: jkane@krcl.com
Email: kwoodard@krcl.com

***Counsel for HNGH Turtle Creek, LLC***

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **2999TC ACQUISITIONS, LLC,** | § | **Case No. 221-31954-swe11** |
| | § | |
| **Debtor.** | § | **Chapter 11** |

---

**HNGH TURTLE CREEK, LLC'S**
**TRIAL BRIEF IN SUPPORT OF MOTION TO ENFORCE**

---

**[Relates to Docket No. 134]**

# TABLE OF CONTENTS

SUMMARY OF TRIAL BRIEF ........ 6

BACKGROUND ........ 7

ARGUMENT & AUTHORITIES ........ 10

A. Equitable Estoppel under Texas Law ........ 10

B. Elements of Equitable Estoppel and Debtor's Lack of Proof........ 11

(i) False Representation or Concealment of Material Fact 11

(ii) Knowledge of Misrepresented or Concealed Facts 16

(iii) Clear Intent to Mislead 17

(iv) No Knowledge or Ability to Obtain Knowledge of Facts Requirement 19

(v) Detrimental Reliance 22

CONCLUSION........ 24

PRAYER........ 24

# TABLE OF AUTHORITIES

## Cases

*AMX Corp. v. Pilote Films*,
No. CIV.A. 3:04-CV-2035-, 2007 WL 1695120, at *8 (N.D. Tex. June 5, 2007) ...................... 19

*Arizpe v. Principal Life Ins. Co.*,
398 F. Supp. 3d 27 (N.D. Tex. 2019)........................................................................... 19

*Baldwin County Welcome Center v. Brown*,
466 U.S. 147 151 (1984) (per curiam) ........................................................................ 13

*Barfield v. Howard M. Smith Co. of Amarillo*,
426 S.W.2d 834 (Tex. 1968) ...................................................................................... 11

*Canal Indem. Co. v. Palmview Fast Freight Transp., Inc.*,
750 F. Supp. 2d 743 (N.D. Tex. 2010)......................................................................... 22

*Cathedral of Hope v. FedEx Corp. Servs., Inc.*,
No. 3:07-CV-1555-D, 2008 WL 2242546, at *6 (N.D. Tex. May 30, 2008)........................ 19, 20

*Centralian Controls Pty, Ltd. v. Maverick Int'l, Ltd.*,
No. 1:16-CV-37, 2018 WL 1415650, at *7 (E.D. Tex. Feb. 23, 2018) ..................................... 19

*Chem. Co. v. Westlake Styrene Corp.*,
246 F.3d 377 (5th Cir. 2001) ...................................................................................... 10

*Chevron U.S.A., Inc. v. Traillour Oil Co.*,
987 F.2d 1138 (5th Cir. 1993)..................................................................................... 11

*Coastal Bank SSB v. Chase Bank of Tex., N.A.*,
135 S.W.3d 840 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ............................................ 23

*Coverson v. HSBC Bank USA Nat'l Ass'n*,
No. 5:18-CV-992-DAE, 2019 WL 12598994, at *3 (W.D. Tex. Jan. 24, 2019)......................... 16

*Fleishman-Hillard, Inc. v. Oman*,
No. SA-11-CA-921-H, 2012 WL 13028770, at *5 (W.D. Tex. Nov. 21, 2012) ......................... 19

*Gardner v. Schiro*,
No. CIV. A. 3:97-CV1621P, 1997 WL 726445, at *3 (N.D. Tex. Nov. 12, 1997)..................... 17

*GE Cap. Com., Inc. v. Wright & Wright, Inc.*,
No. 3:09-CV-572-L, 2011 WL 124237, at *9 (N.D. Tex. Jan. 13, 2011) .................................. 12

*Gowland v. Aetna*,
143 F.3d 951, n.6 (5th Cir. 1998)................................................................................ 20

*Gulbenkian v. Penn*,
252 S.W.2d 929 (Tex. 1952) ........ 17

*Hill v. Aurora Nat. Life Assur. Co.*,
No. CIV. A. 3-97CV2014-P, 1999 WL 202548, at *6 (N.D. Tex. Mar. 30, 1999) ........ 18

*In re Diabetes Am., Inc.*,
485 B.R. 340 (Bankr. S.D. Tex. 2012) ........ 12

*In re Mitchell*,
80 B.R. 372 (Bankr. W.D. Tex. 1987) ........ 17, 18

*In re Montgomery*,
80 B.R. 385 (Bankr. W.D. Tex. 1987) ........ 10, 22

*In re Nucentrix Broadband Networks, Inc.*,
314 B.R. 581 (Bankr. N.D. Tex. 2004) ........ 10

*In re Perry*,
423 B.R. 215 (Bankr. S.D. Tex. 2010) ........ 10, 16

*In re Stanford*,
573 B.R. 205 (Bankr. W.D. Tex. 2017) ........ 17

*In re Webber*,
350 B.R. 344 (Bankr. S.D. Tex. 2006) ........ 12

*Int'l Ints., L.P. v. Wadley*,
No. CV H-05-19, 2008 WL 11389571, at *8 (S.D. Tex. Sept. 9, 2008) ........ 22

*Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*,
962 S.W.2d 507 (Tex. 1998) ........ 11

*Matter of Christopher*,
28 F.3d 512 (5th Cir. 1994) ........ 11

*McGregor v. Louisiana State Univ. Bd. of Sup'rs*,
3 F.3d 850 866 (5th Cir. 1993) ........ 13

*Med. Care Am., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.*,
341 F.3d 415 (5th Cir. 2003) ........ 11

*MTGLQ Invs., L.P. v. Alexander*,
No. 20-20528, 2021 WL 3921418, at *5 (5th Cir. Sept. 1, 2021) ........ 11, 12

*Neiman–Marcus Group, Inc. v. Dworkin*,
919 F.2d 368, n.4 (5th Cir. 1990) ........ 22

