Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEY FOR DEBTOR

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **2999TC ACQUISITIONS, LLC,** | § | **CASE NO. 21-31954-hdh11** |
| | § | |
| **DEBTOR.** | § | **CHAPTER 11** |

**DEBTOR'S POST-HEARING BRIEF ON MOTION TO
ENFORCE AGREED ORDERS FILED BY HNGH TURTLE
CREEK, LLC AND DEBTOR'S OPPOSITION THERETO**

TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:

COMES NOW 2999TC Acquisitions, LLC, Reorganized Debtor in the above styled and numbered case ("Debtor"), and files this Post-Hearing Brief on Motion to Enforce Agreed Orders filed by HNGH Turtle Creek, LLC and Debtor's Opposition Thereto, and in support would show the Court the following:

**SUMMARY OF ARGUMENTS AND REQUESTED RELIEF**

During the course of this litigation the Debtor has demonstrated through documentary evidence, legal authorities and testimony from both parties that HNGH Turtle Creek, LLC ("HNGH") intentionally breached the Agreed Orders entered by this Court. Those Orders established a sequence of events by which HNGH was required to provide certain documents in a certain order to enable the Debtor to obtain the new financing necessary to pay its obligations to HNGH as proposed in its confirmed plan of reorganization. The Debtor was ready to close and

fund the refinancing transaction by the Court-ordered deadline. However, instead of complying with the Agreed Orders, HNGH intentionally withheld the very documents the Debtor needed most (a recission deed and a note reinstatement), thus continuing a bad faith course of conduct that began when it acquired the Debtor's promissory note shortly before it matured and set out to seize the valuable real estate that secured it. HNGH's material breaches relieved the Debtor of the duty to perform, but the Debtor still endeavors to perform in full, with the Court's assistance. The Debtor requests the Court to enter orders denying HNGH's request for relief and granting orders compelling HNGH to provide the documents necessary for closing as it is bound to do under the Agreed Orders and the order confirming the Debtor's Plan.

The Debtor further requests that once HNGH has provided the documents necessary for closing, it be given a reasonable period of time in the Court's discretion in which to close the refinancing transaction that will result in satisfaction of its duties and payments to creditors under the Agreed Orders and the Plan.

In closing this Brief, the Debtor renews its request for the Court to appoint a neutral third party to assist the parties in resolving any transactional and documentary disputes that may arise between HNGH and the Debtor in closing the transactions required under the Agreed Orders.

In addition to the arguments and authorities below, the Debtor refers the Court to its PowerPoint presentation offered as a demonstrative exhibit during its closing arguments (Doc. No. 250, "Debtor's PPT"), and incorporates by reference all the arguments and authorities in its *Objection to Motion to Enforce Agreed Orders* (Doc. No. 145); *Supplemental Response to Motion to Enforce Agreed Orders* (Doc. No. 149); *Response Opposed to Notice filed by Creditor Centennial Bank d/b/a Happy State Bank* (Doc. No. 153); *Objection to Affidavit filed by Creditor HNGH Turtle Creek, LLC* (Doc. No. 154); *Second Supplemental Response in Opposition to Motion*

*to Enforce* (Doc. No. 189) and its supplemental Brief (Doc. No. 202); *Surreply to HNGH Turtle Creek's Reply in Support of Motion to Enforce Agreed Orders* (Doc. No. 212); *Response to Motion to Strike* (Doc. No. 214); *Motion to Reopen Testimony* (Doc. No. 215); and *Trial Brief Regarding HNGH's Legal Nullity "Document Speaks for Itself" Objections* (Doc. No. 231).

**ARGUMENT AND AUTHORITIES**

1. On June 3, 2022, HNGH Turtle Creek, LLC ("HNGH") filed its *Motion to Enforce Agreed Orders* (Doc. No. 134, the "Motion to Enforce"). The Debtor opposed the Motion to Enforce with its *Opposition to Motion to Enforce Agreed Orders* (Doc. No. 145), its *Supplemental Response to Motion to Enforce Agreed Orders* (Doc. No. 149), and its *Second Supplemental Response in Opposition to Motion to Enforce Agreed Orders* (Doc. No. 189). HNGH filed a *Reply to the Debtor's Second Supplemental Response in Opposition to Motion to Enforce Agreed Orders* (Doc. No. 199), to which the Debtor replied with its *Surreply to HNGH's Reply in Support of Its Motion to Enforce Agreed Orders* (Doc. No. 212).

