reverifinancing

34 Prospect Street
Jersey City, NJ 07307

May 20, 2022

***VIA ELECTRONIC MAIL***

**EXHIBIT D11-A**

Tim Barton
c/o K. Walji
TCC 2002, LLC
2999 Turtle Creek Boulevard
Dallas, Texas 75219

**Re: Potential Financing Proposal for 2999 Turtle Creek Blvd, Dallas Tx, 75219**

Dear Mr. Barton & Mr. Walji:

The Prospective Lender is pleased to advise the Borrower Parties (defined below) of the terms and conditions set forth in this letter (this "Proposal Letter") upon which Prospective Lender would consider making available to the Borrower a senior secured short-term mortgage Loan not to exceed FORTY-SEVEN MILLION DOLLARS AND ZERO CENTS ($47,000,000.00) to be collateralized by, *inter alia*, the Property, and guaranteed by the Guarantors, and a pledge of 100% of the ownership interests in Borrower (the "Loan"; and together with the transactions related thereto, the "Transaction").

1. Summary of Certain Proposed Terms and Conditions. The following is an outline, in summary format, of certain proposed terms and conditions of the proposed Transaction and does not purport to include or summarize all terms and conditions that would be expected to be contained in definitive Loan documentation for the proposed Transaction and is subject to change, modification, amendment, supplementation, and withdrawal by the Prospective Lender (defined below), in its sole and absolute discretion, in whole or in part:

**Loan Borrower:** TCC 2022, LLC, a Delaware Limited Liability Company, a single purpose, bankruptcy remote entity acceptable to Prospective Lender ("Borrowing Entity")

**Property:** 2999 Turtle Creek Boulevard, Dallas, Texas 75219

**Loan Guarantors:** Tim Barton and any other individual owner with a 10% or greater ownership stake in the Borrowing Entity (the "Guarantor" or "Guarantors"; together with the Borrower, the "Borrower Parties"). The Guaranty shall have all California Civil Code 2856 waivers of security first rule, one action rule, and other standard waivers. Guarantor shall consent to personal jurisdiction in California or New York at Lender's choice in addition to Texas. Lender shall have the choice of forum for any enforcement of the Guaranty.

**Prospective Lender:** ReveriFinancing pm LLC or an affiliate or designee of ReveriFinancing pm LLC.

**Loan Documentation:** The Loan will be subject to the terms and conditions set forth in definitive Loan documentation, including, without limitation, a loan agreement, a mortgage, a note, a security agreement, a payment guaranty, an assignment of leases and rents, an environmental indemnity agreement, a pledge of 100% of the ownership interests in Borrower, non-disturbance, and attornment agreements (as required by the Prospective Lender), lien filings, and other agreements, instruments, and documents, all of which will be acceptable to Prospective Lender and its legal counsel (collectively, the "Loan Documents").

**Closing Date:** The date on which the funding of the Loan occurs, which is anticipated to be one (1) week after completion of the Prospective Lender's due diligence (the "Closing Date"), with a Closing Date of no later than 5:00 pm CST on Friday, May 27, 2022.

**Loan Amount:** Up to $47,000,000.00

**Security:** The subject Loan shall be secured by; (i) a First Mortgage on Subject Property, (ii) An assignment of and security interest in all current and future leases, rents and other income related to the Property and (iii) UCC I - Liens on all personal property, equipment and fixtures, as well as a first priority pledge of 100%

of the ownership interests in Borrower. Additionally, the Operating Agreement of the Borrowing Entity shall be amended, in a manner acceptable to Prospective Lender, to provide that the Borrowing Entity shall not be able to additionally pledge, secure, lease or transfer the properties or equity interests until such time that the Prospective Lender is paid in full. No additional senior, secondary or mezzanine financing will be permitted during the term of the Loan, either secured or unsecured, without Prospective Lender's consent. Any foreclosure of the pledged membership interests may be conducted in New York or California consistent with the New York or California uniform commercial code. Any action to enjoin a foreclosure of the membership interests shall only be brought in New York or California upon completion of the closing docs.

