**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **2999TC ACQUISITIONS, LLC,** | § | **Case No. 21-31954** |
| | § | |
| **Debtor.** | § | **Chapter 11** |

---

**MOTION FOR ENTRY OF FINAL DECREE**
**CLOSING CHAPTER 11 BANKRUPTCY CASE**

---

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE ST., RM. 1254, DALLAS, TX 75242-1496 BEFORE CLOSE OF BUSINESS ON JULY 5, 2023, WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

Cortney C. Thomas (the "**Receiver**"), the court-appointed Receiver for 2999TC Acquisitions, LLC (the "Reorganized **Debtor**" or "**2999TC**"), the reorganized debtor in the above-captioned bankruptcy case (the "**Bankruptcy Case**" or "**Case**"), files this motion (the "**Motion**") and hereby requests entry of a final decree closing this Bankruptcy Case pursuant to 11 U.S.C. § 350(a) (a "**Final Decree**"). In support of this Motion, the Receiver respectfully states as follows.

## <u>EXECUTIVE SUMMARY</u>

1. The Reorganized Debtor's only tangible asset in this Case was a piece of real property located at 2999 Turtle Creek Boulevard (the "**Property**"). On May 18, 2022, the Court

confirmed 2999TC's Third Amended Plan of Reorganization, which, by incorporating the Agreed Orders between 2999TC and its prepetition lender, HNGH, required payment of the 2999TC's Note to HNGH by the end of that month. 2999TC failed to meet its payment obligations to HNGH, thus reigniting litigation between the parties.

2. In September 2022, the Court entered an Order [Dkt. 283] resolving the parties' disputes and declaring HNGH to be the rightful owner of the Property. Around that same time, however, 2999TC was placed under a receivership in the District Court, and the Receiver disputed HNGH's ownership of the Property under this Court's Orders.

3. The District Court recently approved a Settlement Agreement between the Receiver and HNGH. Accordingly, the Reorganized Debtor has no assets remaining to administer in this Bankruptcy Case, and the Receiver hereby moves the Court to close this Case pursuant to section 350(a) of the Bankruptcy Code.

## JURISDICTION AND VENUE

4. The United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "**Court**"), has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5. This Motion seeks relief under section 350(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 3022 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), and Rule 3022-1 of the Local Rules of this Court (the "**Local Rules**").

## BACKGROUND

### A. 2999TC'S BANKRUPTCY PROCEEDING

6. On October 29, 2021 (the "**Petition Date**"), 2999TC filed a voluntary petition for relief in this Court under Chapter 11 of the Bankruptcy Code.

7. 2999TC is a single-purpose entity that owned real property located at 2999 Turtle Creek Boulevard, Dallas, Texas 75219 (the "**Property**"). 2999TC purchased the Property in September 2019, purportedly for a purchase price of $43,049,929. 2999TC was formerly operated by Mr. Timothy Barton ("**Barton**").

8. To purchase the Property, 2999TC obtained a secured loan of $32,500,000 from 2999 Turtle Creek LLC, evidenced by that Secured Promissory Note dated as of September 20, 2019 (the "**Note**"). The Note was secured by the Property, including all improvements and fixtures, as evidenced by that certain Deed of Trust, Security Agreement and Fixture Filing made as of September 20, 2019 (the "**Deed of Trust**"), and recorded in the real property records of Dallas County, Texas. Barton guaranteed 2999TC's obligations under the Note and Deed of Trust pursuant to a Guaranty dated as of September 20, 2019 (the "**Guaranty**"). HNGH Turtle Creek, LLC ("**HNGH**") acquired the Note, Deed of Trust, and Guaranty from 2999 Turtle Creek LLC in December 2020.

9. Following 2999TC's failure to repay the Note at maturity, 2999TC and HNGH entered into a Forbearance and Payoff Agreement effective as of March 1, 2021 (the "**Forbearance Agreement**," and, together with the Note, Deed of Trust, and Guaranty, the "**Loan Documents**"). 2999TC provided HNGH with a deed in lieu of foreclosure for the Property (the "**Deed in Lieu**") as part of the Forbearance Agreement.

