**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **2999TC ACQUISITIONS, LLC,** | § | **Case No. 21-31954** |
| | § | |
| **Debtor.** | § | **Chapter 11** |

# OMNIBUS REPLY IN SUPPORT OF MOTION FOR ENTRY OF FINAL DECREE CLOSING CHAPTER 11 BANKRUPTCY CASE

Cortney C. Thomas (the "**Receiver**"), the court-appointed Receiver for 2999TC Acquisitions, LLC (the "**Debtor**," "**Reorganized Debtor**," or "**2999TC**"), the reorganized debtor in the above-captioned bankruptcy case (the "**Bankruptcy Case**" or "**Case**"), files this reply ("**Reply**") in support of his *Motion for Entry of Final Decree Closing Chapter 11 Bankruptcy Case* (the "**Motion**") [Dkt. 307],[1] which requests entry of a final decree closing this Bankruptcy Case pursuant to 11 U.S.C. § 350(a) (a "**Final Decree**"). In support of this Reply, the Receiver respectfully states as follows:

## SUMMARY

The Motion received two objections—one filed by Joyce W. Lindauer on June 23, 2023 on behalf of Joyce W. Lindauer Attorney, PLLC ("Lindauer Objection") [Dkt. 309], and another filed by Robin Phelan on June 30, 2023 on behalf of PHELANLAW ("Phelan Objection") [Dkt. 310] (collectively, "Objections"). The Objections do not present valid bases for recovery from the Settlement Obligation (as defined by the Settlement Agreement) or for the Court to deny the Motion. The claims that were settled, and which gave rise to the Settlement Obligation, were post-

[1] Any capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

petition, state-law fraudulent transfer claims asserted by the Receiver on behalf of non-Debtor Receivership Entities. Accordingly, those claims—and recovery from the settlement of those claims—are not property of the estate. Therefore, any administrative claims underlying the Objections should not be satisfied from the Settlement Obligation and do not preclude the Court's entry of a Final Decree. The Court should overrule both Objections and grant the Motion.

**ARGUMENT**

1. Objectors Lindauer and Phelan served as the Reorganized Debtor's counsels earlier in this Case, prior to the Receiver's appointment. Both Objections argue that the Settlement Obligation belongs to the Reorganized Debtor, and that Lindauer and Phelan's law firms are creditors that must be paid out of the Settlement Obligation before the Court grants the Motion. Lindauer claims to have "an administrative claim for professional fees in this case exceeding $250,000.00"[2] and Phelan claims to be owed $60,397.50.[3]

2. This Case is governed by professional fee compensation procedures. The Court's *Chapter 11 Post-Confirmation Order*, signed on May 19, 2022 and docketed on May 20, 2022 (the "**Post-Confirmation Order**") [Dkt. 124], required "all applications for the award of compensation or expenses, if any, for professional persons in this case and motions for administrative expenses, if any" to be "filed and served within 60 days after entry of this order, unless the confirmation order or plan provides otherwise."[4] The confirmed Third Amended Plan of Reorganization (the "**Plan**") [Dkts. 108, 123] states that this procedure applies to administrative expenses that are fee claims "incurred before the Effective Date."[5] The Plan also provides that allowed professional

[2] Lindauer Objection ¶ 3.
[3] *See* Phelan Objection ¶ 6.
[4] Post-Confirmation Order at 1.
[5] Plan at 9.

fee administrative claims may be paid upon "terms as may be mutually agreed upon between such holder of an Allowed Professional Fee Claim and the Reorganized Debtor."[6] Finally, the Plan provides that approval of the Reorganized Debtor's professional fees are "not required" after the "Effective Date."[7]

3. Only a portion of Lindauer's claimed fees are subject to this Case's professional fee compensation procedures. On July 18, 2022, Lindauer filed her *First and Final Application to Approve Payment of Fees and Expenses of Debtor's Counsel* ("**Lindauer Fee Application**") [Dkt. 257], in which Lindauer sought Court approval for the Debtor's payment of $81,392.80 in fees and expenses billed through May 18, 2022—the date the Court confirmed the Third Amended Plan of Reorganization. On September 1, 2022, the Court granted the Lindauer Fee Application, less certain amounts for Lindauer's retainer and voluntary reduction [Dkt. 279]. As a result, Lindauer holds an allowed Fee Claim (as defined by the Plan) in the amount of $68,403.80 (the "**Lindauer Claim**"). Because Phelan's claimed fees and the remainder of Lindauer's claimed fees were apparently incurred after the Effective Date, neither Phelan nor Lindauer have sought approval—and Court approval is not required—for the Reorganized Debtor's payment of Lindauer and Phelan's post-Effective Date fees.

