Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, TX 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Creditor
Joyce W. Lindauer Attorney, PLLC

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **2999TC ACQUISITIONS, LLC,** | § | **CASE NO. 21-31954-swe** |
| | § | |
| **Debtor.** | § | **Chapter 11** |

**STATUS REPORT**

**TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:**

**COMES NOW Joyce W. Lindauer Attorney, PLLC,** a creditor in the above-styled and numbered case and files this Status Report and in support thereof would respectfully show unto the Court as follows:

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Chapter 11 case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. Debtor filed a voluntary petition under Chapter 11, Title 11, of the United States Bankruptcy Code on October 29, 2021 (the "Petition Date") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

3. Joyce W. Lindauer Attorney, PLLC submits the following briefs filed in the appeal pending in the Fifth Circuit Court of Appeals, Case No. 23-10516, styled *Securities and Exchange Commission v. Timothy Barton*:

a. Brief of Appellant [Docket No. 58]; and

b. Brief of Appellee Securities and Exchange Commission [Docket No. 67].

Dated: January 24, 2024.

Respectfully submitted,

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR CREDITOR

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 24, 2024, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon the parties receiving electronic notice in this case listed below.

C. Alan Carrillo
alan@brownfoxlaw.com

Jeffery D. Carruth
jcarruth@wkpz.com,
jcarruth@aol.com;atty_carruth@trustesolutions.com;carruthjr87698@notify.bestcase.com;ATTY_CARRUTH@bluestylus.com

Katherine T. Hopkins
katherine.thomas@kellyhart.com

John J. Kane
jkane@krcl.com, ecf@krcl.com;jkane@ecf.courtdrive.com

Sherrel K. Knighton
Sherrel.Knighton@lgbs.com, Dora.Casiano-Perez@lgbs.com;Sean.French@lgbs.com;Eva.Parker@lgbs.com;Alexis.Hall@lgbs.com;Dallas.Bankruptcy@lgbs.com

Charlene Cantrell Koonce
charlene@brownfoxlaw.com, rmelissa@brownfoxlaw.com

Joyce W. Lindauer
joyce@joycelindauer.com, dian@joycelindauer.com

Steven C. Metzger
smetzger@pmklaw.com

Russell Hale Neilson
hneilson@skv.com, hneilson@ecf.courtdrive.com

Robin Eric Phelan
robin@phelanlaw.org

Cortney C. Thomas
cort@brownfoxlaw.com, korourke@brownfoxlaw.com

United States Trustee
ustpregion06.da.ecf@usdoj.gov

Kyle Woodard
kwoodard@krcl.com, KWoodard@ecf.courtdrive.com;ecf@krcl.com

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer

# EXHIBIT "A"

NO. 23-10516

# United States Court of Appeals for the Fifth Circuit

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

*versus*

TIMOTHY BARTON,

*Defendant-Appellant*,

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CV-2118

## BRIEF OF APPELLANT

Michael J. Edney
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue NW
Washington, DC 20037
(202) 955-1500
*medney@huntonak.com*

Case: 23-10516 Document: 58 Page: 2 Date Filed: 11/21/2023

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. **Parties**

   a. **Defendant-Appellant**: Timothy Barton

   b. **Plaintiff-Appellee**: Securities and Exchange Commission

   c. **Intervenors**:

      i. United States of America

      ii. Gillespie Villas LLC

      iii. Venus59 LLC

      iv. TRTX Properties LLC

      v. MXBA LLC

      vi. Titan Investments LLC

      vii. HNGH Turtle Creek, LLC

d. **Other Personal Defendants** (entity defendants included below)

i. Haoqiang Fu *also known as* Michael Fu

ii. Stephen T. Wall

**2. Attorneys**

a. **For Appellant**: Hunton Andrews Kurth LLP: Michael J. Edney

b. **For Appellee**: Keefe M. Bernstein, James E. Etri, David B. Reece

c. **For Defendant Stephen T. Wall**: Johnson Vaughn & Heiskell: Michael P. Heiskell

d. **For Interested Party HNGH Turtle Creek**: Kirkland & Ellis LLP: Erin Angela Nealy Cox; Kane Russell Coleman & Logan PC: John Joseph Kane

e. **For Interested Party Maximilien Barton**: Norton Rose Fulbright US LLP: Nathan Benjamin Baum, Christopher Ryan Cooke

f. **For Intervenors Gillespie Villas LLC, Venus59 LLC, TRTX Properties LLC, MXBA LLC, and Titan**

**Investments LLC**: Norton Rose Fulbright US LLP: Nathan Benjamin Baum, Christopher Ryan Cooke

g. **For Interested Party David Dhiraj Ramolia**: Chandler & Shavin PLLC: Eliot Dana Shavin, Daniel Rasoul Alexander; Chandler Law PC: Corinna Pia Chandler

h. **For Interested Party Palisades-TC, LLC**: Tillotson Law: Jonathan Patton

i. **For Interested Party Circle H Contractors, LP**: Slates Harwell LLP: Aaron Capps

j. **For Interested Party MFO Venus Development, LLC**: Ian Fullington

**3. Other**

**a. 159 Other Entities Seized**

| | | |
|---|---|---|
| Carnegie Development, LLC (Defendant) | WALL007, LLC (Defendant) | WALL009, LLC (Defendant) |
| WALL010, LLC (Defendant) | WALL011, LLC (Defendant) | WALL012, LLC (Defendant) |

Case 3:23-cv-05 Document 58 Page: 5 Date Filed: 11/21/2023

| | | |
|---|---|---|
| WALL016, LLC (Defendant) | WALL017, LLC (Defendant) | WALL018, LLC (Defendant) |
| WALL019, LLC (Defendant) | DJD Land Partners, LLC (Relief Defendant) | LDG001, LLC (Relief Defendant) |
| BM318 LLC | D4DS LLC | D4FR LLC |
| D4KL LLC | Enoch Investments LLC | FHC Acquisition LLC |
| Goldmark Hospitality LLC | JMJ Acquisitions LLC | JMJ Development LLC |
| JMJAV LLC | JMR100 LLC | Lajolla Construction Management LLC |
| Mansions Apartment Homes at Marine Creek LLC | MO 2999TC, LLC | Orchard Farms Village LLC |
| Villita Towers LLC | 126 Villita LLC | AVEG WW, LLC |

| | | |
|---|---|---|
| AVG West, LLC fka JMJ Acquisitions, LLC | Barton Texas Water District, LLC | Barton Water District, LLC |
| BC Acquisitions, LLC | BEE2019, LLC | Broadview Holdings, LLC |
| Broadview Holdings Trust | BSJ Trading, LLC | BUILD VIOLET, LLC |
| Carnegie Development, Inc. | D4AT, LLC | D4AVEG, LLC |
| D4BM, LLC | D4BR, LLC | D4IN, LLC |
| D4MC, LLC | D4OP, LLC | D4OPM, LLC |
| D4SMC, LLC | D4WP, LLC | Dallas Real Estate Investors, LLC |
| Dallas Real Estate Lenders, LLC | Dallas Real Estate Management, LLC | Five Star GM, LLC |
| Five Star MM, LLC | FIVE STAR MM, LLC | Five Star TC, LLC |
| Glenwood (18340) Property, LLC | HR Sterling, LLC | Illuminate Dallas, LLC |

| | | |
|---|---|---|
| JB Special Asset, LLC | JMJ Acquisitions Mgmt, LLC | JMJ Aviation, LLC |
| JMJ BLUES TX, LLC | JMJ Centre, LLC | JMJ Development Brasil, LTDA |
| JMJ Development, Inc | JMJ Development Fund | JMJ Development Fund, Inc |
| JMJ EB5 Fund, LP | JMJ EB5 Fund GP, LLC | JMJ Holdings, LLC |
| JMJ Holdings US LLC | JMJ Holdings USA, Inc. | JMJ Home Building Inc. |
| JMJ Hospitality, LLC | JMJ Hospitality General Trading FZE | JMJ Hospitality UAE |
| JMJ Investments Limited | JMJ Land Acquisition, Inc | JMJ Land Development, Inc |
| JMJ Land Venture, LLC | JMJ MF Development, LLC | JMJ Mezzanine, Inc |
| JMJ Multifamily, Inc | JMJ Offshore, LTD | JMJ Regional Center, LLC |

| | | |
|---|---|---|
| JMJ Residential, LLC | JMJ Valley Center, LLC | JMJ VC Management, LLC |
| JMJ148, LLC | JMJAV, LLC | JMJD4, LLC |
| JMJD4Allensville LLC | JMJDWG, LLC | JMJKH, LLC |
| LC Aledo TX, LLC | Lynco Ventures, LLC | Lynn Investments, LLC |
| Lynco Ventures, LLC | Mansion Apartment Homes at Marine Creek, LLC | MCFW, LLC |
| MCRS2019, LLC | Middlebury Trust | MMCYN, LLC |
| MXBA Managed, LLC | MXBA Services, LLC | Myra Park 635, LLC |
| Northstar 114, LLC | Northstar PM, LLC | One Agent, LLC |
| One Agent Texas, LLC | ONE FHC, LLC | One MFD4, LLC |
| One Pass Investments, LLC | One RL Trust | ONE SF Residential, LLC |

Case 23-10516 Doc 58 Page: 9 Date Filed: 11/21/2023

| | | |
|---|---|---|
| Residential MF Assets, LLC | Ridgeview Addition, LLC | Riverwalk Invesco, LLC |
| Riverwalk Opportunity Management, LLC | Riverwalk OZFM, LLC | Riverwalk OZFV, LLC |
| Riverwalk QOZBJ, LLC | Riverwalk QOZBM, LLC | Riverwalk QOZBV, LLC |
| Seagoville Farms, LLC | SF Rock Creek, LLC | SK Carnegie, LLC |
| STL Park, LLC | The MXBA Trust | The Timothy L. Barton Irrevocable Life Insurance Trust |
| TLB 2018 Trust | TLB 2019 Trust | TLB 2020 Trust |
| TRWF, LLC | TRWF LODGE, LLC | VenusBK195, LLC |
| VenusPark201, LLC | WRL2019, LLC | 126 Villita Towers, LLC |
| 2999 Acquisitions, LLC | 2999 Middlebury, LLC | 2999 Roxbury, LLC |

| | | |
|---|---|---|
| 2999TC Acquisitions, LLC fka 2999TC, LLC | 2999TC Acquisitions MZ, LLC fka MO 2999TC MZ, LLC | 2999TC Founders, LLC |
| 2999TC JMJ, LLC | 2999TC JMJ, LLC | 2999TC JMJ CMGR, LLC |
| 2999TC JMJ Equity, LLC | 2999TC LP, LLC | 2999TC JMJ MGR, LLC |
| 2999TC MZ, LLC | 2999TC MM, LLC | TC Hall, LLC |
| Titan 2022 Investment, LLC | Marine Creek SP, LLC | Aledo TX, LLC |

**b. Interested Parties**

i. Bank of America, N.A. (Respondent)

ii. Maximilien Barton

iii. Palisades-TC, LLC

iv. Circle H Contractors, LP

v. MFO Venus Development, LLC

**c. Receiver & Amicus**

i. Cortney Thomas

*/s/ Michael J. Edney*

ATTORNEY FOR APPELLANT
TIMOTHY LYNCH BARTON

Case 23-10516 Document: 58 Page: 12 Date Filed: 11/21/2023

## STATEMENT REGARDING ORAL ARGUMENT

Appellant, Timothy Barton, respectfully requests oral argument. This case presents important questions of law concerning the circumstances under which the Government can seize property, without discovery against it or a trial regarding its allegations, and then permanently alter the status of that property by selling it. As such, this case involves key questions of due process and property rights that are at the heart of our American legal system. If Appellee, the United States Securities and Exchange Commission, does not confess error in this case, the Government will be arguing that even when it does not put forward evidence to justify seizure of property through a receivership appointed at its request, and that receivership is later determined to be illegally imposed, the illegally-appointed receiver's decision to sell such property should stand. The Appellant respectfully submits that oral argument would assist the Court in addressing any questions regarding these important issues.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .......................................... 2
STATEMENT REGARDING ORAL ARGUMENT ................................ 12
TABLE OF CONTENTS ................................................................. 13
TABLE OF AUTHORITIES .............................................................. 14
JURISDICTIONAL STATEMENT ..................................................... 17
STATEMENT OF THE ISSUES .......................................................... 18
STATEMENT OF THE CASE ............................................................. 20
SUMMARY OF ARGUMENT ............................................................. 28
ARGUMENT ....................................................................................... 30

I. This Court's Opinion Reversing and Vacating the Receiver's Appointment Similarly Requires Reversal and Vacatur of Orders Authorizing the Receiver to Sell and Release Property Interests. ..... 30

II. The District Court Erred by Authorizing the Significant Disruption of the Property's Status Quo, Prior to the Commission Proving Any Liability at Trial. ........................................................ 34

III. The District Court Erred By Not Following the Statutorily-Mandated Procedures for Authorizing a Receiver's Sale or Transfer of Real Property Interests under 28 U.S.C. § 2001 .................................. 36

IV. The District Court Erred in Concluding That the Release and Transfer of 2999 Turtle Creek Property Interests Was in the Best Interests of the Estate. ..................................................................... 42

CONCLUSION ..................................................................................... 47
Certificate of Filing and Service .......................................................... 49
Certificate of Compliance ..................................................................... 50

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Acadia Land Co. v. Horuff*,
110 F.2d 354 (5th Cir. 1940) ... 36, 38

*Alicea v. Comm'r of Soc. Sec.*,
855 F. App'x 494 (11th Cir. 2021) ... 31

*Anadarko E & P Co., LP v. Clear Lake Pines, Inc.*,
No. 03-04-00600-CV, 2005 WL 1583506 (Tex. App.—Austin July 7, 2005, no pet.) ... 39

