IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IN RE: ) BK. NO: 21-31954-SWE
)
2999TC ACQUISITIONS, LLC )
D E B T O R. )

* * * * * * * * * *

TRANSCRIPT OF PROCEEDINGS

* * * * * * * * * *

BE IT REMEMBERED, that on the 24th day of January, 2024, before the HONORABLE SCOTT W. EVERETT, United States Bankruptcy Judge at Dallas, Texas, the above styled and numbered cause came on for hearing, and the following constitutes the transcript of such proceedings as hereinafter set forth:

P R O C E E D I N G S

THE COURT: Good afternoon. We're here on the 2:00 docket. We have one matter set, a status conference in the 2999TC Acquisitions case. Case number 21-31954.

I'll go ahead and take appearances. Why don't I just do a roll call based on the names that I have so far.

Ms. Lindauer.

MS. LINDAUER: Present, Your Honor. Joyce Lindauer here on behalf of my firm in connection with this proceeding.

THE COURT: All right. Mr. Kane.

MR. KANE: Yes, Your Honor. I am in the courtroom virtually on behalf of HNGH Turtle Creek, LLC as interested party.

THE COURT: Good afternoon.

Mr. Carrillo.

MR. CARRILLO: Good afternoon, Your Honor. Alan Carrillo on behalf of the Receiver of the reorganized debtor.

THE COURT: Carrillo. I just can't get it right. Thank you.

Mr. Phelan.

MR. PHELAN: I'm here.

THE COURT: Mr. Bublick.

MR. BUBLICK: Good afternoon, Your Honor.

Asher Bublick for the United States Trustee.

THE COURT: And, Mr. Phelan, maybe we'll just button that up. Tell me who you -- I know who you're representing, but go ahead and tell me who you're representing.

MR. PHELAN: Robin Phelan for Phelan Law.

THE COURT: All right. Thank you.

All right. Mr. Carrillo, I'll turn it over -- did I get all of the appearances?

All right. I got a thumbs up so I think --

MR. BARTON: Good afternoon, Your Honor. This is Timothy Barton here, as well.

THE COURT: All right. Thank you, Mr. Barton.

I'm double checking. Are there any other appearances that I missed?

All right. Why don't I go ahead and turn it over to Mr. Carrillo.

MR. CARRILLO: Thank you, Your Honor.

This status conference is a follow-up to our November 29th status conference on this matter. And as the Court is, I'm sure, well aware, later that day the District Court entered a new receivership order and several other orders in the receivership case including what has been referred to as a blessing order ratifying the Receiver's settlement with

HNGH that's part of the dispute in this matter.

Mr. Barton filed an appeal of that receivership order and the other orders entered by the District Court that day. That appeal has not been briefed yet. There are two other pending appeals that we're happy to discuss and talk about whether or not those affect the proceedings here. I'm happy to defer to any questions you have or to offer the Receiver's recommended path forward. However you would like to proceed, Your Honor.

THE COURT: I'll let you finish with your kind of overview and then you can give me your recommendation. Somebody did attach --

MR. CARRILLO: Okay.

THE COURT: -- I guess for my benefit at least one of the briefs that was filed in the Fifth Circuit.

MR. CARRILLO: Yes, Your Honor.

THE COURT: I think Ms. Lindauer --

MR. CARRILLO: Ms. Lindauer -- yes, Your Honor. Ms. Lindauer filed a status report this morning which included the opening briefs for Mr. Barton in the SEC in the Fifth Circuit case 23-10516. This is Mr. Barton's appeal of the HNGH settlement order that the District Court ordered in May of last year. Mr. Barton's reply brief is due February 1st, so in just about a week. The other Fifth Circuit case that is currently pending is case 23-10648, and that's

5

Mr. Barton's appeal of HNGH's and the Receiver's joint stipulation of dismissal of the appeal of your order enforcing the agreed orders in this underlying bankruptcy case about a year and a half ago. And that oral argument for that fully briefed appeal is scheduled for February 7th.

And so the Receiver, Your Honor, defers to how you think best to proceed in light of the oral argument being scheduled in 23-10648 on February 7th, as well as the continued briefing that's occurring in 23-10516. However, as far as the pending appeal of the receivership order and the related orders that were entered on November 29th, the receivership case itself is not subject to a stay pending that appeal. And so depending on what you prefer, Your Honor, we defer to your judgment and preference. We believe it's in the best interest of the receivership estate and the receivership estate's creditors to proceed with closing this case and taking any steps that you would like to see for that to happen, whether it's more briefing, oral argument, or any other further notices or status conferences pending the outcome of the appeals.

So that's our recommended path, Your Honor. And we defer to what you prefer.

THE COURT: All right. Before I turn it over to the other parties, there's always a danger when you put a brief in front of a judge that's pending somewhere else that

6

I'll read it, which I did. I've read the brief of the appellant. And this is the appeal of the Fifth Circuit number 23-10516.

It's really not an issue for today. And I'm not -- I don't really want to argue about it. But I did read it. And I thought that the description in that appeal about the procedural posture and how my ruling came about I think is -- I'll charitably say that it's misleading and I'll leave it at that. But, again, that appeal is not before me. And I don't want to address it further today. But I read it and that's just my observation.

So I'll go ahead and turn it over to whoever wants to grab the microphone next as far as a -- if anybody else wants to take a position on whether and when and if to move forward on the attempt to close this case.

So who wants to go next?

MR. KANE: Your Honor, this is John Kane for HNGH. I'd love to have an opportunity to be heard on this matter.

THE COURT: Sure.

MR. KANE: You know, Your Honor, I understand Ms. Lindauer submitted copies of the appellant's and the appellee's brief. We had a similar reading to Your Honor in that the description of the proceedings related to your order that was entered about a year and a half ago in which you

ruled that based on the automatic effectuation of basically this Court's prior orders, the debtor had no interest in the property at 2999 Turtle Creek. That description was not particularly accurate. We have participated in amicus proceedings before the Fifth Circuit previously in similar instances where the description of either past litigation or the nature of the settlement agreement between the Receiver and HNGH has been, and I'll put in the most favorable terms I can, mis-described. We believe that that's just going to be a consistent occurrence just like Mr. Barton's delay tactics have been a consistent occurrence throughout this case, the receivership involving the settlement agreement, and really anything that has to do with 2999 Turtle Creek or really any of the other receivership entities or receivership assets.

Our client, HNGH Turtle Creek, as this Court will not be surprised to learn, would like to close the door on this bankruptcy proceeding. The debtor's estate does not have any assets left to administer. There are no adversary proceedings. There are no pending appeals. There is no other property of the estate. There is no need for any further delay. And Barton's delays have literally end game, Your Honor.

The Receiver and HNGH entered into a settlement agreement. That was a mediated agreement and a day long mediation in front of Judge Hale. It was pursuant to a

motion in front of Judge Starr. Tim Barton had an opportunity to and did object and raised various arguments for why the settlement agreement should not be approved. Creditors in this bankruptcy case, including Ms. Lindauer, participated in Mr. Barton's briefing with the declaration and so we're aware, they could have moved to intervene. They could have participated in the settlement agreement litigation. But they did not. And Judge Starr approved the settlement agreement and entered an order that authorized the Receiver, Mr. Thomas, to take certain steps necessary to effectuate the terms of the settlement agreement, including dismissing the appeal that the debtor had previously raised to this Court's ruling. And that's the appeal case that's resulted in a Fifth Circuit appeal 23-10648.

Judge Starr used the same standards that the Bankruptcy Court would have to apply in a 9019 proceeding. Considered evidence that was presented by Mr. Barton and by the Receiver. Issued findings of facts and conclusions of law. Issued an order. The Receiver, relying on the District Court's order enacted terms of the settlement agreement.

Now, I understand that there was a reasonable argument for a continuation of proceedings based on Mr. Barton's Fifth Circuit appeal about whether the receivership was appropriately determined in the first place and whether Mr. Thomas had authority if the receivership should be set

aside to enter into certain of those agreements. But that's all been resolved. We have now Judge Starr applying the appropriate standard. We now have the receivership reinstated. Mr. Thomas serves as the Receiver. The Court considering its prior rulings in the authority of the Receiver at the time has now ratified those rulings and has determined expressly that the settlement agreement order was appropriately entered. So we're not in the same situation that we previously were.

