IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS (DALLAS)

| | |
|---|---|
| IN RE: | Case No.: 21-31954-SWE-11 |
| 2999TC ACQUISITIONS, LLC, | |
| Debtors. | Thursday, April 10, 2025<br>9:37 A.M. |

TRANSCRIPT OF STATUS CONFERENCE ON MOTION FOR FINAL DECREE FILED BY CORTNEY C. THOMAS, COURT-APPOINTED RECEIVER FOR REORGANIZED DEBTOR 2999TC ACQUISITIONS, LLC (307)

**BEFORE THE HONORABLE SCOTT W. EVERETT**
**UNITED STATES BANKRUPTCY COURT JUDGE**

APPEARANCES ON THE NEXT PAGE.

Audio Recorder: Michael F. Edmond
Earle Cabell Federal Building
1100 Commerce Street, Room 1254
Dallas, Texas 75242

Transcription Service: Liberty Transcripts
9107 Topridge Drive
Austin, Texas 78750
(847) 848-4907
DBPATEL1180@GMAIL.COM
www.libertytranscripts.com

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

APPEARANCES:

| | |
|---|---|
| For the Receiver, Cortney C. Thomas: | Brown Fox PLLC<br>BY: C. ALAN CARRILLO, ESQUIRE<br>8111 Preston Road, Suite 300<br>Dallas, Texas 75225<br>(214) 327-5000<br>alan@brownfoxlaw.com |
| For the United States Trustee: | Office of the United States Trustee<br>BY: ASHER BUBLICK, ESQUIRE<br>1100 Commerce Street, Room 976<br>Dallas, Texas 75242<br>(214) 767-8967<br>Asher.Bublick@usdoj.gov |
| For Phelan Law: | Robin Phelan Law<br>BY: ROBIN ERIC PHELAN, ESQUIRE<br>4214 Woodfin Drive<br>Dallas, Texas 75220<br>(214) 704-0222<br>robin@phelanlaw.org |
| For Joyce Lindauer PLLC: | Joyce Lindauer Attorney, PLLC<br>BY: JOYCE LINDAUER, ESQUIRE<br>1412 Main Street, Suite 500<br>Dallas, Texas 75202<br>(972) 503-4033<br>joyce@joycelindauer.com |
| Also Present: | Timothy Barton, *Pro Se* |

(Proceedings commenced at 9:37 a.m.)

THE COURT: I'll call the 2999TC Acquisitions case, 21-31954. Let me take appearances, please.

MR. BARTON: Timothy Barton.

THE COURT: Good morning.

(Pause)

THE COURT: I'm opening it up for other appearances. All I've heard so far is Mr. Barton.

MR. PHELAN: Robin Phelan --

MR. BUBLICK: Asher Bublick --

MR. PHELAN: Sorry. Robin Phelan for Phelan Law.

THE COURT: Good morning.

MS. LINDAUER: And Joyce Lindauer here on my firm, also.

THE COURT: All right.

MR. BUBLICK: Asher Bublick for the United States Trustee.

THE COURT: Good morning.

MR. CARRILLO: Good morning, Your Honor.

Can you hear me now?

THE COURT: Yes. Go ahead and make your appearance.

MR. CARRILLO: I'm so sorry for my technical difficulty this morning. Alan Carrillo for the Receiver,

Cort Thomas, on behalf of the Debtor.

THE COURT: All right, good morning.

MR. CARRILLO: Good morning.

THE COURT: Mr. Kane is not with us this time?

MR. CARRILLO: Your Honor, I do not see him.

THE COURT: All right. Just to let y'all know, I have kind of a 10:00 hard stop. We have our new bankruptcy judge in Lubbock bring sworn in. This is a status conference, so I want to keep it efficient.

Mr. Carrillo, can you give me a brief update? My position that my thinking on this case might be changing given the delay. But why don't you give me an update.

MR. CARRILLO: Yes, Your Honor.

I mean, the short update is that, on February 3rd, the Fifth Circuit heard the appeal for the receivership order in the general receivership case. And so that's been fully briefed and fully argued, and it's been pending for a couple of months now. And we expect a decision in the near future.