*Petro Harvester Operating Co., L.L.C. v. Keith*,
954 F.3d 686 (5th Cir. 2020) .......... 10, 13

*Purdin v. Wells Fargo Bank, N.A.*,
No. 3:15-CV-3956-D, 2016 WL 1161808, at *5 (N.D. Tex. Mar. 23, 2016) .......... 22

*Rhodes v. Guiberson Oil Tools Div.*,
927 F.2d 876 (5th Cir. 1991) .......... 13

*Rushing v. Yazoo Cnty. by & through Bd. of Supervisors of Yazoo Cnty.*,
861 F. App'x 544 (5th Cir. 2021) .......... 13

*Salzstein v. Bekins Van Lines Inc.*,
993 F.2d 1187, (5th Cir. 1993) .......... 22

*Smith v. Chrysler Corp.*,
45 F. App'x 326, *3 (5th Cir. 2002) .......... 18

*Stanley Educ. Methods, Inc. v. Becker C.P.A. Rev. Course, Inc.*,
536 F.2d 86 (5th Cir. 1976) .......... 13

*Stross v. Centerra Homes of Texas, LLC*,
No. 1:17-CV-676-RP, 2021 WL 5190877, at *3 (W.D. Tex. Sept. 27, 2021) .......... 17

*Thermo Tech, Inc. v. Goodyear Tire & Rubber Co.*,
643 F.2d 1173 (5th Cir. 1981) .......... 19

*United States v. Brink*,
795 F. Supp. 2d 565 584 (S.D. Tex. 2011) .......... 12, 14

*USLife v. U.S. Life Ins. Co.*,
560 F. Supp. 1302 (N.D. Tex.1983) .......... 10

*VRC, L.L.C. v. City of Dallas*,
No. CIV.A.3:03-CV-2450-B, 2004 WL 2958385, at *10 (N.D. Tex. Dec. 21, 2004) .......... 18

*Young v. Amoco Prod. Co.*,
610 F. Supp. 1479 1487 (E.D. Tex. 1985) .......... 16

HNGH Turtle Creek, LLC ("**HNGH**") submits this *Trial Brief* (the "**Brief**") in support of its *Motion to Enforce Agreed Orders* (the "**Motion to Enforce**") [Dkt. No. 134], which was the subject of a contested evidentiary hearing beginning on June 10, 2022 and ending on July 12, 2022 (the "**Evidentiary Hearing**"). In support of its Motion to Enforce and this Brief, HNGH respectfully states as follows:

## SUMMARY OF TRIAL BRIEF

1. The Debtor's entire defense to HNGH's Motion to Enforce hinges on this Court's application of equitable estoppel under Texas law. In short, the Debtor argues that its own numerous breaches of the Agreed Orders should be excused because HNGH purportedly breached the Agreed Orders by failing to hold an executed Rescission Deed beginning on December 10, 2022. Alternatively, the Debtor argues that HNGH's statements about Happy State Bank's lack of involvement in closing later caused confusion, which precluded closing, thereby excusing the Debtor's breach. Or, most broadly, the Debtor argues that HNGH must never have intended to facilitate a closing because it was a predatory lender who wanted the Debtor's property, and so Debtor's failure to timely payoff HNGH was really the result of HNGH's own scheming.

2. The Debtor's positions are entirely meritless. First, HNGH prepared and circulated a rescission deed to the Debtor well in advance of any potential closing, which should have allowed the Debtor to resolve any concerns it had about the proposed form well in advance of the May 31, 2022 5:00 pm central time closing deadline (the "**Payoff Deadline**"). Second, HNGH set forth and implemented a plan to ensure Happy State Bank's cloud on title would be appropriately resolved at closing. Third, HNGH's good faith efforts to facilitate a closing are well evidenced by approximately 100 exhibits and hours of testimony. HNGH delivered or confirmed that it was preparing and would deliver in the ordinary course of business documents necessary to facilitate a closing by the Payoff Deadline. In contrast to HNGH's good faith efforts, the Debtor precluded HNGH from delivering

those documents through a series of acts and omissions designed to conceal the Debtor's own failure to raise the funds necessary to payoff HNGH.

3. Finally, and equally importantly, equitable estoppel is inappropriate in this case. Equitable estoppel is disfavored, an extreme measure, and a doctrine of last resort under Texas law used only in extraordinary circumstances. As detailed below, the doctrine of equitable estoppel is inapplicable in this case, and the Debtor failed to meet its burden of proof at the Evidentiary Hearing for each element of equitable estoppel. Accordingly, the Debtor has no defense to performance under the Agreed Order and admits that it failed to satisfy HNGH's claim by the Payoff Deadline. This Court should therefore grant HNGH's Motion to Enforce.

## BACKGROUND

4. Given the duration of the Evidentiary Hearing and the Court's familiarity with this case and its prior proceedings, HNGH will not provide a lengthy case background. The references contained in this section are intended to provide convenient definitions for the Court, and to highlight material facts especially pertinent to the Debtor's equitable estoppel argument.

5. The Debtor filed this case on October 29, 2021 (the "**Petition Date**"). Since the Petition Date, the Debtor and HNGH entered into a number of stipulations and agreed orders, including (i) the *Agreed Order Regarding Motion to Lift Stay [Doc. 10] Motion to Dismiss [Doc. 9], Motion for Sanctions [Doc. 15] and Motion to Enforce Stay [Doc. 14]* dated December 10, 2021 [Dkt, No. 64] (the "**December Agreed Order**") and (ii) the *Agreed Order Modifying Order on Motion to Dismiss and For Relief From Stay* dated March 17, 2022 [Dkt. No. 94] (the "**March Agreed Order**") (collectively, the "**Agreed Orders**").