2. The "Agreed Orders" to which the Motion to Enforce refers are the *Agreed Order Regarding Motion to Lift Stay [Doc. 10] Motion to Dismiss [Doc. 9], Motion for Sanctions [Doc. 15] and Motion to Enforce Stay [Doc. 14]* entered by the Court on December 10, 2021 (Doc. No 64, the "First Agreed Order"), the *Agreed Order Modifying Order on Motion to Dismiss and for Relief From Stay* entered March 17, 2022 (Doc. 94, the "Second Agreed Order"), and the Agreed Order of Judgment and Dismissal of Adversary Proceeding with Prejudice to Refiling (Doc. No. 15 in adversary proceeding no. 21-31954, the "Adversary Order").

3. The Court conducted a lengthy hearing on the Motion to Enforce and Debtor's opposition on multiple days in June and July, 2022. Closing arguments were held July 12, 2022. The Debtor submits this Post-Hearing Brief for the purpose of summarizing the most salient facts

and evidence and presenting the legal authorities the Debtor believes are most helpful to the Court in reaching a decision.

4. **Relief requested by HNGH.** The actions HNGH requests the Court to take in the Motion to Enforce are:

> a) that the Court "confirm that HNGH is now the rightful legal owner of the Property, with all right, title, and interest therein free and clear of all liens, claims, encumbrances, and clouds on title asserted or that could be asserted by the Debtor, Tim Barton, and any other entities set forth in the Stipulation and Agreed Orders";
>
> b) that the Court "require the Debtor to take all steps necessary to release its Lis Pendens, and to actually cause the release of its Lis Pendens, not later than seven days after entry of an order approving this Motion"; and
>
> c) that the Court "hold the Debtor, Tim Barton, and any other necessary party in contempt of court should they interfere with HNGH's enjoyment of the Property, or seek to assert litigation against HNGH that they have previously waived, released, adjudicated to judgment, or had dismissed with prejudice to refiling".

Motion to Enforce, p. 7.

5. **The relief requested by HNGH cannot be granted as a procedural matter.** The Debtor pointed out in its *Surreply* referenced above (Doc. No. 212, the "Surreply") that none of this requested relief is procedurally available to HNGH without the filing of an adversary proceeding pursuant to Fed. R. Civ. Pro. 7001. During closing arguments HNGH offered this response:

a. HNGH argues that its request that the Court "confirm that HNGH is now the rightful legal owner of the Property" is not a "determination of an interest in

property" requiring an adversary proceeding pursuant to Fed. R. Bankr. Pro. 7001(2) because the Agreed Orders permitted HNGH to file leave in place a deed-in-lieu of foreclosure (Deed-in-Lieu") filed in violation of the automatic stay, and HNGH is now only trying to enforce those orders. See HNGH PowerPoint presentation (Doc. 251, "HNGH PPT"), p. 6.

> This argument fails because, as argued in the Surreply, the adversary proceeding that gave rise to the Adversary Order did not seek a determination of a property interest, only the avoidance of the post-petition Deed-in-Lieu, and the Adversary Order makes no determination of an interest in property. Only now in the Motion to Enforce does HNGH seek such a determination. Surreply, p. 2.

b. HNGH argues that its request for a show cause order does not seek injunctive relief but merely enforcement of Agreed Orders in which Debtor waived its current arguments regarding HNGH's breaches. HNGH PPT, p. 7.

> As previously briefed in the Surreply, the waiver and release language to which HNGH refers merely releases matters arising from "factual allegations set forth by Plaintiff in the Complaint", not the conduct that took place afterwards in May 2022 when HNGH refused to supply the very documents that would have allowed the Debtor to close a loan to pay off HNGH. HNGH's actions constitute new wrongdoings unrelated to the issues raised in the Adversary Proceeding, thus were not contemplated by the waiver. Surreply, p. 3. By asking the Court to prohibit the Debtor from making its claims of new defaults by HNGH in May 2022, HNGH is

seeking new injunctive relief that requires an adversary proceeding pursuant to Fed. R. Bankr. Pro. 7001(7).