**Use of Proceeds:** Pay off 1st Lien Holder (approx. $41,000,000), Chapter 11 Bankruptcy Trustee, the Unsecured Creditors under the Bankruptcy Plan and Property taxes for 2022 (approx. $1,000,000), with the remainder used to fund the Interest Reserve (defined below) and other costs and fees set forth herein.

**Interest Reserve:** Borrower shall fund at Closing a 12 month interest reserve on the Closing Date. Borrower shall pay the monthly interest each month after the Interest Reserve has been used.

**Origination Fee:** An amount equal to 4-percent (4.00%) of the Loan Amount, which shall be earned in full, non-refundable, and due and payable on the Closing Date.

**Interest Rate:** The Loan shall accrue interest at a twelve percent (12.00%) per annum (interest only), which shall be payable monthly and calculated based on a 360-day year. In the event of a Default, the Default rate shall be 17% which is the base rate plus 5%.

**Maturity:** On the date that is twelve (12) months after the Closing Date (the "Maturity Date"), the outstanding principal amount of the Loan, plus all accrued and unpaid interest, and all other amounts owed to the Prospective Lender with respect to the Loan shall be due and payable in full. All interest payments after the ) month following the Closing Date shall be paid in cash directly by the Borrower to the Prospective Lender. If there is a maturity default, a 5% maturity late fee shall be added to the principal balance.

**Other Debt:** None permitted.

**Title Insurance:** Lender shall have a first lien position guaranteed by Chicago Title as a condition of closing. Chicago Title to issue a 104.3 endorsement and lender's title policy.

**Prepayment:** Borrower may prepay, without penalty, any, or all of the outstanding balance of the Loan only after six (6) months following the Closing Date. If Borrower decides to prepay prior to 12 months, Borrower shall pay a 1% fee for early termination of the loan.

**Guaranty:** The Guarantor shall guaranty payment of 100% of the outstanding Loan, plus any accrued and unpaid interest, fees, and costs, real estate taxes, and all costs of enforcement of the Loan. Guarantor represents and warrants that there are no major credit issues. Guarantor shall provide 2020 tax returns and shall consent to a current credit report.

**Broker Fee:** Prospective Lender acknowledges that Jeff VanNote/Damian Albergo are the brokers of record on the transaction.

**Expense Deposit:** Payment in the amount of Twenty-Five Thousand Dollars ($25,000), shall be delivered to Prospective Lender simultaneously with the submission of this term sheet, to be applied towards Prospective Lender's underwriting expenses in connection with the Loan, including, but not limited to credit and background check and any other expenses incurred by Prospective Lender while conducting due diligence. Upon request, Borrower will immediately reimburse Prospective Lender for all such costs, including Prospective Lender's Legal Fees, which may exceed the Expense Deposit. If, after Borrower has satisfied all conditions precedent to the closing of the Proposed Loan, Prospective Lender fails to provide the Proposed Loan to Borrower, Prospective Lender shall return the expense deposit to Borrower (less processing fee, legal fee and any other such costs and expenses incurred by Prospective Lender) subject to Borrower's execution of Lender's standard release letter. If all terms and conditions are met (or Prospective Lender elects, in its sole discretion, to waive any such terms and conditions) then at the closing,

Prospective Lender shall contribute the Expense Deposit (less the processing fee and any such costs and expenses incurred by Prospective Lender) toward closing costs. In the event a closing does not occur, the Expense Deposit shall be retained by Prospective Lender as liquidated damages, in addition to any Break-up Fee, if applicable.

**Insurance:** The Borrower shall maintain at all times, and at the Borrower's expense, paid-up policies of liability, property damage, casualty, rent loss insurance, ordinance and law, pollution insurance, and all other insurance that may be required by the Prospective Lender. Upon the Closing Date, each policy of insurance shall name the Prospective Lender as first mortgagee, additional insured, and loss payee. In the event the Property is located in a flood hazard area, the Borrower shall also provide flood insurance naming the Prospective Lender as an additional insured and first mortgagee in the maximum available amount.