10. The Forbearance Agreement extended the Note's maturity through October 29, 2021, but 2999TC again failed to pay all amounts due and owing by that date. Following the default, on October 29, 2021, HNGH filed the Deed in Lieu in the Dallas County Real Property Records. 2999TC filed this Bankruptcy Case later that day.

11. The Dallas County Clerk recorded the Deed in Lieu on November 1, 2021. 2999TC recorded a lis pendens on the Property on November 5, 2021.

12. As the Court is surely all too aware, 2999TC and HNGH were enthralled in litigation related to the Property and the Loan Documents from the outset of this Case. 2999TC filed its first adversary proceeding against HNGH on November 11, 2021, seeking to avoid and recover the transfer of the Property (by way of the Deed in Lieu) as a preferential and fraudulent transfer under the Bankruptcy Code [Adv. Proc. 21-03085] (the "**First Adversary Proceeding**"). A thorough factual and procedural background of the disputes between 2999TC and HNGH is set forth in the Court's Order Enforcing Agreed Orders (defined below) entered on September 28, 2022 [Dkt. 283], which is incorporated herein by reference.

13. On December 10, 2021, the Court entered an Agreed Order [Dkt. 64] (the "**December 2021 Agreed Order**") resolving HNGH's motion to dismiss this Case [Dkt. 9] and motion to lift the automatic stay [Dkt. 10], 2999TC's motion to enforce the stay [Dkt. 14], and motion for sanctions [Dkt. 15], and 2999TC's adversary proceeding against HNGH seeking to avoid and recover the transfer of the Property under the Deed in Lieu. The December 2021 Agreed Order required 2999TC to pay HNGH certain amounts by March 15, 2022, in order to retain the Property.

14. On March 14, 2022, 2999TC filed a motion to extend the payoff deadline under the December 2021 Agreed Order [Dkt. 85]. On March 17, 2022, the Court entered another Agreed

Order [Dkt. 94] (the "**March 2021 Agreed Order**") resolving 2999TC's motion, which extended the payoff deadline through May 2022.

15. On May 18, 2022, the Court entered an Order [Dkt. 123] (the "**Confirmation Order**") confirming 2999TC's Third Amended Plan of Reorganization [Dkt. 108] (the "**Plan**"). The Plan incorporated the December 2021 Agreed Order and the March 2022 Agreed Order (together, the "**Agreed Orders**"). The Plan became effective on May 21, 2022.

16. On May 31, 2022, the Reorganized Debtor defaulted on its obligations to HNGH under the Agreed Orders, prompting HNGH to file its Motion to Enforce Agreed Orders [Dkt. 134] on June 3, 2022. HNGH's motion sought to confirm, *inter alia*, that HNGH rightfully owned the Property free and clear of any Reorganized Debtor interest based on the Reorganized Debtor's defaults under the Agreed Orders. The Court set the motion for a hearing to begin on June 10, 2022.

17. On June 9, 2022, the Reorganized Debtor filed a second adversary proceeding against HNGH [Adv. Proc. 22-03061] (the "**Second Adversary Proceeding**") alleging that HNGH, not the Reorganized Debtor, breached the Agreed Orders and that the Reorganized Debtor retained rightful ownership of the Property.

18. On September 28, 2022, following more than fifteen days of hearing settings, more than fifty hours of evidence and argument, and weeks of additional briefing, this Court issued its *Order (a) Granting in Part and Denying in Part HNGH Turtle Creek, LLC's Motion to Enforce Agreed Orders; (b) Denying the Debtor's Plan-Related Motions; and (c) Granting and Denying Ancillary Relief* [Dkt. 283] (the "**Order Enforcing Agreed Orders**") finding that the Deed in Lieu was a valid conveyance and that HNGH is the owner of the Property. The Court ordered the Reorganized Debtor to remove its lis pendens from the Property, which the Reorganized Debtor

accomplished on October 13, 2022. The Court also denied the Reorganized Debtor's requests to modify the Plan and Confirmation Order.