4. Contrary to what the Objections assert, neither the Receiver's settled claims against HNGH Turtle Creek, LLC ("**HNGH**") nor the Settlement Obligation are property of the estate.[8] Notwithstanding the Debtor's arguably insufficient attempt to reserve causes of action in the Plan,[9]

[6] *Id.* at 10.

[7] *Id.* 17. The "**Effective Date**" is May 21, 2022.

[8] *See* Lindauer Objection ¶¶ 3–4; *see* Phelan Objection ¶¶ 3–4.

[9] *See* Plan at 13 ("Except as otherwise released pursuant to the Plan, *all* Claims recoverable under Section 550 of the Bankruptcy Code, *all* Claims against third parties on account of an indebtedness, and *all other Claims of any kind or character whatsoever* owed to or in favor of the Debtor or Reorganized Debtor or the Estate to the extent not specifically compromised and released pursuant to this Plan or any agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by the Reorganized Debtor for the benefit of the Creditors

the Objections are mistaken—the Receiver did not settle the *Reorganized Debtor's pre-petition* avoidance causes of action against HNGH.[10] Rather, the Receiver settled the *Receiver's post-petition* avoidance causes of action against HNGH. Indeed, none of the transfers to HNGH that the Receiver alleges were fraudulent were paid by the Debtor,[11] and all but two were made after the Debtor commenced this Case, in accordance with the Court's orders.[12] No matter what claims, if any, the Plan preserved, the Plan did not preserve—and it could not have preserved—the Receiver's state-law, post-petition avoidance causes of action, which are the basis for the Settlement Obligation, because the Bankruptcy Code expressly disallows avoidance of a debtor's

---

subsequent to the Effective Date. This Plan shall not estop the Debtor or Reorganized Debtor from asserting *any claim or cause of action whether disclosed or not*.") (emphasis added). *But see, e.g., In re SI Restructuring Inc.*, 714 F.3d 860, 864–65 (5th Cir. 2013) ("For a reservation to be effective, it 'must be specific and unequivocal'—blanket reservations of 'any and all claims' are insufficient. . . . Neither the Plan nor the disclosure statement references specific state law claims for fraud, breach of fiduciary duty, or any other particular cause of action. Instead, the Plan simply refers to all causes of action, known or unknown. As noted, such a blanket reservation is not sufficient to put creditors on notice.").

[10] Contrary to what the Lindauer Objection represents, the Receiver did not do "nothing more than add his weight to the same arguments made by [Joyce W. Lindauer Attorney, PLLC]" and settle "exactly the same issues litigated by the Debtor and its counsel, [Joyce W. Lindauer Attorney, PLLC], in multiple adversary proceedings and other proceedings before this Court." Lindauer Objection ¶ 2. In the First Adversary Proceeding, which *the Debtor* agreed to dismiss with prejudice through the December 2021 Agreed Order, the Debtor sought to recover from HNGH *pre-petition* transfers. In the Second Adversary Proceeding, the dismissal of which was a material term to the Settlement Agreement, the Reorganized Debtor alleged a breach of contract claim against HNGH—not the post-petition, state-law fraudulent transfer claims that the Receiver detailed in either the Settlement Motion or this Motion. Regardless, as described further below, the Debtor released all claims against HNGH through the Agreed Orders, which the Debtor then expressly incorporated into the Plan.

[11] As explained further in the Settlement Motion: "Records from HNGH and the Receivership Entities show that various Receivership Entities paid HNGH approximately $4.735 million under the Loan Documents. Upon investigation, the Receiver discovered that $3.95 million of this total, comprising nine separate payments (including four cashier's checks), *was paid not by 2999TC but by other Receivership Entities,* including those that the SEC alleges misappropriated funds from the Wall Investors. *The Receiver contends that these payments from other Receivership Entities likely constitute fraudulent transfers*, since the other Receivership Entities were making payments on 2999TC's behalf. HNGH maintained that these transfers were appropriate and *in accordance with the Agreed Orders*." Settlement Motion at 8 (emphasis added).