*In re Applied Chem. Magnesias Corp.*,
206 S.W.3d 114 (Tex. 2006) ... 39

*In re City Nat'l Bank*,
257 S.W.3d 452 (Tex. App.—Tyler 2008, orig. proceeding) ... 39

*City of Beaumont v. Moore*,
202 S.W.2d 448 (Tex. 1947) ... 39

*City of Houston v. Carlson*,
393 S.W.3d 350 (Tex. App.-Houston [14th Dist.] 2012, no pet.) ... 40

*Evanston Ins. Co. v. Legacy of Life, Inc.*,
370 S.W.3d 377 (Tex. 2012) ... 41

*Gurmankin v. Costanzo*,
626 F.2d 1115 (3d Cir. 1980) ... 38, 43

*Kelley v. Marlin*,
714 S.W.2d 303 (Tex. 1986) ... 40

*Latham v. Miller*,
250 S.W.2d 302 (Tex. Civ. App.—Austin 1952, no writ) ... 39

*Los Angeles Tr. Deed & Mortg. Exch. v. SEC*,
285 F.2d 162 (9th Cir. 1960) ... 35

*Lufkin v. McCallum*,
752 F. Supp. 421 (N.D. Ala. 1990) ........ 31

*Nationwide of Bryan, Inc. v. Dyer*,
969 S.W.2d 518 (Tex. App.—Austin 1998, no pet.) ........ 39, 41

*Netsphere, Inc. v. Baron*,
703 F.3d 296 (5th Cir. 2012) ........ *passim*

*Netsphere, Inc. v. Baron*,
799 F.3d 327 (5th Cir. 2015) ........ 17

*SEC v. Barton*,
72 F.4th 640 (5th Cir. 2023) ........ 18, 27

*SEC v. Barton*,
79 F.4th 573 (5th Cir. 2023) ........ 27, 30, 31, 34

*SEC v. Barton*,
No. 22-11226, 2023 WL 5671292 (5th Cir. Sept. 1, 2023) ........ 28

*SEC v. Current Fin. Servs., Inc.*,
783 F. Supp. 1441 (D.D.C. 1992) ........ 35

*SEC v. Janvey*,
404 F. App'x 912 (5th Cir. 2010) ........ 17, 18

*SEC v. Stanford Int'l Bank, Ltd.*,
927 F.3d 830 (5th Cir. 2019) ........ 42

*SEC v. T-Bar Res., LLC*,
No. CIV.A.3:07CV1994-B, 2008 WL 4790987 (N.D. Tex. Oct. 28, 2008) ........ 36, 39

*SEC v. W Fin. Grp., LLC*,
No. 3:08-CV-0499-N, 2010 U.S. Dist. LEXIS 149445 (N.D. Tex. Jan. 22, 2010) ........ 42

*In re Smith*,
165 F. App'x 961 (3d Cir. 2006) ........ 31

*United States v. "A" Manufacturing Co., Inc.*,
541 F.2d 504 (5th Cir. 1976) .................... 17

*United States v. Harris*,
155 F. Supp. 17 (S.D. Cal. 1957) .................... 31

*United States v. Sigma Int'l, Inc.*,
300 F.3d 1278 (11th Cir. 2002) .................... 31

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) .................... 38, 43, 44

**Statutes**

28 U.S.C. § 292(a)(2) .................... 18

28 U.S.C. § 2001 .................... *passim*

Tex. Prop. Code § 12.007 .................... 40

**Other Authorities**

Black's Law Dictionary 527 (6th ed. 1990) .................... 39

**JURISDICTIONAL STATEMENT**

This Court has jurisdiction over this appeal under Fifth Circuit authority stating that a district court order authorizing a receiver to sell property is immediately appealable. *United States v. "A" Manufacturing Co., Inc.*, 541 F.2d 504, 506 (5th Cir. 1976); *SEC v. Janvey*, 404 F. App'x 912, 914 (5th Cir. 2010); *Netsphere, Inc. v. Baron*, 799 F.3d 327, 333–34 (5th Cir. 2015).

On May 16, 2023 Barton notified the District Court of its appeal to this Court of the order approving the Receiver's sale of 2999 Turtle Creek Blvd. ROA.7579. Then, on June 30, 2023, the Commission filed an opposed motion to dismiss Barton's appeal. Dkt. 17. And on July 17, 2023, through an unpublished order with no opinion attached, the Court granted the Appellee's opposed motion to dismiss. Dkt. 36-1.

The Appellant timely sought rehearing of that decision, as well as rehearing of the Court's dismissal of another appeal of a District Court sale order arising from the same matter. Therein, the Appellant explained, in line with this Court's precedents, that the authority to appeal orders authorizing a receiver to sell property arise from a "different jurisprudential line" than the statute authorizing immediate

Case: 23-10516 Document: 58 Page: 18 Date Filed: 11/21/2023

appeals of some orders related to a receivership, 28 U.S.C. § 292(a)(2). Dkt. 39. That line of cases concerns the finality of changing the status quo of property through sale. *See Janvey*, 404 F. App'x at 914; *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012).

This Court withdrew its July 17, 2023 order dismissing this appeal and set it for briefing on the merits, carrying the Commission's opposed motion to dismiss with the case. Dkt. 56-1.

## STATEMENT OF THE ISSUES

In this case, Appellee, the United States Securities and Exchange Commission, filed a civil suit against the Appellant, Timothy Barton, alleging violations of anti-fraud provisions of the federal securities laws. The next business day, the Commission requested that the United States District Court for the Northern District of Texas seize nearly all of Appellant's property and place it into a receivership, before any discovery into the Commission's allegations, much less a trial, had taken place. In a published opinion, this Court reversed the appointment of that Receiver. *SEC v. Barton*, 72 F.4th 640 (5th Cir. 2023), *opinion withdrawn and superseded on denial of reh'g*, 79 F.4th 573 (2023). The Court held that the Commission had not attempted to meet the

demanding standards necessary for imposing the "drastic remedy" of a prejudgment receivership and had not established whether the companies being seized possessed property that was the subject of the litigation. *Id.* at 579 (citing *Netsphere*, 703 F.3d at 305).

Before this Court reversed the appointment of the Receiver, the District Court approved the illegally-appointed Receiver's request to release all rights to real property held by one of the companies that was illegally-seized pursuant to the vacated Initial Receivership Order. This property was a prominent office building, worth tens of millions of dollars, located at 2999 Turtle Creek Blvd. in Dallas, Texas. The District Court also approved the Receiver's request for the Appellant's personal property located in that building (e.g., furniture, art, and other personal effects) to be seized and publicly auctioned off. The proceeds of such auction going back into the receivership and, presumably, being used to pay the Receiver's fees.

This appeal presents the following questions:

(1) Given the illegal seizure of the company holding the rights to the property in question and the illegal appointment of the Receiver seeking its sale, should the District Court's order authorizing the sale of

and release of rights to the 2999 Turtle Creek Blvd. property be vacated and reversed?

(2) Did the District Court err by permitting the permanent sale or transfer of property that was under the care of a prejudgment receivership, rather than preserving it in place pending the Government proving its allegations and obtaining a final judgment?

(3) Did the District Court err by failing to follow Congress's mandatory procedures for receiver requests to sell or otherwise release rights to real property, including the obtaining of appraisals and public bids, set forth in 28 U.S.C. § 2001?

(4) Did the District Court err by not acting in the best interest of the receivership estate through its approval of a sale of property worth tens of millions of dollars for just $2.5 million in payments over two years, with the principal objective of that sale being to raise cash to pay the Receiver's significant fees?

## STATEMENT OF THE CASE

On September 23, 2022, Appellee, the United States Securities and Exchange Commission ("Appellee" or the "Commission"), filed a civil suit against the Appellant, Timothy Barton ("Appellant" or "Barton"), in the

United States District Court for the Northern District of Texas ("District Court"). The suit alleged that three individuals and several companies violated anti-fraud provisions of the federal securities laws by engaging with Chinese nationals in business loan transactions related to U.S.-based real estate development projects. The Commission contended that those loans were securities and that the loan proceeds were used in ways not contemplated by the underlying loan agreements.

The next business day, the Commission moved for the District Court to seize any company owned or controlled by Barton (but not the other individual defendants), as well as some corporate entities owned and controlled by other parties not subject to this litigation, and to place those seized assets into the custody of a receiver. The Commission sought this seizure without a scintilla of discovery conducted into the Commission's allegations, much less having proved them in an adversarial proceeding. ROA.130. The Commission sought seizure of this wide range of companies (and the assets and legal rights they held) associated with the Appellant without seeking to prove that these companies possessed significant portions of the Chinese-national loan proceeds that are the subject of this litigation.

Without a hearing, and only hours after the Appellant filed a brief opposing the appointment of a receiver, the District Court granted the Commission's receivership motion ("Initial Receivership Order"). ROA.616. Appellant promptly appealed. On May 1, 2023, this Court held oral argument on that appeal, during which the panel expressed significant concerns about the legality of the receivership. Even after that oral argument and the Court's clearly-expressed concern with the propriety of the underlying receivership, the Receiver and the District Court forged ahead with a campaign to liquidate the Appellant's assets. Of course, these sales would not simply safeguard the assets in place—for eventual return to the Appellant after trial if the Government failed to prove its case or for potential use to satisfy a judgment if the Government succeeded. Instead, they would permanently alter the status quo by transferring ownership rights in those properties to third parties.

The most prominent of the Receiver's post-oral argument liquidation efforts was the one to sell and release the rights held by a company associated with the Appellant—2999TC LLC ("2999TC")—to a marquee commercial property at 2999 Turtle Creek Blvd. in Dallas,

Texas. This was a major office complex located in the coveted Turtle Creek neighborhood. 2999TC, which was owned in part by the Appellant, but also by several other investors having nothing to do with this case, was planning to add a Mandarin Oriental Hotel to the property site. ROA.7386, 7409-410. Barton made clear to the District Court in his opposition to the sale of 2999 Turtle Creek Blvd. that the property was "worth potentially upwards of $70 million." ROA.7401. CBRE, one of the world's leading commercial real estate firms, confirmed this estimate, opining that the property, in its current condition, was a $71.5 million asset. *SEC v. Barton*, No. 3:22-CV-2118-X (N.D. Tex. Oct. 2, 2023) ("NDTX" Dkt. 335 at 28).

2999TC and its investors plunged tens of millions of dollars into purchasing 2999 Turtle Creek Blvd., as well as servicing the debt on the property. Prior to the District Court's imposition of the receivership, 2999TC was in a dispute with a lender that held a secured interest in the property. The underlying principal of the loan was $32.5 million, and 2999TC had made more than $6 million in interest and extension payments to the secured lender over the two years of the loan. HNGH

Case 23-10516 Document: 58 Page: 24 Date Filed: 11/21/2023

Turtle Creek LLC ("HNGH"), a special purpose entity owned by the Hunt family of Dallas, purchased that secured debt in December 2020.

To protect the asset, 2999TC entered into bankruptcy proceedings to structure repayment of the secured debt. *See In re 2999TC Acquisitions, LLC,* Case No. 21-31954 (N.D. Tex. Bankr.). 2999TC then initiated an adversary proceeding against HNGH to determine the rights of the property's owner and its lender. N.D. Tex. Bankr. Dkt. 134. That adversary proceeding never meaningfully occurred. The Bankruptcy Court allotted no time for discovery, but instead concluded that the proceeding presented time-sensitive questions. As such, the Bankruptcy Court held an informal evidentiary hearing, occurring on fifteen non-consecutive days over the course of a month. *See, e.g.,* N.D. Tex. Bankr. Dkt. 283 at 18-20, 26, 29-31, 36-37, 39-40, 46. The last day of that informal hearing was July 12, 2022.

At the time that the Commission brought its action against the Appellant, the Bankruptcy Court had still made no decisions. But only days after the Commission initiated its action against Barton, and over four months after the final day of the Bankruptcy Court's informal hearing, the Bankruptcy Court released an opinion holding that 2999TC

had not complied with a deadline to refinance the debt, permitting the lender to take ownership of the property. 2999TC immediately appealed. N.D. Tex. Bankr. Dkt. 284; *see also id.* at Dkt. 288 (amended notice of appeal).

At the time of the imposition of the receivership, the secured lender claimed that the loan's balance had grown to $45 million, still leaving nearly $30 million in net equity available to 2999TC. ROA.6885.

The Receiver, however, sought the District Court's approval to release all of 2999TC's rights and claims to the property to HNGH for a total of $2.5 million to be paid over the course of two years. ROA.6888. NDTX Dkt. 335 at 28. An evident purpose of the Receiver's motion and fire sale of 2999 Turtle Creek Blvd. was to raise $500,000 in cash to be immediately spent on operation of the "receivership estate." ROA. 6882. As it turns out, operation of the "receivership estate"—at least from an expense perspective—most significantly consisted of the Receiver's own activities, including investigating the Appellant.

The Appellant opposed the sale of 2999 Turtle Creek Blvd. on the grounds that the Receiver did not have the necessary authority to carry it out given, among other things, the pending challenges to the

receivership and the massive devaluation to the receivership estate that it would surely result in. ROA.7385-405. Without holding any hearing, without ordering or receiving any appraisals of the real property interests, and without taking any public bids on the interests, the District Court approved that sale just one week after the conclusion of briefing. Order Approving HNGH Settlement Agreement and Auction. ROA.7448.

The Court also approved the public auction of various personal effects belonging to Appellant that were located in the 2999 Turtle Creek Blvd. building, including his furniture and art. And the District Court's order blessing the sale offered little to no explanation or analysis for its decision to permanently dispossess the receivership estate of valuable property and at such a cut-rate price. ROA.7448-450. The District Court's order approving the sale offered no legal basis for its decision or grounds for its non-compliance with 28 U.S.C. § 2001. This summary order left the Appellant and other investors in 2999TC with nothing but questions and, worse, left this Court with little or nothing substantive to review on appeal.