Mr. Barton appealed the settlement order when it was entered. The appeal was dismissed as an inappropriate interlocutory appeal. Now Mr. Barton has appealed again the ratification order and for which you've seen some briefing. And the twist that Mr. Barton is now applying and, Mr. Ednes(phonetic), the counsel, has made his argument on a number of different occasions which has not been taken very well from the Fifth Circuit is that this was a sale, there was a sale built into the settlement agreement. But Your Honor has issued the only order that has addressed the parties' ownership interest in the property. And you made clear in your prior ruling that by the effect of the previous agreed orders that were entered in the debtor's bankruptcy case, the debtor doesn't own property. Has no right, title, or interest to the property. So contrary to Mr. Ednes incredibly and I'll put in quotes, creative lawyering, there

was no sale that would trigger some right of appeal. But, again, this is all just a classic Barton delay tactic. We have a lot of smoke. We have a lot of red herrings. But the reality of this situation is, again, there is no end game.

So what -- let's imagine a situation where Mr. Barton is entirely correct on every single one of his appeals, right. We get to a situation where there is still a Receiver. There is still an opportunity for the Receiver to seek approval of a settlement agreement. This Court's order has remained in effect. The Receiver is in control of 2999TC Acquisitions, LLC because it has been found a second time to be a receivership entity. So the Receiver could just non-suit the bankruptcy appeal, or re-enter into a settlement agreement that would be, again, approved by the District Court. Mr. Barton can't unwind everything. There is no end game in this situation. It's just delay, delay, delay. Look over here. There's another Fifth Circuit appeal that will inevitably not succeed.

Bankruptcy Rule 3022 talks about what must take place or how a Court should determine whether a bankruptcy estate is fully administered. And if you look at the Advisory Committee's notes, this case checks pretty much all the boxes, right. You have a confirmed plan. Confirmation order has gone final. You had a toggle in the plan depending on whether or not the debtor could satisfy its obligations. The

debtor didn't. The debtor doesn't own the property. The debtor has nothing left to administer. So we're in a situation where this is extraordinary ripe to close the case. And I know this is just a status conference hearing. So I appreciate the Court hearing me out.

But it is time, right. What I would not like to see is this Court buy into these additional delay tactics, the additional smoking mirrors. Because what they have been is -- and no party will dispute this -- extraordinarily expensive and time consuming. Even if this Court ends up going forward and sets this matter for a hearing relatively soon, decides to close the case, the Court still has the opportunity under Section 350 of the Bankruptcy Code to reopen the case if it for some reason needs to exercise jurisdiction in the future.

So, Your Honor, given that flexibility and given the advisory notes to Bankruptcy Rule 3022, there really is no reason to delay. A smoke and mirrors appeal by Tim Barton is not meritorious and is no basis to continue proceedings.

Thank you.

THE COURT: So, Mr. Kane, you -- all of you probably are more familiar with the briefing in the various appeals than I am. I mean, I read this one because Ms. Lindauer put it in front of me and I read it. But tell me this, if that appeal -- if Mr. Barton succeeds in that

appeal, doesn't that appeal challenge -- I understand your comment about potential mis-description of what happened. But the settlement that you made with the Receiver, doesn't Mr. Barton challenge the Receiver's ability to even -- or does he? Does that appeal, the one that I just read that I'm not as familiar with as you all, does that appeal challenge the Receiver's ability to settle, not to sell, but to settle its issues with your client? And if it does, what happens if that appeal is successful?

MR. KANE: Yeah. I think the answer there, Your Honor, is, no, it doesn't. It challenges on a classification of a settlement as a sale and having a grounds for appeal. And what part of the brief argues is that the judge made inadequate findings of fact to arrive at its conclusions of law. And so even if there was a remand, the District Court would, in essence, as it did for the receivership proceedings and the identification of receivership entities have a fact finding hearing on the 9019.

Your Honor, there's no chance of success on that appeal. And I know that that's not what this hearing is about and that's my personal opinion. That's not some matter of law. But, you know, a 9019, a determination of the appropriateness of a settlement agreement, it's a similar standard in the district -- or it's the identical standard in

the district court. It's not a particularly high bar. The Receiver's pleadings were laden with factual analysis. Mr. Barton submitted objections and included attachments for the Court to consider. To say now that, well, the Court didn't make appropriate findings of fact and so the Court inappropriately entered a settlement order -- which, again, second appeal of this -- is preposterous.

THE COURT: But just -- and I'm not trying to comment -- I'm not commenting on the merits of the arguments. But let's --

MR. KANE: Yeah. I think -- sorry. I think to more directly address your point -- and Mr. Barton is present on the phone. I don't see his counsel. But because the Receiver was appointed, the Receiver can sell, even if this was magically determined to be a sale, it can sell estate property subject to certain statutory predicates. And it has authority to enter into certain settlement agreements. And Judge Starr has on multiple occasions, including in his ratification order, noted that entry into a settlement to resolve litigation claims is part of the ordinary equitable authority of a Receiver appointed under federal receivership statutes.

THE COURT: So his ratification --

MR. KANE: And so from an authority perspective --

14

THE COURT: Sorry to interrupt, but I'm trying to stay up with you.

The ratification order is not the subject of the appeal of the brief that I read that Ms. Lindauer provided; is that right?

MR. CARRILLO: Your Honor --

MR. KANE: Yeah.

MR. CARRILLO: -- would it be helpful --

MR. KANE: Go ahead.

THE COURT: Wait. First let me see if Mr. Kane can address that. If not -- and I understand it's Mr. Carrillo's wheelhouse. But I guess what I'm trying to figure out is, of the appeals that are out there -- regardless of whether they're meritorious or not, you know, the arguments are meritorious. If they're raising the argument that the Receiver prior to the ratification order didn't have the authority to either sell or settle -- even if it may not be a good argument, but if they made that argument in this appeal -- well, that's the question. I didn't read it more than once, but I read it once. And they appear to be suggesting that before you even get to ratification, I thought they were saying that because the initial receivership order was invalid, that therefore the things that the Receiver did under the original invalid, allegedly invalid receivership order are not effective. Again, I'm not

commenting on whether that's a valid argument or not. But don't they make that argument in this appeal?

MR. KANE: I believe that they have. They've also made it in the appeal number 23-10648. I just --

THE COURT: So you may be right. You might be right on the merits. Again, I'm not -- I'm not commenting on the merits of the argument. But if there is an argument pending in front of the Fifth Circuit where the debtor is at least -- Mr. Barton is at least arguing that everything that happened after the original receivership order, including the sale or settlement, is not effective, does that council in favor of me just holding off until that plays itself out? Again, there's nothing really happening here.

MR. KANE: Sure.

THE COURT: It's just kind of a status -- the status quo, because I -- I don't know. I'm thinking out loud. But I'm not sure that going forward now makes sense if all of this, or at least that issue can be decided in the Fifth Circuit, was it February 7th, did you say?

MR. KANE: Yeah. So one -- yes and no. So I would ask that the Court please consider two things. One, the oral argument that's going forward on February 7th relates to the District Court's automatic dismissal upon entry of the stipulation of dismissal with prejudice, the debtor's appeal from the bankruptcy case, okay. In that Mr.

Barton has argued kind of what you laid forth; the Receiver was not appropriately appointed, the Receiver lacked authority to enter into the settlement because he was inappropriately appointed, therefore, the stipulation was not something he had authorization to enter into even despite the Court's settlement order. And so the appeal should be brought back into place. And I would note a couple of different things.

One, there is no staying pending this appeal. So what we're talking about is the potential for an unwind at some point in the future of an asset that the debtor does not currently own. An asset that the debtor's representative supports the non-suiting or dismissal of. And so I don't think that it warrants some kind of additional continuation or maintenance of the status quo where we have an open bankruptcy case and there is this kind of -- well, what could happen in the future?

We have the opportunity to reopen the case if for some odd reason the unlikely event Mr. Barton wins a string of Fifth Circuit appeals moves forward. It isn't necessary, right. It gives credibility to the malarkey that Mr. Barton has been attempting to effectuate now for ages. And, you know, this is -- it's an unfortunate circumstance that the initial receivership proceedings did not apply the appropriate legal standard, because I think that has cost

everybody a year of time and an enormous amount of money. But we are in a situation now where these ratifications have taken place, right. So you have a judge who has re-examined his prior ruling now that there is appropriate authority granted to a rightfully appointed Receiver.

THE COURT: And that -- is that order --

MR. KANE: Right. The --

THE COURT: And tell me again, the ratification order is on appeal?

MR. KANE: Yeah. Yes. In essence, the ratification order re-approved the settlement agreement. The settlement agreement is what Mr. Barton is desperately trying to avoid. And so there is an appeal of the ratification agreement as a wrongful approval of the settlement agreement basically a second time, now that the Receiver does have authority or, you know, presumably has authority to enter into the settlement agreement now that it's been dutifully appointed under the appropriate legal standard.