It's the Receiver's position that it probably is still prudent to wait for the Fifth Circuit's decision, which would bring some finality to some of the appeals that Mr. Barton has brought in the receivership case and will allow settlements like the settlement in this case to consummate. But, of course, we defer to your judgment, Your Honor.

But the Receiver would propose perhaps another status conference in 90 to 120 days. And then if we don't have a decision at that point, Your Honor, then we would be happy to proceed as you prefer.

THE COURT: All right. Why don't I go to Mr. Bublick next.

MR. BUBLICK: Good morning, Your Honor.

Nothing to add from U.S. Trustee at this point. Thank you, Your Honor.

THE COURT: All right, thank you.

Let me go to Mr. Phelan. And you're on mute, Mr. Phelan.

MR. PHELAN: Okay, there we go. As you indicated, this has been going on for a long, long time. But if Mr. Carrillo believes that a ruling will come down from the Circuit Court in the next, I forgot what he said, 60 days, that probably makes sense.

THE COURT: All right. Ms. Lindauer?

MS. LINDAUER: I would tend to agree with Mr. Phelan, as well, on that issue. So just one concern I had was the comment settlement to consummate. My understanding is that the settlement's already been consummated. Maybe I'm incorrect on that, but I believe that the monies that were being paid have already been paid to the receivership. So I think that maybe that could be clarified

a bit.

But, Your Honor, as far as waiting for you to make a decision or refer this to perhaps the District Court, I think the 60 days seems appropriate.

THE COURT: All right. Mr. Carrillo, did you want to -- you don't have to. You're welcome to follow up before I go to Mr. Barton.

MR. CARRILLO: Thank you, Your Honor.

Yes. Alan Carrillo on behalf of the Receiver.

Thank you, Ms. Lindauer. Yes, the settlement has consummated. What I meant to say, Your Honor, was part of the settlement is to dismiss this bankruptcy case. That's really the last step. And, of course, the motion to dismiss this case is pending as we wait for the outcome of the Fifth Circuit appeal.

THE COURT: All right. Mr. Barton, I can see your name, but I can't see you. Can you -- why don't you turn your camera on.

MR. BARTON: How about now, Your Honor?

THE COURT: All right. Brief comments?

MR. BARTON: Brief comments, I would agree to the extension as Mr. Carrillo suggested. And I would just like to add now that the Trustee has shown up, I would like him to understand or look into why the funds for 2999 have not been paid to the bankruptcy estate. They've been paid through a

third party, and I think the Trustee should look into that and I think Your Honor should question why that's happening. Thank you.

THE COURT: All right. So my only comment on that, after going back and re-reading the transcript from the last hearing, is that I'm becoming increasingly uncomfortable with the idea that I'm ever going to rule on who owns the funds as between the bankruptcy estate and the receivership estate.

It sure seems like Judge Starr is the appropriate judge to make that determination, not only because he has jurisdiction over the receivership, he can also exercise bankruptcy jurisdiction if needed. And it's his settlement. And as I understand after going back through and reading the transcript from the last hearing, the parties that believe that the bankruptcy estate owns some portion of those funds want me to interpret Judge Starr's order and, based on my review of that order and settlement agreement, determine what portion is owned by the bankruptcy estate.

Mr. Phelan, is that a fair characterization?

MR. PHELAN: Yes, Your Honor.

THE COURT: So, Mr. Carrillo, any disagreements with that?

MR. CARRILLO: Your Honor, the Receiver does not disagree with you. I think the Receiver's position would be, even if we were to go to Judge Starr for relief in dismissing

this case in accordance with the settlement that he approved. We would still prefer to wait until the Fifth Circuit rules on Mr. Barton's appeal of the receivership order just to give you and Judge Starr the assurance that we won't be back here discussing this again and holding up your docket.

That's our position. As soon as the Fifth Circuit rules, we can discuss with the parties on what it would look like to bring this to Judge Starr, whether through a decision from you to Judge Starr or perhaps removing this bankruptcy case to Judge Starr.