6. On April 25, 2022, the Debtor filed its Third Amended Plan of Reorganization (the "**Plan**") [Dkt. #108], which incorporated the Agreed Orders. To be clear, the Agreed Orders control in the event of any conflict between the terms of the Plan and the Agreed Orders. PLAN, §§ 2.01,

6.01. HNGH's treatment under the Plan is, therefore, simply the treatment to which it was entitled under the Agreed Orders. Further, HNGH could have no obligations under the Plan not set forth in the Agreed Orders. *Id.*

7. Though the Plan was confirmed on May 10, 2022, on information and belief the Debtor did not submit a proposed confirmation order to the Court for review and approval until about May 16, 2022. On May 18, 2022, the Court entered its *Order Confirming Debtor's Third Amended of Reorganization* (the "**Confirmation Order**") [Dkt. No. 123]. By its own terms, the Plan became effective three days later on May 21, 2022 (the "'**Effective Date**"), though the Confirmation Order remained subject to appeal through June 1, 2022. The fact that the confirmation appeal period extended beyond the Payoff Deadline was yet another self-inflicted wound caused by the Debtor's unnecessary delays. As at least two potential funding sources later noted, they could not get underwriting approval to close a transaction on the Payoff Deadline because the confirmation order remained subject to potential appeals. *See, e.g.,* LENDER'S EX. 85a; DEBTOR'S EX. 11 p. 32.

8. As set forth at the Evidentiary Hearing, HNGH delivered to the Debtor a proposed draft form of rescission deed on May 12, 2022. LENDER'S EX. 31, 31a. The Debtor ignored HNGH's draft. During the following weeks, HNGH—through its counsel—repeatedly reached out to the Debtor regarding the status of closing, closing checklist items, and how likely a closing was to occur. *See, e.g.,* LENDER'S EX. 45, 48, 35. On May 27, 2022, having received no comments from the Debtor, HNGH executed and delivered its rescission deed to the Debtor and Sendera Title. LENDER'S EX. 36, 36a, 57, 57a-c. HNGH did not receive any comments to its proposed rescission deed until the Debtor dismissed it outright on May 30, 2022, without a markup or redline. LENDER'S EX. 64, 65, 65d.

9. While the Debtor contends that HNGH's form of rescission deed was inadequate and precluded the Debtor's timely closing, the Debtor's own witness, Mr. Randy Marx, testified on multiple

occasions that Sendera Title had approved HNGH's form of rescission deed for the issuance of a title policy upon closing. MARX TRANSCRIPT, June 15, p. 74 [15-18]; June 23, p. 7 [1-7]. HNGH's form of rescission deed also served to reinstate the Note and Deed of Trust pursuant to the terms of the Agreed Orders, allowing for a concurrent payoff at closing. LENDER'S EX. 57a. Mr. Marx's proposed draft rescission instrument did not. *See* LENDER'S EX. 65b.

10. Finally, HNGH sought to deliver numerous instruments to facilitate a closing, but was precluded from doing so by the Debtor's lack of responsiveness and refusal to disclose its closing party, and the corresponding title company, until late afternoon on the Payoff Deadline. *See, e.g.,* LENDER'S EX. 67a, 69a, 75, 83, 84, 90. At closing argument, the Debtor seemed to argue that HNGH should have just delivered signed documents. In fact, the Debtor went so far as to admit that had HNGH signed the drafts it circulated to the Debtor and delivered them to the title company, the Debtor would have been in default:

> If they wanted to put us in default, sign the documents. Sign the release of a deed of trust. Sign the payoff letter. Sign all of the necessary documents you drafted, Mr. Kane, and give them to the title company. And then, I think you'd be hard pressed to say the debtor didn't have to fund and make its payoff…All we heard was complaints about we sent them documents and they didn't give us comments. Well, if we didn't give you a comment, then sign the document and give it to the title company.

CLOSING ARGUMENT TRANSCRIPT, July 12, p. 93 [9-18]

11. In other words, the Debtor argues that it should be excused from performance on account of its own unwillingness to participate in the closing process. In reality, HNGH had circulated a rescission deed to a title company after the Debtor failed to provide comments for more than two weeks. The Debtor argued throughout the Evidentiary Hearing, however, that HNGH's rescission deed (and later rescission instrument) was inadequate and caused a breach of the Agreed Orders. The Debtor cannot have it both ways.

12. The Debtor's failure to timely comment on and approve closing documents, like its refusal to provide Happy State Bank's counsel title company information, created an unnecessary

impediment to closing. Even that, however, is little more than a distraction from the fact that the Debtor did not present any credible evidence[1] that it had a funding source capable of closing by the Payoff Deadline. *See, e.g.,* LENDER'S EX. 85a (Private Lender Network), 88a (TCC 2022); DEBTOR'S EX. 4 (First Guaranty Bank/Fleeger/Enoch), 11 p. 6-32 (Reverie Financial). That fact alone should preclude this Court from equitably estopping HNGH from enforcing its rights under the Agreed Orders.

## ARGUMENT & AUTHORITIES

### A. EQUITABLE ESTOPPEL UNDER TEXAS LAW

13. Equitable estoppel is an equitable doctrine based on the principle that a party which, by its conduct, has induced another to act in a particular manner should not be permitted to adopt an inconsistent position and thereby cause a loss or other injury to the counterparty. *In re Perry*, 423 B.R. 215, 287 (Bankr. S.D. Tex. 2010).

14. The doctrine of equitable estoppel is strongly disfavored under Texas law. *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 389 (5th Cir. 2001) ("[e]quitable estoppel is disfavored and should only be applied as needed to avoid injustice."). Equitable estoppel is an extreme measure only used by courts in limited circumstances when absolutely necessary to avoid injustice. *In re Montgomery*, 80 B.R. 385, 390 (Bankr. W.D. Tex. 1987) (equitable estoppel "is an extreme measure which should only be taken where the equities are clearly in its favor") (quoting *USLife v. U.S. Life Ins. Co.*, 560 F. Supp. 1302, 1306 (N.D. Tex.1983)); *In re Nucentrix Broadband Networks, Inc.*, 314 B.R. 581, 588 (Bankr. N.D. Tex. 2004) ("Estoppel is an equitable doctrine used to avoid injustice"). Courts considering whether to apply the doctrine of equitable estoppel should therefore act with caution. *Petro Harvester Operating Co., L.L.C. v. Keith*, 954 F.3d 686, 698 (5th Cir. 2020) ("Equitable estoppel is an extraordinary

[1] To be clear, the Debtor did not present any documents whatsoever evidencing a binding funding agreement, money paid into a title company's escrow account, executed final loan or equity investment documents, or any other documents conclusively proving that the Debtor had in fact obtained the funding needed to close a transaction by the Payoff Deadline.

remedy to be used with caution."). Equitable estoppel is, after all, an absolute last resort. *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1156 (5th Cir. 1993).