c. HNGH also argues that the Court has broad power under 105(a) to enforce its prior orders, thus eliminating any need for a new adversary proceeding. HNGH PPT, p. 8. However, Section 105(a) has well-defined limits, and should not be used to circumvent the Bankruptcy Code or Rules.[1]

d. HNGH also argues that the Court can issue sanctions, grant costs, fees in contested matters, citing *In re Berry*, 582 B.R. 886, 892-93 (Bankr. D. S.C. 2018) (enforcing plan); *In re Direct Media Power, Inc.,* 582 B.R. 739, 750 (Bankr. N.D. Ill. 2018) (post-conf. cash collateral). HNGH PPT, p. 8. But these cases did not require or prohibit conduct in the nature of an injunction. In *Berry*, the Debtor sought an award of attorney's fees and costs under 11 U.S.C. § 105 for a creditor's failure to comply with the terms of a confirmed plan of reorganization, and in *Direct Media* the court awarded attorney fees for contempt of a prior order. In neither case did the court mandate or enjoin certain actions by a debtor, as HNGH seeks here.

Therefore, HNGH is barred from seeking the relief it requests as a threshold matter of procedure.

6. **Actions required under Agreed Orders.** The Agreed Orders require the parties to perform the following actions in the below order:

[1] *Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.)*, 378 F.3d 511, 523 (5th Cir. 2004). Section 105(a) "does not permit [] courts to 'act as roving commissions to do equity.'" Section 105(a) cannot be used to create substantive rights not found in the Bankruptcy Code or contravene specific Code provisions. *Padilla v. Wells Fargo Home Mortg., Inc. (In re Padilla)*, 379 B.R. 643, 667 (Bankr. S.D. Tex. 2007), citing *In re Waindel,* 65 F.3d 1307, 1309 (5th Cir. 1995).

a) HNGH must execute and HNGH's counsel must hold a "recission deed" from December 10, 2021 forward;

b) *"immediately prior"* to Debtor's payment of its obligations to HNGH, HNGH must reinstate the Debtor's promissory note (the "Note") which it had deemed to be in default as of October 29, 2021; and

c) *after* HNGH reinstates the promissory note, the Debtor must pay off the reinstated note in full by no later than May 30, 2022 (extended by rule to May 31st due to federal holiday

First Agreed Order, p. 2, first decretal paragraph. Second Agreed Order, p. 2, second decretal paragraph.

7. **HNGH breached the Agreed Orders.** HNGH failed to perform item 6(a) above. It did not, in fact, execute, and its counsel did not hold, a recission deed or any other form of recission agreement rescinding the Deed-in Lieu of foreclosure it recorded on November 1, 2021, after the Debtor's filing of its voluntary bankruptcy petition. The evidence elicited at the hearings on the Motion to Enforce showed:

a) No recission instrument of any form was drafted or signed by HNGH or its counsel until a proposed "special warranty deed" was sent to Debtor's counsel on May 12, 2022. HNGH PPT, p. 11. [Ex. D14, pgs. 12-18]. This was a material breach of HNGH's promise to sign and hold a recission deed immediately upon entry of the First Agreed Order on December 10, 2021.

b) The May 12, 2022 draft of a special warranty deed was a reconveyance from HNGH to Debtor which did not contain recission language and further encumbered the Property by inserting a use restriction in favor of HNGH and making it subject to the terms

of the Agreed Order (resulting in a party having to refer to the Agreed Order for the applicability of terms and effectiveness of the so called rescission deed which should stand alone), all of which constitutes a clear breach of the First Agreed Order and the Plan. A mere reconveyance of the property in which HNGH remains in the chain of title (thus leading to tax implications, among other problems) is not a recission. The meaning of "rescission" is clear – it is the restoration of a party to the "*status quo ante*", the condition that prevailed before the occurrence of a certain event.[2] The Deed-in-Lieu was recorded post-petition, which was a violation of the automatic stay[3]. In the Adversary Order the Debtor agreed to dismiss its avoidance action under 11 U.S.C. Sec. 547 and 548 *in exchange for a recission deed*, i.e., a document that would place the Debtor in the same position had the Court entered a judgment voiding the Deed-in-Lieu *ab initio*. HNGH reneged on its promise by a) failing to hold an executed recission deed from December 10, 2021 forward, and b) eventually providing a special warranty deed that rescinded nothing and would leave HNGH in the chain of title, which was never the agreement.

c) HNGH's failure to draft or sign a recission deed was intentional. The testimony of Nate Christensen, general counsel for HNGH, revealed that HNGH's executives discussed the need to create the recission deed in January 2022, but deliberately chose not to do so. Testimony of Nate Christensen, June 24, 2022, pg. 205.