**Survey:** Borrower shall provide Prospective Lender a current as-built survey of the Property certified to Prospective Lender, the title insurer and such other parties as may be designated by Prospective Lender. The survey shall be in all respects acceptable to Lender in its sole discretion.

**Leases & Rents:** If there are any leases in existence affecting the collateral Property(s) at the time of the closing of the Loan, those leases must contain a satisfactory subordination clause whereby they are subject and subordinate in all respects to the lien of the Prospective Lender's mortgage. Additionally, Prospective Lender shall receive an assignment of and security interest in all current and future leases, rents and other income related to the Property(s). Lender will require executed estoppels. Prospective Lender shall have in its sole discretion the reasonable right to approve all future leases in it. Borrower to provide an estoppel signed by all tenants and a rent roll.

**Zoning Review:** Borrower shall provide Prospective Lender with a Zoning Review that will, among other items, confirm allowable buildable square feet under the Property's current zoning, as well as allowances, development rights, and restrictions.

**Environmental Review:** Borrower shall provide Lender with a Phase I, Phase II (if recommended in Phase I), or other environmental report satisfactory to Lender confirming there are no environmental issues or risks at Property.

**Power of Attorney:** The use of a Power of Attorney is not acceptable.

**Financial Reporting:** The Borrower and Guarantors agree to provide Lender with updated financial information, including but not limited to, copies of personal tax returns, personal financial statements, and tax returns of other ownership entities, as requested.

**Compliance:** This provision will survive the closing of the Loan contemplated herein and you shall have a continuing obligation to furnish any documents, forms, authorizations, releases, signatures, or any information related to the mortgage application or to the mortgage closing (collectively the documents). In the event of any mistake, omission form, or loss of any document, either by you or by Lender, whether before or after the closing, you shall cooperate fully with Lender, in correcting or resupplying such document(s).

**Due Diligence:** Prospective Lender's obligations hereunder are contingent on Prospective Lender completing, to its sole and absolute satisfaction, a complete review of the Borrower's financials (personal and corporate), the subject Property(s) and the surrounding market. At any time, Prospective Lender may elect in its sole and absolute discretion to terminate discussions in connection with the proposed financing transaction.

**Governing Law:** The Loan Documentation shall be governed by, and construed in accordance with, the laws of the State of New York (without regard to the choice of law rules thereof) and California for the Guaranty to the extent California law is more favorable.

**Loan Sale Cooperation:** The Prospective Lender reserves the right to, including, without limitation, participate, sell, or assign its interest (or any portion thereof) in the Loan (or any portion thereof), and the Borrower Parties agree to cooperate and to execute any documentation necessary to facilitate this.

**Other Conditions:** In addition to completion of Prospective Lender's due diligence as outlined above, Prospective Lender's obligations hereunder are contingent on satisfactory completion, in Lender's sole and absolute discretion; (i) site inspection, (ii) title review, (iii) survey review, (iv) review of borrower background and credit, (v) building permits and zoning approval review, (vi) title insurance policy acceptable to Lender, (vii) any other reasonable information necessary for Lender to perform due diligence in efforts to make the proposed Loan, and (viii) the Borrower's execution of Loan documents. The Borrower shall be responsible to pay all attorney's fees and costs incurred by Lender due to any dispute that arises in connection with this Agreement.

2. Confidentiality. The parties acknowledge and agree that this Proposal Letter, its existence, and its contents are confidential and proprietary and that damages could result to the Prospective Lender if such information is disclosed by the Borrower Parties to any third-party person. Accordingly, this Proposal Letter is being provided to the Borrower Parties on the condition that, except as required by law, this Proposal Letter, its existence, and its contents, in whole or in part, will not be disclosed by the Borrower Parties publicly or privately, except on a confidential basis to those individuals who are their officers, employees, or advisors, who have a need to know of such information as a result of their being specifically involved in evaluating the proposed Transaction under consideration, and who agree to maintain the confidentiality of such information, and then only on the condition that such information may not, except as required by law, be further disclosed. The Borrower Parties' obligations under this Section 2 shall survive any occurrence of the Termination Date (as defined hereinafter).