19. On September 29, 2022, the Reorganized Debtor filed its Notice of Appeal of the Order Enforcing Agreed Orders. The next day, the Reorganized Debtor filed its Amended Notice of Appeal [Dkt. 288], which was docketed on October 3, 2022, commencing Civil Case No. 3:22-cv-02186 (the "**Appeal**") in the U.S. District Court for the Northern District of Texas, Dallas Division (the "**District Court**"). On October 14, 2022, the Reorganized Debtor filed its Motion for Stay Pending Appeal [Dkt. 297] (the "**Stay Motion**") in this Case. A hearing on the Stay Motion was stayed by the Receiver's Notice of Stay [Dkt. 302], which was docketed on October 24, 2022, as further discussed below.

### B. SEC RECEIVERSHIP

20. On September 23, 2022, five days before the Court entered its Order Enforcing Agreed Orders, the Securities and Exchange Commission ("**SEC**") filed a lawsuit against Barton and numerous of his entities (collectively, the "**Receivership Entities**") in the District Court styled *Securities and Exchange Commission v. Timothy Barton, et al.*, Case No. 22-02118 (the "**Receivership Case**").

21. On October 18, 2022, the District Court entered its Order Appointing Receiver [Dist. Ct. Dkt. 29] (the "**Receivership Order**") naming the undersigned as Receiver for the Receivership Entities and directing the Receiver to take custody, control, and possession of all property of the Receivership Entities (collectively, as defined in the Receivership Order, the "**Receivership Property**"). *Receivership Order* ¶ 6(B). Pursuant to the Receivership Order, the Receiver is empowered to "take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation, concealment, or inequitable distribution of

Receivership Property" and to "pursue, resist, defend, compromise or otherwise dispose of all suits, actions, claims, and demands which may now be pending or which may be brought by or asserted against the Receivership Entities." *Id*. ¶¶ 6(G)–(H). Furthermore, the Receivership Order vested the Receiver "with management authority" for "all Receivership Entities and may therefore file and manage a Chapter 11 petition." *Id*. ¶ 50. 2999TC is a Receivership Entity of which the Receiver has the authority to control, act on behalf of, and bind to any decisions made on 2999TC's behalf, "including under the Bankruptcy Code to the exclusion of any other person or entity." *Id.*

22. The Receivership Order also stayed all litigation involving the Receivership Entities (the "**Receivership Stay**"), including this Bankruptcy Case and related adversary proceedings. *Id*. ¶¶ 34–36.

23. On November 25, 2022, HNGH filed a motion to intervene in the Receivership Case and asked the District Court to confirm HNGH's ownership of the Property [Dist. Ct. Dkt. 69]. Although the Receiver did not oppose HNGH's intervention, the Receiver did oppose HNGH's effort to disregard this Court's stay of litigation, seek priority treatment, and force immediate resolution of stayed litigation regarding the Property [Dist. Ct. Dkt. 94]. The parties discussed a potential resolution of their disputes concerning the Property, but negotiations initially resulted in a stalemate.

24. On February 9, 2023, HNGH filed its supplement to its motion to intervene [Dist. Ct. Dkt. 151]. The next day, the District Court granted in part and denied in part HNGH's motion, granting permission for HNGH to intervene in the Receivership Case but denying its request to confirm ownership of the Property [Dist. Ct. Dkt. 154]. The District Court also ordered the parties to mediate and appointed retired Chief Bankruptcy Judge Harlin D. Hale as mediator.

## C. THE RECEIVER AND HNGH'S DISPUTES

25. The Receiver and HNGH's disputes were threefold: (1) the ownership and rightful possession of the Property; (2) the amount due to HNGH under the Loan Documents; and (3) claims and causes of action the Receiver may have possessed against HNGH on behalf of the Receivership Entities and their respective estates.