[12] As explained further in the Settlement Motion: "*The Receiver contends that $3.95 million* of the $4.735 million *that Receivership Entities paid to HNGH under the Loan Documents are arguably fraudulent transfers*, although $3.8 million of that was paid in accordance with obligations incurred by 2999TC *under the Agreed Orders, which were incorporated into the confirmed and now-effective Plan, approved in the Bankruptcy Case*. Even if the payments were made with actual or constructive fraudulent intent, the Receiver faces the significant hurdle of overcoming HNGH's good-faith defense because these payments were made by Receivership Entities pursuant to court orders." *Id.* at 15 (emphasis added).

post-petition transfers that are authorized by the Court.[13] Therefore, the Settlement Obligation is not property of the estate and Lindauer and Phelan are not entitled to any portion of it before the Court enters a Final Decree and closes this Case.

5. Furthermore, the Reorganized Debtor has no assets from which to satisfy any unpaid claims in this Case, including the sole Lindauer Claim. The Plan, which was proposed by the Debtor when it was represented by Lindauer, promised holders of allowed Fee Claims payment in cash but provided no means for the Debtor to acquire any cash to satisfy such claims. Indeed, before the Debtor even proposed the Plan, the Debtor had already entered the Agreed Orders, which provided for the release of all claims by the Debtor against HNGH regarding the Property and the Loan Documents. Furthermore, the Plan expressly incorporated the Agreed Orders, which controlled the disposition of the Debtor's assets in the event of the Debtor's default under the Plan. And, even after the District Court's Settlement Order, the Reorganized Debtor still has no assets—the Settlement Obligation is paid to the Receivership, not the Reorganized Debtor, because the Settlement Agreement resolved claims belonging to other Receivership Entities, not the Reorganized Debtor.

6. The Objections should not preclude entry of the Final Decree and they should be overruled. Neither payment of the Lindauer Claim nor payment of Phelan's apparent fees or Lindauer's apparent remaining fees, which are not Fee Claims under the Plan or subject to Court approval, are prerequisites to this Case's closure. Given the existence of the Receivership, the consummation of the Plan, the District Court's Settlement Order, and the Reorganized Debtor's lack of assets, the Receiver respectfully suggests that issues raised in the Objections in this Case

[13] *See* 11 U.S.C. § 549(a).

would be more appropriately reserved for the Receivership Case.[14] Like all creditors of the Receivership Estate, Lindauer and Phelan may file claims in the Receivership Case for all amounts they assert against 2999TC and other Receivership Entities.

## CONCLUSION

The Objections are meritless and should not delay the closure of this Case. Therefore, the Receiver respectfully requests that the Court overrule the Objections, grant the Motion, and enter a Final Decree.

DATED: July 7, 2023

Respectfully submitted,

**BROWN FOX PLLC**

By: */s/ C. Alan Carrillo*
**Charlene C. Koonce**
State Bar No. 11672850
charlene@brownfoxlaw.com
**C. Alan Carrillo**
State Bar No. 24109693
alan@brownfoxlaw.com

8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000
Fax: (214) 327-5001

***Counsel to Receiver for Reorganized Debtor 2999TC Acquisitions, LLC***

[14] As mentioned in the Motion, on May 16, 2023, Barton appealed the Settlement Order to the U.S. Court of Appeals for the Fifth Circuit and sought a stay of the Settlement Order while the appeal remains pending [Dist. Ct. Dkt. 240]. On June 9, 2023, the U.S. Court of Appeals for the Fifth Circuit denied as moot Barton's emergency motion to stay the Settlement Order because the Receiver had already transferred possession of the Property to HNGH in accordance with the Settlement Agreement [Dist. Ct. Dkt. 275]. As of the date of this Reply, there is no stay of the Settlement Order and no bond in connection with the appeal of the Settlement Order.

Since the filing of the Motion, the Fifth Circuit vacated the Receivership Order effective from 90 days from the issuance of the Fifth Circuit's mandate (on or about August 21, 2023), barring any new receivership order that may be entered by the District Court in the interim. *See S.E.C. v. Barton*, Case No. 22-11132 (5th Cir. June 28, 2023) [App. Dkt. 134-1]. Additionally, the Fifth Circuit granted "a partial stay pending appeal," in that "the receiver's power to sell or dispose of property belonging to receivership entities is immediately suspended[.]" *Id.* at 13. However, the Fifth Circuit expressly provides that this "suspension does not apply to activities in furtherance of sales of dispositions of property that have already occurred or been approved by the district court." *Id.* The Settlement Order does not involve the sale of real property, and thus the Fifth Circuit's stay does not apply to that order; regardless, the Settlement Agreement would not be stayed because it was already approved by the District Court.