On June 28, 2023, this Court reversed the order seizing the Appellant's property and appointing a receiver over it.[1] The Court held that the Commission did not attempt to meet, and the District Court failed to insist upon the Commission meeting, the demanding legal standards necessary for obtaining the "drastic remedy" of taking a defendant's property before trial and placing it into receivership. *SEC v. Barton*, 79 F.4th 573, 579 (5th Cir. 2023) (citing *Netsphere*, 703 F.3d at 305). This Court further explained that the District Court erred by skipping the required analysis of whether a given company proposed for seizure actually possessed property that is the subject of the litigation—here the Chinese national loan proceeds—before placing it into receivership. *Id.* at 580. The Court thus vacated the receivership as if it had never been ordered in the first place and set a time for that remedy to take effect. *Id.* at 581–82.

When this Court issued its opinion reversing and vacating the receivership, appeals of several District Court orders authorizing the

[1] On August 31, 2023, the Fifth Circuit slightly altered its opinion in ways not relevant to this appeal. *SEC v. Barton*, 72 F.4th 640 (5th Cir. 2023), *opinion withdrawn and superseded on denial of reh'g*, 79 F.4th 573 (2023). We cite to the superseded opinion with these alterations throughout this brief.

Receiver to sell property were pending. For two of those appeals, the Court determined that its reversal of the receivership mooted the appeals, presumably on grounds that the reversal made clear that the illegally-appointed Receiver lacked authority to complete the sales. *SEC v. Barton*, No. 22-11226, 2023 WL 5671292 (5th Cir. Sept. 1, 2023) and *SEC v. Barton*, No. 23-10515 (5th Cir. Oct. 12, 2023) (Dkt. 71).

## SUMMARY OF ARGUMENT

This Court should reverse the District Court's order authorizing the Receiver's sale and/or release of the landmark 2999 Turtle Creek Blvd. office building for four independent reasons.

First, the Receiver—Cort Thomas—lacked the authority to possess or to seek approval to sell or release rights to the subject property. That is because the Receiver was illegally appointed, and this Court already reversed and vacated the Initial Receivership Order appointing him to take any action on behalf of the receivership estate. *Barton*, 79 F.4th 573 (2023). In this case, the counter-party to the transaction at issue—HNGH—was fully apprised of the Appellant's pending legal challenge to the Receiver's authority. This Court should reverse the order authorizing the sale of 2999 Turtle Creek Blvd. and return all of the parties' property

Case: 23-10516 Document: 58 Page: 29 Date Filed: 11/21/2023

interests to the state that they were in prior to the illegally-appointed Receiver's interference with them.

Second, the District Court erred by approving such a dramatic alteration to the status quo of property interests held in a prejudgment receivership. At its outer limits, a Government-sought prejudgment receivership is imposed to safeguard property that is the proceeds of alleged wrongdoing pending a trial in which the Government is required to prove its allegations. Trial courts should not and cannot assume the Government will prevail on its claims and, based on that assumption, begin massive liquidations of those property interests prior to trial. The District Court did exactly that by disturbing the status quo of this marquee property in this case.

Third, the District Court erred by failing to comply with the statutorily mandated procedures for approving a receiver's request to sell or release a real property interest. *See* 28 U.S.C. § 2001. The District Court held no hearing, required no appraisals of the real property interests, and considered no public process for bidding on those interests before approving its transfer to HNGH.

Fourth, the District Court erred by permitting the sale and/or release of these real property interests for so little consideration in return. The District Court's decision was against the best interests of the receivership estate, including those of the Appellant and any allegedly affected lenders the Commission is attempting to protect. This property is estimated to be worth more than $70 million. The secured lender's claimed loan balance was less than $50 million, and what it is actually owed is likely less. Thus, by any calculation, tens of millions of dollars in net equity at issue remained, which the District Court permitted the release of for only $2.5 million to be paid over the course of two years. ROA.6888.

## ARGUMENT

### I. This Court's Opinion Reversing and Vacating the Receiver's Appointment Similarly Requires Reversal and Vacatur of Orders Authorizing the Receiver to Sell and Release Property Interests.

This Court reversed and vacated the District Court's Initial Receivership Order. *Barton*, 79 F.4th at 573. It was the Initial Receivership Order that authorized the Receiver to take possession of corporate entities associated with the Appellant—including 2999TC, the company relevant to this appeal—and the property and legal interests

that they held. ROA.616-40. This Court explained that the Receiver was illegally appointed because the Commission did not try to meet, and the District Court did not insist upon the Commission meeting, the high standards necessary for imposing the "drastic remedy" of a receivership. *Barton*, 79 F.4th at 579 (citing *Netsphere*, 703 F.3d at 305).

Because of this Court's Vacatur Order finding that the Receiver was illegally appointed, the Receiver had no authority to seize 2999TC's real property interests, much less to permanently release those interests to a third party. "[A] vacated ruling is 'officially gone,' has 'no legal effect whatever,' '[is] void,' and '[n]one of the statements made [therein] has any remaining force.'" *Alicea v. Comm'r of Soc. Sec.*, 855 F. App'x 494, 496 (11th Cir. 2021) (quoting *United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002) (en banc))); *see also In re Smith*, 165 F. App'x 961, 967 (3d Cir. 2006) (noting that "the 'slate was wiped clean'" where underlying decision was vacated). Vacated orders are treated as though they never went into effect. *See Lufkin v. McCallum*, 752 F. Supp. 421, 423 (N.D. Ala. 1990) (noting that, when opinion was vacated, "it was as if it had never existed."); *United States v. Harris*, 155 F. Supp. 17, 21 (S.D. Cal. 1957) ("The general rule is that when an order or judgment is

vacated the previously existing status is restored and the situation is the same as though the order or judgment had never been made." (quoting A.C. Freeman, *A Treatise of the Law of Judgments* 594–95 (5th ed. 1925))).

This Court should have no concern about the third party beneficiaries or purchasers of these real estate interests being prejudiced or surprised by the reversal of the transaction. HNGH knew that the authority of its counterparty—the Receiver—was subject to a serious legal challenge. The transaction occurred after merits briefing in this Court. The District Court's order authorizing the transfer of these real estate interests and HNGH's payment to the Receiver occurred after the May 1, 2023 oral argument before a panel of this Court, in which the panel raised serious issues about the receivership's validity. Indeed, the agreement between HNGH and the Receiver recognized the very possibility that the Receiver's appointment—and therefore this very transaction at issue—would be ruled illegal and vacated.

> If this Settlement Agreement is later voided or otherwise invalidated as a result of the Fifth Circuit Appeal, and HNGH does not receive the benefit of its bargain hereunder, then HNGH shall have recourse against the Receivership Entities and the Receiver for any payments made pursuant to this Agreement, and shall have a right to the disgorgement or

> avoidance and recovery of such payments. Further, if this Settlement Agreement is so voided or otherwise invalidated, then all of HNGH's claims, causes of action, defenses, or other rights against the Receivership Entities and all of the Receivership Entities' or Receiver's claims, causes of action, defenses, or other rights against HNGH shall immediately be reinstated to the extent otherwise waived or released in this Settlement Agreement.

ROA.6884.

This Court's opinion left open the possibility that the Commission might seek to amass evidence justifying the appointment of a "new receiver" over some subset of the assets illegally seized pursuant to the vacated Initial Receivership Order. *Barton*, 79 F.4th at 581–82. The Commission has now made that motion. NDTX Dkt. 309. Whether the Commission's effort to appoint a "new receiver" will be successful and, if so, over what assets remain open questions. This Court left open no possibility, however, that the "old," illegally-appointed Receiver—or his actions undertaken during the course of the illegal receivership—will be retroactively validated. If a "new receiver" is appointed and its scope reaches the assets or rights to such assets in question here, it will be up to that "new receiver" to seek new court approvals for any effort to transfer or to sell them, based on the most current information available at that time.

## II. The District Court Erred by Authorizing the Significant Disruption of the Property's Status Quo, Prior to the Commission Proving Any Liability at Trial.

The Government alleging wrongdoing against a defendant and then seizing all of that defendant's property and placing it into a receivership, prior to proving that wrongdoing at trial, is not standard operating procedure. Instead, it turns the entire system of justice, and property rights, on its head. For that reason, this Court has described such a receivership as a "drastic remedy." *Barton*, 79 F.4th at 579. (citing *Netsphere*, 703 F.3d at 305). Akin to the strict scrutiny test for Government incursions on fundamental constitutional rights, the receivership is to be imposed only when "no less drastic measures" will suffice to stop the flight of assets. *Id.*

If these tests are met (and they were determined by this Court not to have been met in the case of this Receiver, *Id.* at 579) and receivership is imposed, a trial court cannot let that receivership turn into a free-for-all. It follows that the receivership itself should take only "the leas[t] drastic measures" to secure the assets pending final judgment. And that certainly means not dramatically altering the status quo by permanently transferring those assets to a third party or otherwise selling them.

Predictably, therefore, courts that have considered the question have held that the business of prejudgment receiverships should not be the liquidation of assets, but instead their conservation in place. *See SEC v. Current Fin. Servs., Inc.*, 783 F. Supp. 1441, 1445 (D.D.C. 1992) ("The further step of liquidating Current's assets . . . is not necessary to protect Current's investors nor are such drastic measures appropriate prior to the entry of final judgment."); *Los Angeles Tr. Deed & Mortg. Exch. v. SEC*, 285 F.2d 162, 182 (9th Cir. 1960) (lamenting the "special additional penalty" that would result by allowing a Commission receiver to liquidate).

The District Court blew through these principles in authorizing the transfer of interests in the 2999 Turtle Creek Blvd. property. No regard was given to securing them in place for potential return to the Appellant in the event that the Commission did not prove its case. Instead, the Receiver and the District Court focused here, and elsewhere, on selling receivership estate property, with permanent effect. That is far from the least disruptive remedy that this Court has demanded with regard to receiverships and, Appellant respectfully submits, their implementation. The District Court's failure to follow these principles was error.

Case: 23-10516 Document: 58 Page: 36 Date Filed: 11/21/2023

### III. The District Court Erred By Not Following the Statutorily-Mandated Procedures for Authorizing a Receiver's Sale or Transfer of Real Property Interests under 28 U.S.C. § 2001.

The District Court erred by approving the 2999 Turtle Creek Blvd. transaction without following the Congressionally-mandated procedures for approving a receiver's request to sell or transfer an interest in real property. *See* 28 U.S.C. § 2001.

Congress enacted 28 U.S.C. § 2001 to ensure that receivers entrusted with the care of a third party's property do not sell that property without appropriate protections in place and procedures followed. *See Acadia Land Co. v. Horuff*, 110 F.2d 354, 354 (5th Cir. 1940) (holding that non-compliance with the statute results in a void sale); *see also SEC v. T-Bar Res., LLC*, No. CIV.A.3:07CV1994-B, 2008 WL 4790987, at *4 (N.D. Tex. Oct. 28, 2008) (explaining the reasons for Congress's having enacted § 2001's safeguards prior to a receiver's sale of property). The statute mandates that any order approving a receiver's sale of property be preceded by notice of a proposed sale, a hearing in the District Court, and independent valuations. 28 U.S.C. § 2001(b). Section 2001 further requires that no interest in property be sold for less than

two-thirds of its appraised value and that third parties have an opportunity to present higher offers. *Id.*

The District Court required compliance with none of those statutory requirements before authorizing the sale of the 2999 Turtle Creek Blvd. property. The Receiver did not obtain independent valuations of the 2999 Turtle Creek Blvd. property or of 2999TC's interests in that property. The District Court did not hold a hearing. Nor did the District Court allow third parties to submit offers to acquire the estate's interest in that property.

To justify skipping over these requirements, the Receiver argued to the District Court that he "eventually concluded that a sale path provides little to no recovery for the Receivership Estate." NDTX Dkt. 372 at 14. But there is no exception to § 2001 for when a receiver believes following such procedures would just take time and not produce much value. Indeed, the whole point of the § 2001 procedures is to test a receiver's assertions that its selected sale or transfer is the best course of action and in the best interests of the estate.

The District Court's order contained no analysis whatsoever, or even a conclusion, regarding the applicability of § 2001, despite

arguments in the Appellant's opposition brief that the § 2001 procedures must be followed here. ROA.7448-450; ROA.7393-397. Instead, the District Court summarily concluded that the transfer "is fair and equitable and in the best interests of the Receivership Estate." ROA.7448. The lack of analysis offered by the District Court on this critical issue frustrates appellate review of the lower court's decision, as well as whether the District Court abused its discretion in failing to consider the statute. "'Meaningful appellate review of the exercise of discretion requires consideration of the basis on which the trial court acted.'" *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 n.4 (5th Cir. 2008) (en banc) (quoting *Gurmankin v. Costanzo*, 626 F.2d 1115, 1119–20 (3d Cir. 1980)).