THE COURT: And that appeal is -- tell me the status of that appeal.

MR. KANE: It's in its infancy.

THE COURT: Okay.

MR. BARTON: There's documents going back and forth on that appeal as we speak. I would not call it in its infancy.

THE COURT: Hold on.

MR. BARTON: I would suspect that --

THE COURT: Hold on. Hold on. Who --

MR. BARTON: Sorry, sir.

THE COURT: So, Mr. Barton, we're going to go in order here. So I'm trying to think if I have any --

MR. BARTON: Sorry, Your Honor.

THE COURT: No, that's all right. I'm trying to think if I have any other questions of Mr. Kane.

So before I leave Mr. Kane, let me ask Mr. Kane this. If nothing is happening here -- is your client prejudiced by the case remaining open, if nothing is happening here? I'm trying to weigh, you know, if I close -- if I administratively close the case and that causes another appeal, potentially your client incurs fees if that order is appealed. If I do nothing, there's nothing happening in this case currently. Is your -- is your client being prejudiced by the case remaining open?

MR. KANE: Your Honor, I think so. I mean, I don't know how I would monetize the prejudice. But my client is actively attempting to go through a refinancing process. And over the last series of months we have gotten any number of questions about the pending bankruptcy proceeding, along with questions about the pending receivership proceeding.

Do I think an open bankruptcy case where there are

allegations by Mr. Barton that he still owns the 2999 Turtle Creek property are beneficial to my client? No, I don't think they are.

THE COURT: All right. Let me -- I'm going to think about that.

Anything else, Mr. Kane, before I turn the floor over to the next person?

MR. KANE: No, Your Honor. I appreciate the time.

THE COURT: All right. Let me hear from Mr. Bublick.

MR. BUBLICK: Your Honor, the U.S. Trustee has no position at this time. We're monitoring at this time.

THE COURT: All right. All right. How about Ms. Lindauer next?

MS. LINDAUER: Thank you, Your Honor.

I would call the Court's attention -- this may answer part of the questions you were asking. In case number 322CV2118, the district court case, there was a notice of appeal filed on December 7th. It specifically says that Mr. Barton is appealing to the Fifth Circuit five orders entered on November 29th: One, appointing a new Receiver; two, setting the terms for the new Receiver; and granting a preliminary injunction among other things. So the standing of the Receiver, old Receiver was vacated. The new Receiver

was appointed, but the new Receiver has been challenged.

So, Your Honor, our feeling at this point is two reasons this case should not be closed. One, the reason I sent you those briefs -- and I could have sent you ten more -- was just to give you some flavor that 299TC (sic) is still actively being discussed before the Fifth Circuit. And the terms of the settlement and agreements and dismissal of the appeal, all of those issues are being presented whether in statements of fact or arguments before the Fifth Circuit. So it seems inappropriate to me to try to close a case here that may or may not -- I can't weigh in on that -- may or may not affect what's happening in the Fifth Circuit. But clearly 299TC (sic) is still part of, very actively part of what's happening in the Fifth Circuit, irrespective of the appointment of a new Receiver.

And second point is they want to close a case that left virtually very creditor in the case unpaid, including the U.S. Trustee, including all of the administrative claimants and all of the attorneys that worked on the various matters in this case. There's a $2.5 million settlement and there is a valid dispute over who should get those funds and why a Chapter 11 case should be allowed to be closed when it hasn't paid any of the required claims. So -- and the 2.5 million is not being dedicated to pay the creditors in this bankruptcy case, yet, it was the debtor's cause of action

that was settled that generated the 2.5 million. And Mr. Phelan and I have looked at that detail and are convinced that they settled what amounts to property of this estate. And now they want to close the case without paying anybody and take those funds over to the receivership case for whatever purpose they'll be applied over there.

THE COURT: So who --

MS. LINDAUER: That doesn't seem appropriate.

THE COURT: So which Court and when do you anticipate is going to answer that question? I understand your position is that when the Receiver settled its cause of action to try and get the property back because it disagreed with my ruling when I found that Mr. Kane's client owned the property -- I understand on appeal you're trying to get that reversed somehow. But there's no stay of the -- well, let me just ask that question again, then.

Which Court do you anticipate ruling on that issue? The issue being who owns the proceeds of the settlement from the Receiver's settlement with Mr. Kane's client?

MS. LINDAUER: So Mr. Phelan and I are big believers that that issue belongs to you because it was the debtor's causes of action that were settled, whether that was done in a mediation with Judge Hale or however it was handled, that that -- those were causes of action that belonged to this estate that were settled. And, therefore,

the funds related to those causes of action should rightfully belong to this estate. And as such, should be used to pay the creditors under the bankruptcy plan that you approved. I mean, there are -- the SBA is one of the creditors.

THE COURT: So if you're --

MS. LINDAUER: My firm is a creditor.

THE COURT: So if you're -- if you are correct -- again, just everybody should understand, just because I'm asking the questions doesn't mean I'm commenting on the merits.

MS. LINDAUER: Sure.

THE COURT: If you are correct that the proceeds belong to the bankruptcy estate, wouldn't the application for final decree be an appropriate vehicle to tee up that issue? How else are you going to tee it up?

MS. LINDAUER: Well, I think after the appeals are resolved so that we have a clear path forward and it's decided finally that that 2.5 million is approved and not -- right now I understand some of it's already been spent, but that is a different problem. But irrespective, I agree, I think it does need to get teed up and in front of you. But, again, I don't think today and I don't think in 30 days because, again --

THE COURT: I'm not --

MS. LINDAUER: -- I don't know what's going to

23

happen with the Fifth Circuit. But some Court is ultimately going to have to decide that issue. I agree with you. Whether --

THE COURT: So, I guess --

MS. LINDAUER: -- it's you or the District --

THE COURT: -- that's what I'm asking, though.

You just want me -- I could see appeals and appeals and appeals happening for years and years. I stayed this so far just to kind of see how it plays out. But at some point if you're wrong -- let's say you're wrong on that issue. Let's say I conclude that those proceeds are not property of the estate, of the bankruptcy estate -- again, just going down the decision tree. If I conclude that they are not property of the bankruptcy estate, then what is left to administer here?

MS. LINDAUER: If they're not property of the bankruptcy estate, what is left to administer here?

Well, so -- and you're assuming that the Fifth Circuit doesn't undo any of the orders that would put assets back into the estate, i.e., real property or causes of action that were settled.

THE COURT: Well, didn't Mr. Kane -- Mr. Kane is suggesting that if somehow the Fifth Circuit undoes everything, the case can be reopened, can't it? The case can be reopened to administer assets. That happens all the time.

And this is kind of an unusual procedural context. But aren't bankruptcy cases reopened all the time if there are assets that suddenly appear out of the ether to be distributed to creditors?

MS. LINDAUER: Well, I mean, again, this does not appear out of the ether. We know there's $2.5 million. So either that belongs to this estate or does not. And if it belongs to this estate, then it's my position and Mr. Phelan's position -- and I'll let him speak to this -- that that money goes into this estate and pays the creditors. I don't know why Mr. Kane would care if that happens. I understand why the Receiver might care. But, again, Mr. Kane shouldn't care where the $2.5 million goes. Because as a practical matter, his client is buying a release by paying that money. So whether it goes to this case or goes somewhere else. But the point being is you're going to close a case where there is a potential payment of funds that hasn't been recognized or hasn't been resolved and leave unpaid all the creditors in this case except for HNGH.

THE COURT: No, no, no. Hold on. Hold on.

MS. LINDAUER: They're the only ones that --

THE COURT: Hold on. Hold on.

MS. LINDAUER: -- got anything of value.

THE COURT: Hold on. I just want to make sure you understand the question.

I'm going down the decision tree. One decision -- you've made the argument that the estate is not fully administered because the bankruptcy estate owns the proceeds or some portion of the proceeds from the receivership's settlement with Mr. Kane's client, right?

MS. LINDAUER: Correct.

THE COURT: And so one -- this decision tree is, let's say I decide that those proceeds are not property of the estate. Then it seems to me at that point there's -- if I made that finding, there's nothing left to administer. I close the case. And if I get reversed either on that order or if the Fifth Circuit does something or the District Court does something to revive your argument that the proceeds belong to the bankruptcy estate, the case can always be reopened, right, because 350, as Mr. Kane points out, says that a case may be reopened to administer assets.

So let's say -- and I'm just throwing out possibilities here. Let's say I set a hearing on the application for final decree and that's the hearing where we decide who owns the settlement proceeds from that receivership. If I can do that, that's another question I have. Let's just assume for now that I can do it. And I conclude that those funds somehow do belong to the bankruptcy estate, then I would deny the motion to close the case, right?