THE COURT: So you mentioned that part of the settlement is dismissing the case. You mean closing the case, right?

MR. CARRILLO: Correct. I apologize for my lack of clarity there, Your Honor. Yes, closing this case.

THE COURT: Okay, all right.

Mr. Phelan, I see your virtual hand is up.

MR. PHELAN: It is, Your Honor. I have not looked at the -- what's going on in the Fifth Circuit except (indiscernible) a long time ago.

My understanding is that the appeal involves whether there's going to be a receiver or not. Is that correct, Mr. Carrillo?

MR. CARRILLO: In short, Mr. Phelan, I mean that is correct. Mr. Barton's appeal is to the heart of the

receivership on whether or not Judge Starr's order installing a receiver over the receivership estate was proper under the Fifth Circuit standards.

MR. PHELAN: Okay. Your Honor, then circling back to your concern --

MR. BARTON: I'm sorry to interrupt. I don't know how to put up my hand. But, Mr. Phelan, the appeal requests the vacating of the receivership. The ruling that the --

THE COURT: Well, Mr. Barton? Mr. Barton?

MR. BARTON: Yes.

THE COURT: So if you're going to participate, you got to have the camera on.

MR. BARTON: Oh, I'm sorry. Sorry, sorry. Yes, sir. Sorry.

THE COURT: Go ahead.

MR. BARTON: I just wanted to clarify that the appeal was for the vacating of the receivership, the remanding of the judge, the ruling that the loans are not securities and thereby dismissing the entire case. So it is more robust than simply the removal and vacating of the Receiver. There are more issues, including 2999 and another settlement. So it's not as simple as that. So I just want to clarify that for Robin. Thank you.

MR. PHELAN: Your Honor, circling back to your concern, it seems that if the Fifth Circuit rules as

Mr. Barton would like, that you're the only judge left standing or sitting on a bench to make the determination with respect to the assets of 2999TC. So I think that your concern will be clarified one way or the other when the Fifth Circuit rules.

THE COURT: All right. I might yet delay one last time, but that potential concern that the receivership estate would just go poof, even if I were to close this case and say Judge Starr gets to decide it, if for some reason the receivership goes away, somebody can always ask to reopen the bankruptcy case.

So I'm going to continue this probably for the last time. So let's do another 90 days out. I don't think it's going to be fruitful to keep doing this. If the Fifth Circuit rules, right, maybe there will be more certainty the next time we're here. If they haven't ruled, there's a pretty good chance I'm just going to close this case and then if there's ever cause to reopen it and that -- well, I'm strongly inclined to close the case.

The parties could then litigate in District Court who owns the funds, the receivership estate versus the bankruptcy estate. And if Judge Starr were to conclude that some or all or none or at least some portion of the funds belong to the bankruptcy estate and need to be administered, somebody could then ask to reopen the bankruptcy case.

That's probably what I'm going to do, but I'm going to set this out one last time for 90 days and then we'll regroup then. So Mr. --

MR. PHELAN: Your Honor?

THE COURT: Yeah.

MR. PHELAN: As a technicality, if you close the case, the estate I think no longer exists. So you'd be looking at the Debtor being the only potential, I guess potential party to a District Court determination of who owns the funds. Is that the right analysis as you understand it?

THE COURT: I don't know that the estate goes away just because the case is administratively closed. We do have cases with some frequency that get administratively closed while the debtor goes and does its thing on the plan. And then at some point, if it needs to be reopened, it can. I'm not sure that administratively closing the case has a substantive effect on whether the estate exists.

Does that make sense?

MR. PHELAN: It does.

THE COURT: So we don't have to decide that today.

MR. PHELAN: I'll go back and look.

THE COURT: All right, that's fine. We don't have to decide it today.

MR. PHELAN: That's correct.

THE COURT: But for this next hearing, rather than

a status conference, we're just going to set it. We're going to set it for a ruling on 90 days out, that way everybody can make their arguments on why I should or shouldn't close the case.