15. A party seeking equitable estoppel bears the burden of proving its essential elements, and failure to provide supporting evidence on any element is "fatal" to the defense. *Med. Care Am., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.*, 341 F.3d 415, 422 (5th Cir. 2003) (denying equitable estoppel) (quoting *Barfield v. Howard M. Smith Co. of Amarillo*, 426 S.W.2d 834, 838 (Tex. 1968)). Under Texas law, equitable estoppel is established when (1) a false representation or concealment of material facts (2) is made with knowledge, actual or constructive, of those facts, (3) with the intention that it should be acted upon, (4) to a party without knowledge or means of obtaining knowledge of the facts, (5) who detrimentally relies on the representations. *Med. Care Am., Inc.*, 341 F.3d at 422 (quoting *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515–16 (Tex. 1998)); *MTGLQ Invs., L.P. v. Alexander*, No. 20-20528, 2021 WL 3921418, at *5 (5th Cir. Sept. 1, 2021) (denying equitable estoppel); *Matter of Christopher*, 28 F.3d 512, 520 (5th Cir. 1994) (upholding bankruptcy court's denial of equitable estoppel).

16. Here, the Debtor has not provided evidence supporting any of the elements required to prove its right to equitable estoppel. The Debtor cannot show that HNGH made any material false representation or that HNGH concealed material facts, or that HNGH made false statements knowing they were false. The Debtor cannot show that HNGH made those statements with the intent that the Debtor rely on them, or that the Debtor was ignorant of any material facts leading up to closing. Even if it could, the Debtor cannot show that it detrimentally relied on any representations of HNGH which somehow precluded the Debtor from paying off HNGH by the Payoff Deadline.

## B. ELEMENTS OF EQUITABLE ESTOPPEL AND DEBTOR'S LACK OF PROOF

### (i) False Representation or Concealment of Material Fact

17. The Debtor is not entitled to equitable estoppel because it cannot show that HNGH's straightforward, consistent, numerous, and often pleading communications and representations were misleading as to any material fact regarding closing or the parties' performance under the Agreed Orders.

18. Equitable estoppel could only apply in this case if HNGH's acts or statements were affirmatively and materially misleading. *See In re Diabetes Am., Inc.*, 485 B.R. 340, 355 (Bankr. S.D. Tex. 2012); *see also In re Webber*, 350 B.R. 344, 376 (Bankr. S.D. Tex. 2006) (estoppel by silence may arise, but only when a person "is under a duty to speak" through a fiduciary or confidential relationship). A party need not spell out the reality of a situation in excruciating detail to make an accurate representation. Instead, the Fifth Circuit recognizes that under the doctrine of equitable estoppel, a party seeking to prove that a misrepresentation occurred must show "competent evidence" of a blatantly false representation or concealed material fact even in situations where communication "could perhaps have been clearer" between the parties. *MTGLQ Invs., L.P. v. Alexander*, No. 20-20528, 2021 WL 3921418, at *5 (5th Cir. Sept. 1, 2021) (discussing notices from an investment firm to party requesting equitable estoppel that gave notice of unpaid amounts in a foreclosure claim that could have been "clearer," and denying equitable estoppel).

19. Furthermore, Texas courts recognize that parties who fail to communicate with an adverse party in order to gain all relevant details about a particular topic cannot prove that the adverse party concealed or made false representations of the topic's material facts. *See United States v. Brink*, 795 F. Supp. 2d 565, 584 (S.D. Tex. 2011) (denying defendant's request to invoke equitable estoppel and finding no false representation or concealment when they never asked the adverse party about important details, and they otherwise "would have been advised" of the relevant details had they simply communicated with the adverse party); *see also GE Cap. Com., Inc. v. Wright & Wright, Inc.*, No. 3:09-CV-572-L, 2011 WL 124237, at *9 (N.D. Tex. Jan. 13, 2011) (denying defendant's motion for

summary judgment for equitable estoppel reasoning that, if true, plaintiff's contention that defendant simply did not review materials from the plaintiff showed the plaintiffs did not make false representations or conceal material facts). This is because "[o]ne who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Rhodes v. Guiberson Oil Tools Div.*, 927 F.2d 876, 882 (5th Cir. 1991) (quoting *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151 (1984) (per curiam)); *McGregor v. Louisiana State Univ. Bd. of Sup'rs*, 3 F.3d 850, 866 (5th Cir. 1993) (denying equitable estoppel defense to a party "seeking to profit from his failure to act diligently"); *Rushing v. Yazoo Cnty. by & through Bd. of Supervisors of Yazoo Cnty.*, 861 F. App'x 544, 555 (5th Cir. 2021) (denying equitable estoppel to party whose position resulted from "his own lack of diligence" rather than inequitable conduct by the other party).

20. Furthermore, a discussion does not involve a material fact if it pertains to "future intentions" rather than "present facts", or if it addresses a matter of law. *Stanley Educ. Methods, Inc. v. Becker C.P.A. Rev. Course, Inc.*, 536 F.2d 86, 90 (5th Cir. 1976) (finding equitable estoppel elements were not met under Texas law); *Petro Harvester*, 954 F.3d at 698 (denying equitable estoppel defense and noting that a representation made as to a matter of law is not a representation of material facts).