---

[2] "Thus, rescission is one of the principal asset-based remedies in restitution, and it restores the parties to the status quo ante by unwinding the contractual exchange instead of pressing it forward." *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 819 (Tex. 2012).

[3] The Deed-in-Lieu also created another cloud on title when it was signed and recorded by HNGH as a *Texas* corporation, when in fact it is a Delaware corporation.

8. HNGH also failed to perform item 6(b) above. It never offered to the Debtor or a title company any document or agreement reinstating the Note, and still has not done so. The evidence admitted at the hearings showed:

a) No reinstatement document has ever been tendered to the Debtor or its counsel. Testimony of K. Walji, June 24, 2022, pg. 54; HNGH Ex. 30; HNGH Ex. 32]

b) HNGH could not have reinstated, and still cannot reinstate the Note because it does not hold the Note, having assigned and indorsed the Note over to Happy State Bank ("HSB") as collateral for its obligation to HSB. HNGH Ex. 54a; Testimony of Julie Blakely, June 23, 2022, pg. 78.

c) HSB's representative testified that it will not release the Note until HNGH has paid its $26 million debt to HSB, and that those funds must actually be in the bank account of HSB, not merely at a title company. Testimony of Julie Blakely, June 23, 2022, pgs. 129-131.

d) Again, HNGH's actions were intentional. HNGH admitted that it never had the money to pay its debt to Happy State Bank until the Debtor paid HNGH, and thus never could have reinstated the Note prior to the Debtor's payment of HNGH, as it expressly promised to do in the First Agreed Order. Indeed, Vipin Nambiar, HNGH's representative, testified that he saw no need for HNGH to pay off HSB at all, unless the Debtor closed first. Testimony of Vipin Nambiar, June 27, 2022, pg. 68].

9. Despite its best efforts, HNGH's arguments betray the fact that it has no answer for its failure to reinstate the Note *prior* to the Debtor's payoff. This inconvenient truth is no fault of the Debtor. HNGH expressly agreed to a clearly defined sequence of events that it intentionally failed to honor. HNGH's only response to this breach of contract is to propose a reversal of the

sequence dictated by the First Agreed Order: *If* the Debtor pays HNGH first, *then* HNGH will pay off HSB, *then* HSB will release its collateral assignment of the Note, *then* HNGH will reinstate it. But that was not the Court's Order and it was not the agreement. If HNGH did not have the money in the bank to pay off HSB before the Debtor paid HNGH, it was obligated to find it, whether by equity infusion or financing. Its failure to do so was another material breach, which by law relieved the Debtor from the duty to perform, as discussed below.

10. **The Debtor was ready, willing and able to pay off HNGH on May 31, 2022, had HNGH performed as agreed.**

Regarding item 6(c) above, the Debtor presented evidence that it stood ready to pay the Note once it was reinstated and HNGH provided the other necessary closing documents. Mr. Timothy Barton, president of the Debtor, and Mr. Khudabuksh Walji, transactional counsel to the Debtor, testified to the existence of at least four term sheets in which prospective lenders provided proof of ability to fund, and other lenders which expressed their willingness and ability to do so. Testimony of K. Walji, June 24, 2022, pp. 17-18, 28-32, 64-70, 94-97, 153-157. Testimony of T. Barton, July 1, 2022, pp. 52-53, 55-63, 65-68, 74-76, 117-118, 123-126, 142-146, 151-153.