3. Exclusivity. Until such time as the Prospective Lender notifies the Borrower in writing that the Prospective Lender is fully committed and clear to close on the Transaction (the "Exclusivity Date"), the Borrower (including its affiliates, subsidiaries, and any of their respective directors, officers, employees, members, financial advisors, attorneys, accountants, or other representatives) may, directly or indirectly, (a) accept any proposal, letter of intent, offer, or other commitment from, or enter into any agreement with, any other person to consummate a competing transaction, or (b) take any action to solicit, initiate, facilitate, encourage, or consummate a competing transaction. Should the Borrower enter into any final and binding agreement with another lender with respect to the Transaction prior to the Exclusivity Date, this shall constitute the immediate termination of the relationship between the Prospective Lender and Borrower set forth herein ("Termination" and the date such Termination occurs, the "Termination Date"). For the avoidance of doubt, once the Prospective Lender notifies the Borrower in writing that the Prospective Lender is fully committed and clear to close, the relationship between the Prospective Lender and Borrower becomes exclusive and the Borrower is prohibited from speaking to or otherwise engaging with any other lenders about the Transaction. This Section 3 shall be binding on the Guarantor and Borrower and their respective affiliates.

4. Indemnification. The Borrower Parties shall indemnify and hold harmless the Prospective Lender, its affiliates, and their respective officers, directors, employees, agents, advisors, auditors, attorneys, controlling persons, partners, participants, funding sources, and other representatives and advisors (each, an "Indemnified Person"), from and against all suits, actions, proceedings, claims, damages, losses, liabilities, and expenses (including, without limitation, reasonable attorneys' fees and disbursements and other reasonable costs of investigation or defense, including, without limitation, those incurred upon any appeal), which may be instituted or asserted against or incurred by any such Indemnified Person in connection with, or arising out of, this Proposal Letter, the proposed Transaction, any due diligence or documentation related to the proposed Transaction, any actions or failures to act in connection with the due diligence or proposed Transaction, or any dispute, investigation, litigation, proceeding, or environmental matter related to the proposed Transaction. The Borrower Parties' obligations under this Section 4 shall survive the closing of the Loan and/or any occurrence of the Termination Date.

5. Costs. The Borrower Parties shall be responsible (whether or not the proposed Transaction is consummated) for the payment or reimbursement of all of the Prospective Lender's costs, fees, and expenses (including, without limitation, attorneys' fees and costs) incurred by the Prospective Lender in connection with this Proposal Letter, the proposed Transaction, the Prospective Lender's due diligence, and/or the preparation, negotiation, review, execution, administration, modification, waiver, or enforcement by the Prospective Lender of any document relating to the proposed Transaction, and a non-refundable Loan processing fee in the amount of $5,000 (collectively, the "Costs"). The Borrower Parties' obligations under this Section 5 shall survive any occurrence of the Termination Date.

6. Termination of Discussions. The Prospective Lender may, in its sole discretion, terminate discussions of the proposed Transaction for any reason or no reason whatsoever without liability (the date such Termination occurs, the "Termination Date"). In no event shall the Prospective Lender incur obligations with regard to the proposed Transaction unless and until the Prospective Lender executes and delivers definitive Loan documents reflecting those obligations.

7. Breakup Fee. There shall be no "breakup fee" upon the occurrence of any event causing the Termination of the parties' relationship under this Proposal Letter. Notwithstanding anything to the contrary contained in this Proposal Letter, in consideration of the significant time, cost and effort expended by Prospective Lender in connection with the proposed Transaction,

if either (x) Borrower and/or Guarantor shall breach the terms of Section 3 of this Proposal Letter, or (y) Borrower (or any affiliate thereof) and/or Guarantor shall elect to pursue financing with another party (other than Prospective Lender) or elect not to pursue financing with Prospective Lender before the end of the Exclusivity Period, then Borrower and Guarantor, jointly and severally, shall be liable for a breakup fee of 1% of Loan Amount (the "Breakup Fee"). The Breakup Fee shall be immediately due and payable by the Borrower Parties to Prospective Lender. The Borrower Parties' obligations under this Section 7 shall survive any occurrence of the Termination Date. The breakup fee shall only apply upon the unequivocally commitment by Lender to fund.