26. On March 10, 2023, the Receiver and HNGH participated in a mediation led by retired Chief Bankruptcy Judge Hale. The mediation lasted all day. That evening, the parties entered into the general terms of a global resolution of the disputes concerning the Property and were directed by Judge Hale to memorialize the agreement with a written settlement agreement and a motion for approval of the same in the Receivership Case.

## D. RESOLUTION OF THE RECEIVER AND HNGH'S DISPUTES

27. On April 17, 2023, the Receiver filed a Motion with the District Court [Dist. Ct. Dkt. 210] (the "**Settlement Motion**") seeking approval of the Settlement Agreement between the Receiver and HNGH [Dist. Ct. Dkt. 210-1] (the "**Settlement Agreement**"). A true and correct copy of the Settlement Motion and Settlement Agreement is attached hereto as **<u>Exhibit A</u>** and incorporated herein by reference. Barton filed a response in opposition to the Receiver's Motion for approval of the Settlement Agreement [Dist. Ct. Dkt. 230].

28. On May 15, 2023, the District Court entered an Order in the Receivership Case approving the Settlement Agreement [Dist. Ct. Dkt. 236] (the "**Settlement Order**"). A true and correct copy of the Settlement Order is attached hereto as **<u>Exhibit B</u>** and incorporated herein by reference.

29. As a result of the Settlement Agreement and the District Court's Settlement Order, all material outstanding issues in this Bankruptcy Case are resolved and all of the Reorganized

Debtor's assets are fully administered, as further described below.[1] The Settlement Order lifted the Receivership Stay to allow the Reorganized Debtor and HNGH to take all steps necessary to dismiss the Appeal, dismiss the Second Adversary Proceeding, and close this Bankruptcy Case.

## POST-CONFIRMATION REPORT

30. The Receiver submits the following as a Post-Confirmation Report, pursuant to Local Rule 3022-1, demonstrating that the Reorganized Debtor's bankruptcy estate is fully administered.

| | |
|---|---|
| **Assets of the Reorganized Debtor** | The Reorganized Debtor's only assets when this Case was filed were the Property, certain "development documents" related to the Property, and alleged claims against third parties related to the Property. *See* Dkt. 51 (Amended Schedule A/B). Pursuant to the terms of the Agreed Orders, the Plan, and the Order Enforcing Agreed Orders (the appeal of which the Receiver and HNGH jointly dismissed in accordance with the terms of the Settlement Agreement), HNGH owns and possesses the Property, and all of the Reorganized Debtor's alleged claims related to the Property are resolved by way of the Settlement Agreement and Settlement Order. Thus, there are no assets left to administer in this Case. |
| **Claims Against the Reorganized Debtor[2]** | There are no assets remaining in the Reorganized Debtor's estate from which to satisfy any unpaid claims in this Case. |
| **Status of Chapter 11 Plan** | The Reorganized Debtor defaulted under the Plan on May 31, 2022. The Plan has been administered by its terms, which provide that in the event of the Reorganized Debtor's default under the Plan that the terms of the Agreed Orders control the disposition of Reorganized Debtor's assets, including the Property. |

[1] On May 16, 2023, Barton appealed the Settlement Order to the U.S. Court of Appeals for the Fifth Circuit and sought a stay of the Settlement Order while the appeal remains pending [Dist. Ct. Dkt. 240]. On June 9, 2023, the U.S. Court of Appeals for the Fifth Circuit denied as moot Barton's emergency motion to stay the Settlement Order because the Receiver had already transferred the Property to HNGH in accordance with the Settlement Agreement [Dist. Ct. Dkt. 275]. As of the date of this Motion, there is no stay of the Settlement Order and no bond in connection with the appeal of the Settlement Order.