Section 2001 clearly applies to the release and transfer of 2999TC's interests in the property to HNGH. Section 2001 applies to the sale of "realty *or interest therein*." 28 U.S.C. § 2001(a); *see also* § 2001(b) (applying procedures to "the sale of any realty or interest or part thereof"). If a receiver's sale of any real property, "interest therein," or "part thereof" does not comply with § 2001's mandated procedures, the transaction is void. *Acadia Land Co.*, 110 F.2d at 354 (holding that a sale

is void if statutory requirements are not satisfied); *SEC v. T-Bar Res., LLC*, 3:07-CV-1994-B, 2008 WL 4790987, at *4 (N.D. Tex. Oct. 28, 2008) (holding that all requirements of § 2001 are conditions precedent to a valid sale). "Interests" in "real property" is a broad term, reaching any encumbrance on the property or its title that "diminishes the value of the [property] and constitutes a burden on its transfer." *Nationwide of Bryan, Inc. v. Dyer*, 969 S.W.2d 518, 521 (Tex. App.—Austin 1998, no pet.) (citing Black's Law Dictionary 527 (6th ed. 1990)); *see also In re Applied Chem. Magnesias Corp.*, 206 S.W.3d 114, 118 (Tex. 2006) (addressing the more inclusive scope of an "interest" in real property). Indeed, Texas courts have long recognized such encumbrances to include interests such as liens, easements, leases, servitudes, claims, and other charges upon property. *See City of Beaumont v. Moore*, 202 S.W.2d 448, 453–54 (Tex. 1947); *Latham v. Miller*, 250 S.W.2d 302, 304 (Tex. Civ. App.—Austin 1952, no writ); *see also Anadarko E & P Co., LP v. Clear Lake Pines, Inc.*, No. 03-04-00600-CV, 2005 WL 1583506, at *3 (Tex. App.—Austin July 7, 2005, no pet.) ("Examples of encumbrances include liens, claims, easements, and servitudes."); *In re City Nat'l Bank*, 257 S.W.3d 452, 455 (Tex. App.—Tyler 2008, orig. proceeding) ("[A]ny deed,

contract, judgment, or other instrument . . . that purports to convey any interest in or makes any charge upon the land of a true owner . . . is a cloud upon the legal title of the owner."); *Kelley v. Marlin*, 714 S.W.2d 303, 305 (Tex. 1986) (holding that a devise, by will, promising the plaintiff a future role in and profit from the sale of the land, made him "a conditional beneficiary" such that he had an "interest" that was "an equitable charge upon the land."). A *lis pendens* filing in local real property records separately denotes an "action involving title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property." Tex. Prop. Code § 12.007.

Here, in exchange for a $500,000 immediate cash payment and other payments over the course of two years, the Receiver released and dismissed 2999TC's legal claims to ownership of the property. ROA.6895-907. The Receiver further implemented that release by seeking dismissal of 2999TC's appeal prosecuting those claims. And the Receiver further agreed to vacate the 2999 Turtle Creek Blvd. premises, in exchange for the payment, releasing a possessory interest that is clearly an "interest" in "realty." *See City of Houston v. Carlson*, 393

Case 23-10516 Document: 58 Page: 41 Date Filed: 11/21/2023

S.W.3d 350, 358 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (noting that "[u]nder Texas common law, property ownership comes with a 'bundle of rights' which includes, among other things, the rights of possession and use.") (citing *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 382–83 (Tex. 2012) and further noting that "[a] governmental decision to take away possession and use of property clearly diminishes the bundle of property rights associated with that property. . ."); ROA.6901 ("[t]he Receiver is authorized to market and sell personal property of the Receivership Entities located at the Property, not including fixtures, up to and until June 9, 2023, by which time the Receiver shall have removed or disposed of such personal property and vacated the premises (the 'Vacate Date').").

2999TC had a claim in the ownership of the real property located at 2999 Turtle Creek Blvd., and the claim was an encumbrance on that property. That claim, the encumbrance, qualifies as an interest in realty. *Nationwide of Bryan*, 969 S.W.2d at 521. It was error not to follow § 2001 procedures before the property at issue was permanently released.

### IV. The District Court Erred in Concluding That the Release and Transfer of 2999 Turtle Creek Property Interests Was in the Best Interests of the Estate.

A receiver owes a fiduciary duty to the receivership estate that it is appointed by a court to oversee. *See, e.g.*, Order Appointing Receiver (ROA.616); *see also, e.g.,* Securities and Exchange Commission, *Investor Bulletin: 10 Things to Know About Receivers* (August 27, 2015), available at: https://www.sec.gov/oiea/investor-alerts-bulletins/ib_receivers ("A receiver has a fiduciary duty to stakeholders and the court…."). Thus, any actions taken by a receiver, particularly when it comes to dispositions of receivership property, may only be approved if they are in the best interest of the estate. *See SEC v. W Fin. Grp., LLC*, No. 3:08-CV-0499-N, 2010 U.S. Dist. LEXIS 149445 at *5–6 (N.D. Tex. Jan. 22, 2010) (in which the court "assess[ed] whether the compromise [wa]s in the best interest of the receivership estate"). When a district court approves a sale that is clearly not in the best interest of the estate, that approval is in error and should be reversed. *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 839 (5th Cir. 2019); *Netsphere*, 703 F.3d at 305.

To be sure, the District Court has some discretion in determining whether a transaction is in the best interests of the estate. But "a court's

exercise of its discretion is not unbounded." *In re Volkswagen of Am., Inc.*, 545 F.3d at 310.

In this case, the District Court's decision to approve the sale and release of the estate's interest in the 2999 Turtle Creek Blvd. property was accompanied by absolutely no explanation. ROA.7448. Instead, the District Court's finding spanned a sentence fragment, in which it approved the sale and found "that it is fair and equitable and in the best interests of the Receivership Estate." *Id.* As this Court has held, that lack of explanation can itself be error, because it deprives the appellate court of the opportunity to evaluate the reasons underlying any exercise of discretion. *In re Volkswagen of Am., Inc.*, 545 F.3d at 310 n.4 (quoting *Gurmankin v. Costanzo*, 626 F.2d 1115, 1119–20 (3d Cir. 1980)).

Substantively, this summary conclusion approving the release and transfer of 2999TC's realty interest in 2999 Turtle Creek Blvd. was error.

First, the District Court approved the sale, and wasted estate resources pursuing it, when the receivership itself was in serious question before this Court. It was an abuse of discretion to set the parties off on appeals, and to consume this Court's resources addressing them, when the wiser course was to await this Court's judgment on the

receivership's propriety. The Appellant asked the District Court to do so, and it apparently declined.

Second, the District Court erred in accepting so little in return for its release of 2999TC's claims on the property at issue. 2999TC—owned by Barton and several third parties having nothing to do with this case—invested tens of millions of dollars purchasing the property and servicing and extending the terms of the secured debt on it. ROA.7400-7401. The secured lender, now represented by HNGH, had been paid $6 million on loans in the form of timely interest and extension payments. *Id.* As Barton made clear to the District Court early on, the 2999 Turtle Creek Blvd. property was "worth potentially upwards of $70 million." ROA.7401. Confirming that estimate, the global real estate finance firm CBRE assessed the property's value at $71.5 million. NDTX Dkt. 335 at 28. Even accounting for what was owed to the lender, 2999TC had a claim to tens of millions in net equity.

The District Court approved releasing this claim for an immediate cash payment of $500,000, plus $2 million more in payments over two years. Compared against the net equity in the property, that release was made for just pennies on the dollar.

There is no question that litigation over the property was a factor. The Bankruptcy Court held that 2999TC had missed a window to refinance the property and had granted ownership to the secured lender. But that ruling was under appeal, and it arose for proceedings before a newly-appointed Bankruptcy Judge that were rife with error. Most prominent among that error was the Bankruptcy Court's failure to hold an adversary proceeding under the Bankruptcy Rules of Procedure. Instead, the Bankruptcy Court elected to treat the proceeding as a time-sensitive emergency, bypassed any discovery, and held an informal evidentiary hearing spread over portions of fifteen non-consecutive days over a monthlong period. This proceeding was no emergency. One of the reasons this is clear is that the Bankruptcy Court waited for over four months after the last session of the informal hearing to issue its ruling. Civil discovery, trial and adversary proceeding procedures, and the rules of evidence are in place to ensure a more reliable application of law to fact. The Bankruptcy Court's deviation from those procedures undermines confidence and imbeds reversible error in its ruling with regard to the lending agreements and its remedy of transferring ownership.

2999TC appealed the Bankruptcy Court's decision and retained possession of the property. That appeal was a serious one, with a substantial likelihood of success. But the Receiver argued, in support of his request to dump the realty interest in exchange for quick cash, that the appeal was worth little and unlikely to succeed. Given the lack of any explanation in its order or any hearing, this Court cannot know whether or how the District Court valued the claim or the appeal. But to justify the release of the interest in this property, the District Court would have had to value the percentage chances of success in the single digits. That simply cannot be reconciled with the erroneous detachment of the Bankruptcy Court's proceedings from the Bankruptcy Rules of Procedure, particularly with regards to there being any kind of adversary proceeding.

Third, the District Court erred by prioritizing the generation of cash proceeds from the sale of 2999 Turtle Creek Blvd. over the preservation of assets for the estate's beneficiaries, including the Appellant and potentially the allegedly mistreated Chinese national lenders. The point of that cash generation had nothing to do with conserving assets for or compensating any of those beneficiaries. It had everything to do with

paying the significant legal bills of the law firm for which the Receiver is a partner. The annual run rate of that law firm's bills against the receivership estate exceeds $1 million. *See* Receiver's Fee Applications ROA.3466; ROA.7451; NTDX Dkt. 300. And the vast majority of those funds were spent doing the Commission's job—investigating the Defendant and attempting to backfill the profound evidentiary deficiencies in the Commission's initial application for a receivership. Funding that work, in real time cash payments, cannot come at the expense of releasing the receivership estate's property interests at a fraction of their value.

## **CONCLUSION**

This Court should reverse and vacate the District Court's approval of the 2999 Turtle Creek Blvd. sale order.

Respectfully submitted,

*/s/ Michael J. Edney*

Michael J. Edney
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue NW
Washington, DC 20037
(202) 955-1500
*medney@huntonak.com*

ATTORNEY FOR APPELLANT
TIMOTHY LYNCH BARTON

Date: November 21, 2023

## **Certificate of Filing and Service**

I hereby certify that on November 21, 2023, this document was filed and served in PDF format using the United States Court of Appeals for the Fifth Circuit's CM/ECF system upon all counsel of record, as follows:

Ezekiel L. Hill
hillez@sec.gov
Securities and Exchange Commission
100 F St., N.E.
Washington, DC 20549

Keefe M. Bernstein
bernsteink@sec.gov
James E. Etri
etrij@sec.gov
David B. Reece
reeced@sec.gov
Securities and Exchange Commission
801 Cherry St., Suite 1900
Fort Worth, TX 76102

*Counsel for the Securities and Exchange Commission*

In addition, I further certify that this electronic filing is an exact copy of the paper document and any privacy redactions have been made. This filing has been scanned for viruses and has been found to be free of viruses.

*/s/ Michael J. Edney*
Michael J. Edney

Case: 23-10516 Document: 58 Page: 50 Date Filed: 11/21/2023

**Certificate of Compliance**

I hereby certify that this document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), the document contains 6,235 words, as calculated using the word processor used to prepare this document, Microsoft Word for Microsoft 365. I also certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Michael J. Edney*
Michael J. Edney

# EXHIBIT ñBò

No. 23-10516

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

SECURITIES AND EXCHANGE COMMISSION,
*Plaintiff-Appellee*,

v.

TIMOTHY BARTON,
*Defendant-Appellant*.

---

Appeal from the United States District Court
for the Northern District of Texas
No. 3:22-cv-02118-X

---

**BRIEF OF APPELLEE
SECURITIES AND EXCHANGE COMMISSION**

---

MEGAN BARBERO
*General Counsel*

MICHAEL A. CONLEY
*Solicitor*

DOMINICK V. FREDA
*Assistant General Counsel*

EZEKIEL L. HILL
*Appellate Counsel*

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
202.551.7724 (Hill)
hillez@sec.gov

## CERTIFICATE OF INTERESTED PERSONS

*Securities and Exchange Commission v. Timothy Barton*, No. 23-10516

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. 126 Villita LLC, receivership entity
2. 2999TC Acquisitions, LLC, receivership entity
3. 2999TC JMJ CMGR, LLC (Delaware), receivership entity
4. 3820 Illinois, LLC, interested party
5. Aledo TX, LLC, receivership entity
6. Adam and Reese LLP, counsel for interested party Bank of America, N.A.
7. AVG West, LLC, receivership entity
8. Badgley, Serena, interested party
9. Baker Botts, counsel for interested party Pioneer Finance, Inc.
10. Bank of America, N.A., interested party
11. Barbero, Megan, counsel for plaintiff-appellee Securities and Exchange Commission
12. Barton, Maximilien, interested party
13. Barton, Timothy, defendant-appellant