MS. LINDAUER: Well, I think you could delay

closing the case until the plan has been paid. I mean, you have a confirmed plan. You have allowed claims. I think somebody could -- and, you know, you're talking a half million dollars. We ran the numbers. You pay out the creditors. There's still money left.

THE COURT: So I wouldn't --

MS. LINDAUER: There's still going to be --

THE COURT: -- close the case then, right? I wouldn't close the case in that instance.

MS. LINDAUER: Well, not right away. I wouldn't think so. I think you would let the funds get disbursed.

THE COURT: So I'm trying to figure out -- and now I'm just playing devil's advocate. Why wouldn't I set this for a hearing? If I have the authority to rule on whether the bankruptcy estate owns these -- a portion of the settlement proceeds, in what other context would I rule on that other than the application to close the case?

MS. LINDAUER: Okay. Well, I guess somebody could -- well, I don't even know if that's a proper -- I mean, is that a proper decision to be made on a closing of a case, or is that a need for some other type of proceeding to decide -- I don't know. I haven't thought through what would need to be filed. But, again, you're talking about disbursing funds either outside the bankruptcy or within the

bankruptcy, funds that are subject to appeals in the Fifth Circuit. So I'm not sure how all of that works, honestly, but -- and I believe the funds, the $2.5 million is actually paid over time, too, which creates another issue because it's not immediately available money. I don't think anybody is sitting on $2.5 million. As I understand it, 500,000 was paid and then there's another million due and then another million due. So you're talking about some time, too, to realize the funds from that settlement. So that's going to have to be dealt with, as well.

THE COURT: But I'm kind of trying to find out why -- what's the impediment to potentially resolving this issue -- and I'm going to give Mr. Carrillo a chance to chime in here, because he might have some different thoughts about whether I can or can't decide this issue. But on the one hand we can sit and do nothing and wait until years pass and all appeals go away. I'm not sure that's the right thing to do. If there is nothing to administer, I can close the case and reopen it if it's later determined that there are assets to administer. You're saying, don't close the case because there are assets to administer. So there appears to be a live dispute on whether there are assets to administer. So it's sounding like the application for final decree would be the appropriate time and place to decide whether there are -- whether the assets have been fully administered. Or am I

missing something?

MS. LINDAUER: I don't know if you can say the assets have been fully administered when the asset we're talking -- so the asset we're talking about is subject to Fifth Circuit appeals. So, again, you're talking about, okay, so let's just do your analysis. Let's assume you're correct, it's property of the estate. You have the core proceeding over that. That's in your bailiwick. So you decide that these are property of the estate, these funds, 2.5 million, whatever they are, and you order them paid out to creditors per the plan.

THE COURT: No, no, I wouldn't order anything. I would rule on the motion, or the application. The application is to close the case. I either grant it or I deny it.

MS. LINDAUER: Okay. So in denying the application, would you be deciding the question of these funds or not? That would be the question.

THE COURT: That's what I'm -- that's what I'm trying to find out. You're saying that these settlement funds are owned by the bankruptcy estate. Mr. Kane, I think is saying that they're not, or Mr. Carrillo might say that they're not.

MR. KANE: Yeah, Your Honor, this is John Kane. I'd be happy to address that.

THE COURT: Yeah.

MS. LINDAUER: Wait a minute. Wait a minute. Maybe let Mr. Phelan address it too, because he's done a lot of work on this question. And I think he, you know, may have something to say with regard to that particular issue.

THE COURT: I'll --

MR. KANE: Yeah, I'll be happy to follow Mr. Phelan.

THE COURT: Wait, wait. Hold on. Hold on. Hold on.

MS. LINDAUER: Yeah.

THE COURT: I will get to Mr. Phelan.

MS. LINDAUER: Okay.

THE COURT: Let me hear -- before we go to Mr. Phelan, let me hear Mr. Kane's thoughts on this point. And, again, I'm going to give everybody a chance to speak. But, Mr. Kane?

MR. KANE: Yes, Your Honor.

What was resolved for value were not fraudulent conveyance actions that were property of the debtor's estate. Because the payments were not assets owned by the debtor. None of the money that was challenged by the Trustee as a potential fraudulent conveyance were direct payments from 2999 Turtle Creek Acquisitions, LLC, which is what gave rise to the eventual settlement.

30

If the parties look at the settlement motion, there is zero dollars allocated for value exchanged related to either the bankruptcy appeal or any potential fraudulent conveyance litigation that could have been asserted by Mr. Thomas as a representative of 2999 Turtle Creek Acquisitions, LLC. So what this Court would have to do is make a determination that money that was exchanged for assets of other receivership entities should somehow be paid to the creditors of 2999 Turtle Creek Acquisitions. In essence, administering the assets of non-debtor entities in an evidentiary hearing before this Court, which we don't believe this Court has jurisdiction to hear.

Now, there is a mechanism for parties who believe they have been aggrieved by this process to seek recourse. And that is a motion to intervene in the receivership proceeding and then to assert a claim for a portion of those proceeds where then they could make an argument that certain allocations should be provided to debtor assets, which on their face are not debtor assets.

THE COURT: So I kind of vaguely remembered that argument from a prior hearing. And that's why I said somebody else might have a different thought about whether I have jurisdiction over this.

So now that Mr. Kane has told you his position that I don't even have jurisdiction to resolve that dispute, does

that -- well, now I'll go to Mr. Phelan.

MR. PHELAN: Good afternoon, Your Honor.

I'm going to get to Mr. Kane's comment in a little bit, but I don't think he's right.

I haven't been involved in the appeals and the other stuff the Receiver is doing. Like Colonel Klink, I know nothing. I'm just a passenger on the outside of all of this appeal stuff. I wasn't even involved in the plan. I don't care much what happens in the appeals. I've never even met Mr. Barton. I'm not involved with him. I haven't written the briefs. I didn't have them until a few minutes ago. I don't want to get involved in this mess, except for the payment of the 2999TC creditors prior to dismissal of this case.

I'm prepare to argue the money from the settlement belongs to 2999TC and should be used to pay its creditors, including me. I can make those arguments from the Receiver's own pleadings. All I know is I have a claim against 2999TC and that $2.5 million, property of this estate, and I should be paid along with the other creditors prior to dismissal.

Now just listening today, it sounds like the settlement is being challenged. I just want a piece of that settlement money, which is the status that exists today. There's $2.5 million, or the right to receive it from HNGH by the Receiver. You should be the one to answer that question of

who gets the settlement money and if 2999TC owns that money. Mr. Kane doesn't have a right. The settlement -- if you look at the Receiver's pleadings, his documents, the settlement wasn't for fraudulent transfer claims. If any of it -- it wasn't just for fraudulent transfer claims, if any of it was for fraudulent transfer claims.

I'm fine if you make that determination in a closing of the case hearing or some other way. But it sounds like the Receiver and Mr. Kane are assuming that that settlement was for fraudulent transfer claims of the non-debtor entities. If you look at the documents and at the Receiver's own pleadings, it doesn't really say that.

THE COURT: The pleadings --

MR. PHELAN: And it's not a logical conclusion to come to.

THE COURT: The pleadings in the district court, correct?

MR. PHELAN: The pleadings in the district court and the motion to dismiss -- excuse me, the motion to close this case.

THE COURT: So given -- given that there's --

MR. PHELAN: They're pretty simple. They're not a lot of -- I'm sorry.

THE COURT: Go ahead.

MR. PHELAN: Well, there's not a lot of

pleadings I'm talking about. It's the motion to approve the settlement, the settlement, itself, the settlement agreement itself, and the motion to close this case.

THE COURT: So would you agree with me the settlement agreement would be the most important source -- the source document to determine what was settled and what was not settled and what was allocated to what, right?

MR. PHELAN: I think you have to put those three documents together; the motion to approve the settlement in the district court; the settlement agreement, itself; and a motion to terminate this case.

THE COURT: It should sounds like the District Court is the best judge to make that determination.

MR. PHELAN: I think you're the one to make the determination, because those dollars, I believe, belong to this estate. And I can walk you through the documents right now, if you want me to.

THE COURT: No. We're not doing -- that's part of the reason I'm asking these questions. You say that the proceeds belong to the bankruptcy estate. Mr. Kane and Mr. Carrillo I think take the position that those settlement proceeds do not belong to the bankruptcy estate, that they belong to the receivership.

Mr. Carrillo, just briefly; is that correct?

MR. CARRILLO: Yes, Your Honor, that's

correct.