MS. LINDAUER: And, Your Honor, the only thing I would raise on closing the case is, and I know the U.S. Trustee's Office hasn't raised this, but of course the case has been open. No reports have been filed, no fees have been paid to the U.S. Trustee's Office. Of course, Mr. Phelan hasn't been paid. We haven't been paid. None of the creditors have been paid.

So I am a little concerned that all the administrative requirements have just sort of gone by the wayside while we've been going through this. There was over $2-1/2 million collected. That could, should or could have been paid towards at least some of the admin expenses that have been incurred. So I guess, I know you're not ruling on anything today, but I think one other option might be a request to convert the case so that the admin expenses at least can be addressed by a --

THE COURT: You're kind of assuming -- you're assuming the point in controversy, which is that there's money to pay the admin claims. So --

MS. LINDAUER: Correct. Correct.

THE COURT: And in order for there to be money to

pay admin claims, one side has to be correct that the bankruptcy estate owns --

MS. LINDAUER: Right.

THE COURT: -- some or all of the funds. If --

MS. LINDAUER: Right.

THE COURT: -- somebody else is correct, then the receivership estate owns everything and the bankruptcy estate doesn't, then there's nothing to pay. So I don't think converting the case is going to help at all.

MS. LINDAUER: Well, I guess we'll see where we are in 90 days. I'm more concerned about the fact that there's just been nothing done with the case, no reporting, no -- maybe the U.S. Trustee's Office is okay with all that. But most of my cases when that stuff doesn't get done, people get upset. So I just want to be clear that --

THE COURT: And this is kind of a -- this one's kind of an unusual case.

MS. LINDAUER: Yeah.

THE COURT: We have a pending receivership.

MS. LINDAUER: Right.

THE COURT: Everybody that has any interest in this case is showing up for these updates. I don't know --

MS. LINDAUER: Sure.

THE COURT: -- what exactly -- no offense to Mr. Bublick, but in this particular case, I don't know that

monthly operating reports right now make a whole lot of sense. But let me ask Mr. Bublick that. I'm not sensing that under the particular facts of this case that the fact that there aren't monthly operating reports being filed is all that troubling. But Mr. Bublick, what are your thoughts on that?

MR. BUBLICK: Thank you, Your Honor.

The Court is correct. And the point of the monthly operating reports is to ensure transparency of the Debtor's operations. And as there is nothing happening here and the question about the estate funds or lack thereof, at this time, our position is that just monitor this case and see where it goes.

MS. LINDAUER: And, Your Honor, that's fine. I just want to be sure because, obviously, I ran into this and -- not these facts but other cases. So I just want to be clear that we're all above board on that. And there is a level of transparency here that we don't know about it. For example, Mr. Barton's the one that's being telling us about the 2.5 million or whatever's been paid. There's been nothing filed with this Court indicating anything's been paid.

So, again, there really hasn't been a whole lot of transparency in this particular matter. But if everybody's all right with that, then that's -- it is what it is.

THE COURT: I don't agree that --

MR. BARTON: Well, I'm not --

THE COURT: I don't agree that there's been a lack of transparency. Anybody that wants to tee something up in front of Judge Starr may. I think Mr. Carrillo has been more than transparent about what's going on. So that's what we're going to do. We're going to reset this for hearing roughly 90 days out on a day that works for everybody. And then I'll decide then whether to close the case.

So thank you all for your time this morning.

Mr. Carrillo, I hate to put it on you, but would you mind preparing that notice of hearing?

MR. CARRILLO: Yes, Your Honor. The Receiver will do that.

THE COURT: All right. Well, thank you all for your appearances. It's good to see you all.

MS. LINDAUER: Thank you.

THE COURT: The Court will be in recess. And if you haven't heard, we have a new bankruptcy judge in Lubbock, Brad Odell, who is being sworn in at 10 o'clock today. So anyway, just a bit of good news. With that, the Court will be in recess.

(Proceedings adjourned at 9:55 a.m.)

* * * * *

C E R T I F I C A T I O N

I, DIPTI PATEL, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.

____________________________

DIPTI PATEL, AAERT CET-997

Expires: December 6, 2026

Liberty Transcripts Date: June 17, 2025