21. During the Evidentiary Hearing, the Debtor sought to show that HNGH made false statements or concealed material facts by: (i) failing to appropriately disclose Happy State Bank's participation in the proposed closing; (ii) failing to prepare and hold a rescission deed beginning on December 11, 2021 in a form suitable to the Debtor, a title company, and the Debtor's then-unknown future finance partner; and arguably by (iii) entering into Agreed Orders despite HNGH's purported lack of intent to perform. The Debtor's positions are not credible.

22. First, the Debtor was aware, *at the very latest*, by May 18, 2022, that Happy State Bank possessed a cloud on the Debtor's title because it was set forth plainly in Sendera's title commitment. *See* LENDER'S EX. 33a. While on May 20, 2022, HNGH's counsel expressed his believe that Happy

State Bank was not going to be a party to closing and that the Debtor needed to focus on paying off Happy State Bank, HNGH's counsel corrected that misunderstanding just days later. By May 27, 2022, HNGH and the Debtor had discussed how to address the Happy State Bank cloud on title. *See* LENDER'S EX. 58 (Walji bullets 3, 4 referencing HSB matters for closing). Shortly thereafter, HNGH provided drafts of the documents necessary to resolve the issue. LENDER'S EX. 60, 60a, 61. The Debtor even commented on the proposed form of the HSB release. LENDER'S EX. 65c. Perhaps ironically, it was the only document prepared by HNGH to which the Debtor relayed comments. As Julie Blakely testified, HNGH's hard work ensured that Happy State Bank was prepared to deliver the release necessary to resolve the Happy State Bank issue at closing. BLAKELY TRANSCRIPT, June 23, p. 94 [10-14].

23. The only other purported misrepresentation to which the Debtor cited during the Evidentiary Hearing was HNGH's counsel's failure to hold a rescission deed[2] in its possession beginning December 11, 2021. That issue is a red herring, as it did not affect the Debtor's ability to close a payoff transaction. Moreover, prior to May 10, 2022, the Debtor never once inquired about the status of the rescission deed. HNGH prepared its draft rescission deed in January, 2022, well before any potential closing. HNGH provided the draft to the Debtor on May 12, well before any potential closing. The Debtor simply failed to timely turn any proposed comments to the document, and seeks to shift its blameworthy omission to HNGH. Lack of diligence, however, cannot be excused through equitable principles. *See Brink*, 795 F. Supp. 2d at 584.

[2] Debtor also argues that HNGH's rescission deed should have been some other rescission instrument instead of a deed, despite the Agreed Orders' references to a "deed." However, disputes over nomenclature do not support a claim for equitable estoppel on the grounds of a material misrepresentation. *See Benjamin v. Bank of New York Mellon*, No. 4:20-CV-00214, 2020 WL 8093650, at *11 (S.D. Tex. Dec. 28, 2020), *report and recommendation adopted*, No. 4:20-CV-00214, 2021 WL 124332 (S.D. Tex. Jan. 13, 2021) (plaintiff not allowed to invoke equitable estoppel where he alleged material misrepresentation occurred when defendant represented that they sent a document via first class mail instead of certified mail, when the two are in fact not distinct categories).

24. Lastly, the Debtor vaguely argued that HNGH was a predatory lender which never intended perform under the Agreed Orders, and was instead waiting idly by until it had an opportunity to seize the Debtor's property in addition to material payments made by the Debtor to HNGH during the bankruptcy case. This argument is particularly nonsensical. Mr. Barton, the Debtor's principal, acknowledged that through the December Agreed Order, HNGH provided the Debtor four and a half months during which to find a source of funds from which to payoff HNGH, that the Debtor was not prepared to close a transaction by that date, and that HNGH could have refused to extend the Payoff Deadline. *See* BARTON TRANSCRIPT, July 1, p. 123 [1-8]. Doing so would have entitled HNGH to obtain title and possession of the property without a protracted Evidentiary Hearing.

25. There is no dispute that the Debtor actually did receive the extension set forth in the March Agreed Order. The Debtor remained in possession of the property from March 15 through May 31, and in fact remains in possession of the property. Accordingly, the Debtor could only be arguing that HNGH made a false representation *by entering into* the March Agreed Order because it supposedly never intended to perform *at closing*. The Debtor has not presented *<u>any</u>* evidence to support that position. To the contrary, the weight of the evidence presented at the Evidentiary Hearing tells the opposite tale. HNGH presented approximately 80 or more pieces of correspondence and drafts of documents evidencing its efforts to facilitate a closing by the Payoff Deadline. Moreover, the testimony of Julie Blakely, Vipin Nambiar, Nate Christensen, and John Kane all clearly establish that HNGH worked hard to prepare documents and solve problems in the hopes of achieving a successful closing by the Payoff Deadline. Given the overwhelming disparity in evidence, the testimony of witness at the Evidentiary Hearing, and proof that the Debtor lacked a funding source capable of closing by the Payoff Deadline, the Debtor's argument is so unmeritorious as to warrant no further discussion.

26. Simply put, the Debtor cannot identify any false representations made by HNGH related to the Agreed Orders and the Debtor's closing obligations. To satisfy its burden of proof, the Debtor must present evidence supporting each and every element of its equitable estoppel defense. Vague and unsubstantiated allegations are insufficient. *Perry*, 423 B.R. at 287. The Debtor cannot get past the very first element. Accordingly, this Court should decline to apply equitable estoppel.

**(ii) Knowledge of Misrepresented or Concealed Facts**

27. Even could the Debtor identify a material false representation made by HNGH, it would have to show that HNGH knew that the representation was false. It is "essential" to the application of equitable estoppel that "the person to be estopped had full knowledge of the real facts at the time the representation, concealment, or other conduct alleged to be the basis of the estoppel." *Young v. Amoco Prod. Co.*, 610 F. Supp. 1479, 1487 (E.D. Tex. 1985), *aff'd*, 786 F.2d 1161 (5th Cir. 1986). Unless the party seeking to be excused from performance presents evidence that the counterparty knew all material facts and misrepresented them, it is not entitled equitable estoppel. *See id.*; *Perry*, 425 B.R. at 375; and *Coverson v. HSBC Bank USA Nat'l Ass'n*, No. 5:18-CV-992-DAE, 2019 WL 12598994, at *3 (W.D. Tex. Jan. 24, 2019) (denying plaintiff's request for equitable estoppel).