11. **HNGH's intentional material breaches excused the Debtor's performance under the Agreed Orders.** It is well-established law in the Fifth Circuit and the State of Texas that if one party to a contract materially breaches that contract, the other party is excused from performance. In *Arya Risk Mgmt.Sys., Pvt. Ltd. v. Dufossat Capital P.R., LLC*, No. H-16-3595, 2022 U.S. Dist. LEXIS 92761, *47 (S.D. Tex. 2022), the court summarized this principal as follows:

> "A fundamental principle of contract law is that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform." *Matter of Dallas Roadster,* 846 F.3d at 127 (quoting *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994)). What

constitutes a breach of contract is a question of law, but whether the breaching conduct occurred and whether a breach is material are questions of fact. Id. (citing *X Technologies, Inc. v. Marvin Test Systems, Inc.*, 719 F.3d 406, 413-14 (5th Cir. 2013), and *Henry v. Masson*, 333 S.W.3d 825, 835 (Tex. App. — Houston [1st Dist.] 2010, pet. denied)). See also *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436-37 (Tex. 2017) (per curiam) (discussing prior material breach). To determine whether a breach is material, Texas courts consider the five factors articulated in *Mustang Pipeline Co. v. Driver Pipeline Co.*[134 S.W.3d 195, 199 (Tex. 2004)]:

> (a) the extent to which the injured party will be deprived of the benefit he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of the circumstances including any reasonable assurances; [and]
>
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.
>
> *Henry*, 333 S.W.3d at 835.

12. Regarding factor (a) above, as a direct result of HNGH's defaults described above, the Debtor was deprived of the benefit of its contractual agreements under the Agreed Orders.

   a. Without the recission deed, the Debtor the Debtor could not satisfy any lender's or title company's requirement that the debtor hold clean title to the property so that it could pledge the property to the lender as collateral for the new financing necessary to pay off HNGH. Testimony of Randy Marx, June 21, 2022, pgs. 86-87.

   b. The special warranty deed tendered by HNGH would have failed to void the Deed-in-Lieu and remove HNGH from the chain of title, which was a primary purpose of the First Agreed Order.

c. Because the Note was not reinstated and could not be reinstated while in the possession of HSB, the Debtor could not pay off HNGH by May 31, 2022 as required under the Agreed Orders.

13. Regarding factor (b) above, it is possible, of course, for HNGH to compensate the Debtor for the benefit of which it has been deprived. HNGH could simply satisfy its obligations to provide a true recission deed and reinstate the promissory note. However, HNGH has refused to do so, leaving the result that the Debtor cannot be "adequately compensated".

14. Factor (c) above does not apply to this situation. As a result of HNGH's failure to deliver the recission deed or the note reinstatement, it is the Debtor, not HNGH, who suffered the forfeiture by being blocked from obtaining new financing and fulfilling its plan of reorganization.

15. With respect to factor (d) above, HNGH's conduct shows that there is *no* "likelihood that the party failing to perform or to offer to perform will cure his failure". HNGH has offered nothing to cure its failure to provide a recission deed or reinstate the note, and has given no assurances that it will ever do so unless compelled by the Court.

16. Regarding factor (e) above, the behavior of HNGH has emphatically shown that it is in bad faith. The evidence shows that HNGH is a predatory lender, having purchased the note on December 20, 2020, only eight months before maturity [Ex. D17, pgs. 89-135], and having placed road blocks in the path of the Debtor's reorganization by failing to provide a recission deed or reinstate the note.[4]

17. **HNGH is equitably estopped from enforcing the Agreed Orders.**

[4] Tim Barton, the debtor's president, testified to the highly unusual nature of this acquisition by HNGH. See Debtor's PPT p. 22.

Under the doctrine of equitable estoppel, a party to a contract is precluded from claiming the benefits of the contract while simultaneously attempting to avoid the burdens that contract imposes as well.[5] With its Motion to Enforce the Agreed Orders, that is precisely what HNGH is attempting to do. Agreed orders entered by a court are contractual agreements between the consenting parties with the added authority of the court's order to perform.[6] By failing to perform its obligations to provide a rescission deed and reinstate the note, HNGH materially breached the Agreed Orders. HNGH is now equitably estopped from seeking to enforce the Agreed Orders.

18. **HNGH also intentionally defaulted on its duties under Debtor's confirmed plan of reorganization**. In addition to refusing to provide a rescission deed or reinstate the note, HNGH has refused to provide the reasonable and necessary closing documents necessary for a title company to issue a clean title policy, thereby ensuring that no new lender will provide the financing to enable the Debtor to pay off HNGH. During the hearings of the Motion to Enforce, the evidence showed:

a) Sendera Title Company provided to counsel for HNGH a list of documents necessary to close the transaction. HNGH Ex. 26; Ex. 33; Ex. 33a, pgs. 7-9.

b) Without these documents, a title company would not issue a title policy. Testimony of Randy Marx, June 13, 2022, pgs. 64-65.

c) These documents are reasonable and necessary in any commercial real estate transaction, especially one of this magnitude. Testimony of Randy Marx, June 13, 2022, pg. 78.