8. Assignment. This Proposal Letter shall inure to the benefit of the successors and assigns of the Prospective Lender but shall not be assignable (whether by merger, consolidation, succession, assignment, or otherwise) by the Borrower or Guarantor without the prior written consent of the Prospective Lender in each instance (and any purported assignment without such consent shall be null and void).

9. Counterparts; Governing Law. To facilitate execution, this Proposal Letter may be executed in as many counterparts as may be convenient or required. All counterparts shall collectively constitute a single instrument. A facsimile or electronic copy of this Proposal Letter shall be considered an original. This Proposal Letter shall be governed by the laws of the State of New York (without regard to the choice of law rules thereof).

10. Proposal Letter is Non-Binding. Due to the general nature of this Proposal Letter, it is agreed to and understood by the parties that the terms and provisions of this Proposal Letter are completely non-binding upon Prospective Lender and the Borrower Parties, except the foregoing Sections 2, 3, 4, 5, 6, 7, 8, & 9 hereof shall be binding on the Borrower Parties and shall survive any occurrence of the Termination Date.

11. Conditions Precedent. Closing and funding of the Loan will be subject to the satisfaction, as determined by the Prospective Lender in its sole and absolute discretion, of all conditions precedent set forth during due diligence.

The terms and provisions of this Proposal Letter are, except as expressly set forth in this Proposal Letter, non-binding and are intended solely for discussion purposes. This Proposal Letter does not represent a commitment (either express or implied) to provide financing and should not be relied on as an indication of the availability of the proposed financing. There is absolutely no obligation on Prospective Lender to issue a commitment or to make a Loan on the terms of this Proposal Letter or on any other terms. In the event that the Loan is funded by Prospective Lender, the terms and conditions contained in this Proposal Letter shall be superseded by the Loan Documents (as hereinafter defined), and the Loan Documents shall govern the terms and conditions of the Loan without reference to this Proposal Letter.

If the terms and conditions outlined in this Proposal Letter are acceptable to the Borrower Parties, and the Borrower Parties desire for the Prospective Lender to commence its Due Diligence process, please indicate the Borrower Parties' acceptance of, and intention to be legally bound by, such terms and conditions by signing in the appropriate space below, returning an executed copy of this Proposal Letter to the Prospective Lender, and wiring the Expense Deposit on or before **5:00 P.M. Eastern Standard Time on May 20, 2022**. This Proposal Letter shall expire at such time unless the Prospective Lender has received the fully executed Proposal Letter and the wire of the Expense Deposit.

Your signature below authorizes ReveriFinancing PM, LLC and/or its assigns to order full and complete credit reports and background checks in efforts to verify credit and background history and gather whatever financial information is considered necessary for consideration of this Loan.

This agreement is not effective under reviewed and approved by the Prospective Lender who will not review it until it is signed by both the Borrower and the Guarantor.

[SIGNATURES ON FOLLOWING PAGE]

**The undersigned has been duly authorized to execute this Proposal Letter on behalf of the Borrower and/or Guarantor, as the case may be.**

AGREED AND ACCEPTED THIS 20th DAY OF MAY 2022

Entity: TCC 2022, LLC, a Delaware Limited Liability Company

By: ______________________
Name:
Title: PRESIDENT

GUARANTOR:

______________________
Tim Barton, an individual

Date: May 20, 2022

Date of Birth: 8/17/1963

Social Security #: 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

Phone #: 214-673-8714

GUARANTOR:

______________________
If necessary, an individual

Date: ______________________

Date of Birth: ______________________

Social Security #: ______________________

Phone #: ______________________

Please furnish us with the name, address, email, and telephone number of your attorney below:

Firm: Law Office of K. Walji, P.C.

Name: Khudabuksh K. Walji

Address: 10701 Corporate Drive, Suite 350, Stafford, Texas 77477

Telephone: 281-401-9672 (Office) and 713-562-6875 (Mobile)

Email: k.walji@waljilaw.com