[2] Proof of Claim No. 1 filed by Dallas County has been withdrawn. *See* Dkt. 80. Proof of Claim No. 2 was filed by Jackson Walker LLP as a general unsecured claim of $18,092.75. Proof of Claim No. 3 was filed by HNGH as a secured claim in the amount of $45,939,456.00. There were no other proofs of claim filed in this Case.

| | |
|---|---|
| **Adversary Proceedings** | Adv. Proc. 21-03085: The First Adversary Proceeding was dismissed on March 18, 2022.<br><br>Adv. Proc. 22-03061: The Second Adversary Proceeding was dismissed on May 25, 2023, by way of the Joint Stipulation of Voluntary Dismissal filed by the Receiver and HNGH [Adv. Proc. Dkt. 9].<br><br>Adv. Proc. 21-03089: This adversary proceeding filed by 2999TC against L. Allen Hodges III was dismissed on February 24, 2022.<br><br>No other adversary proceedings have been filed in connection with this Bankruptcy Case. |
| **Potential Claims and Causes of Action** | The Receiver has the power and authority under the Receivership Order to "pursue, resist, defend, compromise or otherwise dispose of all suits, actions, claims, and demands which may now be pending or which may be brought by or asserted against the Receivership Entities," including the Reorganized Debtor. *Receivership Order* ¶¶ 6(G)–(H). The Settlement Order resolves all known claims and causes of action that might have been brought on behalf of the Reorganized Debtor and/or its bankruptcy estate, including actions under Chapter 5 of the Bankruptcy Code. |

## REQUEST FOR RELIEF

31. The Receiver hereby requests that the Court enter a Final Decree, substantially in the form attached hereto, closing this Bankruptcy Case effective as of the date of entry.

32. Additionally, to the extent the Court deems necessary or appropriate, the Receiver further requests that the Final Decree constitute an order approving the Settlement Agreement under Bankruptcy Rule 9019.

## BASIS FOR RELIEF

### A. ENTRY OF FINAL DECREE

33. Section 350(a) of the Bankruptcy Code provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 U.S.C. § 350(a). Bankruptcy Rule 3022 implements section 350(a) of the Bankruptcy Code and provides

that "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case." FED. R. BANKR. P. 3022.

34. The Bankruptcy Code does not specify when an estate should be considered "fully administered." In making this determination, courts have looked to the Advisory Committee Note to Bankruptcy Rule 3022 (the "**Advisory Note**") for guidance. *In re Union Home & Indus., Inc.*, 375 B.R. 912, 916 (B.A.P. 10th Cir. 2007). The Advisory Note instructs courts to consider the following factors:

a. Whether the order confirming the plan has become final;

b. Whether deposits required by the plan have been distributed;

c. Whether the property proposed by the plan to be transferred has been transferred;

d. Whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan;

e. Whether payments under the plan have been commenced; and

f. Whether all motions, contested matters, and adversary proceedings have been finally resolved.

FED. R. BANKR. P. 3022, Advisory Note.

35. These factors are not meant to be exclusive, nor must a party demonstrate all factors before a case can be closed. *Union Home & Indus.*, 375 B.R. at 917. Rather, the factors "merely serve as a guide in assisting the Court in its decision to close a case." *In re Mold Makers, Inc.*, 124 B.R. 766, 768 (Bankr. N.D. Ill. 1990). Courts are encouraged to consider the Advisory Note factors "to insure [sic] that there is no unfinished business before the Court or in the case." *In re Kliegl Bros. Universal Elec. Stage Lighting Co., Inc.*, 238 B.R. 531, 542 (Bankr. E.D.N.Y. 1999).

However, a court "should not keep a case open only because of the possibility that [its] jurisdiction may be invoked in the future." *Union Home & Indus.*, 375 B.R. at 916–17.