14. Baum, Nathan B., counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

15. BEE2019, LLC, receivership entity

16. Bell Nunnally & Martin LLP, counsel for interested party McCormick 101, LLC

17. Bernstein, Keefe M., counsel for plaintiff-appellee Securities and Exchange Commission

18. BM318 LLC, receivership entity

19. Broadview Holdings Trust, receivership entity

20. Brown Fox PLLC, counsel for receiver Cortney C. Thomas

21. Buchanan, Lindsay L., counsel for interested party Pioneer Finance, Inc.

22. Cain & Skarnulis PLLC, counsel for interested party Serena Badgley

23. Capps, Aaron T., counsel for interested party Circle H Contractors LP

24. Capps and Associates PLLC, counsel for interested party Circle H Contractors LP

25. Carnegie Development, LLC, defendant and receivership entity

26. Carrillo, C. Alan, counsel for receiver Cortney C. Thomas

27. Chandler & Shavin PLLC, counsel for interested party Dhiraj Ramolia

28. Chandler Law PC, counsel for interested party Dhiraj Ramolia

29. Chandler, Corinna P., counsel for interested party Dhiraj Ramolia

30. Chapple, Ryan E., counsel for interested party Serena Badgley

31. Circle H Contractors LP, interested party

32. Collins, Lewis F., counsel for interested party McCormick 101, LLC

33. Conley, Michael A., counsel for plaintiff-appellee Securities and Exchange Commission

34. Cooke, Chris, counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

35. Curran, Thomas J., counsel for interested parties Moss & Associates, LLC and MFO Venus Development, LLC

36. D4DS LLC, receivership entity

37. D4FR LLC, receivership entity

38. D4IN, LLC (Texas), receivership entity

39. D4KL LLC, receivership entity

40. D4MC, LLC (Texas), receivership entity

41. D4OP, LLC, receivership entity

42. DeYoung, Kyle M., counsel for interested party HNGH Turtle Creek, LLC

43. DJD Land Partners, LLC, relief defendant and receivership entity

44. Edney, Michael J., counsel for defendant-appellant Timothy Barton

45. Enoch Investments LLC, receivership entity

46. Etri, James E., counsel for plaintiff-appellee Securities and Exchange Commission

47. FHC Acquisition LLC, receivership entity

48. Freda, Dominick V., counsel for plaintiff-appellee Securities and Exchange Commission

49. Fu, Haoqiang, defendant

50. Fullington, Ian E., counsel for interested parties Moss & Associates, LLC and MFO Venus Development, LLC

51. Gillespie Villas LLC, receivership entity

52. Goldmark Hospitality LLC, receivership entity

53. Hale, Hon. Harlin, mediator

54. Heiskell, Michael P., counsel for defendant Stephen T. Wall

55. Hicks, Jr., George W., counsel for counsel for interested party HNGH Turtle Creek, LLC

56. Hill, Ezekiel L., counsel for plaintiff-appellee Securities and Exchange Commission

57. HNGH Turtle Creek, LLC, interested party

58. Holland & Knight LLP, counsel for defendant-appellant Timothy Barton

59. HR Sterling, LLC, receivership entity

60. Hunter, Renee M., counsel for intervenor United States of America

61. Hunton Andrews Kurth LLP, counsel for defendant-appellant Timothy Barton

62. JMJ Acquisitions LLC, receivership entity

63. JMJ Development LLC, receivership entity

64. JMJ Hospitality, LLC, receivership entity

65. JMJ VC Management, LLC, receivership entity

66. JMJAV, LLC, receivership entity

67. JMJD4, LLC (Delaware), receivership entity

68. JMR100 LLC, receivership entity

69. Johnson Vaughn & Heiskell, counsel for defendant Stephen T. Wall

70. Kane Russell Coleman & Logan PC, counsel for interested party HNGH Turtle Creek, LLC

71. Kane, John J., counsel for interested party HNGH Turtle Creek, LLC

72. Kearns, David T., counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

73. Kirkland & Ellis LLP, counsel for interested party HNGH Turtle Creek, LLC

74. Kleinsasser, Matthias, counsel for interested party Vertical Street Ventures, LLC

75. Koonce, Charlene C., counsel for receiver Cortney C. Thomas

76. Lajolla Construction Management LLC, receivership entity

77. LC Aledo TX, LLC, receivership entity

78. LDG001, LLC, relief defendant and receivership entity

79. Lesser, Joshua A., counsel for interested party Bank of America, N.A.

80. Light, Barbara, counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

81. Lynco Ventures, LLC, receivership entity

82. Mansion Apartment Homes at Marine Creek, LLC, receivership entity

83. Marine Creek SP, LLC, receivership entity

84. McCormick 101, LLC, interested party

85. MFO Venus Development, LLC, interested party

86. Mills, Russell W., counsel for interested party McCormick 101, LLC

87. MO 2999TC, LLC, receivership entity

88. Moeller, Evan A., counsel for interested party Bank of America, N.A.

89. Moss & Associates, LLC, interested party

90. MXBA LLC, interested party

91. Nealy Cox, Erin, counsel for interested party HNGH Turtle Creek, LLC

92. Nguyen, Tina Q., counsel for interested party Pioneer Finance, Inc.

93. Norman, Brian K., counsel for interested party Southern Properties Capital, Ltd.

94. Northstar PM, LLC (Delaware), receivership entity

95. Norton Rose Fulbright US LLP, counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

96. O'Connell, Sean B., counsel for defendant-appellant Timothy Barton

97. Orchard Farms Village LLC, receivership entity

98. Palisades-TC, LLC, interested party

99. Patton, Jonathan R., counsel for interested party Palisades-TC, LLC

100. Peckar & Abramson, counsel for interested parties Moss & Associates, LLC and MFO Venus Development, LLC

101. Pioneer Finance, Inc., interested party

102. Ramer, Samuel, counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

103. Ramolia, Dhiraj, interested party

104. Reece, David B., counsel for plaintiff-appellee Securities and Exchange Commission

105. Ridgeview Addition, LLC (Texas), receivership entity

106. Seagoville Farms, LLC, receivership entity

107. Securities and Exchange Commission, plaintiff-appellee

108. SF Rock Creek, LLC, receivership entity

109. Shamoun & Norman, LLP, counsel for interested party Southern Properties Capital, Ltd.

110. Shamoun, C. Gregory, counsel for interested party Southern Properties Capital, Ltd.

111. Shavin, Eliot Dana, counsel for interested party Dhiraj Ramolia

112. Southern Properties Capital, Ltd., interested party

113. Spector & Cox, PLLC, counsel for interested parties Tamamoi, LLC and 3820 Illinois, LLC

114. Spector, Howard Marc, counsel for interested parties Tamamoi, LLC and 3820 Illinois, LLC

115. Starr, Hon. Brantley, U.S. District Court Judge (N.D. Tex.)

116. Tamamoi, LLC, interested party

117. TC Hall, LLC, receivership entity

118. Thomas, Cortney C., receiver

119. Tillotson, Jeffrey M., counsel for interested party Palisades-TC, LLC

120. Tillotson Johnson & Patton, counsel for interested party Palisades-TC, LLC

121. Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, receivership entity

122. TRTX Properties LLC, interested party

123. United States of America, intervenor

124. Venus59 LLC, receivership entity

125. Vertical Street Ventures, LLC, interested party

126. Villita Development, LLC

127. Villita Towers LLC, receivership entity

128. Wall, Stephen T., defendant

129. Wall007, LLC, defendant and receivership entity

130. Wall009, LLC, defendant and receivership entity

131. Wall010, LLC, defendant and receivership entity

132. Wall011, LLC, defendant and receivership entity

133. Wall012, LLC, defendant and receivership entity

134. Wall016, LLC, defendant and receivership entity

135. Wall017, LLC, defendant and receivership entity

136. Wall018, LLC, defendant and receivership entity

137. Wall019, LLC, defendant and receivership entity

138. Walraven, Gwen I., counsel for interested party McCormick 101, LLC

139. Wells, Tim, counsel for receiver Cortney C. Thomas

140. Wielebinski, Joe, counsel for interested party Vertical Street Ventures, LLC

141. Winstead PC, counsel for interested party Vertical Street Ventures, LLC

The persons and entities described in the fourth sentence of Rule 28.2.1 having an interest in the outcome of this case also include (1) investors in defendants and receivership entities Wall007, LLC; Wall009, LLC; Wall010; Wall011, LLC; Wall012, LLC; Wall016; Wall017, LLC; Wall018, LLC; and/or Wall019, LLC, and (2) creditors of receivership entities.

*/s/ Ezekiel L. Hill*
Ezekiel L. Hill
*Attorney of Record for Appellee*
*Securities and Exchange Commission*

Case: 23-10516 Document: 67 Page: 11 Date Filed: 11/20/2023

## STATEMENT REGARDING ORAL ARGUMENT

The Securities and Exchange Commission believes that oral argument is unnecessary for this Court's consideration of this appeal because the issues presented are controlled by settled law and adequately presented in the briefs and the record.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................ i

STATEMENT REGARDING ORAL ARGUMENT ........................................ x

TABLE OF CONTENTS ........................................ xi

TABLE OF AUTHORITIES ........................................ xiii

PRELIMINARY STATEMENT ........................................ 1

COUNTERSTATEMENT OF JURISDICTION ........................................ 3

COUNTERSTATEMENT OF THE ISSUES ........................................ 4

COUNTERSTATEMENT OF THE CASE ........................................ 4

A. After the Commission filed this action, the district court granted the Commission's motion to appoint a receiver over entities controlled by Barton ........................................ 5

B. Before 2999TC became part of the receivership, it acquired Turtle Creek and then transferred Turtle Creek to third-party HNGH ........................................ 6

C. After HNGH intervened in this action, the receiver and HNGH entered into a settlement agreement regarding Turtle Creek ........................................ 8

D. The district court approved the Settlement Agreement as in the best interests of the receivership ........................................ 10

E. Barton appealed from the Turtle Creek Order, and the appeal was initially dismissed and then reinstated ........................................ 13

F. After this Court remanded the First Receivership Order, the district court reappointed the receiver and issued an order ratifying and adopting the Turtle Creek Order *nunc pro tunc* ........................................ 15

STANDARD OF REVIEW ........................................ 16

SUMMARY OF ARGUMENT ....................16

ARGUMENT ....................19

I. This Court lacks jurisdiction over this interlocutory appeal ....................19

II. This appeal is moot ....................21

A. The Ratification Order ratified and adopted the Turtle Creek Order *nunc pro tunc* ....................21

B. Barton also fails to demonstrate how this Court can grant him effectual relief from the Turtle Creek Order's authorization of the Settlement Agreement, which has already gone into effect ....................22

III. If this Court determines that this appeal is properly before it, the Turtle Creek Order should be affirmed on the merits ....................23

A. *Barton I* does not require vacatur of the Turtle Creek Order ....................23

B. The district court acted within its discretion in concluding that the Settlement Agreement was in the receivership's best interests ....................27

CONCLUSION ....................32

CERTIFICATE OF SERVICE AND FILING

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Acheron Cap. Ltd. v. Mukamal*,
22 F.4th 979 (11th Cir. 2022) ....................19

*Associated Recovery L.L.C. v. Does 1-44*,
769 F. App'x 160 (5th Cir. 2019) ....................26

*Hall v. Hall*,
138 S. Ct. 1118 (2018) ....................20

*In re Baron,*
593 F. App'x 356 (5th Cir. 2014) ....................25-26

*Martin v. Halliburton*,
618 F.3d 476 (5th Cir. 2010) ....................19

*Ministry of Oil of the Republic of Iraq v. Kurdistan Region of Iraq*,
634 F. App'x 953 (5th Cir. 2015) ....................23

*Netsphere, Inc. v. Baron*,
703 F.3d 296 (5th Cir. 2012) ....................15, 25

*Netsphere, Inc. v. Baron*,
799 F.3d 327 (5th Cir. 2015) ....................1, 3, 19-21

*North Carolina v. Rice*,
404 U.S. 244 (1971) ....................3

*SEC v. Barton*,
79 F.4th 573 (5th Cir. 2023) ....................2, 15, 22, 24

*SEC v. Barton*,
No. 22-11226, 2023 WL 5671292 (5th Cir. Sept. 1, 2023) ....................25

*SEC v. Elliott*,
953 F.2d 1560 (11th Cir. 1992) ....................32

*SEC v. Janvey*,
404 F. App'x 912 (5th Cir. 2010) ........ 20, 23

*SEC v. Safety Fin. Serv., Inc.*,
674 F.2d 368 (5th 1982)........ 27, 30

*SEC v. Stanford Int'l Bank, Ltd.*,
927 F.3d 830 (5th Cir. 2019) ........ 16, 27

*Spell v. Edwards*,
962 F.3d 175 (5th Cir. 2020) ........21

*Thibaut v. Ourso*,
705 F.2d 118 (5th Cir. 1983) ........ 22-23

*United States v. "A" Manufacturing Co.*,
541 F.2d 504 (5th Cir. 1976) ........ 14, 19

*United States v. Hager*,
879 F.3d 550 (5th Cir. 2018) ........29

*United States v. Jackson*,
771 F.3d 900 (5th Cir. 2014) ........22

**Other Authorities**

Securities Act of 1933 (15 U.S.C. § 77a *et seq.*)

Section 17(a), 17 U.S.C. § 77q(a)........5
Section 20(b), 15 U.S.C. § 77t(b) ........3
Section 20(d), 15 U.S.C. § 77t(d) ........3
Section 22(a), 15 U.S.C. § 77v(a)........3

Securities Exchange Act of 1934 (15 U.S.C. § 78a *et seq.*)

Section 10(b), 15 U.S.C. § 78j(b) ........ 5
Section 21(d), 15 U.S.C. § 78u(d) ........3
Section 21(e), 15 U.S.C. § 78u(e)........3
Section 27, 15 U.S.C. § 78aa ........3

Rule 10b-5, 17 C.F.R. § 240.10b-5 .......... 5

28 U.S.C. § 1331 .......... 3

28 U.S.C. § 1291 .......... 20

28 U.S.C. § 1292(a)(2) .......... 20

28 U.S.C. § 2001(a) .......... 18, 28

**PRELIMINARY STATEMENT**

This appeal is jurisdictionally flawed and meritless. In this civil enforcement action for securities fraud brought by the Securities and Exchange Commission, appellant Timothy Barton appeals from a district court order authorizing an equity receiver to enter into a settlement agreement with a third party on behalf of a receivership entity. But the appealed-from order, one of many interlocutory orders the district court issued in supervising the receivership, is not properly before this Court—both because this Court lacks appellate jurisdiction and because, in any event, the appeal is moot. And even were it properly before this Court, the appealed-from order falls comfortably within the bounds of the district court's substantial discretion in supervising an equity receivership.

Barton's jurisdictional assertion—that this Court can immediately review a district court's interlocutory order authorizing a receiver to sell property—is both factually and legally flawed. Factually, the order did not authorize the sale of property—the receivership entity did not own the real property at issue and the settlement agreement did not transfer ownership of that property (or any legal interest therein). And legally, this Court has rejected similar appeals from such interim receivership orders because they are neither final decisions under 28 U.S.C. § 1291 nor immediately appealable under 28 U.S.C. § 1292(a)(2). *See, e.g.*, *Netsphere, Inc. v. Baron*, 799 F.3d 327, 331-34 (5th Cir. 2015) ("*Netsphere II*"). If

adopted, Barton's position would undermine not only district courts' efficient supervision of equity receiverships, but also district courts' equitable authority to oversee receiverships in which receivership entities have legal disputes with third parties, a common occurrence.