THE COURT: So before you elaborate -- I'll get back to you. But if the Receiver is taking the position that those funds belong to the receivership estate, the District Court, in addition to being the Receivership Court, it also can exercise bankruptcy jurisdiction; can it not, Mr. Phelan?

MR. PHELAN: If it wants to.

THE COURT: So rather than -- and I'm worried about the potential for inconsistent rulings. I'm especially concerned since the other Court is a District Court in Dallas, in this building.

Wouldn't it make sense for the District Court to rule on this, whether it's in the receivership case or in a partial withdrawal of the reference to be heard together with the receivership case so that Judge Starr can decide what was settled and who owns the proceeds? Doesn't he have the ability to kind of wrap all of that up?

MR. PHELAN: If he wants to withdraw that issue from the Bankruptcy Court, I guess he has the authority to do that. But until then, it's a -- it's an asset that's claimed by this estate and is involved in this bankruptcy proceeding. And in any event, I don't think you can close the bankruptcy estate until that issue is determined.

THE COURT: So if you have -- if you have two

competing estates, the bankruptcy estate says, it's mine, the receivership estate says, it's mine, I'm not sure that --

MR. PHELAN: Well, you have a little bit of a -- you have a little bit of a conflict of interest on behalf of the Receiver.

THE COURT: Say that again.

MR. PHELAN: I mean, Receivers like to take -- I said you have a bit of a conflict of interest on behalf of the Receiver. I mean the Receiver has taken over this case. Receivers like -- SEC Receivers like to grab all of the money they can. Throw it in a big pile. And then distribute it however they want to distribute it. That's not the way the Bankruptcy Code works. And it seems to me that until that -- that's something you can determine until the District Court removes that issue from this case --

THE COURT: Even if --

MR. PHELAN: -- or from your --

THE COURT: Even if the District Court didn't withdraw the reference, isn't there an argument that the Receivership Court could still make that determination? You have two competing estates.

MR. PHELAN: Yeah. But they're competing, but it's eight controlled by the same guy. I mean, there's no independence there. The Receiver wants to do what the Receiver wants to do, whether that's right or wrong. And

he's taken a position that is adverse to the position that should be taken in this case by this debtor and its creditors. So, I mean, that's the problem. It seems to me we have to have an independent determination. You can't have just the Receiver deciding what he wants and then go to the District Judge and say, hey, Judge, this is what I want and, you know, I'm just going to ignore my responsibilities to 2999TC. He's got a conflict just sitting there.

Now -- okay. I think I answered that question.

THE COURT: All right. So, Mr. Carrillo, sorry to cut you off. I wanted to hear the brief answer, yes, the Receiver takes the position that the settlement proceeds are owned by the receivership estate. And I cut you off, so I want to let you finish.

MR. CARRILLO: Thank you, Your Honor. Again, for the record, Alan Carrillo on behalf of the Receiver, the reorganized debtor.

I mean, our -- the Receiver's position, Your Honor, is simply that we defer to your judgment and preference on the best way to proceed. The Receiver's position on the merits of closing the case I think are detailed, and comprehensive, and succinct and correct. In our briefing on the motion for final decree, including doc 311 where we reply both to Mr. Phelan and Ms. Lindauer's objections to closing the case.

Now, as far as when to decide those merits, and we

believe in the receivership estate's favor, the Receiver defers to you, Your Honor.

So, you know, if you have more specific questions for me, I'm happy to distance further. I know we've really dived quite deeply into the merits here on the motion for final decree. But I'm happy to do that more, if you'd like. But otherwise, you know, we defer to what you would like to do. We do think, though, that any remaining claims that are alleged to be against the reorganized debtor or any other receivership entity are just more appropriately handled in the receivership process. And that especially includes claims by Ms. Lindauer and Mr. Phelan that happened after the effective date, which were allowed to be paid by the reorganized debtor in the ordinary course, and they weren't. And they're in the same position as any other creditor of receivership entities as a result of that. And so we defer to your judgment, Your Honor. And are happy to have a hearing on the merits of this motion when you see fit.

THE COURT: All right. Let me go back to Mr. Kane.

So, Mr. Kane, you've heard my questions. And maybe you're -- hopefully you understand the struggle I have here. Without coming to me on the merits of who's right, it appears that we have competing claims to ownership of the settlement proceeds. On the one hand we have people arguing on -- well,

on their own behalf, I guess, arguing that the bankruptcy estate owns all or some portion of the settlement proceeds from the Receiver's settlement with your client. On the other hand your -- you and I think Mr. Carrillo take the position that the settlement proceeds are not owned by the bankruptcy estate, they're owned by the receivership estate.

Is that a fair -- again, not a comment on the merits. Is that a fair summary of an open issue?

MR. KANE: Yes, Your Honor. I believe that is a fair summary of the open issue.

THE COURT: So I guess that -- how do I -- since that's an open issue, it seems like there's an open issue about whether the estate's fully administered. Until a Court rules on whether those settlement proceeds are property of the estate, isn't -- it seems like that's something that has to be resolved before the case is closed.

MR. KANE: So I guess, Your Honor -- this is John Kane, again, for the record. My question will be this.

So no party has moved for that, right. There hasn't been any motion to intervene by Ms. Lindauer or Mr. Phelan seeking this determination in the district court case which is the Court with jurisdiction over the receivership entities which include the entities who have potential claims and causes of action that were settled by the settlement agreement and resolved by the settlement order.

So now here we have parties arguing that we should continue the status quo, which are essentially seeking to be beneficiaries of their own inaction. But this is such a critical issue and it involves the administration of assets that are indisputably not part of this debtor's bankruptcy estate, then -- and no offense to Your Honor -- I question how this Court would possibly have the jurisdiction to resolve an issue conclusively.

And so with a procedural means of achieving the remedies that they are asserting they would like to achieve and the total lack of action to achieve those goals, I'm not sure why they would receive the benefit, Your Honor. It doesn't to me make sense why we wouldn't move forward to a final hearing on a motion for entry of final decree where there's been inactivity by the parties suggesting further delay.

THE COURT: So there may have been inactivity that leads to delay. But then if I set this for hearing, one side is going to be asking me to make this ruling that the parties are saying I don't have the jurisdiction, or at least some of the parties are saying I don't have the jurisdiction to resolve. So I can hear the frustration on delay. But if I set it for hearing, I don't know how I close the case without this issue being resolved. That means either I have to rule on it in connection with the closing of the case, or

another judge rules on it before the case is closed. It has to be one of those two, right? Either I have to find that there are no estate assets left to administer because the bankruptcy estate doesn't own some of the proceeds, or another Court has to. Some Court has to rule on that before I can close the case, I think.

MR. KANE: So I guess, Your Honor, my question is -- and this is a complicated jurisdictional issue and I recognize that. We do have a situation where 2999 Turtle Creek Acquisitions has been named a receivership entity subject to federal receivership statute and administration under the federal receivership statute. And that the person in charge of administering that estate is Cort Thomas, the Court-appointed SEC Receiver.

So creditors of 2999TC Acquisitions, in my opinion, are put into a situation where, again, if they would like to see a reconciliation of their points involving two potential Courts the means to do so, or in the federal district court because of its jurisdictional superiority on certain issues and involving other entities relative to this Bankruptcy Court. And so if finding the issue of final decree sets a timeline by which parties have to submit briefing to get a determination by this Court or by the District Court, but presumably by this Court on the scope of its own jurisdiction to address those issues, then so be it. It's an issue

resolved. If this Court disclaims that it has jurisdiction, then the creditors have an opportunity to pursue settlement proceeds through the district court in a motion to intervene and the receivership claims process.

If an allocation of X number of dollars should be set aside from receivership proceeds for creditors of 2999TC Acquisitions, the means for obtaining that is through a determination in front of Judge Starr, in my opinion, or based on my review and analysis. But it would at least tee that issue up.

THE COURT: All right. Let me hear from Mr. Barton.

MR. BARTON: Yes, Your Honor, thank you. And I'll try to be brief and just point out a few issues.

There are actually three appeals.

THE COURT: So, Mr. Barton, I guess I should have asked, you are not represented in the bankruptcy case, right, in my case?

MR. BARTON: I have no lawyer in this case, that's correct.

THE COURT: Okay. All right. Go ahead.

MR. BARTON: So there are three appeals. And contrary to -- I'm not going to get into Mr. Kane and I would think a valid powerful lawyer doesn't need to say how bad, bad, bad, Tim Barton's bad, bad, bad. So put that aside, the

concept that we lost the first appeal, we appealed and won. And the Fifth Circuit said that Judge Starr inappropriately appointed a Receiver and invalidated it. Now, Kane, everybody can say how and what that means. But we won. And it's almost rarely ever, ever turned over, the SEC. So that was done and they pushed back pretty hard that it was done wrongly.