28. In this case, the Debtor argues that HNGH's counsel made false representations about the need to involve Happy State Bank in the anticipated closing or, rather, the lack thereof. HNGH's counsel, however, testified that on May 20, 2022, when he, Mr. Walji, and Ms. Lindauer discussed closing matters and Happy State Bank, he was unaware that Happy State Bank was party to a collateral assignment of note and lien. KANE TRANSCRIPT, July 8, p. 112 [5-18]. When, on May 24, Mr. Kane learned of that collateral assignment from the Sendera title commitment, he promptly took actions to clarify his misunderstanding and resolve the Happy State Bank issue. *See id.* at p. 112 [19-25], 113 [7-25], and 114 [8-24]; LENDER'S EX. 34, 35, 54, 54a, 60, 60a, 61, 121, 121a-b.

29. The Debtor presented no evidence that Mr. Kane had full knowledge of the Happy State Bank collateral assignment at the time of his discussions with Debtor's counsel on May 20, 2022. While employees of HNGH may have been aware of the Happy State Bank collateral assignment, there was no evidence presented by the Debtor that any such employee made a knowingly false statement about Happy State Bank's potential involvement in a closing after the Debtor obtained the Sendera title commitment on May 18. Accordingly, the Debtor cannot prove the second element of its equitable estoppel defense.

**(iii) Clear Intent to Mislead**

30. To prove its third element, a debtor asserting an equitable estoppel defense "must show a clear intent in order for equitable estoppel to be found," and "there must be certainty to every intent, and the facts alleged to constitute it are not to be taken by argument or inference." *In re Webber*, 350 B.R. 344, 377 (Bankr. S.D. Tex. 2006) (quoting *Gulbenkian v. Penn*, 252 S.W.2d 929, 932 (Tex. 1952)). Intent to mislead must be found regarding the entire alleged misrepresentation at issue; showing intent for only a part of the alleged misrepresentation is insufficient to support an equitable estoppel claim. *In re Stanford*, 573 B.R. 205, 218 (Bankr. W.D. Tex. 2017) (intent found for only 1/12 interest in a homestead rather than the entire 8/12 interest at issue, barring application of equitable estoppel).

31. Where intent to mislead is ambiguous, equitable estoppel is not established as a matter of law. *Stross v. Centerra Homes of Texas, LLC*, No. 1:17-CV-676-RP, 2021 WL 5190877, at *3 (W.D. Tex. Sept. 27, 2021) (denying equitable estoppel sought by defendants). In the instant case, if the Debtor cannot show that HNGH "intended to mislead the debtor or influence the debtor to act or forebear to act," they cannot invoke equitable estoppel. *In re Mitchell*, 80 B.R. 372, 378 (Bankr. W.D. Tex. 1987) (rejecting a debtor's equitable estoppel defense); *Gardner v. Schiro*, No. CIV. A. 3:97-CV1621P, 1997 WL 726445, at *3 (N.D. Tex. Nov. 12, 1997) (affirming bankruptcy court's rejection

of a debtor's request for equitable estoppel defense); *Smith v. Chrysler Corp.*, 45 F. App'x 326, *3 (5th Cir. 2002) (per curium) (rejecting a claim for equitable estoppel when there was no evidence of intent that a misrepresentation be relied upon).

32. Furthermore, when the court can draw even a "reasonable inference" that any alleged misstatement or misrepresentation by HNGH was only a mistake, then the Debtor's intent element will remain unsatisfied. *VRC, L.L.C. v. City of Dallas*, No. CIV.A.3:03-CV-2450-B, 2004 WL 2958385, at *10 (N.D. Tex. Dec. 21, 2004) (denying the equitable estoppel sought by a party when statement by adverse party allegedly made with intent for that party to act could be construed as a mistake). For example, if a party faces "extensive administrative demands" making it unlikely that they know the details of one of many particular issues, then even erroneous statements about those issues by the party may be, to their knowledge, "an accurate representation" devoid of ill intent. *Hill v. Aurora Nat. Life Assur. Co.*, No. CIV. A. 3-97CV2014-P, 1999 WL 202548, at *6 (N.D. Tex. Mar. 30, 1999) (equitable estoppel inappropriate where defendant representative, due to extensive administrative burdens, mistakenly informed plaintiff his policy had excessive indebtedness).

33. In this case, the Debtor presented no evidence during the Evidentiary Hearing of any ill intent by HNGH, when making representations or otherwise. As noted above, the Debtor cannot even point to any material false statement by HNGH. Even if the Debtor points to Mr. Kane's ignorance about Happy State Bank's collateral assignment during the May 20 call with Debtor's counsel, the Debtor cannot argue with a straight face that Mr. Kane made such statements with intent "to mislead the debtor or influence the debtor to act or forebear to act" as required for equitable estoppel under Texas law. *See Mitchell*, 80 B.R. at 378. Moreover, the evidence presented at the Evidentiary Hearing shows that HNGH took many affirmative steps to comply with the Agreed Orders and to facilitate closing by the Payoff Deadline. Accordingly, the Debtor fails to satisfy yet another element of its equitable estoppel defense.