---

[5] *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004). *Deosaran v. Ace Cash Express, Inc.*, 2017 U.S. Dist. LEXIS 54422, *8 (N.D. Tex. 2017).

[6] *In re Bergenholtz*, 2013 Bankr. LEXIS 2769, at *15 (Bankr. E.D. Tex. 2013); "An agreed order, like a consent decree, is in the nature of a contract, and the interpretation of its terms presents a question of contract interpretation." *Thomasville Furniture Indus., Inc. v. Elder—Beerman Stores*, 250 B.R. 609, 635 (S.D. Ohio 1998). *See also In re 360 Inns, Ltd.*, 76 B.R. 573, 578 (Bankr. N.D. 1987) ("[A]n agreed order in the nature of a contract and is subject to the rules of construction of contracts.").

19. Article II of the Debtor's *Third Amended Plan of Reorganization* (Doc. No. 108, the "Plan"), titled "Concept of the Plan", required HNGH to deliver a "recission deed" to the Debtor and the Debtor was required to "convey its interest in the Property to a new single purpose entity that will obtain a loan and concurrently payoff HNGH and, as soon as reasonably practicable thereafter, fund the Plan payments described herein." Plan, p. 8. The same transaction was embodied in the Court's *Order Confirming Debtor's Third Amended Plan of Reorganization* (Doc. No. 123, the "Confirmation Order") as the foundation for the feasibility of the Plan. Section (k) of the Confirmation Order states as follows:

> k. Section 1129(a)(11). The Plan is feasible. Confirmation of the Plan is not likely to be followed by the liquidation of, or need for further financial reorganization of, the Debtor. The Plan does contemplate that the Debtor's property and rights in property will be conveyed following confirmation to a new entity that will obtain the required financing to payoff HNGH. Either such new financing or the Debtor's existing ownership will pay off any remaining creditors in the case as called for by the Plan, including Allowed Unsecured Claims, Allowed Administrative Claims, and fees of the United States Trustee.

20. HNGH did not cast a vote on the Plan, but it is still bound by the Confirmation Order. By intentionally failing to provide not only the recission deed and reinstatement of the Note, but also the other reasonable and necessary closing documents described above, HNGH has prevented the Debtor from performing the transactions required by the Plan and Confirmation Order, which constitutes a default on the Plan and HNGH's court-ordered obligations. These defaults under the Plan and Confirmation Order are additional grounds for HNGH to be equitably estopped from seeking to enforce the Agreed Orders pursuant to the authorities cited above.[7]

---

[7] 11 USC Section 1142 provides that "[t]he court may direct the debtor ***and any other necessary party*** to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan." The Debtor has previously requested the Court to enter an order under 11 U.S.C. Section 1142 enforcing the Plan and Confirmation Order in this regard in its *Motion Pursuant to Sections 1142 and 105(a) of the Bankruptcy Code to (I) Enforce, (II) Clarify, Modify and/or Amend Agreed Orders and Plan Confirmation Order, and (III) Direct the Execution and Delivery of Instruments Necessary to Transfer Property Dealt with By the Confirmed Plan* (Doc. No. 173).

21. **Plan Implementation Motion and Plan Modification Motion.** On June 20, 2022 the Debtor filed its *Motion Pursuant to Sections 1142 and 105(a) of the Bankruptcy Code to (I) Enforce, (II) Clarify, Modify and/or Amend Agreed Orders and Plan Confirmation Order, and (III) Direct the Execution and Delivery of Instruments Necessary to Transfer Property Dealt with By the Confirmed Plan* (Doc. No 173, the "Plan Implementation Motion") and its *Motion for Entry of an Order Authorizing the Reorganized Debtor to Modify Debtor's Third Plan of Reorganization and Plan Confirmation Order* (Doc. No. 174, the "Plan Modification Motion"). In these Motions the Debtor seeks to modify the Plan and/or Confirmation Order to specify the exact documents required from HNGH to allow Debtor to perform under the Plan. In its closing, HNGH argued that neither Motion can be granted because the relief sought would be a substantial and adverse change to its treatment under the Plan, given that it would result in a delay of the May 31, 2022 deadline under the Agreed Orders for the Debtor to pay off HNGH. For this proposition HNGH cites a single case, *In re Sandford*[8], a 2013 case from a New Mexico bankruptcy court. In *Sandford*, the debtor sought a plan modification to delay payment to her secured creditors from August 15 to December 31, 2013, a four and one-half month delay. *Id.* at 310. The court found that for several reasons unique to that case the debtor should be held to the original payment deadline. There are several distinguishing factors that make *Sandford* inapplicable to this situation, including: a) the case was decided under 11 USC Section 1127(e), which applies only to individual debtors and sets out standards for plan modification that are completely different than those under Section 1127(b), and b) the requested delay was four and one-half months, whereas in this case the Debtor seeks only a reasonable period of time to receive the documents needed to close its refinancing transaction and pay off HNGH. Such a minimal and necessary delay, the exact length of which the