36. "Bankruptcy Rule 3022 is intended to allow bankruptcy courts flexibility in determining whether an estate is fully administered." *Id.* at 917 (citation omitted). "[D]etermining when a case is 'fully administered' is a decision for the bankruptcy court based on consideration of numerous case-specific, procedural, and practical factors." *Id*. Courts may close a case under Rule 3022 even if payments required by a chapter 11 plan have not been completed. *See, e.g.*, *In re Nicolayson*, 228 B.R. 252, 261 (Bankr. E.D. Cal. 1998); *Mold Makers*, 124 B.R. at 768–69.

37. Entry of a Final Decree is warranted in this Case because the Reorganized Debtor's Plan has been fully administered. Pursuant to the terms of the Agreed Orders, the Plan, and the Order Enforcing Agreed Orders (the appeal of which the Receiver and HNGH jointly dismissed in accordance with the terms of the Settlement Agreement), HNGH owns and possesses the Property, and the Reorganized Debtor has no assets left to administer in this Case. All adversary proceedings related to this Case have been dismissed, and, given the lack of any estate assets to distribute, there is no need for reconciliation of any claims against the Reorganized Debtor. Accordingly, the Court should grant this Application and enter a Final Decree closing these Cases pursuant to Bankruptcy Code section 350(a).

**B. APPROVAL OF SETTLEMENT AGREEMENT**

38. As noted above, the District Court has approved the Settlement Agreement by way of the Settlement Order. The District Court has exclusive jurisdiction over this Bankruptcy Case and all property of the Reorganized Debtor's estate, *see* 28 U.S.C. §§ 1334(a), (e)(1), and thus the Receiver does not believe that this Court is required to approve the Settlement Agreement under Bankruptcy Rule 9019 prior to entering a Final Decree. To the extent the Court determines

otherwise, the Receiver submits that such approval is warranted under the circumstances of this Case.

39. Bankruptcy Rule 9019(a) states that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Approval of the compromise or settlement is committed to the sound discretion of the bankruptcy courts, and the courts must make an informed and independent analysis to determine whether the proposed settlement is in the best interests of the debtor's bankruptcy estate. *In re Age Ref., Inc.*, 801 F.3d 530, 540 (5th Cir. 2015); *River City v. Herpel, (In re Jackson Brewing Co.)*, 624 F.2d 599, 602–03 (5th Cir. 1980). In determining the appropriateness of a compromise, the U.S. Court of Appeals for the Fifth Circuit has provided that the following factors are to be considered: "(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise." *In re Age Ref., Inc.*, 801 F.3d at 540. Courts have also specified other considerations, such as "(i) the best interests of the creditors, 'with proper deference to their reasonable views'; and (ii) 'the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion.'" *Id.* (citing *Official Comm. of Unsecured Creditors v. Cajun Electric Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 356 (5th Cir. 1997)).

40. The Receiver and HNGH arrived at the Settlement Agreement after a full day of good faith, arms-length mediation before the retired Chief Bankruptcy Judge Harlin D. Hale. In light of the potential claims that might have been brought on behalf of the Reorganized Debtor, as well as the uncertainty, complexity, expense, and likely duration of any such litigation, the Receiver believes that the Settlement Agreement represents a fair and equitable compromise of all

claims and actions released by the Receiver thereunder. The Receiver submits that the Settlement Agreement is in the best interests of the Reorganized Debtor's bankruptcy estate and creditors. Accordingly, the Receiver asserts that the Settlement Agreement meets the requisite standards for approval and should be approved by the Court.

## PRAYER

WHEREFORE, the Receiver respectfully requests that the Court grant this Motion and enter a Final Decree closing this Case and granting the Receiver such other and further relief to which he is justly entitled.

DATED: June 14, 2023

Respectfully submitted,

**BROWN FOX PLLC**

By: */s/ C. Alan Carrillo*
**Charlene C. Koonce**
State Bar No. 11672850
charlene@brownfoxlaw.com
**C. Alan Carrillo**
State Bar No. 24109693
alan@brownfoxlaw.com

8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000
Fax: (214) 327-5001

***Counsel to Receiver for Reorganized Debtor 2999TC Acquisitions, LLC***