This appeal is also moot. In *SEC v. Barton*, 79 F.4th 573 (5th Cir. 2023) ("*Barton I*"), this Court held that the district court applied the wrong legal standard in imposing the first receivership and ordered the receivership vacated but delayed vacatur to allow the district court the opportunity to determine whether to impose a second receivership without the disruption that immediate vacatur would cause. On remand, the district court established a second receivership under the appropriate standard and also issued a new order that ratified and adopted the appealed-from order. As a result, vacating the appealed-from order would not provide Barton with effectual relief. And even were that not so, the appealed-from order was not stayed pending appeal, so the settlement agreement it authorized has already taken effect, releasing legal claims against a third party and allowing that third party to take possession of the real property at issue.

Were this Court to reach the merits, the district court acted within its discretion in approving the settlement agreement as in the receivership's best interests. The settlement agreement provided $2.5 million in much-needed cash for the receivership estate to preserve salvageable assets. And while the settlement

Case: 23-10516 Document: 67 Page: 19 Date Filed: 01/11/2024

agreement required dismissal of an appeal challenging a judicial determination that the real property at issue did not belong to the receivership entity, the appeal was unlikely to succeed and even if successful would have resulted in the receivership entity owing as much as $14 million more than the property was worth. Barton has not shown how the district court abused its discretion in authorizing this reasonable outcome.

## COUNTERSTATEMENT OF JURISDICTION

The district court had jurisdiction pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d), 77v(a); Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d), 78u(e), 78aa; and 28 U.S.C. § 1331.

But this Court lacks jurisdiction over Barton's appeal (ROA.7579) from the district court's May 15, 2023 order approving the receiver's settlement agreement with HNGH Turtle Creek, LLC (ROA.7448) for two independent reasons. First, as the Commission demonstrated in its carried motion to dismiss (App. Dkt. 17), this Court lacks jurisdiction to review an interlocutory appeal from an such an order "issued in the course of a receivership." *Netsphere II*, 799 F.3d at 332*; see infra* 19-21. Second, this Court lacks jurisdiction "to decide moot questions," *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (cleaned up), and this appeal is moot. *See infra* 21-23.

## COUNTERSTATEMENT OF THE ISSUES

1. Whether this appeal must be dismissed because this Court lacks jurisdiction over an interlocutory appeal from a district court order approving a receiver's settlement of legal claims.

2. Whether this appeal must be dismissed as moot because (a) the district court order from which Barton appeals has been ratified and adopted *nunc pro tunc* in a subsequent district court order and (b) Barton has failed to demonstrate that this Court can provide any effectual relief from the district court order from which he appeals because the settlement agreement authorized by that order has already taken effect.

3. Whether, assuming this appeal is properly before this Court, the district court's order should be affirmed on the merits.

## COUNTERSTATEMENT OF THE CASE

In this Commission civil law enforcement action, the district court appointed a receiver over Barton-controlled entities to secure assets that could potentially be monetized for defrauded investors. One of the receivership entities—2999TC Acquisitions, LLC ("2999TC")—had been involved in a dispute with third party HNGH Turtle Creek, LLC ("HNGH") following 2999TC's default on a loan that HNGH's predecessor-in-interest provided to 2999TC to purchase real property located at 2999 Turtle Creek Boulevard in Dallas, Texas ("Turtle Creek"). When

2999TC petitioned for bankruptcy, the bankruptcy court determined that HNGH held valid title to Turtle Creek. Once the receiver was appointed, the receiver (standing in the shoes of 2999TC) and HNGH entered into a settlement agreement to resolve what remained of the dispute between 2999TC and HNGH. It is from the district court's approval of that agreement that Barton appeals.

### A. After the Commission filed this action, the district court granted the Commission's motion to appoint a receiver over entities controlled by Barton.

On September 23, 2022, the Commission filed a complaint against Barton and others, alleging that from 2017 to 2019 they defrauded more than 100 investors out of more than $26 million. ROA.36. Barton told investors that their funds would be used to purchase specified parcels of land that would be developed into residential lots. Barton promised investors that they would receive interest payments and that their principal would be repaid. But Barton did not purchase the properties or make the promised payments. Instead, Barton misappropriated nearly all of the invested funds and used them to fund, among other things, his lifestyle and other real estate projects in which entities under his control held interests. The complaint alleges that Barton violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, and Section 17(a) of the Securities Act, 17 U.S.C. § 77q(a), and seeks, among other things, an order enjoining Barton from further violating those provisions and requiring

Barton to disgorge his ill-gotten gains and to pay a civil penalty. ROA.58, 59-60, 62-63.

After filing this action, the Commission moved the district court to appoint a receiver over all Barton-controlled entities (including 2999TC) to determine the value of their assets and to "secure, preserve, and potentially monetize that value for the benefit of defrauded investors." ROA.130. On October 18, 2022, the district court granted the Commission's motion. ROA.616 ("First Receivership Order").

**B. Before 2999TC became part of the receivership, it acquired Turtle Creek and then transferred Turtle Creek to third-party HNGH.**

In 2019, 2999TC purchased Turtle Creek for about $43 million. ROA.6880, 6896, 6912. In connection with the purchase, 2999TC obtained a loan from the predecessor-in-interest to HNGH in the principal amount of $32.5 million. *Id.* The note evidencing the loan was secured by Turtle Creek. *Id.*

After 2999TC repeatedly defaulted on its obligations under the note, 2999TC and HNGH entered into a forbearance agreement. ROA.6881, 6896-97, 6913-16. In exchange for forbearance, 2999TC executed a special warranty deed conveying Turtle Creek to HNGH. The deed was placed in escrow, and the parties agreed that it would be released to HNGH if 2999TC defaulted under the forbearance agreement. ROA.6881, 6897, 6915-16.

On October 29, 2021, 2999TC defaulted under the forbearance agreement. ROA.6881, 6897, 6916. Consequently, the special warranty deed was released to HNGH and at HNGH's request was recorded on November 1, 2021. ROA.6881, 6897, 6916.

Before the special warranty deed was recorded, however, 2999TC filed a bankruptcy petition. *In re 2999TC Acquisitions, LLC*, No. 21-31954 (Bankr. N.D. Tex.); *see* ROA.6881, 6897, 6916. 2999TC initiated an adversary proceeding against HNGH, seeking to have the transfer of Turtle Creek to HNGH voided as a preferential and fraudulent transfer. *2999TC Acquisitions, LLC v. HNGH Turtle Creek, LLC*, No. 21-3085 (Bankr. N.D. Tex.); *see* ROA.6881, 6897, 6916.

Thereafter, 2999TC and HNGH reached a compromise resolving the adversary proceeding and providing that HNGH would return Turtle Creek to 2999TC if 2999TC made certain payments to HNGH, but if 2999TC failed to make the payments, the transfer of Turtle Creek to HNGH would be deemed a valid and unavoidable prepetition transfer. Dkt. 64, 94 (No. 21-31954); *see* ROA.6881-82, 6897-98, 6917-19. That compromise was incorporated into 2999TC's plan of reorganization, which was then confirmed by the bankruptcy court. Dkt. 123 (No. 21-31954); *see* ROA.6882-83, 6898, 6919.

When 2999TC again failed to make required payments, HNGH moved the bankruptcy court to confirm that Turtle Creek had been validly conveyed to

HNGH. Dkt. 134 (No. 21-31954); *see* ROA.6883, 6898, 6923. 2999TC then initiated a second adversary proceeding against HNGH, seeking to have 2999TC declared the owner of Turtle Creek. *2999TC Acquisitions, LLC v. HNGH Turtle Creek, LLC,* No. 22-3061 (Bankr. N.D. Tex.); *see* ROA.6883, 6898, 6924-25.

On September 28, 2022, following a hearing that ran more than 50 hours over 15 days, the bankruptcy court granted HNGH's motion, holding that the transfer of Turtle Creek from 2999TC to HNGH was "valid," that "HNGH [was] the owner of [Turtle Creek]," and that 2999TC had "no … right, title, or interest in [Turtle Creek], nor any lien, claim, encumbrance, or cloud on title against [Turtle Creek]." ROA.6909 ("Bankruptcy Order"), 6956; *see* ROA.6883, 6898-99. 2999TC appealed the Bankruptcy Order. *2999TC Acquisitions, LLC v. HNGH Turtle Creek, LLC*, No. 3:22-cv-02186-X (N.D. Tex.); s*ee* ROA.6883, 6899.

2999TC's bankruptcy case, second adversary proceeding against HNGH, and appeal of the Bankruptcy Order were stayed by the First Receivership Order (issued October 18, 2022), which stayed litigation involving receivership entities. *See* ROA.631-32.

### C. After HNGH intervened in this action, the receiver and HNGH entered into a settlement agreement regarding Turtle Creek.

Concerned that its ownership of Turtle Creek could be "collaterally undermine[d]," HNGH moved the district court to intervene in this action and for confirmation of its ownership of Turtle Creek. ROA.1252. The district court

Case: 23-10516 Document: 67 Page: 25 Date Filed: 01/11/2024

permitted HNGH to intervene but declined to confirm HNGH's ownership of Turtle Creek, instead ordering HNGH and the receiver to mediate their disputes. ROA.26 (Dkt. 154).

Those disputes were threefold. First, while HNGH claimed ownership of Turtle Creek based on the Bankruptcy Order, the receiver "maintained that the bankruptcy court's findings were made without the benefit of facts that were discovered after [the enforcement action] was filed … and accordingly sought examination of all options available to challenge the bankruptcy court's determinations regarding the ownership and possession of [Turtle Creek]." ROA.6884-85. Second, if the receiver managed to unwind the Bankruptcy Order and restore ownership of Turtle Creek to 2999TC, 2999TC would owe HNGH as much as about $51 million in connection with the Turtle Creek purchase loan. ROA.6885. Third, the receiver claimed that certain payments by other receivership entities to HNGH in connection with the Turtle Creek purchase loan may have been fraudulent transfers, which HNGH disputed. ROA.6885-86.

Following mediation, on April 13, 2023, the receiver and HNGH entered into a settlement agreement. ROA.6896 ("Settlement Agreement"). The Settlement Agreement, which was subject to the district court's approval, provided for the mutual release of legal claims, for the receiver to surrender possession of Turtle Creek to HNGH, and for HNGH to pay the receiver $2.5 million. *Id.* The

Settlement Agreement did not transfer Turtle Creek or any legal interest therein. *See id.*

**D. The district court approved the Settlement Agreement as in the best interests of the receivership.**

1. The receiver moved the district court to approve the Settlement Agreement and to lift the litigation stay imposed by the First Receivership Order to permit resolution of 2999TC's bankruptcy case, second adversary proceeding against HNGH, and appeal of the Bankruptcy Order. ROA.6875. The receiver explained that "the Settlement Agreement [was] fair and equitable and in the best interests of the [r]eceivership [e]state because it eliminate[d] several likely and costly risks to the [r]eceivership estate." ROA.6889. Because "[t]he [b]ankruptcy [c]ourt ha[d] already determined that the [r]eceivership [e]ntities do not possess any interest in [Turtle Creek] to sell," the Settlement Agreement would "most efficiently and economically deal with [the receivership entities'] dispute[s] with HNGH." ROA.6887. That was because, based on "a thorough investigation into potential of unwinding [the bankruptcy's court determination,] the extensive costs of litigating with HNGH through a district court appeal and the inevitable Fifth Circuit appeal vastly outweigh[ed] the marginal-at-best chances of success—particularly where the prize for successfully completing the Hail Mary [would be] the privilege of paying HNGH an ever-increasing loan balance in connection with any sale." *Id*.

Most importantly, there were "significant, potentially impossible hurdles" to unwinding the bankruptcy court's determination that HNGH owned Turtle Creek. ROA.6889. In particular, 2999TC's appeal of the Bankruptcy Order "would likely be unsuccessful … given the bankruptcy court's thoroughly examined factual record in a hearing that lasted over fifty hours … and the requisite clear error standard of review for a bankruptcy court's findings of fact." *Id.* (cleaned up). Attempting to unwind the bankruptcy court's determination "would merely result in delay[], increased costs, and significant attorneys' fees for the [r]eceivership [e]state while providing very little or no chance of success." ROA.6889-90.

Even if the receiver were able to unwind the Bankruptcy Order, "the likely amount due under the [l]oan [d]ocuments would far exceed the value of [Turtle Creek]." ROA.6890. Specifically, in March 2023, a third-party appraiser valued Turtle Creek at $43 million (ROA.6891) at a time when 2999TC owed HNGH as much as approximately $57.5 million under the loan documents (ROA.6890). Thus, even if 2999TC were able to obtain ownership of Turtle Creek and sell it, that would "provide[] little to no recovery for the [r]eceivership [e]state." ROA.6891. And "even if a profitable sale w[ere] possible, any delay in selling [Turtle Creek] would only result in increased costs to the [r]eceivership [e]state to maintain [Turtle Creek] and … increased amounts due under the [l]oan [d]ocuments." ROA.6891.

Moreover, the "receipt of $2.5 million of potentially $3.95 million in fraudulent transfer amounts [represented] a fair and equitable result." ROA.6892. Although the receiver claimed that $3.95 million that receivership entities paid to HNGH in connection with the Turtle Creek purchase loan "arguably" constituted fraudulent transfers, the bulk of that $3.95 million was paid pursuant to bankruptcy court orders such that the receiver would thus "face[] the significant hurdle of overcoming HNGH's good-faith defense." *Id*. And, "[i]n addition to mitigating or eliminating [those] likely risks and significant costs," the $2.5 million provided by the Settlement Agreement would "enable the [r]eceiver to continue managing the [r]eceivership [a]ssets …, including beginning to service debt on other [r]eceivership properties still held by the [r]eceivership … and other administrative costs of the [r]eceivership." ROA.6892-93.

2. On May 15, 2023, the district court approved the Settlement Agreement, finding it to be "fair and equitable and in the best interests of the [r]eceivership [e]state." ROA.7448 ("Turtle Creek Order"). The district court also lifted the First Receivership Order's litigation stay in part "so that [2999TC] and HNGH can take all necessary steps to dismiss the [a]ppeal [of the Bankruptcy Order], dismiss the

Case: 23-10516 Document: 67 Page: 29 Date Filed: 01/11/2024

[s]econd [a]dversary [p]roceeding, and close the [b]ankruptcy case." ROA.7448-49.[1]

3. Thereafter, the second adversary proceeding was dismissed by joint stipulation (Dkt. 9 (No. 22-3061)), as was the appeal of the Bankruptcy Order (Dkt. 3 (No. 22-2186)). A conference regarding a motion to close the bankruptcy case is scheduled for January 24, 2024. Dkt. 320 (No. 21-31954).[2] HNGH began making Settlement Agreement payments to the receiver. *See* Dkt. 373 at 21. And on June 6, 2023, HNGH took possession of Turtle Creek. *See* App. Dkt. 122 (No. 22-11132).

### E. Barton appealed from the Turtle Creek Order, and the appeal was initially dismissed and then reinstated.

On May 16, 2023, Barton appealed from the Turtle Creek Order. ROA.7579. He did not seek a stay of the Turtle Creek Order pending appeal from either the district court or this Court.[3] The Commission moved to dismiss the

---

[1] The Turtle Creek Order also authorized the receiver to auction certain personal property from Turtle Creek, but Barton's appeal does not challenge that portion of the Order.

[2] Barton appealed from the dismissal of the appeal from the Bankruptcy Order. *Barton v. HNGH Turtle Creek, L.L.C.*, No. 23-10648 (5th Cir.). That appeal is fully briefed and argument is scheduled for February 7, 2024.

[3] In Barton's appeal of the First Receivership Order (*see infra* 15), this Court denied his requests to stay HNGH taking possession of Turtle Creek. *See* App. Dkt. 110, 132 (22-11132).

appeal because courts lack jurisdiction over interlocutory appeals from district court orders entered in the ordinary course of administering a receivership. App. Dkt. 17. Barton opposed, arguing that in *United States v. "A" Manufacturing Co.*, 541 F.2d 504 (5th Cir. 1976), "this Court held that a [d]istrict [c]ourt order authorizing a receiver to sell property is immediately appealable." App. Dkt. 19 at 3. On July 17, 2023, this Court issued an order granting the Commission's motion (without providing its reasoning) and dismissing the appeal. App. Dkt. 36.

Barton moved for both rehearing en banc and reconsideration, again arguing that this Court had previously held that orders authorizing a receiver to sell property are immediately appealable. App. Dkt. 40, 52. Barton also noted that in a related appeal from an order authorizing the receiver to sell property, this Court had initially dismissed the appeal for lack of jurisdiction before withdrawing that opinion and issuing a new opinion dismissing the appeal as moot. App. Dkt. 52; *see* No. 22-11226 (5th Cir.). The Commission opposed Barton's motion for reconsideration. App. Dkt. 54. On October 12, 2023, this Court denied Barton's motion for rehearing en banc but withdrew its July 17, 2023 order and carried the Commission's motion to dismiss with the case. App. Dkt. 56.

**F. After this Court remanded the First Receivership Order, the district court reappointed the receiver and issued an order ratifying and adopting the Turtle Creek Order *nunc pro tunc.***

Meanwhile, in Barton's appeal of the First Receivership Order (No. 22-11132), this Court held that the district court erred in appointing a receiver without first finding that the Commission met the standard this Court articulated in *Netsphere, Inc. v. Baron*, 703 F.3d 296 (5th Cir. 2012) ("*Netsphere I*"). *Barton I,* 79 F.4th at 579-80. In so doing, this Court specified that "given the breadth of the receivership and the possibility that a new receivership would cover some of the same entities," it would "delay vacatur of the receivership instead of vacating it immediately" "so that the district court may consider whether to appoint a new receivership under the *Netsphere* [*I*] factors." *Id.* at 579. This Court accordingly ordered that its decision to vacate would be effective 90 days after issuance of its mandate. *Id.*

Before vacatur took effect, the Commission moved the district court to appoint a receiver over certain Barton-controlled entities and to enter a preliminary injunction enjoining the dissipation of the assets of Barton-controlled entities not included in that receivership. Dkt. 309. On November 29, 2023, the district court granted the Commission's motion. Dkt. 417 ("Second Receivership Order"), 418. On the same day, the district court issued an order ratifying and adopting certain

orders that had been issued in the course of administering the first receivership, including the Turtle Creek Order, *nunc pro tunc*. Dkt. 419 ("Ratification Order").

On December 7, 2023, Barton filed a notice of appeal from, *inter alia*, the Second Receivership Order and the Ratification Order. Dkt. 429. That appeal has been docketed by this Court as No. 23-11237.

## STANDARD OF REVIEW

"A district court's ... actions in supervising an equity receivership[ are] reviewed for abuse of discretion." *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 839 (5th Cir. 2019).

## SUMMARY OF ARGUMENT

This appeal is limited to reviewing the May 15, 2023 Turtle Creek Order approving the Settlement Agreement between the receiver and HNGH. The Settlement Agreement provided for the mutual release of legal claims, for the receiver to surrender possession of Turtle Creek, and for HNGH to pay the receiver $2.5 million. Because the Turtle Creek Order was not stayed, the Settlement Agreement has already taken effect, releasing legal claims against HNGH and allowing HNGH to take possession of Turtle Creek. It also has resulted in the dismissal of 2999TC's second adversary proceeding against HNGH and 2999TC's appeal of the Bankruptcy Order. Barton's attempt to use this appeal to undo the

Settlement Agreement and all actions taken thereunder is jurisdictionally infirm and is, in any event, meritless.

1. This Court lacks subject-matter jurisdiction over this interlocutory appeal. Barton does not attempt to establish this Court's jurisdiction pursuant to 28 U.S.C. § 1291, 28 U.S.C. § 1292(a)(2), or the collateral-order doctrine. Rather, Barton claims that this Court has jurisdiction pursuant to separate "Fifth Circuit authority stating that a district court order authorizing a receiver to sell property is immediately appealable." Br. 17. But the authority on which Barton relies does not provide a separate basis for interlocutory jurisdiction, much less one that can be squared with Section 1291 and Section 1292(a)(2). Moreover, even were Barton correct that this Court has interlocutory jurisdiction over "a district court order authorizing a receiver to sell property," the Turtle Creek Order did not authorize the sale of property.

2. This appeal is moot for two reasons. First, because the district court ratified and adopted the Turtle Creek Order *nunc pro tunc*, vacating the Turtle Creek Order would not provide Barton with effectual relief. Second, this appeal comes too late: the Turtle Creek Order was not stayed pending appeal and the Settlement Agreement has already taken effect, releasing legal claims against HNGH, allowing HNGH to take possession of Turtle Creek, and resulting in the dismissal of 2999TC's second adversary proceeding against HNGH and 2999TC's

appeal of the Bankruptcy Order. Barton fails to explain how this Court could possibly unwind these occurrences.

3. Even if this appeal were properly before this Court, Barton's challenge to the Turtle Creek Order lacks merit. Barton's assertion that the Turtle Creek Order must be vacated because this Court vacated the First Receivership Order ignores the terms of this Court's vacatur—which this Court delayed precisely to allow the district court to determine whether to appoint a receiver under the proper legal standard. It provides no basis to question the validity of the Turtle Creek Order. Neither does this Court's precedent or common sense.

Furthermore, the district court acted within its discretion in authorizing the Settlement Agreement, which it reasonably found to be in the receivership's best interests. Barton's claim that the Settlement Agreement is subject to the requirements of 28 U.S.C. § 2001 is incorrect because the Settlement Agreement did not provide for the sale of "realty or [an] interest therein." 28 U.S.C. § 2001(a). Barton's claim that the Turtle Creek Order improperly liquidated receivership assets pre-judgment ignores that the purpose of the Settlement Agreement was the preservation, not the liquidation, of receivership assets. And despite arguing that the district court erred in concluding that the Settlement Agreement was in the receivership's best interests, Barton fails to show how it was unreasonable for the district court to conclude that the receivership was unlikely to

realize a more favorable outcome than that which the Settlement Agreement provided.

**ARGUMENT**

**I. This Court lacks jurisdiction over this interlocutory appeal.**

This interlocutory appeal should be dismissed because Barton fails to carry his "burden of establishing [this Court's] appellate jurisdiction." *Martin v. Halliburton*, 618 F.3d 476, 481 (5th Cir. 2010). Barton's assertion (Br. 17-18) that this Court has jurisdiction over his interlocutory appeal from the Turtle Creek Order "under Fifth Circuit authority stating that a district court order authorizing a receiver to sell property is immediately appealable" is wrong. He principally relies on *"A" Manufacturing*, a much-maligned decision that both this Court and the Eleventh Circuit have declined to follow. *See Netsphere II*, 799 F.3d at 333-34; *Acheron Cap. Ltd. v. Mukamal*, 22 F.4th 979, 993-94 (11th Cir. 2022). *"A" Manufacturing* held that interlocutory appellate jurisdiction existed under 28 U.S.C. § 1292(a)(2) for an appeal from an order confirming a receiver's sale of property. 541 F.2d at 505-06. But as this Court recognized in *Netsphere II*, that holding conflicted with this Court's precedent and is therefore not binding. 799 F.3d at 333-34 (citing *Belleair Hotel Co. v. Mabry*, 109 F.2d 390 (5th Cir. 1940), and *Wark v. Spinuzzi*, 376 F.2d 827 (5th Cir. 1967), both of which predate *"A"*

*Manufacturing*). And, in any event, Barton has disclaimed jurisdiction under Section 1292(a)(2). *See* Br. 17-18.[4]

Nor can Barton's reading of *"A" Manufacturing* be squared with the meaning of "final decision[]" in Section 1291. 28 U.S.C. § 1291. "A final decision ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Hall v. Hall*, 138 S. Ct. 1118, 1123–24 (2018) (cleaned up). Following the Turtle Creek Order, the "underlying . . . dispute that formed the original basis for this litigation remain[ed] undecided" and "even within the context of the receivership," the Turtle Creek Order did not "purport to enter a final judgment winding-up or terminating the receivership." *Netsphere II,* 799 F.3d at 331.

Indeed, in recognition that a district court's administration of an equity receivership would give rise to various orders, Congress specified in Section 1292(a)(2) that only opening and closing receivership orders are immediately appealable, while interim administrative orders—including the settlement of legal claims—are not. *See* 28 U.S.C. 1292(a)(2). "[T]o conclude otherwise," this Court

[4] For that reason, Barton's reliance on this Court's unpublished opinion in *SEC v. Janvey*, 404 F. App'x 912 (5th Cir. 2010), which addressed jurisdiction under Section 1292(a)(2), is unavailing. Moreover, *Janvey* did not address whether *"A" Manufacturing*'s discussion of Section 1292(a)(2) conflicted with prior decisions of this Court. *See* 404 F. App'x at 914.

unequivocally held, "would mean that virtually any order of the receiver within the scope of its jurisdiction would be potentially appealable." *Netsphere II*, 799 F.3d at 332 (cleaned up).

Finally, even if Barton were correct that "a district court order authorizing a receiver to sell property is immediately appealable" because it "chang[es] the status quo of the property through sale" (Br. 17-18), the Turtle Creek Order neither authorized the receiver to sell Turtle Creek nor changed the status quo of Turtle Creek through sale.

## II. This appeal is moot.

### A. The Ratification Order ratified and adopted the Turtle Creek Order *nunc pro tunc*.

An appeal should be dismissed as moot where "it is impossible for [this Court] to grant any effectual relief whatever." *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020) (cleaned up). That is the case here. Barton asks this Court to "reverse and vacate" the Turtle Creek Order. Br. 47; *see* Br. 28. But doing so would not provide Barton with effectual relief because—after Barton filed his opening brief in this appeal—the district court issued the Ratification Order, which ratified and adopted the Turtle Creek Order *nunc pro tunc*. As a result, even if this Court credited Barton's arguments and vacated the Turtle Creek Order, the Settlement Agreement would remain authorized pursuant to the Ratification Order,

which Barton's arguments do not address and which is not before this Court in this appeal.[5]

**B. Barton also fails to demonstrate how this Court can grant him effectual relief from the Turtle Creek Order's authorization of the Settlement Agreement, which has already gone into effect.**

Barton did not ask the district court or this Court to stay the Turtle Creek Order pending this appeal. Because the Turtle Creek Order was not stayed, the Settlement Agreement it authorized has already taken effect, resulting in legal claims against HNGH being released and HNGH taking possession of Turtle Creek. Because it is now "impossible for [this Court] to grant any effectual relief whatever" to Barton, dismissal for mootness is warranted on this ground as well. *United States v. Jackson*, 771 F.3d 900, 902 (5th Cir. 2014).

*Thibaut v. Ourso*, 705 F.2d 118 (5th Cir. 1983), is instructive. There, this Court dismissed as moot an appeal where the district court judgment was not stayed, the challenged settlement agreement was performed, and this Court "could not possibly return the parties to the suit, and third parties, to the legal positions they held before the settlement took effect." *Id.* at 121. As this Court explained:

> [I]n the absence of a stay, action of a character which cannot be reversed by the court of appeals may be taken in

[5] Barton claims that this Court's vacatur of the First Receivership Order "left open no possibility" of the Turtle Creek Order being "retroactively validated" (Br. 33), but this Court's opinion imposed no such restriction. *See Barton I,* 79 F.4th 573.

> reliance on the lower court's decree. As a result, the court of appeals may become powerless to grant the relief requested by the appellant. Under such circumstances, the appeal will be dismissed as moot.

*Id.* at 120-21; *see also Ministry of Oil of the Republic of Iraq v. Kurdistan Region of Iraq*, 634 F. App'x 953 (5th Cir. 2015) (dismissing as moot the appeal of a district court order denying a motion to dismiss a complaint that sought the return of oil because the oil had been sold to a third party); *SEC v. Janvey*, 404 F. App'x 912 (5th Cir. 2010) (dismissing as moot the appeal of a district court order confirming a judicial sale by a receiver where the sale was not stayed pending appeal).

Barton does not, and cannot, explain how this Court could unwind the Settlement Agreement in light of the release of legal claims against third party HNGH and other occurrences resulting from the agreement, including HNGH taking possession of Turtle Creek.

## III. If this Court determines that this appeal is properly before it, the Turtle Creek Order should be affirmed on the merits.

### A. *Barton I* does not require vacatur of the Turtle Creek Order.

Barton incorrectly claims (Br. 31-33) that, because this Court remanded and vacated the First Receivership Order, the Turtle Creek Order is void because the receiver was "illegally appointed" and thus "had no authority" to enter into the Settlement Agreement. This contention finds no support in *Barton I*, this Court's precedent, or common sense.

Case: 23-10516 Document: 67 Page: 40 Date Filed: 11/20/2023

1. In *Barton I*, this Court held that the district court had applied the wrong standard in deciding to appoint a receiver but delayed its order vacating the receivership by 90 days "so that the district court may consider whether to appoint a new receivership under the *Netsphere* [*I*] factors." 79 F.4th at 579. The Court explained that this approach was "prudent … given the breadth of the receivership and the possibility that a new receivership would cover more of the same entities." *Id.* at 580. Consistent with this Court's expectation in *Barton I*, once the district court reconsidered the issue on remand, it appointed a receiver using the *Netsphere I* factors. And with that receiver in place, the district court also ratified and adopted the Turtle Creek Order *nunc pro tunc*. There is thus no basis to question the Turtle Creek Order's continuing vitality.

If there were any doubt regarding the validity of the Turtle Creek Order, *Barton I* settled the matter in providing that "the receiver's power to sell or dispose of property belonging to receivership entities, including the power to complete sales or disposals of property already approved by the district court, is immediately suspended" and furthermore that "[the] suspension does not apply to activities in furtherance of sales or dispositions of property that have already occurred or been approved by the district court." 79 F.4th at 581-82. If this Court intended to void prior orders authorizing the receiver's actions, those provisions would have been,

at best, superfluous.[6] Indeed, in Barton's appeal from the dismissal of the appeal from the Bankruptcy Order, Barton has conceded that in *Barton I* "[t]he Court did validate the [r]eceiver's past activities 'in furtherance of sales or dispositions of property that have already occurred or been approved by the district court.'" App. Dkt. 59 at 6-7 (No. 23-10648).

2. That vacatur of a receivership order does not, without more, void a district court's orders approving a receiver's actions taken thereunder is also evident from *Netsphere I*. In *Netsphere I*, this Court vacated a district court order appointing a receiver over an individual's entities and assets, which included internet domain names. 703 F.3d at 301-05. But "[t]he district court orders that were in place prior to [vacatur of the receivership order] remain[ed] in place." *In*

[6] Barton mistakenly assumes (Br. 28) that this Court found two of Barton's other appeals moot "on grounds that the reversal [of the First Receivership Order] made clear that the ... [r]eceiver lacked authority to complete the sales" authorized by the appealed-from orders. This Court found those appeals to be moot not upon determining to remand and (subsequently) vacate the First Receivership Order but only after suspending the receiver's power to complete the underlying transactions. *See, e.g., SEC v. Barton*, No. 22-11226, 2023 WL 5671292 (5th Cir. Sept. 1, 2023) (dismissing the appeal of a district court order authorizing the receiver's sale of receivership property as moot because of the "development[]" of this Court "suspend[ing] the receiver's ability to sell receivership property while awaiting vacatur"); *see also* App. Dkt. 71 (No. 23-10515). Similarly, this Court dismissed another related appeal following vacatur of the First Receivership Order not because the appealed-from order had been voided but because the appeal had been rendered moot. App. Dkt. 59 (No. 23-10046).

Case: 23-10516 Document: 67 Page: 42 Date Filed: 01/11/2024

*re Baron*, 593 F. App'x 356, 358–59 (5th Cir. 2014) (cleaned up). This Court did not, for example, reverse or vacate district court orders authorizing the receiver's sale of domain names. *See Associated Recovery L.L.C. v. Does 1-44*, 769 F. App'x 160, 162 (5th Cir. 2019) ("In *Netsphere*, although this court reversed the receivership, we did not reverse the sales of domain names. … We left the completed sales intact.").

3. If administrative receivership orders were subject to retroactive displacement in the way Barton argues, third parties would be less inclined to enter into agreements with receivers that require district court authorization, including agreements to resolve legal claims. Barton insists (Br. 32) that this Court "should have no concern" about the impact of such a rule on third parties because the Settlement Agreement addressed the possibility of its being voided or invalidated. *See* ROA.6903. But the terms of the Settlement Agreement do not determine whether vacatur of the First Receivership Order requires vacatur of the Turtle Creek Order. Moreover, the Settlement Agreement was not voided or invalidated by *Barton I*.

Ultimately, agreeing with Barton that the vacatur of an order establishing a receivership automatically nullifies all court orders authorizing actions under that receivership would undercut "[t]he primary purpose of the equitable receivership

[to] marshal[] the estate's assets for the benefit of aggrieved investors and other creditors of the receivership entities." *Stanford,* 927 F.3d at 840.

### B. The district court acted within its discretion in concluding that the Settlement Agreement was in the receivership's best interests.

As this Court has long recognized, "in the securities context, … a federal court supervising an equity receivership" has "broad powers and wide discretion to determine the appropriate relief." *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372 (5th Cir. 1982) (cleaned up). This includes the "discretion to approve settlements of disputed claims to receivership assets, provided that the settlements are fair and equitable and in the best interests of the estate." *Stanford,* 927 F.3d at 840 (cleaned up).

Here, the district court acted well within its discretion in determining that the Settlement Agreement was "fair and equitable and in the best interests of the [r]eceivership." ROA.7448. As the record showed, the Settlement Agreement would likely maximize the value received by the receivership, especially because attempting to unwind the bankruptcy court's determination that HNGH owned Turtle Creek would be expensive and unlikely to succeed. *See supra* 10-11. And even were it successful, the receivership (standing in 2999TC's shoes) would owe much more to HNGH than Turtle Creek is worth. *See supra* 11. Moreover, the Settlement Agreement secured a much-needed $2.5 million for the receivership.

Case: 23-10516 Document: 67 Page: 44 Date Filed: 01/11/2024

*See supra* 12. Barton's arguments that the Settlement Agreement was not in the receivership's best interests ring hollow.

1. Barton argues (Br. 36-41) that the district court abused its discretion by failing to subject the Settlement Agreement to the notice, hearing, and appraisal requirements that apply to "[a]ny realty or interest therein sold [by a receiver] under any order or decree of any court of the United States." 28 U.S.C. § 2001(a). But this provision does not apply because the Settlement Agreement did not entail the sale of "any realty or interest therein."

As its terms make clear, the Settlement Agreement did not transfer (by sale or otherwise) Turtle Creek or any legal interest in Turtle Creek. *See* ROA.6896. Nor could it have. At the time the Settlement Agreement was executed, 2999TC did not own Turtle Creek or any interest therein. HNGH's Turtle Creek deed had been recorded and the Bankruptcy Order had held that the transfer of Turtle Creek from 2999TC to HNGH was "valid," that "HNGH [was] the owner of [Turtle Creek]," and that 2999TC had "no … right, title, or interest in [Turtle Creek], nor any lien, claim, encumbrance, or cloud on title against [Turtle Creek]." ROA.6956. None of the authorities Barton cites (*see* Br. 36-41) addresses an instance in which a court found Section 2001 applicable to the settlement of legal claims.

Case: 23-10516 Document: 67 Page: 45 Date Filed: 11/22/2023

Barton insists (Br. 38-41) that the Settlement Agreement constituted the sale of at least an "interest" in Turtle Creek because 2999TC had "an encumbrance on [Turtle Creek]." But, again, as the bankruptcy court determined, 2999TC had "no … interest in [Turtle Creek]," including "no … lien, claim, encumbrance, or cloud on title against [Turtle Creek]." ROA.6956. No such encumbrance was sold or otherwise transferred in connection with the Settlement Agreement.

Nor is Barton correct when he asserts (Br. 40-41) that the Settlement Agreement "release[ed] a possessory interest that is clearly an 'interest' in 'realty.'" That the receiver occupied Turtle Creek at the time the Settlement Agreement was executed does not establish that 2999TC held a realty interest in Turtle Creek for purposes of Section 2001. Barton points to no authority finding Section 2001 applicable to an agreement to vacate real property, and he fails to demonstrate that mere possession would be considered such an interest under Texas law, which controls here. *See, e.g., United States v. Hager*, 879 F.3d 550, 555 (5th Cir. 2018) ("[S]tate law is a valid source for defining the scope of property rights protected by federal laws."). Nor does Barton explain how Section 2001's requirements could be applied to mere possession.

2. Barton's argument (Br. 34-35) that "the business of prejudgment receiverships should not be the liquidation of assets, but instead their conservation in place" misses the point. A district court supervising an equity receivership acts

within the heartland of equity when it takes actions—like approving the settlement of legal claims or the liquidation of certain assets—that are intended to preserve overall value for the benefit of potential victims of a fraudulent enterprise. There is no prohibition on a district court's authority to allow a receiver to take these actions before judgment, so long as the decision is within the court's "wide discretion to determine the appropriate relief." *Safety Fin. Serv.*, 674 F.2d at 372 (cleaned up). Indeed, such a prohibition would impede a receiver from taking necessary steps to secure and preserve receivership value that might otherwise be lost. And the authority on which Barton relies (Br. 35) is inapposite, because it addresses the propriety of receiver liquidations employed as an alternative to bankruptcy, not as a tool to preserve receivership value.

3. Barton incorrectly argues (Br. 42-47) that the district court erred in concluding that the Settlement Agreement was in the best interests of the receivership estate. Barton claims (Br. 44) that the Settlement Agreement released "a claim to tens of millions … for just pennies on the dollar." But this ignores that 2999TC's claims had little value given that the Bankruptcy Order decided that HNGH was the owner of Turtle Creek. Barton also claims that the Bankruptcy Order was "rife with error" (Br. 45), but, as the receiver explained, the deferential clear error standard of review for factual findings would apply in 2999CT's appeal of the Bankruptcy Order, and, in any event, even if 2999TC were able to unwind

Case: 23-10516 Document: 67 Page: 47 Date Filed: 01/11/2024

the Bankruptcy Order, it would still owe HNGH much more than the value of Turtle Creek. *See supra* 10-11. Barton's view that the receivership estate would have done better without the Settlement Agreement does not make mathematical sense, let alone show that the district court abused its discretion in concluding otherwise.[7]

Barton also erroneously contends (Br. 43-44) that the district court should not have authorized the Settlement Agreement when it did because "the receivership itself was in serious question before this Court." When the district court issued the Turtle Creek Order, this Court had not vacated the First Receivership Order and had denied Barton's request to stay the First Receivership Order pending appeal. *See* App. Dkt. 46 (No. 22-11132). The district court's task was to determine whether the Settlement Agreement was in the best interests of the receivership estate, not to predict this Court's resolution of the then-pending appeal of the First Receivership Order.

---

[7] In opposing the district court's approval of the Settlement Agreement, Barton offered the unsupported speculation that Turtle Creek is "worth potentially upwards of $70 million." ROA.7401; *see* Br. 44. In his brief on appeal, Barton points to a purported $71.5 million valuation provided to the district court months after the Turtle Creek Order was issued. Br. 44 (citing Dkt. 335). Barton fails to explain how the district court could or should have credited those valuations rather than the third-party valuation that was actually before the court when it rendered its decision. *See* ROA.6891.

Case: 23-10516 Document: 67 Page: 48 Date Filed: 01/11/2024

Finally, Barton claims (Br. 46) that the district court erroneously "prioritiz[ed] the generation of cash proceeds from the sale of [Turtle Creek] over the preservation of assets for the [receivership] estate's beneficiaries." But preservation of Turtle Creek as a receivership estate asset was not a meaningful possibility in light of the Bankruptcy Order, and the Settlement Agreement injected cash into the receivership estate to help preserve other receivership assets. *See supra* 12. Barton is left to complain about the receiver's fees (Br. 46-47), but those fees are neither the subject of the order on appeal nor an improper use of receivership assets. *See*, *e.g., SEC v. Elliott*, 953 F.2d 1560, 1576 (11th Cir. 1992) ("It is appropriate and obvious that a receiver will make expenditures to maintain trust property. The court in equity may award the receiver fees from property securing a claim if the receiver's acts have benefitted that property.") (cleaned up).

## CONCLUSION

This appeal should be dismissed because this Court lacks jurisdiction and the appeal is moot. Were this Court to reach the merits, the Turtle Creek Order should be affirmed.

Respectfully submitted,

MEGAN BARBERO
*General Counsel*

MICHAEL A. CONLEY
*Solicitor*

DOMINICK V. FREDA
*Assistant General Counsel*

*/s/ Ezekiel L. Hill*
EZEKIEL L. HILL
*Appellate Counsel*

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
202.551.7724 (Hill)
hillez@sec.gov

January 11, 2024

# CERTIFICATE OF SERVICE AND FILING

I certify that on January 11, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit through the Court's CM/ECF system. Service on counsel of record will be accomplished through the Court's CM/ECF system.

I further certify that this electronic filing is an exact copy of the paper document, that any privacy redactions have been made, and that this electronic filing was scanned for, and found to be free of, viruses.

*/s/ Ezekiel L. Hill*
Ezekiel L. Hill

Dated: January 11, 2024

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 7,298 words, excluding the parts exempted by Fed. R. App. P. 32(f).

I further certify that the foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced, Roman-style, 14-point typeface.

*/s/ Ezekiel L. Hill*
Ezekiel L. Hill

Dated: January 11, 2024