Judge Starr, yes, he has reappointed. But all he did was wave his hand and put everything back in and say, okay, we did it right this way. Okay. I don't think he did it right. But that's not for today. So we did win the appeal. And now they filed again and we have filed for an appeal. And not some willy-nilly process if one of the best attorneys in the country's law firm would not take this on. Which, by the way, is not getting paid. So he obviously believes in this case and is doing that. So there's an appeal on the Receiver. There's an appeal on the settlement, the 299. And then there's an appeal on the dismissal of the appeal that we had before Your Honor. So all of those are ongoing. And as they said, one is for the 7th, and the one on the settlement agreement, the SEC has given their reply. We have to just simply reply to that and then it will be called for oral argument.

So I'd also like to note that the first appeal did go rather quickly. And we expect that this will be moved along

pretty quickly. So we are looking forward for that to happen. Because in America, we are innocent until proven guilty. And this whole process has taken all of the assets. And Mr. Alan actually works for the estate, which is my estate. Okay. It's not somebody else's estate, it's my estate. And so I have some understanding of it. So that's on the appeals.

As far as any prejudice --

THE COURT: Well, hold on. Pause. Pause. Pause. I just want to make sure I understand what you're saying.

You say, my estate. Tim Barton estate. Are you saying the Tim Barton estate not 2999TC estate? When you say, my, what are you referring to?

MR. BARTON: What I'm referring to is that the Receiver has taken 30 years of my life, every company, my son's companies, all of my trusts, all of my son's trust. So, yes, all of that was created by the hard work that I did over 30 years. And contrary to the concept that I'm some stone-cold criminal and that Mr. Alan is to protect some Chinese communist agents, it's still my assets that are mine until they're proven that they're not.

Now, they're under the authority of him. But until my case is heard -- and the SEC case is stayed. There's been no case. And the DOJ has not even been able to deliver evidence

and they have moved my case out until September of next year and it will probably get moved again. So I just want to reaffirm that this is America and we're innocent until then. And that all of these assets were, yes, created by my work. And, yes, they are separate entities. So I apologize if I said it incorrectly.

THE COURT: That's all right. I wasn't sure what you meant, because the issue here is -- well, go ahead.

MR. BARTON: Yeah. Okay. So as far as Mr. Kane's question of whether he's prejudiced. Just like the loan that I took from a New York lender, Mr. Kane's client pursued as a predatory lender to buy part of that loan. And just like that in this case of settling this, the appeal on the Receiver and the question of whether the Receiver was valid was on appeal long before the settlement agreement was done. And they are very sophisticated real estate investors. And they know if there's an appeal that it's highly unlikely that anybody will buy the property from them. The appeal is something that somebody should pay attention to. Title companies do not give clean title with an appeal. So they knew that when they made the settlement. And this settlement agreement addressed if it was to be overturned, then Mr. Kane and his client would be put back into a legal position that they would have. So it was addressed. It was a known risk. And it's there. Now

they're saying that they need a solution to this. But if they are the valid owners and they want to say whatever they're saying, well, they can do whatever they want. They chose to operate in an environment that had an appeal and it still has an appeal. So there's no prejudice as far as that goes, as far as I'm concerned.

I have one little simple question. What did the estate, Mr. Alan, what did the estate --

THE COURT: So hold on.

MR. BARTON: of 299 --

THE COURT: Hold on. Hold on, Mr. Barton. This is not the time for you to cross-examine Mr. Carrillo.

MR. BARTON: Okay. I'm sorry, Judge.

THE COURT: I'm allowing you to give me your comments and position on how I should handle the application for final decree. And I don't really want to get into arguments about predatory lending. I think I touched on that subject in my ruling. That's not really an issue here for today. I really just want to get each parties' comments on how I proceed or not proceed in closing the case. There's a dispute about who owns the settlement proceeds. One -- some of you are saying that the receivership owns the settlement proceeds. Some of you are saying that the bankruptcy estate owns some of the settlement proceeds. So my question is to you, how does that -- in your mind, which Court resolves that

issue?

MR. BARTON: I have that -- the question I have is what is the consideration that the estate got? Supposedly it gave up all its right. It's turned over any claims that are property, all of that. The estate has given something away of huge value, as far as I'm concerned. And now we're to understand that the estate gets zero consideration for that.

So, again, I'm not a lawyer, but that seems to --

THE COURT: So we're not -- that --

MR. BARTON: -- be a little confusing there.

THE COURT: Just to make clear, I'm not deciding that issue today. Today, it's just a status conference, so I'm not really deciding anything today other than how and when this case moves forward on the application for final decree. So my specific question --

MR. BARTON: Okay.

THE COURT: -- to you -- if you could try to answer this question. You've heard my questions to the lawyers. There appears to be a dispute about who owns the settlement proceeds; the bankruptcy estate or the receivership estate. And so I'm asking you, Mr. Barton, what's your position on which Court should decide that issue?

MR. BARTON: I would believe that, you know -- I believe that the appeal has to be settled first. But this

settlement agreement should have been done in your court, if it was involving with 2999. So to me as a layman if the estate was making a settlement and the estate's in bankruptcy, then the bankruptcy should turn to the authority of Judge -- of your court, Your Honor, as the authority, because that's what the entity is making a settlement.

Now, if the Trustee made a settlement, then that's in Judge Starr's. But I don't know how they do that with the estate's assets that are under your control.

THE COURT: All right. Any other comments, not on the merits of any of the cases because I'm not deciding any of that here today? But do you have anything else to add specifically on this issue of the application for final decree?

MS. LINDAUER: So, Your Honor, I would --

THE COURT: No, no. That's for Mr. Barton. That's for Mr. Barton.

MS. LINDAUER: Oh, I'm sorry. I thought you were asking anybody. I'm sorry.

MR. BARTON: I apologize, if you could just restate that one more time, Your Honor, and then I will be finished. I'm sorry.

THE COURT: No, that's okay. I was just asking, do you have any other comments, Mr. Barton, on the specific issue that's being bantered at this status

conference, which is what to do with the application for final decree? Any other comments?

MR. BARTON: My only other comment is, I don't know how you close and settle a case with appeals out. And further, this $2.5 million is not going to be paid for two years. And -- so that's even more complicating because the money is not here today. So to me, I think there's a problem because of the appeals. And there's a big question how this appeal -- how this settlement was done. And you appear not to have been part of the settlement, so I find that in contest.

Thank you.

THE COURT: I'm sorry. You find it -- I didn't catch the last word you said.

MR. BARTON: I just -- I contest that why the bankruptcy court judge was not part of the settlement of the estate. And, therefore, until that process of was the settlement process done correctly, the case should not be closed because it was improperly done and it was not brought before Your Honor. Frankly I think it was disrespect. But I don't have anything else to say, Your Honor. But I'm happy to answer any other questions.

THE COURT: All right. Thank you, Mr. Barton.

Mr. Carrillo, I guess back to you. The more we talk, the more it seems to me like it's the District Court that

needs to decide who owns the settlement proceeds. I understand Mr. Kane's frustration that, you know, the parties could seek to intervene in the district court to resolve that issue. Another option would be for somebody to file a motion to withdraw the reference of the application for final decree. I would then make a recommendation not on the merits, but perhaps recommending that the District Court withdraw the reference and the District Court decide if the District Court thinks that the timing is appropriate to make that decision with the appeals pending, then the District Court can decide that issue.

What about that procedural vehicle, somebody filing a motion to withdraw the reference of the application for final decree?

MR. CARRILLO: Your Honor, you know, again we defer to your preference on the path forward. We filed the motion for final decree because we do think it's an appropriate vehicle to decide that issue. And, you know, this is a personal opinion and the Receiver, we can confer and decide on any path we could recommend forward maybe in a filing with the Court after this hearing. But Your Honor seems to also be equipped and empowered to decide this issue that is raised in the briefing on the motion for final decree, make that determination. And we all know that the order on the final decree will likely be appealed, in any

event. In which case the District Court would review that and make that determination on the issue of the settlement proceeds being part of the bankruptcy estate, or the receivership estate any way. And so, you know, we think that process is already baked into that procedural status where we are with the motion for final decree. But if Your Honor believes another path forward is more efficient for a more direct outcome, we're open to that, as well. And if you would like the formal position on that, we can follow up with a short brief, if you would order the parties to do so. Really whatever you prefer.

We understand this is a unique situation with the receivership estate and Receivership Court functioning while this bankruptcy case was stayed and is now pending. And so we realize this is new territory in many ways, which is why we defer to you. But if you would like us to make a formal suggestion one way or the other, the Receiver would be happy to do so.

THE COURT: So I guess I'm trying to understand that. A brief on which issue on -- I'd have to -- I'd have to re-read your application for final decree. I guess I was under the impression that you and Mr. Kane were taking the position that it's the District Court that needs to decide who owns the settlement proceeds. Is that right?

MR. CARRILLO: Yes, Your Honor. We think -- I

mean ultimately I think that is -- we think that is the District Court's determination. Whether that's directly, you know, now through, like you said, a motion to withdraw the reference or if it was on appeal of your determination of that issue on the motion for final decree. But I think my understanding was really the issue Mr. Kane and I were in agreement on was that we believe these proceeds were part of the receivership estate, not the bankruptcy estate. And so, you know, when I suggested an additional briefing, my only suggestion was if you would like the Receiver to offer a formal path forward, we can do so in writing, in a supplemental filing with the Court and after I've had time to confer with my client. But we're prepared to say the Receiver will take whatever steps you determine are best in this procedural posture.

THE COURT: So -- and I'm going to go back to Mr. Kane next. But the more we talk, the more uneasy I become with the idea of my ruling on that issue. I think -- I think given that there are competing estates, it sure seems to make a lot of sense that the District Court would rule on the issue of who owns the settlement proceeds. So there are different procedural mechanisms to try and make that happen. Mr. Kane has already suggested one that the parties, I guess Mr. Phelan and Ms. Lindauer file something in the existing receivership case to tee up that issue.

52

Mr. Kane, I guess what I'm now floating is, what if I were to set a deadline for Mr. Phelan and Ms. Lindauer to file a motion to withdraw the reference or -- well, what about requiring somebody to file a motion to withdraw the reference, anybody that -- well --

MR. KANE: Your Honor, I would support that.

MR. PHELAN: Could I make a couple of comments?

THE COURT: Sure.

MR. PHELAN: All right. We're getting wound up like spaghetti in the procedural formats here.

In terms of practicality, I think I heard Mr. Carrillo say it's okay if you want to decide it. It's going to get appealed any way. This is one narrow, little issue in the larger scope of the receivership. It's peanuts. It's $2.5 million dollars out of, you know, whatever gazillion dollars they're fighting over. My personal experience is that district judges are perfectly happy to let bankruptcy judges deal with narrow issues of bankruptcy law. If that is done by you entering an order and having it be appealed, or have it be in the context of a withdrawal of the reference, whatever happens it should be -- it should be resolved and resolved quickly without independently from this broader receivership situation. I don't know if it will be appropriate. I've seen it done before. Check with Judge

Starr. See what he'd like you to do.

In any event, it would be a lot less expensive for everybody to have you make that determination. The causes of action that were settled were in this estate until it's determined otherwise. If the causes of action are in this estate, the settlement proceeds, or a good hunk of them in our opinion, belong in this estate. And you can make a recommendation in connection with a withdrawal of the reference motion. One -- this little issue shouldn't get thrown into that mess of multiple competing interests and appeals.

THE COURT: The problem -- the problem, Mr. Phelan, is this is not a typical narrow bankruptcy issue. This is -- you're asking me to interpret Judge Starr's settlement order among other documents.

MR. PHELAN: Not really. Well, Bankruptcy Courts determine orders of other Courts -- or interpret orders of other Courts all the time as to what the order says --

THE COURT: But it seems like the author of the order would be the most perfectly suited judge to interpret its own order.

MR. PHELAN: If, in fact, the order addressed, and that's a threshold question. The -- I think on the face of the order you can tell that it was not in settlement

solely for the fraudulent transfer causes of action of the affiliates and non-debtors. There's been no substantive consolidation in this court or any other court. And I'm not a creditor of the other entities.

And by the way with respect to intervention. We asked the Receiver, we said we want to file a proof -- a claim in your case. And they said, we'll get around to that some day. I'm characterizing it, but it boiled down to that. As far as I know, there still is no process for filing claims in that case. I'll defer to Mr. Carrillo if my information is out of date, which it very well might be. But it seems to me the practical way to get this resolved is you decide if you whether you want to hear it or not and whether you think Judge Starr would want you to hear it or not, or check with Judge Starr and see whether he wants you to hear it or not.

Like I say, I don't know if procedurally that's appropriate. I've seen it done a lot.

THE COURT: I think I've already decided that preliminary issue which is, I don't think I want to decide it. I don't think I'm really the right Court to decide as between two competing estates; a receivership estate and a bankruptcy estate who owns the settlement proceeds. I'm kind of strongly telegraphing that I think Judge Starr is the right one to make that call. And it seems like --

MR. PHELAN: Okay. Then I'll go get a

margarita and forget about it until Judge Starr comes up with a procedure on how to get it resolved.

THE COURT: So --

MS. LINDAUER: Let me --

THE COURT: -- but I don't want this case to languish what I'm suggesting and what I'm contemplating is setting a deadline for either Ms. Lindauer or anybody that wants this issue teed up to file a motion to withdraw the reference, or else I close the case and reopen it if and when some other judge decides it.

Ms. Lindauer.

MS. LINDAUER: Your Honor, you know, 28 USC 1334(e), you have exclusive jurisdiction over property of the estate. Judge Starr doesn't have exclusive jurisdiction over property of the estate. If those settlement proceeds are property of this estate, then you're the one that has to make those decisions.

THE COURT: I'm a bankruptcy judge.

MS. LINDAUER: And, in fact, the law --

THE COURT: Wait a minute. Hold on. I'm a bankruptcy judge. I'm a unit of the District Court. And most importantly, I only have jurisdiction because the District Court refers it down to me. The District Court also has jurisdiction.

MS. LINDAUER: Well, the Bankruptcy Court

presiding over bankruptcy has exclusive jurisdiction over any and all property of the estate. One of the things you have jurisdiction over is to determine what is property of the estate. I hear you. But it really does in large part belong to you.

THE COURT: So I --

MS. LINDAUER: And we have a confirmed plan in this case that retained your jurisdiction to decide these types of issues. I'm looking at the plan that was approved in this case and you retained jurisdiction. So, look, if you make us request a withdrawal of the reference, I'm going to object because I think you are -- I know you don't want us to tell you this, but I think you're the one that decides this issue. If those were claims that belong to this estate that were settled, which is our position, then the funds belong to this estate and to this creditor body and need to be paid out to the creditors in this case. They don't belong to some Chinese investors in some district court case.

And, look, Mr. Phelan and I are only two creditors in this case. You've got probably 30 creditors in this case. Are all 30 creditors going to be expected to go intervene in the district court case to protect their rights? We can't -- we can't represent the debtor. We were fired from representing the debtor. The debtor has no legal counsel. So these creditors in this case have no debtor to argue for

them or protect them. This is sort of an atrocity in a lot of respects because you're putting a huge burden on me and Mr. Phelan to have to go intervene in some receivership case to protect who, all of the creditors who didn't get paid in this bankruptcy case.

THE COURT: Okay. So hold on.

MS. LINDAUER: And that's not the way --

THE COURT: Hold on. Hold on.

I don't appreciate the suggestion that there's an atrocity happening here. This is a status conference. It's a status conference.

MS. LINDAUER: Well --

THE COURT: It's a status conference where I'm getting parties' positions on how to proceed. So I'm not aware of any atrocity. I'm trying to figure out how to resolve the application for final decree. And I'm already convinced, and I'm even more convinced the District Court is the one that should decide this issue, because it's not a simple bankruptcy issue. When you have competing demands, you have the receivership estate and the bankruptcy estate. We have a district court judge who can be both of those things. He can be the receivership judge and he can resolve this, if the motion to withdraw -- if a motion to withdraw the reference is granted. Judge Starr can decide these issues.

So that's kind of what I want to see happen. I'm not going to order you do anything. This is just a status conference. My thought is, maybe Mr. Kane's the one that ought to file the motion to withdraw the reference. If somebody wants this case closed, I don't think I can do it until some Court somewhere decides the issue of who owns the proceeds. So I guess Ms. Lindauer is taking offense that I was going to order her to do it. As I'm sitting here --

MS. LINDAUER: Right.

THE COURT: -- right now this is just a status quo. My case is just sitting here. Nothing is happening.

Mr. Kane, would it make sense for your client to file a motion to withdraw the reference?

MR. KANE: I'm happy to address that, Your Honor.

We're taking the position that the debtor's estate doesn't have any assets. That everything has already been administered. And we don't believe that it would be appropriate for us to ask the District Court to interpret its own settlement agreement -- sorry, an order approving a settlement agreement for which the parties already expressly established allocations and sought the District Court's blessing. So I think it's got to be a different party.

And on the atrocity where creditors have no potential recourse. Presumably in every receivership proceeding there

is a liquidation of assets, an accumulation of capital, and then there is the establishment of a claims process. I'm dealing with a state court one in Oklahoma, a state court one in Oregon. That's just a normal process for a receivership. Typically known creditors of the entities who are purportedly aggrieved parties, or who are known aggrieved parties are then provided notice and an opportunity to participate in a claims process. This is a different issue. This is not just creditors saying, I want to get paid from the receivership estate. These are specific individuals who want to challenge, without appealing the District Court's order, allocations in the settlement motion and that the parties agreed to in a settlement agreement in an order.

So I don't think it would be appropriate for HNGH Turtle Creek to do it. I think one of the purportedly aggrieved parties should bear that burden. Or alternatively, if the Receiver itself wants to just nail the issue and get it adjudicated and put it to bed, then I certainly would support that.

MR. BARTON: Your Honor, could I say something?

THE COURT: Not yet. Not yet. I'm thinking.

All right. So we don't have any takers on a motion to withdraw the reference. But I'm telling you all, I'm not going to grant the application with this issue hanging out

there.

MR. CARRILLO: Your Honor, if I may.

THE COURT: Yeah, Mr. Carrillo.

MR. CARRILLO: So on behalf of the Receiver, we would suggest -- you know, we're willing to discuss this option and come back to the Court with a proposal. If you'd like to reschedule another status conference in the short term. We're not looking for a long delay. We obviously would like to resolve this issue quickly, as well. But I'm happy to step out, confer with my client, the Receiver, and we can recommend a path forward, particularly if it would involve any action on behalf of the Receiver.

We hear the concerns you've expressed. We asked you for your preference and you've expressed that. And the Receiver, you know, takes heavy weight to that. I just need to confer with the Receiver on a path forward. But we'd like to recommend a path forward that takes your preference into account.

THE COURT: That's fine. I'm not going to put you on the spot, so I'm not going to ask you to do that today. But I think that makes some sense. I mean, at the last status conferences I was more listening and absorbing what was going on. But as we get into it more, I find issues. And I think Mr. Carrillo's suggestion makes sense.

So I can't remember who was asking to speak. Was that

Mr. Barton?

MR. BARTON: Yes, Your Honor.

THE COURT: Go ahead.

MR. BARTON: I just wanted to clarify that the fact that we stay at status quo is not affecting HNGH's position any different than when they made the settlement. There was an appeal. And that appeal was in effect. And so whether this bankruptcy case stays open or not, I don't understand -- I see no way that it's affecting HNGH. And, therefore, the status quo is in the best interest, because any payments are going to take a while. And as you know, it's complicated and that's why the case should stay open, as no one is being damaged by it.

THE COURT: All right.

MR. BARTON: Thank you.

THE COURT: Thank you, Mr. Barton.

So anybody else have any thoughts? Because right now Mr. Carrillo's suggestion that we reset the status conference to either have Mr. Carrillo come back and give me his recommendation, or if in the meantime they decide to file a motion, they can have at it. But I certainly don't mind resetting this now that you kind of know what I'm thinking. You all can regroup and we can come back. Then I think maybe now that you know my preliminary thoughts, maybe the next status conference might be, I don't know, more fruitful, less

atrocious, whatever you want to say.

Ms. Lindauer, any objections to allowing Mr. Carrillo to confer with his client so that we can avoid further atrocities here today?

And I'm not trying to poke fun. But I really didn't understand. Your comment about the atrocity, I guess, kind of threw me for a loop.

MS. LINDAUER: Well, I think putting the burden the lawyers who are owed money to have to go into a receivership proceeding when there's no claims process -- I mean, who are we representing? Yeah, we're representing ourselves, but there's 30 other creditors in this case. When they fired all of the debtor's attorneys, there's nobody here to really speak for 299TC (sic) any longer. And clearly the Receiver is not speaking for 2999TC. So that's what I find most frustrating.

And I'm wondering --

THE COURT: He does appear to be --

MS. LINDAUER: -- in my own mind --

THE COURT: He does appear to be speaking for 2999TC. He's the Receiver. He's the Receiver for 2999TC.

MS. LINDAUER: Right. But obviously doesn't have the best interest of the creditors of 2999TC in his radar. He'd be arguing for them to get paid, right?

MR. BARTON: And on top of that, Alan has

already been paid $500,000.

THE COURT: Mr. Barton, Mr. Barton, Mr. Barton, we're not doing a free-for-all. Right now I'm asking Ms. Lindauer a question.

MS. LINDAUER: I think continuing the matter is a good idea. And, you know, maybe this needs to go to a Chapter 7. Maybe a Chapter 7 Trustee needs to take control of this estate and then you can have the Trustee work with the Receiver. Maybe that's the right answer. I don't know. But this seems to be unworkable the way it is right now. But I think a continuance is not a bad idea. And let everybody gather their thoughts.

THE COURT: Mr. Phelan.

MR. PHELAN: Yes, Your Honor. It seems to me like Mr. Carrillo's suggestion is probably okay. I do want to, for the record, say that I will defer to Mr. Kane who's probably read the settlement agreement more recently than I have. But I don't recall it allocating those proceeds among various entities. Maybe it did, maybe it didn't. That doesn't need to be decided today. But I just didn't want that to somehow be considered an absolute fact.

THE COURT: All right. Mr. Kane, I think I asked you, or did I? I've lost track. Are you okay with a brief respite for Mr. Carrillo and the parties to think about what I've said and reconvene in maybe a week or so?

MR. KANE: Yes, Your Honor.

THE COURT: All right. Why don't we do that. Do you guys want to pull out your calendars now, or do you just want to get with Ms. Bergreen after the hearing?

MR. CARRILLO: Your Honor, we're happy to coordinate directly with Ms. Bergreen, if that's more convenient for you.

THE COURT: That's fine. That's fine. Why don't we do that. So I'll just finish by saying, Ms. Lindauer, I do -- I take everything that the parties say seriously. And that is why I was very caught off guard by your suggestion that there was some atrocity happening here. So I took a little bit of offense to that, because I'm trying to figure out a path forward for all of the parties. It may not be the most convenient for you, given that there's a receivership. That's not my fault. I didn't ask for a receivership. I'm not involved in that process. I have a motion before me where I'm trying to figure out how to move forward on my case. So just be careful if the atrocity comment was directed at me, maybe rethink that. Maybe it wasn't directed at me. I don't know.

MS. LINDAUER: It wasn't directed to you, Your Honor. I think it's more just the process and the comments to the process. You know, look, what standing does Mr. Kane's client even have? I mean, there are so many

issues here that are just being thrown at you in this status hearing. And without a lot of good thought being given to them as to whether they're even appropriate. Mr. Kane's client doesn't even have standing any longer in this case. They took their property and they've gone wherever they've gone. So, again, maybe they're a party in interest, best case. They're clearly not a creditor.

So, you know, I just want people to think through all of this. Let's make a good decision. I think buying some time is right. But I think -- I think some of the suggestions may be appropriate, some of them may not be.

THE COURT: That's fine. That's fine.

MS. LINDAUER: But again, you know --

THE COURT: That's fine. I just encourage everybody to tone down the rhetoric, because when you say that there's an atrocity, there's -- I'm not sure that was appropriate. But I understand everybody has strong feelings on how to proceed or not to proceed. But everybody should just be maybe a little more circumspect on the allegations that you make in court.

MS. LINDAUER: Understood.

THE COURT: Because they don't come across well when things like that happen.

All right. So we'll be in recess. And Ms. Bergreen, if she doesn't know already, she'll be looking out for an

email from you all on a reset status conference and we can reconvene then. So thank you all for your time and your patience with the Court's questions. It's been helpful to me to have this back and forth. And then we'll reconvene at the next status conference.

We'll be in recess.

MR. KANE: Thank you, Your Honor.

MS. LINDAUER: Thank you, Your Honor.

(End of Proceedings.)

C E R T I F I C A T E

I, CINDY SUMNER, do hereby certify that the foregoing constitutes a full, true, and complete transcription of the proceedings as heretofore set forth in the above-captioned and numbered cause in typewriting before me.

/s/Cindy Sumner

______________________________

CINDY SUMNER, CSR #5832
Expires 10-31-2024
Cindy Sumner, CSR
5001 Vineyard Lane
McKinney, Texas 75070
214 802-7196