**(iv) No Knowledge or Ability to Obtain Knowledge of Facts Requirement**

34. To satisfy the fourth element of its equitable estoppel defense, the Debtor must have had "*no means of knowing* the real facts" to satisfy the fourth element of equitable estoppel. *Centralian Controls Pty, Ltd. v. Maverick Int'l, Ltd.*, No. 1:16-CV-37, 2018 WL 1415650, at *7 (E.D. Tex. Feb. 23, 2018), *report and recommendation adopted*, No. 1:16-CV-37, 2018 WL 1413339 (E.D. Tex. Mar. 21, 2018) (emphasis in original). Even if the Debtor has no knowledge of the facts, if they possess the "*means of knowing* the real facts," their argument for equitable estoppel fails. *See id.*; *see also Thermo Tech, Inc. v. Goodyear Tire & Rubber Co.*, 643 F.2d 1173, 1179 (5th Cir. 1981) (applying Texas law, finding estoppel requires a party "without knowledge of the misrepresented fact" who "was unable in the exercise of due diligence to ascertain the truth of the representation on which he relied.").

35. Importantly, courts applying Texas law recognize that a party knows or has the means of knowing about the terms or provisions of an agreement to which they have obligated themselves. *Cathedral of Hope v. FedEx Corp. Servs., Inc.*, No. 3:07-CV-1555-D, 2008 WL 2242546, at *6 (N.D. Tex. May 30, 2008) (dismissing equitable estoppel defense raised by party contesting contractual liability limitation); *Fleishman-Hillard, Inc. v. Oman*, No. SA-11-CA-921-H, 2012 WL 13028770, at *5 (W.D. Tex. Nov. 21, 2012) (denying equitable estoppel sought by a party who signed a contract with an adverse party, and the adverse party's LLC registration was publicly available); *Arizpe v. Principal Life Ins. Co.*, 398 F. Supp. 3d 27, 62 (N.D. Tex. 2019) (party to a written agreement not entitled to equitable estoppel and not excused from performing under its terms because the other party did not explain the document to them); *AMX Corp. v. Pilote Films*, No. CIV.A. 3:04-CV-2035-, 2007 WL 1695120, at *8 (N.D. Tex. June 5, 2007), *on reconsideration in part*, No. CIV.A.3:04CV2035-D, 2007 WL 2254943 (N.D. Tex. Aug. 7, 2007) (party with a copy of mutual written agreement not entitled to equitable estoppel, as they could have ascertained that their agreement expired).

36. Furthermore, when the facts are available for a party's "convenient ascertainment," they are not justified in relying on the representations of another pertaining to the facts. *See Cathedral of Hope* at *6. *See also Gowland v. Aetna*, 143 F.3d 951, 955 n.6 (5th Cir. 1998) (applying Louisiana law, finding party was not entitled to equitable estoppel and could not prove lack of knowledge of the facts when the adverse party reminded them of their obligations to file a required statement and the party seeking estoppel had filed such statements in the past).

37. Here, the Debtor was a party to the Agreed Orders, and possessed at all relevant times the Sendera title commitment. The Debtor is, as a matter of law, deemed to know the real facts about its obligations under the Agreed Orders and clouds on title to the property identified in the Sendera title commitment that needed to get resolved to facilitate a timely closing by the Payoff Deadline. The Debtor's behavior from May 20 through May 24 highlights just this. Mr. Walji argued at hearing that he was duped by Mr. Kane on their May 20 phone call regarding Happy State Bank's cloud on title. But two business days later, Mr. Walji is party to an email from Sendera attaching the title commitment and specifically requesting the recordable instrument necessary to resolve the still-outstanding Happy State Bank cloud on title. LENDER'S EX. 33, 33a. Because the Debtor had the Sendera title commitment in its possession, which identified the Happy State Bank cloud on title, the Debtor cannot now play the ignoramus. The Debtor had no issue repeatedly demanding delivery of documents that it believed necessary to resolve the Axos cloud on title, even despite repeated assurances from HNGH that all such documents had been delivered to Sendera and the Debtor on multiple occasions. *See* LENDER'S EX. 33a, 56, 56a, 79, 80, 80a.

38. Regarding the Agreed Orders, as a signatory to each of the Agreed Orders, the Debtor knew as a matter of law that closing absolutely must take place by the Payoff Deadline. Even so, the Debtor argued at the Evidentiary Hearing that it was not certain precisely what documents HNGH and the Debtor, respectively, needed to prepare for closing. It appears to be the Debtor's position

that it was, in fact, HNGH's obligation to prepare substantially all documents for closing, and to provide title company information to all other parties submitting documents necessary for the Debtor's closing.

39. The Debtor ignores a few critical issues. First, the Debtor never provided HNGH with a list of document demands for closing until May 30, at 3:24 pm, Memorial Day, the day before closing. LENDER'S EX. 65, 65a. Even if HNGH is being generous, the first request HNGH received from any party for closing-related documents was on May 24. *Id.* at 33, 33a. As dubiously testified to by the Debtor's expert, Mr. Dooley—who has never once handled a $40 million closing—it would take a week to 10 days to put together such papers. DOOLEY TRANSCRIPT, June 29, p. 105 [11-14]. Mr. Aster, HNGH's expert, noted that while a party might be capable of drafting the documents in question in 7 to 10 days, it would take far longer to get those documents fully negotiated, reviewed, and executed. ASTER TRANSCRIPT, July 11, p. 55 [7-21]. As Mr. Aster testified, it would more typically require a month to prepare and finalize all such documents for closing. *Id.* Given the immensity of the time constraints caused by the Debtor's own delays, the Debtor should have taken the lead oar in preparing initial drafts of the majority of the documents it believed necessary for closing. As HNGH proved throughout the process, HNGH would promptly turn comments in a good faith effort to resolve document disputes and to facilitate closing.

40. Alternatively, the Debtor could have taken steps to confirm with HNGH precisely which documents HNGH and the Debtor were preparing for closing. Evidence presented at the Evidentiary Hearing shows that HNGH, not the Debtor, requested a closing checklist and status update on the documents that the Debtor was preparing for closing. LENDER'S EX. 48. In return, Debtor's counsel assured HNGH's counsel that the closing was coming along and that the Debtor was working on documents. KANE TRANSCRIPT, July 8, p. 112 [1-9]. The Debtor's representations

proved false. The Debtor cannot now point the finger at HNGH for failure caused by the Debtor, and that the Debtor must have known how to avoid.

**(v) Detrimental Reliance**

41. A party claiming equitable estoppel must have reasonably relied on its adversary's conduct or false statements in an injurious or detrimental manner that changes its position for the worse. *In re Montgomery*, 80 B.R. 385, 390 (Bankr. W.D. Tex. 1987) (denying equitable estoppel); *Neiman–Marcus Group, Inc. v. Dworkin*, 919 F.2d 368, 371 n.4 (5th Cir. 1990). Reliance is "fundamental" to an equitable estoppel claim, and it must be "reasonable and justified." *Purdin v. Wells Fargo Bank, N.A.*, No. 3:15-CV-3956-D, 2016 WL 1161808, at *5 (N.D. Tex. Mar. 23, 2016). Furthermore, reasonable reliance must be detrimental or prejudicial. *See id.* at *4. Texas courts only consider actual events and prejudice, rather than speculative prejudice, in determining whether a party detrimentally relied on another in an action for equitable estoppel. *Canal Indem. Co. v. Palmview Fast Freight Transp., Inc.*, 750 F. Supp. 2d 743, 753 (N.D. Tex. 2010).

42. Reliance on a misstatement or misunderstanding that may be reasonable at one point in time is no longer reasonable at a later point in time if a party acts in such a way that should dispel the other's misunderstanding. *See Salzstein v. Bekins Van Lines Inc.*, 993 F.2d 1187, 1191–92 (5th Cir. 1993); *Canal Indem. Co.*, 750 F. Supp. at 753. For example, even if there was a prior misrepresentation on which the Debtor could possibly claim it reasonably relied, subsequent communications that accurately represent the situation make continued reliance on the earlier misrepresentation unreasonable and bar an equitable estoppel defense. *See Salzstein*, 993 F.2d at 1192 (insurance adjuster's incorrect statement that claim forms did not have to be completely filled in could not establish detrimental reliance when two letters later informed the party seeking equitable estoppel that the claim forms must be filled in completely, making continued reliance unreasonable); *see also Int'l Ints., L.P. v. Wadley*, No. CV H-05-19, 2008 WL 11389571, at *8 (S.D. Tex. Sept. 9, 2008) ("reliance on

representations made in a business or commercial transaction is not justified when the representation takes place in an adversarial context.") (quoting *Coastal Bank SSB v. Chase Bank of Tex., N.A.*, 135 S.W.3d 840 (Tex. App.—Houston [1st Dist.] 2004, no pet.)).

43. In this case, the Debtor cannot cite to any specific false representations or conduct on which it reasonably relied to its detriment at closing. As detailed above, any inaccurate statement by Mr. Kane to Mr. Walji on May 20 regarding Happy State Bank was rectified and resolved by later communications from Sendera and Mr. Kane. The Debtor's purported continued belief that Happy State Bank's collateral assignment did not need to be resolved at closing became unreasonable as a matter of law no later than May 24, 2022.

44. Knowing this, the Debtor will undoubtedly make a vague, general argument that it relied on HNGH's promise to perform at closing as required by express and implied terms of the Agreed Orders, and HNGH's failure to deliver certain executed documents to Sendera before the Payoff Deadline was misleading conduct on which the Debtor reasonably relied. However, as illustrated by Mr. Dooley and Mr. Aster's respective testimony, the Debtor waited until the very last minute before indicating that it might be able to close a transaction and requesting documents from HNGH. Moreover, despite the extraordinary timing of the Debtor's request for closing documents, the Debtor appears to have taken no steps to draft any documents pertinent to closing. As Mr. Marx made clear, though he did not represent the Debtor, *he* drafted the form of rescission instrument circulated by the Debtor on May 30. To be clear, HNGH is unaware of *any* closing document prepared by the Debtor prior to the expiration of the Payoff Deadline. Moreover, while the Debtor circulated someone's redline to HNGH's proposed Happy State Bank release, HNGH believes those proposed revisions similarly came from Mr. Marx, not the Debtor. If so, then HNGH does not believe the Debtor even commented on *any* form of *any* closing documents circulated by HNGH, Mr. Marx, or any other entity. The Debtor's lack of participation in the closing process, and failure to secure a

funding source capable of timely closing, precludes reasonable reliance on any purportedly material and false statement by HNGH regarding closing, the Agreed Orders, or Happy State Bank.

## CONCLUSION

45. Given the Debtor's total failure to participate in the closing process, and considering Mr. Walji's misrepresentations about the Debtor's preparation of documents, the Debtor cannot be deemed to have reasonably relied on any purported false representations by HNGH. At the end of the day, it was the Debtor's failure to timely secure a finance party capable of closing in an orderly fashion by the Payoff Deadline that caused the Debtor's default. There is no evidence to the contrary, and the Debtor cannot identify any material false statement by HNGH on which it reasonably relied that would excuse its performance under the doctrine of equitable estoppel. Accordingly, the Court should reject the Debtor's equitable estoppel defense and grant HNGH's Motion to Enforce.

## PRAYER

**WHEREFORE**, for the reasons stated herein, HNGH respectfully requests that this Court grant its Motion to Enforce.

DATED: July 26, 2022

Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

By: */s/ John J. Kane*
**John J. Kane**
State Bar No. 24066794
**S. Kyle Woodard**
State Bar No. 24102661
Bank of America Plaza
901 Main Street, Suite 5200
Dallas, Texas 75202
Tel.: (214) 777-4200
Fax: (214) 777-4299
Email: jkane@krcl.com
Email: kwoodard@krcl.com

***Counsel for HNGH Turtle Creek, LLC***

**CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2022, a true and correct copy of the foregoing document was filed with the Court and served via the Court's electronic case filing system (ECF) upon all parties receiving such electronic service in this proceeding.

*/s/ John J. Kane*
John J. Kane