[8] *In re Sandford*, 498 B.R. 307 (Bankr. D.N.M. 2013).

Debtor leaves to the Court's discretion, does not amount to the "material and adverse" change trumpeted by HNGH.

22. **Debtor stands ready to pay the reinstated Note to HNGH and requests the Court's assistance.** Despite HNGH's breaches of the Agreed Orders, the Debtor stands ready to close the refinancing transaction and pay off HNGH in full. Some of the prospective lenders identified by the Debtor in testimony and documentary evidence are still willing to fund and close, and others have stepped forward since then. To accomplish this, the Debtor and/or its title company needs a) a recission deed or other agreement or court order voiding the recordation of the Deed-in-Lieu, b) the reinstatement of the Note prior to payoff, and c) the documents identified by the Debtor's title company in Schedule C of its title commitment letter. The Debtor previously requested the Court to appoint a third-party with authority to "referee" this transaction.[9] The Debtor renews that request here. Whether a mediator, arbitrator, special master, trustee, expert or other neutral third party, the Debtor seeks the assistance of a high-level real estate professional to assist HNGH and the Debtor in preparing reasonable and necessary documentation and deciding transactional (not legal) disputes between these admittedly hostile parties.

WHEREFORE, PREMISES CONSIDERED, the Debtor requests the Court to enter orders a) denying the Motion to Enforce, b) compelling HNGH to provide i) the recission deed and Note reinstatement required by the Agreed Orders, and ii) the documents required by the Debtor's title company before it will issue a title policy, c) granting the Debtor a reasonable period of time within the discretion of the Court to close the refinancing transactions once HNGH has provided the necessary documentation, d) granting the Plan Modification Motion, e) granting the Plan

[9] See Debtor's Supplemental Response to Motion to Enforce Agreed Orders (Doc. No. 149).

Implementation Motion, and e) granting such other and further relief as to which the Debtor is justly entitled.

Dated: July 26, 2022

Respectfully submitted,

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
joyce@joycelindauer.com
ATTORNEYS FOR DEBTOR

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 26, 2022, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon the parties receiving electronic notice in this case listed below.

Jeffery D. Carruth on behalf of Creditor Centennial Bank d/b/a Happy State Bank
jcarruth@wkpz.com,
jcarruth@aol.com;atty_carruth@trustesolutions.com;carruthjr87698@notify.bestcase.com

Katherine T. Hopkins
katherine.thomas@kellyhart.com

John J. Kane
jkane@krcl.com, ecf@krcl.com;jkane@ecf.courtdrive.com

Sherrel K. Knighton
Sherrel.Knighton@lgbs.com, Dora.Casiano-
Perez@lgbs.com;Sean.French@lgbs.com;Dallas.Bankruptcy@lgbs.com

Joyce W. Lindauer on behalf of Debtor 2999TC Acquisitions, LLC
joyce@joycelindauer.com, dian@joycelindauer.com;12113@notices.nextchapterbk.com

Steven C. Metzger
smetzger@pmklaw.com

Russell Hale Neilson
hneilson@parkinslee.com, hneilson@ecf.courtdrive.com

Robin Eric Phelan on behalf of Debtor 2999TC Acquisitions, LLC
robin@phelanlaw.org

United States Trustee
ustpregion06.da.ecf@usdoj.gov

Kyle Woodard
kwoodard@krcl.com, KWoodard@ecf.courtdrive.com

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer